# FEDERAL PUBLIC DEFENDER

## DISTRICT OF NEW JERSEY

K. ANTHONY THOMAS, FEDERAL PUBLIC DEFENDER

22 SOUTH CLINTON AVENUE • STATION PLAZA 4, FOURTH FLOOR • TRENTON, NEW JERSEY 08609 • (609) 989-2160

March 18, 2026

Honorable Robert Kirsch                                                    (via ECF)
United States District Judge
Clarkson S. Fisher Building
& U.S. Courthouse
402 East State Street
Trenton, NJ 08608

   **Re: United States v. Ford Graham**
    **Crim. No. 24-188 (RK)**

Dear Judge Kirsch:

  Please accept this letter as an adjournment request for Mr. Graham's sentencing, currently scheduled for March 24, 2026.

  To begin, in *United States v. Raheel Naviwala*, No. 2:24-CR-00099 and *United States v. Daniel Torres*, 2:24-CR-00378, the Honorable Matthew W. Brann, Chief United States District Judge for the Middle District of Pennsylvania, found yet again that the United States Attorney's Office for the District of New Jersey unlawfully delegated the authority of the office, this time to a "triumvirate" of attorneys, in violation of the Federal Vacancies Act and the Appointments Clause of the US Constitution. Judge Brann held that despite staying his ruling, the "stay cannot validate an unlawful appointment" and if "the government chooses to leave the triumvirate in place, it does so at its own risk."

  The government is expected to appeal but has yet to file a notice of appeal. Moreover, Judge Brann has ordered supplemental briefing to assess whether Mr. Torres' case may be dismissed because of these violations.

  Based on representations by Assistant United States Attorney's in other federal criminal matters the triumvirate leadership structure of the United States Attorney's office remains in place as of today.

  As such, the United States Attorney's Office for the District of New Jersey, and the assistant united states attorneys under the supervision of the triumvirate, are operating in violation of the Court, and their authority to proceed in Mr. Graham's case is questionable.

  For this reason, an adjournment of Mr. Graham's sentencing is appropriate.

Additionally, on December 12, 2025, and January 30, 2026, the United States Sentencing Commission proposed several amendments to the U.S. Sentencing Guidelines. See Exhibit A.

Of importance to Mr. Graham's case are proposed amendments to the loss table in USSG § 2B1.1(b)(1) as well as the enhancements contained throughout USSG § 2B1.1, particularly the "sophisticated means" enhancement. These changes could ultimately lead to a significant reduction in Mr. Graham's overall guideline calculation.

For this reason, an adjournment of Mr. Graham's sentencing is appropriate.

As such, Mr. Graham respectfully requests that his sentencing, currently scheduled for March 24, 2026, be adjourned until further notice. Mr. Graham has been on pretrial release since April 14, 2021. He remains fully compliant with all pretrial conditions.

Respectfully submitted,

Office of the Federal Public Defender
22 S. Clinton Avenue
Trenton, NJ 08609
saverio_viggiano@fd.org

cc:     Richard Shepard, AUSA (via email)
        Patricia Markey, Courtroom Deputy (via email)
        Daniel J. Carney, USPO (via email)

# EXHIBIT A



# Proposed Amendments to the Sentencing Guidelines

## January 30, 2026

**Closing Date for Public Comment:**
**March 18, 2026**

This compilation contains unofficial text of proposed amendments to the sentencing guidelines, policy statements, and official commentary, and is provided only for the convenience of the user in the preparation of public comment. Official text of the proposed amendments can be found on the Commission's website at www.ussc.gov and will appear in the February 6, 2026 edition of the Federal Register.

The proposed amendments and issues for comment will be subject to a public comment period running through **March 18, 2026**. Public comment received after the close of the comment period may not be considered. All written comment should be sent to the Commission via any of the following two methods: (1) comments may be submitted electronically via the Commission's Public Comment Submission Portal at https://comment.ussc.gov; or (2) comments may be submitted by mail to the following address: United States Sentencing Commission, One Columbus Circle, N.E., Suite 2-500, Washington, D.C. 20002-8002, Attention: Public Affairs – Proposed Amendments. For further information, see the full contents of the official notice published in the Federal Register (available at www.ussc.gov).

## TABLE OF CONTENTS

**PROPOSED AMENDMENT**                                                     **PAGE NO.**

1. **SENTENCING OPTIONS** ........................................................ 1

2. **CAREER OFFENDER** ........................................................ 17

3. **CIRCUIT CONFLICTS CONCERNING §4B1.2(b)** .................................................... 43

4. **HUMAN SMUGGLING** ........................................................ 51

## SUPPLEMENTARY INFORMATION

Publication of a proposed amendment requires the affirmative vote of at least three voting members of the Commission and is deemed to be a request for public comment on the proposed amendment. *See* Rules 2.2 and 4.4 of the Commission's Rules of Practice and Procedure. In contrast, the affirmative vote of at least four voting members is required to promulgate an amendment and submit it to Congress. *See* Rule 2.2; 28 U.S.C. § 994(p).

The proposed amendments in this document are presented in one of two formats. First, some of the amendments are proposed as specific revisions to a guideline or commentary. Bracketed text within a proposed amendment indicates a heightened interest on the Commission's part in comment and suggestions regarding alternative policy choices; for example, a proposed enhancement of [2][4][6] levels indicates that the Commission is considering, and invites comment on, alternative policy choices regarding the appropriate level of enhancement. Similarly, bracketed text within a specific offense characteristic or application note means that the Commission specifically invites comment on whether the proposed provision is appropriate. Second, the Commission has highlighted certain issues for comment and invites suggestions on how the Commission should respond to those issues.

In addition to the issues for comment set forth in the proposed amendments, the Commission requests public comment regarding whether, pursuant to 18 U.S.C. § 3582(c)(2) and 28 U.S.C. § 994(u), any proposed amendment published in this document should be included in subsection (d) of §1B1.10 (Reduction in Term of Imprisonment as a Result of Amended Guideline Range (Policy Statement)) as an amendment that may be applied retroactively to previously sentenced defendants. The Commission lists in §1B1.10(d) the specific guideline amendments that the court may apply retroactively under 18 U.S.C. § 3582(c)(2). The background commentary to §1B1.10 lists the purpose of the amendment, the magnitude of the change in the guideline range made by the amendment, and the difficulty of applying the amendment retroactively to determine an amended guideline range under §1B1.10(b) as among the factors the Commission considers in selecting the amendments included in §1B1.10(d). To the extent practicable, public comment should address each of these factors.

Additional information pertaining to the proposed amendments described in this document may be accessed through the Commission's website at www.ussc.gov.

## 2025–2026 PROPOSED AMENDMENTS TO THE SENTENCING GUIDELINES, POLICY STATEMENTS, AND OFFICIAL COMMENTARY

### 1.    PROPOSED AMENDMENT:    SENTENCING OPTIONS

**Synopsis of Proposed Amendment:** In August 2025, the Commission identified as one of its policy priorities for the amendment cycle ending May 1, 2026, "[e]xamination of how the guidelines can provide courts with additional guidance on selecting the appropriate sentencing option (*e.g.,* imprisonment, probation, or fine), and possible consideration of amendments that might be appropriate." U.S. Sent'g Comm'n, "Notice of Final Priorities," 90 FR 39263 (Aug. 14, 2025). As part of this examination, the Commission held a Sentencing Options Roundtable in December 2025, which was attended by a wide range of stakeholders. Participants expressed varying views on how the Commission should proceed with the sentencing options priority, ranging from no or very limited action to fundamental restructuring of the sentence type determination.

The proposed amendment is informed by feedback received from stakeholders. It contains two parts (Parts A and B). The Commission is considering whether to promulgate either or both of these parts, as they are not mutually exclusive. The proposed amendment would retain the *Guideline Manual*'s zone-based structure, which provides for flexibility in the sentencing options available for defendants whose guideline ranges fall within Zones A through C of the Sentencing Table. Part A of the proposed amendment would provide further guidance on determining the appropriate sentence type from among those authorized by the guidelines and emphasize the importance of this threshold determination. Part B of the proposed amendment would expand Zones B and C to increase the availability of sentencing options for certain defendants.

*In General*

Chapter Five (Determining the Sentencing Range and Options Under the Guidelines) of the *Guidelines Manual* sets forth the steps used to determine the applicable sentencing range and sentencing options based upon the guideline calculations made in Chapters Two through Four. It also sets forth "zones" in the Sentencing Table that authorize different sentencing options. The chapter is divided into several parts that set forth the sentencing requirements and options under the guidelines related to probation, imprisonment, supervision conditions, fines, and restitution for the particular guideline range.

Part A (Sentencing Table) sets forth the Sentencing Table that is used to determine the applicable guideline range based on the intersection of the offense level (determined pursuant to Chapters Two and Three) and the criminal history category (determined pursuant to Chapter Four) applicable to the defendant. The Sentencing Table sorts all sentencing ranges into four zones, labeled Zones A through D.

Part B (Probation) addresses probation, including the imposition decision itself, the length of a term of probation, and the conditions of probation.

Part C (Imprisonment) sets forth the provisions relating to how the minimum and maximum terms of the applicable guideline range may be satisfied according to the pertinent zone of the Sentencing Table.

Part D (Supervised Release) addresses supervised release, including the imposition decision itself, the length of a term of supervised release, and the conditions of supervised release.

Part E (Restitution, Fines, Assessments, Forfeitures) addresses the determination of whether to impose restitution, fines, forfeiture, and assessments.

Part F (Sentencing Options) sets forth additional conditions that the court may impose as part of the sentence.

The zones of the Sentencing Table generally provide the sentencing options that the courts consider in determining the appropriate sentence. The zones are allocated in the Sentencing Table in Part A of Chapter Five. However, the sentencing options that these zones authorize are set out in provisions distributed throughout several parts of Chapter Five. In general, each zone authorizes different sentencing options, as follows:

*Zone A.*—All sentencing ranges within Zone A, regardless of the underlying offense level or criminal history category, are zero to six months. Zone A authorizes a sentence that is probation-only, probation with a confinement condition (home detention, community confinement, or intermittent confinement), a split sentence (term of imprisonment with term of supervised release with condition of confinement), or imprisonment. Zone A is the only zone that authorizes probation without any conditions of confinement.

*Zone B.*—Sentencing ranges in Zone B are from 1–7 to 9–15 months of imprisonment. Zone B authorizes a probation term to be substituted for imprisonment, contingent upon the probation term including conditions of confinement sufficient to satisfy the minimum term specified in the guideline range. Zone B also authorizes a term of imprisonment (of at least one month) followed by a term of supervised release with a condition of confinement (*i.e.*, a "split sentence") or a term of imprisonment only.

*Zone C.*—Sentencing ranges in Zone C are 10–16 or 12–18 months of imprisonment. Zone C authorizes a "split sentence," which must include a term of imprisonment equivalent to at least half of the minimum of the applicable guideline range. The remaining half of the term requires supervised release with a condition of community confinement or home detention. Alternatively, the court has the option of imposing a term of imprisonment only.

*Zone D.*— Zone D authorizes imprisonment only, with sentencing ranges ranging from 15–21 months to life imprisonment.

*Part A (Changes to Part A of Chapter Five)*

Part A of the proposed amendment would generally amend Part A of Chapter Five to make two changes, either one or both of which could be promulgated. First, Part A of the proposed amendment would add new Introductory Commentary to Part A of Chapter Five. Second, it would add a new guideline at §5A1.1 (Determination of Type of Sentence) and, as a result,

would designate the Sentencing Table as §5A1.2 and make technical changes to the existing Introductory Commentary to Chapter Five. The Commission is considering a range of alternatives: only promulgating the new introductory commentary to Part A set forth below; only promulgating the new guideline at §5A1.1 set forth below; promulgating both the new introductory commentary and new §5A1.1 set forth below; or only promulgating a version of new introductory commentary to Part A that also incorporates some of the text that now appears within new §5A1.1 set forth below.

The proposed Introductory Commentary to Part A of Chapter Five draws from the legislative history of the Sentencing Reform Act, highlighting the broad range of sentencing options that are statutorily provided and the recognition that different sentencing factors may weigh differently in different cases. It emphasizes that a sentence of probation serves a punitive function, citing to the legislative history of the Sentencing Reform Act and certain Supreme Court jurisprudence.

The proposed guideline at §5A1.1 would provide an overview of the steps necessary for the court to determine an appropriate sentence pursuant to Chapter Five. New §5A1.1 would contain the following four subsections.

Subsection (a) instructs the court to determine the sentencing options that are *available* under the guidelines by determining the guideline range and zone of the Sentencing Table applicable to the defendant. Paragraphs (1) through (4) summarize the authorized sentencing options in each of Zone A through D with cross-references to the relevant provisions of Chapter Five. Application Note 1 restates the rule currently set forth in the Commentary to §5E1.2 (Fines for Individual Defendants) that "[a] fine may be the sole sanction if the guidelines do not require a term of imprisonment." USSG §5E1.2, comment. (n.1).

Subsection (b) instructs the court to determine the *appropriate* sentencing options from among those authorized in the guidelines.

Subsection (c) directs the court to the relevant provisions of Chapter Five according to the type of sentence it intends to impose for further guidance on determining the length, conditions, and other aspects of the sentence. More specifically, it directs the court to Part B (Probation) for sentences of probation, Parts C (Imprisonment) and D (Supervised Release) for sentences of imprisonment, Part E (Restitution, Fines, Assessments, Forfeitures) in all cases, Part F (Sentencing Options) in certain cases, and Part G (Implementing the Total Sentence of Imprisonment) if applicable.

Subsection (d) recognizes the court's authority and duty under 18 U.S.C. § 3553, which permits the court to impose any statutorily authorized sentence [even if that same sentence is not authorized by the guidelines].

Issues for comment are also provided.

### Part B (Expansion of Zones B and C of the Sentencing Table)

Part B of the proposed amendment would expand Zones B and C of the Sentencing Table. The expanded Zone B would authorize the sentencing options described above for

sentencing ranges from four to 57 months for Criminal History Category I and sentencing ranges from one to 18 months for the other criminal history categories. The expanded Zone C would authorize the sentencing options described above for sentencing ranges from 51 to 108 months for Criminal History Category I, sentencing ranges from 15 to 24 months for Criminal History Categories II through IV, and sentencing ranges from 15 to 21 months for Criminal History Categories V and VI.

Finally, Part B makes conforming changes to §§5B1.1 (Imposition of a Term of Probation) and 5C1.1 (Imposition of a Term of Imprisonment).

Issues for comment are also provided.

**(A)    Changes to Part A of Chapter Five**

Proposed Amendment:

# CHAPTER FIVE
## DETERMINING THE SENTENCING RANGE AND OPTIONS UNDER THE GUIDELINES

### Introductory Commentary

Chapter Five sets forth the steps used to determine the applicable sentencing range and sentencing options based upon the guideline calculations made in Chapters Two through Four. ~~Additionally, the~~ The provisions in this chapter set forth the sentencing requirements and options under the guidelines related to probation, imprisonment, supervision conditions, fines, and restitution for the particular guideline range. For example, for certain categories of offenses and offenders, the guidelines permit the court to impose either imprisonment or some other sanction or combination of sanctions. After applying the provisions of this chapter to determine the sentencing options recommended under the guidelines pursuant to subsection (a) of §1B1.1 (Application Instructions), the court shall consider the other applicable factors in 18 U.S.C. § 3553(a) to determine the length and type of sentence that is sufficient but not greater than necessary. A sentence is within the guidelines if it complies with each applicable section of this chapter.

## PART A — ~~SENTENCING TABLE~~ DETERMINATION OF TYPE OF SENTENCE AND SENTENCING RANGE

### Introductory Commentary

Congress charged the Commission with promulgating guidelines for sentencing courts to use in determining "whether to impose a sentence to probation, a fine, or a term of imprisonment" (*see* 28 U.S.C. § 994(a)(1)(A)), which "may be one of the most important parts of the guidelines process." *See* S. Rep. No. 225, 98th Cong., 1st Sess. 163–64 (1983). The provisions within Chapter Five, in combination, guide all aspects of determining the appropriate sentence under the guidelines, including the initial determination of sentence type. The Commission, however, adopted **[**Part A of this chapter**][**this introductory commentary**]** to further underscore the importance of this critical decision.

**[**In promulgating the guidelines in this part, the**][**The**]** Commission is mindful that Congress decided against establishing a presumption in favor of any particular sentence type, wary that "[a] congressional statement of a preferred type of sentence might serve only to undermine the flexibility that the criminal justice system requires in order to determine the appropriate sentence in a particular case in light of increased knowledge of human behavior." *Id*. at 92. The Commission likewise recognizes, as Congress did when it enacted the Sentencing Reform Act of 1984, "that one [sentencing] purpose may have more bearing on the imposition of sentence in a particular case than another purpose has." *Id*. at 68. For example, "the purpose of rehabilitation may play an important role in sentencing an offender to a term of probation with the condition that he participate in a particular course of study, while the purposes of just punishment and incapacitation may be important

considerations in sentencing a repeated or violent offender to a relatively long term of imprisonment." *Id.* At the same time, non-imprisonment sentences undoubtedly serve a punitive function and in many cases would adequately serve the purposes of sentencing when appropriate conditions are imposed. *See, e.g., id.* at 91 ("It may very often be that release on probation under conditions designed to fit the particular situation will adequately satisfy any appropriate deterrent or punitive purpose."); *Gall v. United States*, 552 U.S. 38, 48 (2007) (recognizing that though "custodial sentences are qualitatively more severe than probationary sentences of equivalent terms[,]" individuals "on probation are nonetheless subject to several standard conditions that substantially restrict their liberty"); *Esteras v. United States*, 606 U.S. 185, 196 (2025) (juxtaposing the purposes of probation and supervised release, explaining that "[f]ines, probation, and imprisonment are a court's primary tools for ensuring that a criminal defendant receives just deserts for the original offense"). Congress recognized the important role of non-imprisonment sentences when it established probation as a sentence in itself as part of the Sentencing Reform Act. **[**As the criminal justice system continues to develop more advanced tools to assess and respond to individual defendants' unique risks and needs, the court should consider the resources available to address the defendant's needs, and the setting in which those resources can be provided, in determining the appropriate sentencing option.**]** The Commission intends for **[**§5A1.1 (Determination of Type of Sentence)**][**Chapter Five**]** to support the court's "full exercise of informed discretion in tailoring sentences to the circumstances of individual cases." S. Rep. No. 225, 98th Cong., 1st Sess. 91 (1983).

## §5A1.1.    Determination of Type of Sentence

(a)    DETERMINING THE AVAILABLE SENTENCING OPTIONS.—Determine the guideline range and zone applicable to the defendant's offense level and criminal history category in accordance with the Sentencing Table set forth in §5A1.2 (Sentencing Table). The Sentencing Table is divided into zones (Zones A, B, C, and D), with each providing different sentencing options. Subject to any statutory limitations in an individual case (*see, e.g.*, §5B1.1(b) (statutory eligibility for probation), §§5G1.1, 5G1.2 (statutory minima and maxima)), the sentencing options are generally as follows:

(1)    Zone A authorizes a sentence of probation with or without any conditions of confinement, in addition to the sentencing options authorized in Zones B through D. *See* §§5B1.1(a)(1), 5C1.1(a)–(b) 5C1.1, comment. (n.2).

(2)    Zone B authorizes a sentence of probation, provided that the minimum term of imprisonment specified in the guideline range is satisfied by a period of intermittent confinement, community confinement, or home detention, as provided by the schedule of substitute punishments at §5C1.1(e). In addition, Zone B provides for the sentencing options authorized in Zones C and D. *See* §§5B1.1(a)(2), 5C1.1(c), 5C1.1, comment. (n.3).

(3)    Zone C authorizes a "split sentence" of imprisonment, in which at least one-half of the minimum term specified in the guideline range is

satisfied by a period of imprisonment and the remainder is satisfied by a term of supervised release with a condition substituting community confinement or home detention according to the schedule of substitute punishments provided at §5C1.1(e). In addition, Zone C provides for the sentencing options authorized in Zone D. S*ee* §5C1.1(d); *id.*, comment. (n.4).

(4)    Zone D authorizes sentences of imprisonment only. *See* §5C1.1(f).

(b)    DETERMINING THE APPROPRIATE SENTENCING OPTION.—In determining the appropriate sentencing option(s) from among those authorized under the guidelines, courts should consider which option(s) will best meet the purposes of sentencing and the needs of the individual defendant.

(c)    DETERMINING THE SENTENCE UNDER THE GUIDELINES.—Determine the length, conditions, and other aspects of the sentence by applying the provisions in this chapter.

(1)    If the court determines that a term of probation is appropriate, proceed to Part B (Probation) of this chapter to determine the length and conditions of any term of probation. Certain conditions of probation are addressed in further detail in Part F (Sentencing Options) of this chapter.

(2)    If the court determines that a term of imprisonment is appropriate, proceed to Parts C (Imprisonment) and D (Supervised Release) of this chapter to determine the length of the term of imprisonment, whether to impose a term of supervised release, and, if a term of supervised release is imposed, the length and conditions of that term. Certain conditions of supervised release are specifically addressed in further detail in Part F (Sentencing Options) of this chapter.

(3)    In all cases, proceed to Part E (Restitution, Fines, Assessments, Forfeitures) to determine whether to impose restitution, fines, forfeiture, or a special assessment.

(4)    If applicable, proceed to Part G (Implementing the Total Sentence of Imprisonment) to determine how to implement a sentence in a case involving multiple counts of conviction, an undischarged term of imprisonment, or an anticipated state term of imprisonment.

(d)    CONSIDERATION OF FACTORS SET FORTH IN 18 U.S.C. § 3553(a).—The court shall consider the applicable factors in 18 U.S.C. § 3553(a) to determine a sentence that is sufficient, but not greater than necessary, to comply with the purposes of sentencing. **[**The court may determine that a sentencing

option that is authorized by statute, but not by the guidelines, is appropriate based on the consideration of these sentencing factors.]

**Commentary**

**Application Note:**

1.    **Fine-Only Sentence.**—A fine may be the sole sanction if the guidelines do not require a term of imprisonment. *See* §5E1.2, comment. (n.1).

## §5A1.2.   Sentencing Table

The Sentencing Table used to determine the guideline range follows:

### SENTENCING TABLE
### (in months of imprisonment)

| | Offense Level | Criminal History Category  (Criminal History Points) | | | | | |
|---|---|---|---|---|---|---|---|
| | | I (0 or 1) | II (2 or 3) | III (4, 5, 6) | IV (7, 8, 9) | V (10, 11, 12) | VI (13 or more) |
| Zone A | 1 | 0–6 | 0–6 | 0–6 | 0–6 | 0–6 | 0–6 |
| | 2 | 0–6 | 0–6 | 0–6 | 0–6 | 0–6 | 1–7 |
| | 3 | 0–6 | 0–6 | 0–6 | 0–6 | 2–8 | 3–9 |
| | 4 | 0–6 | 0–6 | 0–6 | 2–8 | 4–10 | 6–12 |
| | 5 | 0–6 | 0–6 | 1–7 | 4–10 | 6–12 | 9–15 |
| | 6 | 0–6 | 1–7 | 2–8 | 6–12 | 9–15 | 12–18 |
| | 7 | 0–6 | 2–8 | 4–10 | 8–14 | 12–18 | 15–21 |
| | 8 | 0–6 | 4–10 | 6–12 | 10–16 | 15–21 | 18–24 |
| Zone B | 9 | 4–10 | 6–12 | 8–14 | 12–18 | 18–24 | 21–27 |
| | 10 | 6–12 | 8–14 | 10–16 | 15–21 | 21–27 | 24–30 |
| | 11 | 8–14 | 10–16 | 12–18 | 18–24 | 24–30 | 27–33 |
| Zone C | 12 | 10–16 | 12–18 | 15–21 | 21–27 | 27–33 | 30–37 |
| | 13 | 12–18 | 15–21 | 18–24 | 24–30 | 30–37 | 33–41 |
| Zone D | 14 | 15–21 | 18–24 | 21–27 | 27–33 | 33–41 | 37–46 |
| | 15 | 18–24 | 21–27 | 24–30 | 30–37 | 37–46 | 41–51 |
| | 16 | 21–27 | 24–30 | 27–33 | 33–41 | 41–51 | 46–57 |
| | 17 | 24–30 | 27–33 | 30–37 | 37–46 | 46–57 | 51–63 |
| | 18 | 27–33 | 30–37 | 33–41 | 41–51 | 51–63 | 57–71 |
| | 19 | 30–37 | 33–41 | 37–46 | 46–57 | 57–71 | 63–78 |
| | 20 | 33–41 | 37–46 | 41–51 | 51–63 | 63–78 | 70–87 |
| | 21 | 37–46 | 41–51 | 46–57 | 57–71 | 70–87 | 77–96 |
| | 22 | 41–51 | 46–57 | 51–63 | 63–78 | 77–96 | 84–105 |
| | 23 | 46–57 | 51–63 | 57–71 | 70–87 | 84–105 | 92–115 |
| | 24 | 51–63 | 57–71 | 63–78 | 77–96 | 92–115 | 100–125 |
| | 25 | 57–71 | 63–78 | 70–87 | 84–105 | 100–125 | 110–137 |
| | 26 | 63–78 | 70–87 | 78–97 | 92–115 | 110–137 | 120–150 |
| | 27 | 70–87 | 78–97 | 87–108 | 100–125 | 120–150 | 130–162 |
| | 28 | 78–97 | 87–108 | 97–121 | 110–137 | 130–162 | 140–175 |
| | 29 | 87–108 | 97–121 | 108–135 | 121–151 | 140–175 | 151–188 |
| | 30 | 97–121 | 108–135 | 121–151 | 135–168 | 151–188 | 168–210 |
| | 31 | 108–135 | 121–151 | 135–168 | 151–188 | 168–210 | 188–235 |
| | 32 | 121–151 | 135–168 | 151–188 | 168–210 | 188–235 | 210–262 |
| | 33 | 135–168 | 151–188 | 168–210 | 188–235 | 210–262 | 235–293 |
| | 34 | 151–188 | 168–210 | 188–235 | 210–262 | 235–293 | 262–327 |
| | 35 | 168–210 | 188–235 | 210–262 | 235–293 | 262–327 | 292–365 |
| | 36 | 188–235 | 210–262 | 235–293 | 262–327 | 292–365 | 324–405 |
| | 37 | 210–262 | 235–293 | 262–327 | 292–365 | 324–405 | 360–life |
| | 38 | 235–293 | 262–327 | 292–365 | 324–405 | 360–life | 360–life |
| | 39 | 262–327 | 292–365 | 324–405 | 360–life | 360–life | 360–life |
| | 40 | 292–365 | 324–405 | 360–life | 360–life | 360–life | 360–life |
| | 41 | 324–405 | 360–life | 360–life | 360–life | 360–life | 360–life |
| | 42 | 360–life | 360–life | 360–life | 360–life | 360–life | 360–life |
| | 43 | life | life | life | life | life | life |

**Commentary to Sentencing Table**

**Application Notes:**

1. The Offense Level (1–43) forms the vertical axis of the Sentencing Table. The Criminal History Category (I–VI) forms the horizontal axis of the Table. The intersection of the Offense Level and Criminal History Category displays the Guideline Range in months of imprisonment. "***Life***" means life imprisonment. For example, the guideline range applicable to a defendant with an Offense Level of 15 and a Criminal History Category of III is 24–30 months of imprisonment.

2. In rare cases, a total offense level of less than 1 or more than 43 may result from application of the guidelines. A total offense level of less than 1 is to be treated as an offense level of 1. An offense level of more than 43 is to be treated as an offense level of 43.

3. The Criminal History Category is determined by the total criminal history points from Chapter Four, Part A, except as provided in §§4B1.1 (Career Offender) and 4B1.4 (Armed Career Criminal). The total criminal history points associated with each Criminal History Category are shown under each Criminal History Category in the Sentencing Table.

\*      \*      \*

## Issues for Comment

1. Part A of the proposed amendment would amend Part A of Chapter Five to both add new introductory commentary to Part A and a new guideline at §5A1.1 (Determination of Type of Sentence). The Commission seeks comment on whether it should adopt both the new introductory commentary and the new guideline, only the new introductory commentary, or only the new §5A1.1 guideline. If the Commission were to promulgate only the new introductory commentary to Part A, should it incorporate into the commentary any of the guidance currently provided in proposed §5A1.1?

2. Part A of the proposed amendment would add to Part A of Chapter Five a new guideline at §5A1.1 (Determination of Type of Sentence). The new guideline at §5A1.1 would provide an overview of the steps necessary for the court to determine an appropriate sentence pursuant to Chapter Five. New Subsection (b) instructs the court to determine the appropriate sentencing options from among those authorized in the guidelines. The Commission seeks comment on whether it should list factors in new §5A1.1(b) for courts to consider in determining the appropriate sentencing option under the guidelines. If so, what factors should be listed? The Commission seeks comment on whether the list of factors should include any of the factors listed below:

   • Whether a sentence of probation or a term of imprisonment best protects the public and meets the other purposes of sentencing. *See* 18 U.S.C. § 3553(a)(1), (a)(2); §5C1.1(e) (schedule of substitute punishments).

   • Whether the seriousness of the defendant's offense, and the nature and degree of harm caused by it, requires a term of imprisonment to provide just

punishment, afford adequate deterrence to criminal conduct, promote respect for the law, or adequately address public concern generated by the offense. *See* 18 U.S.C. § 3553(a)(2); 28 U.S.C. § 994(c).

- Whether the defendant is in need of educational or vocational training, medical care, or other rehabilitative or correctional treatment, and the setting in which any such treatment would be most effectively provided. *See* 18 U.S.C. §§ 3553(a)(2)(D), 3582(a); 28 U.S.C. § 994(k).

- The nature and capacity of the penal, correctional, and other facilities and services available, the relative cost associated with available sentencing options, and how resources could be most effectively allocated to address the risks and needs of the defendant. 28 U.S.C. § 994(g), (k).

- Whether the defendant is: (1) a "first offender" who has not been convicted of a crime of violence or an otherwise serious offense, for whom a sentence other than imprisonment is generally appropriate; or (2) a person convicted of a crime of violence that results in serious bodily injury, for whom a sentence of imprisonment is generally appropriate. *See* 28 U.S.C. § 994(j).

- Whether the defendant has a history of prior criminal conduct that warrants a substantial term of imprisonment. *See* 28 U.S.C. § 994(h), (i).

- Any developing research and knowledge about the effectiveness of available sentencing options in meeting the needs of individual defendants, reducing recidivism, and protecting the public. *See* 28 U.S.C. § 991(b)(1)(C).

Should the Commission provide additional or different factors?

3.      Section 3553(a) of Title 18 lists some of the factors that the court shall consider to determine a sentence that is sufficient, but not greater than necessary, to comply with the purposes of sentencing. In particular, the factors set forth in section 3553(a)(2) include "the need for the sentence imposed . . . (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." The Commission seeks comment on whether proposed new §5A1.1(b) should reference the factors listed in 18 U.S.C. § 3553(a), including the purposes of sentencing in section 3553(a)(2)? If so, how? Would referencing or incorporating these statutory factors into the proposed guideline inadvertently create a procedural requirement that could be subject to litigation?

**(B)       Expansion of Zones B and C of the Sentencing Table**

**Proposed Amendment:**

# CHAPTER FIVE
## DETERMINING THE SENTENCING RANGE AND OPTIONS UNDER THE GUIDELINES

\*       \*       \*

## PART A — SENTENCING TABLE

The Sentencing Table used to determine the guideline range follows:

Proposed Amendment:  Sentencing Options

---

## SENTENCING TABLE
### (in months of imprisonment)

| Offense Level | Criminal History Category (Criminal History Points) | | | | | |
|---|---|---|---|---|---|---|
| | I (0 or 1) | II (2 or 3) | III (4, 5, 6) | IV (7, 8, 9) | V (10, 11, 12) | VI (13 or more) |
| 1 | 0–6 | 0–6 | 0–6 | 0–6 | 0–6 | 0–6 |
| 2 | 0–6 | 0–6 | 0–6 | 0–6 | 0–6 | 1–7 |
| 3 | 0–6 | 0–6 | 0–6 | 0–6 | 2–8 | 3–9 |
| 4 | 0–6 | 0–6 | 0–6 | 2–8 | 4–10 | 6–12 |
| 5 | 0–6 | 0–6 | 1–7 | 4–10 | 6–12 | 9–15 |
| 6 | 0–6 | 1–7 | 2–8 | 6–12 | 9–15 | 12–18 |
| 7 | 0–6 | 2–8 | 4–10 | 8–14 | 12–18 | 15–21 |
| 8 | 0–6 | 4–10 | 6–12 | 10–16 | 15–21 | 18–24 |
| 9 | 4–10 | 6–12 | 8–14 | 12–18 | 18–24 | 21–27 |
| 10 | 6–12 | 8–14 | 10–16 | 15–21 | 21–27 | 24–30 |
| 11 | 8–14 | 10–16 | 12–18 | 18–24 | 24–30 | 27–33 |
| 12 | 10–16 | 12–18 | 15–21 | 21–27 | 27–33 | 30–37 |
| 13 | 12–18 | 15–21 | 18–24 | 24–30 | 30–37 | 33–41 |
| 14 | 15–21 | 18–24 | 21–27 | 27–33 | 33–41 | 37–46 |
| 15 | 18–24 | 21–27 | 24–30 | 30–37 | 37–46 | 41–51 |
| 16 | 21–27 | 24–30 | 27–33 | 33–41 | 41–51 | 46–57 |
| 17 | 24–30 | 27–33 | 30–37 | 37–46 | 46–57 | 51–63 |
| 18 | 27–33 | 30–37 | 33–41 | 41–51 | 51–63 | 57–71 |
| 19 | 30–37 | 33–41 | 37–46 | 46–57 | 57–71 | 63–78 |
| 20 | 33–41 | 37–46 | 41–51 | 51–63 | 63–78 | 70–87 |
| 21 | 37–46 | 41–51 | 46–57 | 57–71 | 70–87 | 77–96 |
| 22 | 41–51 | 46–57 | 51–63 | 63–78 | 77–96 | 84–105 |
| 23 | 46–57 | 51–63 | 57–71 | 70–87 | 84–105 | 92–115 |
| 24 | 51–63 | 57–71 | 63–78 | 77–96 | 92–115 | 100–125 |
| 25 | 57–71 | 63–78 | 70–87 | 84–105 | 100–125 | 110–137 |
| 26 | 63–78 | 70–87 | 78–97 | 92–115 | 110–137 | 120–150 |
| 27 | 70–87 | 78–97 | 87–108 | 100–125 | 120–150 | 130–162 |
| 28 | 78–97 | 87–108 | 97–121 | 110–137 | 130–162 | 140–175 |
| 29 | 87–108 | 97–121 | 108–135 | 121–151 | 140–175 | 151–188 |
| 30 | 97–121 | 108–135 | 121–151 | 135–168 | 151–188 | 168–210 |
| 31 | 108–135 | 121–151 | 135–168 | 151–188 | 168–210 | 188–235 |
| 32 | 121–151 | 135–168 | 151–188 | 168–210 | 188–235 | 210–262 |
| 33 | 135–168 | 151–188 | 168–210 | 188–235 | 210–262 | 235–293 |
| 34 | 151–188 | 168–210 | 188–235 | 210–262 | 235–293 | 262–327 |
| 35 | 168–210 | 188–235 | 210–262 | 235–293 | 262–327 | 292–365 |
| 36 | 188–235 | 210–262 | 235–293 | 262–327 | 292–365 | 324–405 |
| 37 | 210–262 | 235–293 | 262–327 | 292–365 | 324–405 | 360–life |
| 38 | 235–293 | 262–327 | 292–365 | 324–405 | 360–life | 360–life |
| 39 | 262–327 | 292–365 | 324–405 | 360–life | 360–life | 360–life |
| 40 | 292–365 | 324–405 | 360–life | 360–life | 360–life | 360–life |
| 41 | 324–405 | 360–life | 360–life | 360–life | 360–life | 360–life |
| 42 | 360–life | 360–life | 360–life | 360–life | 360–life | 360–life |
| 43 | life | life | life | life | life | life |

Zone A

Current Zone B

Current Zone C

Current Zone D

Proposed Zone B

Proposed Zone C

Proposed Zone D

\* \* \*

12  |  January 30, 2026

## §5B1.1.    Imposition of a Term of Probation

\*        \*        \*

**Commentary**

**Application Notes:**

1.    Except where prohibited by statute or by the guideline applicable to the offense in Chapter Two, the guidelines authorize, but do not require, a sentence of probation in the following circumstances:

(A)    **Where the applicable guideline range is in Zone A of the Sentencing Table (*i.e.*, the minimum term of imprisonment specified in the applicable guideline range is zero months).** In such cases, a condition requiring a period of community confinement, home detention, or intermittent confinement may be imposed but is not required.

(B)    **Where the applicable guideline range is in Zone B of the Sentencing Table (*i.e.*, the minimum term of imprisonment specified in the applicable guideline range is at least** ~~one~~**four months but not more than** ~~nine~~**46 months in criminal history category I or at least one month but not more than 12 months in criminal history categories II through VI).** In such cases, the court may impose probation only if it imposes a condition or combination of conditions requiring a period of community confinement, home detention, or intermittent confinement sufficient to satisfy the minimum term of imprisonment specified in the guideline range. For example, where the offense level is 7 and the criminal history category is II, the guideline range from the Sentencing Table is 2–8 months. In such a case, the court may impose a sentence of probation only if it imposes a condition or conditions requiring at least two months of community confinement, home detention, or intermittent confinement, or a combination of community confinement, home detention, and intermittent confinement totaling at least two months.

2.    Where the applicable guideline range is in Zone C or D of the Sentencing Table (*i.e.*, the minimum term of imprisonment specified in the applicable guideline range is ~~ten months or more~~51 months or more in criminal history category I or 15 months or more in criminal history categories II through VI), the guidelines do not authorize a sentence of probation. *See* §5C1.1 (Imposition of a Term of Imprisonment).

\*        \*        \*

## §5C1.1.    Imposition of a Term of Imprisonment

\*        \*        \*

**Commentary**

**Application Notes:**

\*        \*        \*

3.    **Application of Subsection (c).**—Subsection (c) provides that where the applicable guideline range is in Zone B of the Sentencing Table (*i.e.*, the minimum term of imprisonment specified in

the applicable guideline range is at least ~~one~~four months but not more than ~~nine~~46 months in criminal history category I or at least one month but not more than 12 months in criminal history categories II through VI), the court has three options:

(A)    It may impose a sentence of imprisonment.

(B)    It may impose a sentence of probation provided that it includes a condition of probation requiring a period of intermittent confinement, community confinement, or home detention, or combination of intermittent confinement, community confinement, and home detention, sufficient to satisfy the minimum period of imprisonment specified in the guideline range. For example, where the guideline range is 4–10 months, a sentence of probation with a condition requiring at least four months of intermittent confinement, community confinement, or home detention would satisfy the minimum term of imprisonment specified in the guideline range.

(C)    Or, it may impose a sentence of imprisonment that includes a term of supervised release with a condition that requires community confinement or home detention. In such case, at least one month must be satisfied by actual imprisonment and the remainder of the minimum term specified in the guideline range must be satisfied by community confinement or home detention. For example, where the guideline range is 4–10 months, a sentence of imprisonment of one month followed by a term of supervised release with a condition requiring three months of community confinement or home detention would satisfy the minimum term of imprisonment specified in the guideline range.

The preceding examples illustrate sentences that satisfy the minimum term of imprisonment required by the guideline range. The court, of course, may impose a sentence at a higher point within the applicable guideline range. For example, where the guideline range is 4–10 months, both a sentence of probation with a condition requiring six months of community confinement or home detention (under subsection (c)(3)) and a sentence of two months imprisonment followed by a term of supervised release with a condition requiring four months of community confinement or home detention (under subsection (c)(2)) would be within the guideline range.

4.    **Application of Subsection (d).**—Subsection (d) provides that where the applicable guideline range is in Zone C of the Sentencing Table (*i.e.,* the minimum term specified in the applicable guideline range is ~~ten or twelve months~~51 months but not more than 87 months in criminal history category I, 15 months but not more than 18 months in criminal history categories II through IV, or 15 months in criminal history categories V and VI), the court has two options:

(A)    It may impose a sentence of imprisonment.

(B)    Or, it may impose a sentence of imprisonment that includes a term of supervised release with a condition requiring community confinement or home detention. In such case, at least one-half of the minimum term specified in the guideline range must be satisfied by imprisonment, and the remainder of the minimum term specified in the guideline range must be satisfied by community confinement or home detention. For example, where the defendant is in criminal history category II and the guideline range is ~~10–16~~15–21 months, a sentence of ~~five~~seven and a half months imprisonment followed by a term of supervised release with a condition requiring ~~five~~seven and a half months community confinement or home detention would satisfy the minimum term of imprisonment required by the guideline range.

The preceding example illustrates a sentence that satisfies the minimum term of imprisonment required by the guideline range. The court, of course, may impose a sentence at a higher point

within the guideline range. For example, where the defendant is in criminal history category II and the guideline range is 10–1615–21 months, both a sentence of fiveseven and a half months imprisonment followed by a term of supervised release with a condition requiring sixeight months of community confinement or home detention (under subsection (d)), and a sentence of ten months imprisonment followed by a term of supervised release with a condition requiring fourfive months of community confinement or home detention (also under subsection (d)) would be within the guideline range.

*      *      *

8.    **Application of Subsection (f).**—Subsection (f) provides that, where the applicable guideline range is in Zone D of the Sentencing Table (*i.e.*, the minimum term of imprisonment specified in the applicable guideline range is 15 months or more97 months or more for criminal history category I, 21 months or more in criminal history categories II through IV, or 18 months or more in criminal history categories V and VI), the minimum term must be satisfied by a sentence of imprisonment without the use of any of the imprisonment substitutes in subsection (e).

*      *      *

**Issues for Comment:**

1.    Part B of the proposed amendment would expand Zones B and C of the Sentencing Table. The Commission seeks comment on whether it should expand Zones B and C in a different manner than the one set forth in the proposed amendment. Should the Commission expand Zone B to lower or higher offense levels than proposed? Should it expand Zone C to lower or higher offense levels than proposed? What data, statutory provisions, or policy considerations should determine the scope of Zones B and C?

2.    The proposed expansion of Zone B would authorize sentences of probation with conditions of confinement as a sentencing option for current Zone C defendants, an option that was not available to such defendants before. Similarly, the proposed expansion of Zone C would authorize split sentences for current Zone D defendants, an option that was not available to such defendants before. The Commission seeks comment on whether the Commission should provide additional guidance to address these new Zone B and C defendants. If so, what guidance should the Commission provide?

3.    The proposed expansion of Zones B and C would result in a zone structure that authorizes different sentencing options for certain defendants who are in different criminal history categories but have the same applicable guideline range (*i.e.*, defendants whose guideline range is 15–21 or 18–24 months). The Commission seeks comment on whether authorizing different sentencing options for defendants who have the same applicable guideline range is appropriate. Would doing so raise any legal or policy concerns?

## 2.    PROPOSED AMENDMENT:    CAREER OFFENDER

**Synopsis of Proposed Amendment:** In August 2025, the Commission identified as one of its policy priorities for the amendment cycle ending May 1, 2026, "[c]ontinued examination of the career offender guidelines, including (A) evaluating the impact, feasibility, and uniformity in application of alternative approaches to the 'categorical approach' through workshops, field testing, and updating the data analyses set forth in the Commission's 2016 report to Congress, titled *Career Offender Sentencing Enhancements;* and (B) possible consideration of amendments that might be appropriate." U.S. Sent'g Comm'n, "Notice of Final Priorities," 90 FR 39263 (Aug. 14, 2025).

The proposed amendment addresses recurrent criticism of the categorical approach and modified categorical approach in the context of §4B1.1 (Career Offender). It sets forth options that would eliminate the use of the categorical approach for purposes of determining whether a federal offense is a "crime of violence" or "controlled substance offense" by listing federal offenses that qualify as a "crime of violence" or a "controlled substance offense." The proposed amendment also provides options that would set forth an approach for purposes of determining whether a state offense is a "crime of violence" or "controlled substance offense" that does not impose some of the limitations of the "categorical approach" and "modified categorical approach" adopted by the Supreme Court in the context of certain statutory provisions. These changes are intended to correct some of the "odd" and "arbitrary" results that the categorical approach has produced relating to the "crime of violence" definition (*see, e.g., United States v. Davis*, 875 F.3d 592, 595 (11th Cir. 2017); *United States v. McCollum*, 885 F.3d 300, 309–14 (4th Cir. 2018) (Traxler, J., concurring); *id.* (Wilkinson, J., dissenting)). The proposed amendment also sets forth options to limit the scope of the "controlled substance offense" definition.

The Commission anticipates that the revised "crime of violence" definition set forth in the proposed amendment will identify offenses as presumptively violent in an overbroad manner. To counteract this overbreadth, each option provides necessary and critical exclusions and limitations to ensure that §4B1.2 is properly tailored to capture offenses that are actually violent. These exclusions and limitations are necessary to the overall operation of the options set forth in the proposed amendment.

*The Categorical Approach as Developed by Supreme Court Jurisprudence*

Several statutes and guidelines provide enhanced penalties for defendants convicted of offenses that meet the definition of a particular category of crimes. Courts typically determine whether a conviction fits within the definition of a particular category of crimes through the application of the "categorical approach" and "modified categorical approach," as set forth by Supreme Court jurisprudence. The categorical and modified categorical approaches require courts to look only to the elements of the offense, rather than the particular facts underlying the conviction, to determine whether the offense meets the definition of a particular category of crimes. In applying the modified categorical approach, courts may look to certain additional sources of information, now commonly referred to as the "*Shepard* documents," to determine the elements of the offense of conviction. *See* Taylor v. United States, 495 U.S. 575 (1990) (holding that, under the "categorical approach," courts must compare the elements of the offense as described in the statute of

conviction to the elements of the applicable definition of a particular category of crimes to determine if such offense criminalizes the same or a narrower range of conduct than the definition captures in order to serve as a predicate offense); Shepard v. United States, 544 U.S. 13 (2005) (holding that courts may use a "modified categorical approach" in cases where the statute of conviction is "overbroad," that is, the statute contains multiple offenses with different offense elements).

*Application of the Categorical Approach in the Guidelines*

Supreme Court jurisprudence on this subject pertains to statutory provisions (*e.g.*, 18 U.S.C. § 924(e)), but courts have applied the categorical and modified categorical approaches to guideline provisions. For example, courts have used these approaches to determine if a conviction is a "crime of violence" for purposes of applying the career offender guideline at §4B1.1.

*General Criticism of the Categorical Approach as Developed by*
*Supreme Court Jurisprudence*

The Commission has received comment over the years regarding the complexity and limitations of the categorical approach as developed by Supreme Court jurisprudence. Courts have criticized the categorical approach as a "legal fiction," in which an offense that a defendant in fact commits violently is deemed to be a legally non-violent offense because the offense *could* have been committed without violence, often leading to "odd" and "arbitrary" results (*e.g.*, United States v. Davis, 875 F.3d 592, 595 (11th Cir. 2017); United States v. McCollum, 885 F.3d 300, 309–14 (4th Cir. 2018) (Traxler, J., concurring); *id.* (Wilkinson, J., dissenting)).

*Feedback from Stakeholders*

The Commission also has received input in roundtable discussions with several stakeholders with diverse perspectives and expertise within the criminal justice system. Some stakeholders have suggested that the Commission should eliminate the categorical approach to capture violent offenses that are currently excluded while also narrowing the scope of the "controlled substance offense" definition, particularly its reach over predicate offenses. Some stakeholders also have remarked that the Commission should limit the number of qualifying prior offenses overall for purposes of the career offender guideline. Some stakeholders have suggested that the Commission should condition which convictions qualify as predicate offenses by establishing a minimum sentence length threshold.

*Changes Relating to "Crime of Violence"*

The proposed amendment would make several changes to the definition of "crime of violence."

First, the proposed amendment would place all provisions related to the definition of "crime of violence" in subsection (a). This includes moving the provision on "inchoate offenses included" as it relates to "crime of violence" into subsection (a) without substantive changes.

Second, the proposed amendment would delete the "force clause" from §4B1.2(a).

Third, the proposed amendment would eliminate the use of the categorical approach for purposes of federal offenses by listing specific federal statutes proscribing violent offenses that qualify as "crime of violence."

Fourth, the proposed amendment sets forth two options for amending the definition of "crime of violence" for purposes of state offenses.

> **Crime of Violence Option 1** would eliminate the use of the categorical approach for purposes of state offenses by providing a definition that is based on how an offense is designated (*i.e.*, labeled) under federal or state law. It sets forth a list of violent offenses. A conviction for an offense that is labeled as one of the listed offenses is presumptively a qualifying "crime of violence." This approach is intended to avoid an analysis requiring a categorical matching between statutory elements, instead capturing convictions for certain types of offenses based on how they are labeled. This option brackets a preliminary list of offense labels, highlighting the Commission's interest in appropriately tailoring the scope of the offenses included in the list. The Commission also recognizes that jurisdictions name each of these offenses in various ways that may be appropriate to include in the list of qualifying labels. The proposed amendment includes issues for comment regarding any other offenses or labels that should be included in the definition to adequately capture these offenses in Crime of Violence Option 1.

> **Crime of Violence Option 2** would set forth an approach for purposes of determining whether a state offense is a "crime of violence" that does not impose some of the limitations of the "categorical approach" and "modified categorical approach." It would provide that a state offense is presumptively a "crime of violence" if the statute of conviction **[**meets each of the elements (other than federal jurisdictional requirements)**] [**proscribes [conduct][an act or omission] that [is described by][satisfies][meets] the elements (other than federal jurisdictional requirements)**]** of an offense set forth in the proposed definition, regardless of whether the statute of conviction includes additional elements (or means of committing any such elements) that are broader than those of the offense. It sets forth a list of violent offenses and defines most of these enumerated offenses by referring to a federal statute. Many of the listed offenses qualify as a "serious violent felony" under 18 U.S.C. § 3559(c). Crime of Violence Option 2 also brackets the possibility of including additional offenses. It would define some of these additional offenses, either by referring to a statutory provision or providing a guidelines definition of such an offense. These changes are intended to eliminate the categorical approach's requirement that courts compare only the elements of the predicate offense as described in the statute of conviction to the elements of a generic, contemporary definition of the applicable enumerated offense. Instead, courts would be allowed to look to any part of a statute of conviction—the elements of any offense, *and* the means of committing any element of such offense, as described in the statute—and determine whether any part of the statute of conviction includes an offense that constitutes one of the enumerated offenses as defined in §4B1.2.

Finally, the proposed amendment includes exclusions and limitations to the scope of the "crime of violence" definition. These exclusions and limitations are integral to the operation

of the proposed amendment. For example, the proposed amendment adopts as an exclusion sentence length criteria similar to those relating to petty and minor offenses from subsection (c)(2) of §4A1.2 (Definitions and Instructions for Computing Criminal History). In addition, as an important step in determining whether an offense is a "crime of violence," the proposed amendment provides that, after the government has met its burden to establish that an offense presumptively qualifies as a "crime of violence" under subsections (a)(1) through (a)(3), the defendant may rebut such presumption by establishing any of the following: (i) the conviction for the offense resulted in a sentence for which the defendant served less than [60 days][30 days] in prison; (ii) the acts for which the defendant is criminally liable [did not inflict, did not intend to inflict, and did not threaten to inflict [serious] bodily injury to another person][did not cause, did not intend to cause, and did not create a serious risk of physical harm to another person] during the commission of the offense; or (iii) the defendant's conduct during the commission of the offense was limited to reckless or negligent conduct.

*Changes Relating to "Controlled Substance Offense"*

The proposed amendment would make several changes to §4B1.2 relating to the definition of "controlled substance offense."

First, the proposed amendment would place all provisions related to the definition of "controlled substance offense" in subsection (b). This includes moving the provision on "inchoate offenses included" as it relates to "controlled substance offense" into subsection (b) without substantive changes. In addition, it would move to subsection (b) the provision currently located in the Commentary to §4B1.2 stating that a violation of 18 U.S.C. § 924(c) or § 929(a) is a "controlled substance offense" if the offense of conviction established that the underlying offense was a "controlled substance offense."

Second, the proposed amendment sets forth two options for limiting the scope of the "controlled substance offense" definition.

> **Controlled Substance Offense Option 1** would revise the definition of "controlled substance offense" to exclude state drug offenses from the scope of its application by listing specific federal statutes relating to drug offenses. It lists the federal statutes that are controlled substance offenses under the current definition to maintain the status quo with respect to federal drug trafficking statutes. The list includes the federal drug trafficking statutes that are specifically referenced in the career offender directive at 28 U.S.C. § 994(h). The federal drug trafficking statutes that appear in brackets are not cited in the directive.

> **Controlled Substance Offense Option 2** would maintain the current definition of "controlled substance offense" but would limit its scope by setting a minimum sentence length requirement for a prior conviction to qualify as a "controlled substance offense." It provides three suboptions for limiting prior convictions. *Controlled Substance Offense Suboption 2A* would limit qualifying prior "controlled substance offense" convictions to only those convictions that are counted separately under §4A1.1(a). *Controlled Substance Offense Suboption 2B* would limit qualifying prior convictions to only convictions of a controlled substance offense that resulted in a sentence imposed of [five years][three years][one year] or more

that are counted separately under §4A1.1(a) [or (b)]. Both Controlled Substance Offense Suboptions 2A and 2B bracket the possibility of including a provision that provides that a conviction for a controlled substance offense shall not qualify as a prior felony conviction under §4B1.2 if the defendant can establish that the conviction resulted in a sentence for which the defendant served less than [five years][three years][one year] in prison. ***Controlled Substance Offense Suboption 2C*** would limit qualifying prior convictions to only convictions of a controlled substance offense that resulted in a sentence for which the defendant served [five years][three years][one year] or more in prison and that are counted separately under §4A1.1(a) [or (b)].

### *Changes to Other Guidelines*

The current definitions of "crime of violence" and "controlled substance offense" at §4B1.2 are incorporated by reference in several other guidelines in the *Guidelines Manual*. *See* Commentary to §2K1.3 (Unlawful Receipt, Possession, or Transportation of Explosive Materials; Prohibited Transactions Involving Explosive Materials), §2K2.1 (Unlawful Receipt, Possession, or Transportation of Firearms or Ammunition; Prohibited Transactions Involving Firearms or Ammunition), §2S1.1 (Laundering of Monetary Instruments; Engaging in Monetary Transactions in Property Derived from Unlawful Activity), §4A1.2 (Definitions and Instructions for Computing Criminal History), §4B1.4 (Armed Career Criminal), §7B1.1 (Classification of Violations (Policy Statement)), and §7C1.1 (Classification of Violations (Policy Statement)).

Absent additional changes to these other guideline provisions, all revisions to the definitions in §4B1.2 would be incorporated into those guidelines that currently reference the "crime of violence" and "controlled substance offense" definitions found in §4B1.2.

Thus, the proposed amendment effectively sets forth three alternatives for addressing the references to "crime of violence" and "controlled substance offense" in §2K2.1. First, absent additional changes to §2K2.1, any revisions to the definitions in §4B1.2 would be incorporated by reference to §2K2.1. In addition to this approach of maintaining the current operation of §2K2.1 by incorporating the definitions from §4B1.2, two options are presented. **Firearms Option 1** would maintain the status quo by amending the Commentary to §2K2.1 to incorporate the relevant part or parts of the current definitions from §4B1.2. **Firearms Option 2** would amend the Commentary to §2K2.1 to provide that "controlled substance offense" has the meaning given the term "serious drug offense" in 18 U.S.C. § 924(e) and "crime of violence" has the meaning given the term "violent felony" in 18 U.S.C. § 924(e). The proposed amendment also provides an issue for comment on how the references to "crime of violence" and "controlled substance" in the other guidelines cited above should be addressed.

### *Issues for Comment*

The proposed amendment also sets forth issues for comment.

**Proposed Amendment:**

### §4B1.2.    Definitions of Terms Used in Section 4B1.1

(a)    CRIME OF VIOLENCE.—

(1)    IN GENERAL.—The term "crime of violence" means ~~any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that~~ any of the following offenses:

~~(1)    has as an element the use, attempted use, or threatened use of physical force against the person of another; or~~

~~(2)    is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).~~

(A)    FEDERAL OFFENSES.—

(i)    An offense under any of the following—

18 U.S.C. §§ 113(a), **[**844(i)**]**, 1111, 1112, 1201, 1951, **[**2111,**]** **[**2113,**]** **[**2118,**]** **[**2119,**]** 2241, 2242, 2244(a)(1)–(a)(2)**[**; 49 U.S.C. § 46502**]**.

(ii)    An offense under federal law, punishable by imprisonment for a term exceeding one year, that involves the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

**[Crime of Violence Option 1 for Definition Applicable to State Offenses (List of Offense Labels):**

(B)    STATE OFFENSES.—Any offense, punishable by imprisonment for a term exceeding one year, that is designated under state law as one of the following:

**[**Aggravated Assault;
Arson;
Extortion;
Kidnapping;
Murder;
Rape;
Robbery;

Sexual assault;
Voluntary manslaughter.**]]**

**[Crime of Violence Option 2 for Definition Applicable to State Offenses (List of Enumerated Offenses as Described in Federal Statutes with Bracketed Additional Offenses):**

(B)    STATE OFFENSES.—An offense under state law by whatever designation, punishable by imprisonment for a term exceeding one year, is presumptively a "crime of violence" if the statute of conviction **[**meets each of the elements (other than federal jurisdictional requirements)**]** **[**proscribes [conduct][an act or omission] that [is described by] [satisfies][meets] the elements (other than federal jurisdictional requirements)**]** of one of the following offenses, regardless of whether the statute of conviction includes additional elements (or means of committing any such elements) that are broader than those of the offense:

Murder (as described in 18 U.S.C. § 1111); manslaughter other than involuntary manslaughter (as described in 18 U.S.C. § 1112); aggravated assault or battery (as described in 18 U.S.C. § 113(a) (but not to include a state offense that would otherwise be simple or misdemeanor assault or simple or misdemeanor battery but for the identity of the victim or perpetrator)); **[**assault with intent to commit rape (as described below);**]** rape or aggravated sexual abuse (as described in 18 U.S.C. §§ 2241); **[**sexual abuse (as described in 18 U.S.C. § 2242);**]** abusive sexual contact (as described in 18 U.S.C. § 2244(a)(1), (a)(2)); **[**child abuse (as described below);**]** **[**domestic violence (as described below);**]** kidnapping (as described in 18 U.S.C. § 1201); **[**hostage taking (as described below);**]** **[**human trafficking (as described below);**]** **[**aircraft piracy (as described in 49 U.S.C. § 46502);**]** robbery (as described in 18 U.S.C. § 1951(b)**[**, § 2111, § 2113, or § 2118**]**); carjacking (as described in 18 U.S.C. § 2119); **[**extortion (as described in 18 U.S.C. § 1951(b)(2));**]** **[**coercion (as described below);**]** **[**arson (as described in 18 U.S.C. § 844(i) (but not to include arson of property other than a building));**]** **[**firearms use (as described below);**]** **[**firearms possession (as described in 18 U.S.C. § 924(c));**]** **[**or using weapons of mass destruction (as described in 18 U.S.C. §2332a)**]**.

For purposes of offenses listed in subsection (a)(1)(B), use the following descriptions:

**["*Assault with intent to commit rape*"** is engaging in physical contact with another person or using or brandishing a weapon against another person with intent to commit aggravated sexual

abuse or sexual abuse (as described in 18 U.S.C. § 2241 and 2242).]

["*Child abuse*" is any of the following: the intentional infliction of physical injury to a minor; the commission of any sexual act against a child under the age of 14 by any person 18 years of age or older; online enticement or coercion of a minor to engage in illegal sexual activity; or the production of child pornography or livestreaming of child sexual abuse.]

["*Coercion*" is causing the performance or non-performance of any act by another person, which such other person has a legal right to do or to abstain from doing, by the use of actual or threatened force, violence, or fear thereof, including the use, or an express or implicit threat of use, of violence to cause harm to the person, reputation, or property of any person.]

["*Domestic violence*" is committing any act with the intent to kill or injure a spouse, intimate partner, or dating partner.]

["*Firearms use*" is an offense described in 18 U.S.C. § 924(c) or § 929(a), if the firearm was brandished, discharged, or otherwise used as a weapon during and relation to the offense in which the firearm was used.]

["*Hostage taking*" is the seizure or detention with threats to kill, to injure, or to continue to detain another person in order to compel a third person or a governmental organization to do or abstain from doing any act as an explicit or implicit condition for the release of the person detained.]

["*Human trafficking*" is any of the following: the recruitment, harboring, transportation, provision, or obtaining of a person for labor, services, or a commercial sex act, through the use of force, threat of force, fraud, or coercion; the recruitment, harboring, transportation, provision, or obtaining of a minor for the purpose of a commercial sex act; or the subjection of a person to involuntary servitude, peonage, debt bondage, or slavery.]]

(2)    AIDING AND ABETTING, INCHOATE OFFENSES INCLUDED.—The term "crime of violence" includes the offenses of aiding and abetting, attempting to commit, or conspiring to commit any such offense.

(3)    EXCLUSION.—The term "crime of violence" under subsections (a)(1) and (a)(2) does not include any offense where the sentence imposed was (i) a term of unsupervised probation; (ii) a term of [supervised]

probation [of less than [one year][three years][five years]]; or (iii) a term of imprisonment of less than [60 days][30 days].

(4)    LIMITATIONS.—An offense of conviction shall not qualify as a "crime of violence" under subsections (a)(1) and (a)(2) if the defendant can establish any of the following:

(A)    SENTENCE SERVED.—The conviction for the offense resulted in a sentence for which the defendant served less than [60 days][30 days] in prison.

(B)    [[SERIOUS] BODILY INJURY.—During the commission of the offense, the acts for which the defendant is criminally liable did not inflict, did not intend to inflict, and did not threaten to inflict [serious] bodily injury to another person[. *Provided*, however, that this limitation shall not apply to extortion and arson offenses].][PHYSICAL HARM.—During the commission of the offense, the acts for which the defendant is criminally liable did not cause, did not intend to cause, and did not create a serious risk of physical harm to another person[. *Provided*, however, that this limitation shall not apply to extortion and arson offenses].]

(C)    RECKLESSNESS AND NEGLIGENCE.—The defendant's conduct during the commission of the offense was limited to reckless or negligent conduct. [However, an offense is not excluded under this provision if the defendant's conduct included extreme reckless conduct.]

(b)    CONTROLLED SUBSTANCE OFFENSE.—

**[Controlled Substance Offense Option 1 for Limiting Scope of Controlled Substance Offense Definition (Limiting Definition to Federal Offenses):**

(1)    IN GENERAL.—The term "controlled substance offense" means an offense under 21 U.S.C. § 841, § 952(a), § 955, or § 959, or 46 U.S.C. § 70503(a) or § 70506(b), [or 21 U.S.C. § 843(a)(6), § 843(b), § 846 (if the object of the conspiracy or attempt was to commit an offense covered by this provision), § 856, § 860, § 960, or § 963 (if the object of the conspiracy or attempt was to commit an offense covered by this provision)]~~federal or state law, punishable by imprisonment for a term exceeding one year, that—~~

(1)    ~~prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense; or~~

Proposed Amendment:  Career Offender

(2)  is an offense in conduct described in 46 U.S.C. § 70503(a) or § 70506(b).

(2)  AIDING AND ABETTING, INCHOATE OFFENSES INCLUDED.—The term "controlled substance offense" includes the offenses of aiding and abetting, attempting to commit, or conspiring to commit any such offense.

(3)  ADDITIONAL CONSIDERATION.—{A violation of 18 U.S.C. § 924(c) or § 929(a) is a "crime of violence" or a "controlled substance offense" if the offense of conviction established that the underlying offense was a "crime of violence" or a "controlled substance offense."}*

(c)  TWO PRIOR FELONY CONVICTIONS.—The term "two prior felony convictions" means (1) the defendant committed the instant offense of conviction subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense (*i.e.*, two felony convictions of a crime of violence, two felony convictions of a controlled substance offense, or one felony conviction of a crime of violence and one felony conviction of a controlled substance offense), and (2) the sentences for at least two of the aforementioned felony convictions are counted separately under the provisions of §4A1.1(a), (b), or (c). The date that a defendant sustained a conviction shall be the date that the guilt of the defendant has been established, whether by guilty plea, trial, or plea of *nolo contendere*.]

**[Controlled Substance Offense Option 2 for Limiting Scope of Controlled Substance Offense Definition (Limiting Prior Convictions for Controlled Substance Offenses):**

(1)  IN GENERAL.—The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—

(1A)  prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense; or

(2B)  is an offense in conduct described in 46 U.S.C. § 70503(a) or § 70506(b).

(2)  AIDING AND ABETTING, INCHOATE OFFENSES INCLUDED.—The term "controlled substance offense" includes the offenses of aiding and abetting, attempting to commit, or conspiring to commit any such offense.

---

*    The text in braces currently appears in Application Note 1 of the Commentary to §4B1.2. The proposed amendment would place the text here with the changes shown in revision marks.

Proposed Amendment:  Career Offender

(3) ADDITIONAL CONSIDERATION.—{A violation of 18 U.S.C. § 924(c) or § 929(a) is a "crime of violence" or a "controlled substance offense" if the offense of conviction established that the underlying offense was a "crime of violence" or a "controlled substance offense."}*

### [Controlled Substance Offense Suboption 2A (Limiting Prior Convictions to Sentences Receiving Points under §4A1.1(a)):

(c) TWO PRIOR FELONY CONVICTIONS.—The term "two prior felony convictions" means (1) the defendant committed the instant offense of conviction subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense (*i.e.*, two felony convictions of a crime of violence, two felony convictions of a controlled substance offense, or one felony conviction of a crime of violence and one felony conviction of a controlled substance offense), and (2) the sentences for at least two of the aforementioned felony convictions are counted separately under the provisions of §4A1.1(a), (b), or (c). The date that a defendant sustained a conviction shall be the date that the guilt of the defendant has been established, whether by guilty plea, trial, or plea of *nolo contendere*. For purposes of determining whether the defendant sustained a felony conviction of a "crime of violence," use only any such felony conviction that is counted separately under §4A1.1(a), (b), or (c). For purposes of determining whether the defendant sustained a felony conviction of a "controlled substance offense," use only any such felony conviction that is counted separately under §4A1.1(a).

[A conviction for a controlled substance offense shall not qualify as a prior felony conviction under this provision if the defendant can establish that the conviction resulted in a sentence for which the defendant served less than [five years][three years][one year] in prison.]]

### [Controlled Substance Offense Suboption 2B (Limiting Prior Convictions Through a Sentence-Imposed Approach):

(c) TWO PRIOR FELONY CONVICTIONS.—The term "two prior felony convictions" means (1) the defendant committed the instant offense of conviction subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense (*i.e.*, two felony convictions of a crime of violence, two felony convictions of a controlled substance offense, or one felony conviction of a crime of violence and one felony conviction of a controlled substance offense), and (2) the sentences for at least two of the aforementioned felony convictions are counted separately under the provisions of §4A1.1(a), (b), or (c). The date that a defendant sustained a conviction shall be the date that the guilt of the defendant has been

---

\* The text in braces currently appears in Application Note 1 of the Commentary to §4B1.2. The proposed amendment would place the text here with the changes shown in revision marks.

established, whether by guilty plea, trial, or plea of *nolo contendere*. For purposes of determining whether the defendant sustained a felony conviction of a "crime of violence," use only any such felony conviction that is counted separately under §4A1.1(a), (b), or (c). For purposes of determining whether the defendant sustained a felony conviction of a "controlled substance offense," use only any such felony conviction that (1) is counted separately under §4A1.1(a) **[**or (b)**]**, and (2) resulted in a sentence imposed of **[**five years**][**three years**][**one year**]** or more. For purposes of this provision, "***sentence imposed***" has the meaning given the term "sentence of imprisonment" in §4A1.2(b) and Application Note 2 of the Commentary to §4A1.2. The length of the sentence imposed includes any term of imprisonment given upon revocation of probation, parole, or supervised release, regardless of when the revocation occurred.

**[**A conviction for a controlled substance offense shall not qualify as a prior felony conviction under this provision if the defendant can establish that the conviction resulted in a sentence for which the defendant served less than **[**five years**][**three years**][**one year**]** in prison.**]]**

**[*Controlled Substance Offense Suboption 2C (Limiting Prior Convictions Through a Time-Served Approach)*:**

(c)    TWO PRIOR FELONY CONVICTIONS.—The term "two prior felony convictions" means ~~(1)~~ the defendant committed the instant offense of conviction subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense (*i.e.*, two felony convictions of a crime of violence, two felony convictions of a controlled substance offense, or one felony conviction of a crime of violence and one felony conviction of a controlled substance offense)~~, and (2) the sentences for at least two of the aforementioned felony convictions are counted separately under the provisions of §4A1.1(a), (b), or (c)~~. The date that a defendant sustained a conviction shall be the date that the guilt of the defendant has been established, whether by guilty plea, trial, or plea of *nolo contendere*. For purposes of determining whether the defendant sustained a felony conviction of a "crime of violence," use only any such felony conviction that is counted separately under §4A1.1(a), (b), or (c). For purposes of determining whether the defendant sustained a felony conviction of a "controlled substance offense," use only any such felony conviction that (1) is counted separately under §4A1.1(a) **[**or (b)**]**, and (2) resulted in a sentence for which the defendant served **[**five years**][**three years**][**one year**]** or more in prison.**]]**

~~(d)    INCHOATE OFFENSES INCLUDED.   The terms "crime of violence" and "controlled substance offense" include the offenses of aiding and abetting, attempting to commit, or conspiring to commit any such offense.~~

(e)   ADDITIONAL DEFINITIONS. —

(1)   FORCIBLE SEX OFFENSE. — "*Forcible sex offense*" includes where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced. The offenses of sexual abuse of a minor and statutory rape are included only if the sexual abuse of a minor or statutory rape was (A) an offense described in 18 U.S.C. § 2241(c) or (B) an offense under state law that would have been an offense under section 2241(c) if the offense had occurred within the special maritime and territorial jurisdiction of the United States.

(2)   EXTORTION. — "*Extortion*" is obtaining something of value from another by the wrongful use of (A) force, (B) fear of physical injury, or (C) threat of physical injury.

(3)   ROBBERY. — "*Robbery*" is the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining. The phrase "actual or threatened force" refers to force that is sufficient to overcome a victim's resistance.

(4d)   PRIOR FELONY CONVICTION.—"*Prior felony conviction*" means a prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed. A conviction for an offense committed at age eighteen or older is an adult conviction. A conviction for an offense committed prior to age eighteen is an adult conviction if it is classified as an adult conviction under the laws of the jurisdiction in which the defendant was convicted (*e.g.*, a federal conviction for an offense committed prior to the defendant's eighteenth birthday is an adult conviction if the defendant was expressly proceeded against as an adult).

**Commentary**

**Application NotesNote:**

1.   **Further Considerations Regarding "Crime of Violence" and "Controlled Substance Offense".** — For purposes of this guideline—

Unlawfully possessing a listed chemical with intent to manufacture a controlled substance (21 U.S.C. § 841(c)(1)) is a "controlled substance offense."

Unlawfully possessing a prohibited flask or equipment with intent to manufacture a controlled substance (21 U.S.C. § 843(a)(6)) is a "controlled substance offense."

~~Maintaining any place for the purpose of facilitating a drug offense (21 U.S.C. § 856) is a "controlled substance offense" if the offense of conviction established that the underlying offense (the offense facilitated) was a "controlled substance offense."~~

~~Using a communications facility in committing, causing, or facilitating a drug offense (21 U.S.C. § 843(b)) is a "controlled substance offense" if the offense of conviction established that the underlying offense (the offense committed, caused, or facilitated) was a "controlled substance offense."~~

~~A violation of 18 U.S.C. § 924(c) or § 929(a) is a "crime of violence" or a "controlled substance offense" if the offense of conviction established that the underlying offense was a "crime of violence" or a "controlled substance offense". (Note that in the case of a prior 18 U.S.C. § 924(c) or § 929(a) conviction, if the defendant also was convicted of the underlying offense, the sentences for the two prior convictions will be treated as a single sentence under §4A1.2 (Definitions and Instructions for Computing Criminal History).)~~

~~2.~~    **Offense of Conviction as Focus of Inquiry.**— ~~Section 4B1.1 (Career Offender) expressly provides that the instant and prior offenses must be crimes of violence or controlled substance offenses of which the defendant was convicted. Therefore, in determining whether an offense is a crime of violence or controlled substance for the purposes of §4B1.1 (Career Offender), the offense of conviction (*i.e.*, the conduct of which the defendant was convicted) is the focus of inquiry.~~

~~2~~1.    **Applicability of §4A1.2.**—The provisions of §4A1.2 (Definitions and Instructions for Computing Criminal History) are applicable to the counting of convictions under §4B1.1. **{**(Note that in the case of a prior 18 U.S.C. § 924(c) or § 929(a) conviction, if the defendant also was convicted of the underlying offense, the sentences for the two prior convictions will be treated as a single sentence under §4A1.2 ~~(Definitions and Instructions for Computing Criminal History).~~)**}**\*

**Background:** Section 4B1.2 defines the terms "crime of violence," "controlled substance offense," and "two prior felony convictions" for purposes of §4B1.1 (Career Offender). Prior to **[**amendment year**]**, to determine if an offense met the definition of "crime of violence" in §4B1.2, courts typically used the categorical approach and the modified categorical approach, as set forth in Supreme Court jurisprudence. *See, e.g.*, *Taylor v. United States*, 495 U.S. 575 (1990); *Shepard v. United States*, 544 U.S. 13 (2005); *Descamps v. United States*, 570 U.S. 254 (2013); *Mathis v. United States*, 579 U.S. 500 (2016). These Supreme Court cases, however, involved statutory provisions (*e.g.*, 18 U.S.C. § 924(e)) rather than guideline provisions.

In **[**amendment year**]**, the Commission amended §4B1.2 to set forth an approach for determining whether an offense is a "crime of violence" or "controlled substance offense" that does not require the application of the *categorical approach* and *modified categorical approach* established by Supreme Court jurisprudence, or the use of a generic-offense analysis, where courts must determine whether the elements of the instant offense or prior offense match the elements of the "generic definition" of certain offenses. *See* USSG App. C, Amendment **[___]** (effective **[**Date**]**).

*    *    *

---

\*    The text in braces currently appears in Application Note 1 of the Commentary to §4B1.2. The proposed amendment would place the text here with the changes shown in revision marks.

Proposed Amendment:  Career Offender

## §2K2.1.   Unlawful Receipt, Possession, or Transportation of Firearms or Ammunition; Prohibited Transactions Involving Firearms or Ammunition

(a)   Base Offense Level (Apply the Greatest):

(1)   **26**, if (A) the offense involved a (i) semiautomatic firearm that is capable of accepting a large capacity magazine; or (ii) firearm that is described in 26 U.S.C. § 5845(a); and (B) the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense;

(2)   **24**, if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense;

(3)   **22**, if (A) the offense involved a (i) semiautomatic firearm that is capable of accepting a large capacity magazine; or (ii) firearm that is described in 26 U.S.C. § 5845(a); and (B) the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense;

(4)   **20**, if—

(A)   the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense; or

(B)   the (i) offense involved a (I) semiautomatic firearm that is capable of accepting a large capacity magazine; or (II) firearm that is described in 26 U.S.C. § 5845(a); and (ii) defendant (I) was a prohibited person at the time the defendant committed the instant offense; (II) is convicted under 18 U.S.C. § 922(d), § 932, or § 933; or (III) is convicted under 18 U.S.C. § 922(a)(6) or § 924(a)(1)(A) and committed the offense with knowledge, intent, or reason to believe that the offense would result in the transfer of a firearm or ammunition to a prohibited person;

(5)   **18**, if the offense involved a firearm described in 26 U.S.C. § 5845(a);

(6)   **14**, if the defendant (A) was a prohibited person at the time the defendant committed the instant offense; (B) is convicted under 18 U.S.C. § 922(d), § 932, or § 933; or (C) is convicted under 18 U.S.C. § 922(a)(6) or § 924(a)(1)(A) and committed the offense with

knowledge, intent, or reason to believe that the offense would result in the transfer of a firearm or ammunition to a prohibited person;

(7)  **12**, except as provided below; or

(8)  **6**, if the defendant is convicted under 18 U.S.C. § 922(c), (e), (f), (m), (s), (t), or (x)(1), or 18 U.S.C. § 1715.

\*      \*      \*

(b)  Specific Offense Characteristics

\*      \*      \*

(6)  (Apply the Greatest) If the defendant—

(A)  was convicted under 18 U.S.C. § 933(a)(2) or (a)(3), increase by **2** levels;

(B)  (i) transported, transferred, sold, or otherwise disposed of, or purchased or received with intent to transport, transfer, sell, or otherwise dispose of, a firearm or any ammunition knowing or having reason to believe that such conduct would result in the receipt of the firearm or ammunition by an individual who (I) was a prohibited person; or (II) intended to use or dispose of the firearm or ammunition unlawfully; (ii) attempted or conspired to commit the conduct described in clause (i); or (iii) received a firearm or any ammunition as a result of inducing the conduct described in clause (i), increase by **2** levels; or

(C)  (i) transported, transferred, sold, or otherwise disposed of, or purchased or received with intent to transport, transfer, sell, or otherwise dispose of, two or more firearms knowing or having reason to believe that such conduct would result in the receipt of the firearms by an individual who (I) had a prior conviction for a crime of violence, controlled substance offense, or misdemeanor crime of domestic violence; (II) was under a criminal justice sentence at the time of the offense; or (III) intended to use or dispose of the firearms unlawfully; (ii) attempted or conspired to commit the conduct described in clause (i); or (iii) received two or more firearms as a result of inducing the conduct described in clause (i), increase by **5** levels.

*Provided*, however, that subsection (b)(6)(C)(i)(I) shall not apply based upon the receipt or intended receipt of the firearms by an individual with a prior conviction for a misdemeanor crime of domestic violence against a person in a dating relationship if, at the time of the instant

offense, such individual met the criteria set forth in the proviso of 18 U.S.C. § 921(a)(33)(C).

\*        \*        \*

**Commentary**

\*        \*        \*

**Application Notes:**

**[Firearms Option 1 (Preserving Current Definitions of "Crime of Violence" and "Controlled Substance Offense" for §2K2.1):**

1.      **Definitions.**—For purposes of this guideline:

"***Ammunition***" has the meaning given that term in 18 U.S.C. § 921(a)(17)(A).

"~~***Controlled substance offense***~~" ~~has the meaning given that term in §4B1.2(b) and Application Note 1 of the Commentary to §4B1.2 (Definitions of Terms Used in Section 4B1.1).~~

"~~***Crime of violence***~~" ~~has the meaning given that term in §4B1.2(a) and Application Note 1 of the Commentary to §4B1.2.~~

\*        \*        \*

"***Felony conviction***" means a prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed. A conviction for an offense committed at age eighteen years or older is an adult conviction. A conviction for an offense committed prior to age eighteen years is an adult conviction if it is classified as an adult conviction under the laws of the jurisdiction in which the defendant was convicted (*e.g.*, a federal conviction for an offense committed prior to the defendant's eighteenth birthday is an adult conviction if the defendant was expressly proceeded against as an adult).

\*        \*        \*

2.      **Semiautomatic Firearm That Is Capable of Accepting a Large Capacity Magazine.**—For purposes of subsections (a)(1), (a)(3), and (a)(4), a "***semiautomatic firearm that is capable of accepting a large capacity magazine***" means a semiautomatic firearm that has the ability to fire many rounds without reloading because at the time of the offense (A) the firearm had attached to it a magazine or similar device that could accept more than 15 rounds of ammunition; or (B) a magazine or similar device that could accept more than 15 rounds of ammunition was in close proximity to the firearm. This definition does not include a semiautomatic firearm with an attached tubular device capable of operating only with .22 caliber rim fire ammunition.

3.  **"Crime of Violence" and "Controlled Substance Offense".—**

(A)  **Crime of Violence.—**

(i)  **Definition.—**"*Crime of violence*" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that (I) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (II) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

(ii)  **Additional Considerations.—**

(I)  The term "crime of violence" includes the offenses of aiding and abetting, attempting to commit, or conspiring to commit any such offense.

(II)  "Forcible sex offense" includes where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced. The offenses of sexual abuse of a minor and statutory rape are included only if the sexual abuse of a minor or statutory rape was (aa) an offense described in 18 U.S.C. § 2241(c) or (bb) an offense under state law that would have been an offense under section 2241(c) if the offense had occurred within the special maritime and territorial jurisdiction of the United States.

(III)  "Extortion" is obtaining something of value from another by the wrongful use of (aa) force, (bb) fear of physical injury, or (cc) threat of physical injury.

(IV)  "Robbery" is the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining. The phrase "actual or threatened force" refers to force that is sufficient to overcome a victim's resistance.

(V)  A violation of 18 U.S.C. § 924(c) or § 929(a) is a "crime of violence" if the offense of conviction established that the underlying offense was a "crime of violence." (Note that in the case of a prior 18 U.S.C. § 924(c) or § 929(a) conviction, if the defendant also was convicted of the underlying offense, the sentences for the two prior convictions will be treated as a single sentence under §4A1.2 (Definitions and Instructions for Computing Criminal History).)

(VI)  In determining whether an offense is a crime of violence, the offense of conviction (*i.e.*, the conduct of which the defendant was convicted) is the focus of inquiry.

(B)  **Controlled Substance Offense.—**

(i)  **Definition.—**"*Controlled substance offense*" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that (I) prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export,

distribute, or dispense; or (II) is an offense described in 46 U.S.C. § 70503(a) or § 70506(b).

(ii)    **Additional Considerations.—**

(I)    The term "controlled substance offense" includes the offenses of aiding and abetting, attempting to commit, or conspiring to commit any such offense.

(II)    Unlawfully possessing a listed chemical with intent to manufacture a controlled substance (21 U.S.C. § 841(c)(1)) is a "controlled substance offense."

(III)    Unlawfully possessing a prohibited flask or equipment with intent to manufacture a controlled substance (21 U.S.C. § 843(a)(6)) is a "controlled substance offense."

(IV)    Maintaining any place for the purpose of facilitating a drug offense (21 U.S.C. § 856) is a "controlled substance offense" if the offense of conviction established that the underlying offense (the offense facilitated) was a "controlled substance offense."

(V)    Using a communications facility in committing, causing, or facilitating a drug offense (21 U.S.C. § 843(b)) is a "controlled substance offense" if the offense of conviction established that the underlying offense (the offense committed, caused, or facilitated) was a "controlled substance offense."

(VI)    A violation of 18 U.S.C. § 924(c) or § 929(a) is a "controlled substance offense" if the offense of conviction established that the underlying offense was a "controlled substance offense." (Note that in the case of a prior 18 U.S.C. § 924(c) or § 929(a) conviction, if the defendant also was convicted of the underlying offense, the sentences for the two prior convictions will be treated as a single sentence under §4A1.2 (Definitions and Instructions for Computing Criminal History).)

(VII)    In determining whether an offense is a controlled substance offense, the offense of conviction (*i.e.*, the conduct of which the defendant was convicted) is the focus of inquiry.

~~3~~4.    **Definition of "Prohibited Person".**—For purposes of subsections (a)(4)(B), (a)(6), and (b)(6), "***prohibited person***" means any person described in 18 U.S.C. § 922(g) or § 922(n).

**[Firearms Option 1 would renumber the rest of the application notes accordingly]**

\*        \*        \*

~~10~~11.    **Prior Felony Convictions.**—For purposes of applying subsection (a)(1), (2), (3), or (4)(A), use only those felony convictions that receive criminal history points under §4A1.1(a), (b), or (c). In addition, for purposes of applying subsections (a)(1) and (a)(2), use only those felony convictions that are counted separately under §4A1.1(a), (b), or (c). *See* §4A1.2(a)(2).

Prior felony conviction(s) resulting in an increased base offense level under subsection (a)(1), (a)(2), (a)(3), (a)(4)(A), (a)(4)(B), or (a)(6) are also counted for purposes of determining criminal history points pursuant to Chapter Four, Part A (Criminal History).

* * *

~~12~~13. **Application of Subsection (b)(6).—**

(A)    **Definitions.**—For purposes of this subsection:

~~"*Crime of violence*" and "*controlled substance offense*" have the meaning given those terms in §4B1.2 (Definitions of Terms Used in Section 4B1.1).~~]

* * *

**[Firearms Option 2 (Providing Statutory Definitions of "Crime of Violence" and "Controlled Substance Offense" for §2K2.1):**

1.    **Definitions.**—For purposes of this guideline:

"*Ammunition*" has the meaning given that term in 18 U.S.C. § 921(a)(17)(A).

"*Controlled substance offense*" has the meaning given ~~that term in §4B1.2(b) and Application Note 1 of the Commentary to §4B1.2 (Definitions of Terms Used in Section 4B1.1)~~the term "serious drug offense" in 18 U.S.C. § 924(e).

"*Crime of violence*" has the meaning given ~~that term in §4B1.2(a) and Application Note 1 of the Commentary to §4B1.2~~the term "violent felony" in 18 U.S.C. § 924(e).

* * *

12.    **Application of Subsection (b)(6).—**

(A)    **Definitions.**—For purposes of this subsection:

~~"*Crime of violence*" and "*controlled substance offense*" have the meaning given those terms in §4B1.2 (Definitions of Terms Used in Section 4B1.1).~~ ]

* * *

**Issues for Comment:**

1.  As explained in the synopsis of the proposed amendment, courts use the "categorical approach" and the "modified categorical approach," as set forth in Supreme Court jurisprudence, to determine whether a conviction is a "crime of violence" or a "controlled substance offense" for purposes of §4B1.2 (Definitions of Terms Used in Section 4B1.1). These Supreme Court cases, however, involved statutory provisions (*e.g.*, 18 U.S.C. § 924(e)) rather than guideline provisions.

    The Commission seeks comment on whether determinations under the career offender guideline should use a different approach, such as the approaches provided above. What are the advantages and disadvantages of the "categorical approach" as opposed to the approaches set forth in the proposed amendment above?

2.  The proposed amendment would amend §4B1.2(a) to eliminate the use of the categorical approach, for purposes of federal offenses, by listing specific federal statutes that qualify as a "crime of violence." Are there federal offenses that are covered by the proposed "crime of violence" definition but should not be? Are there federal offenses that are not covered by the proposed definition but should be?

3.  The proposed amendment sets forth two options for amending the definition of "crime of violence" for purposes of state offenses. Crime of Violence Option 1 would eliminate the use of the categorical approach for purposes of state offenses by identifying a crime of violence solely based on how an offense is designated (*i.e.*, labeled) under state law. Crime of Violence Option 2 would provide that a state offense is presumptively a "crime of violence" if the statute of conviction **[**meets each of the elements (other than federal jurisdictional requirements)**] [**proscribes [conduct][an act or omission] that [is described by] [satisfies][meets] the elements (other than federal jurisdictional requirements)**]** of an offense set forth in the proposed definition, regardless of whether the statute of conviction includes additional elements (or means of committing any such elements) that are broader than those of the offense. It sets forth a list of violent offenses and defines most of these enumerated offenses by referring to how that offense is described in a federal statute. Many of the listed offenses qualify as a "serious violent felony" under 18 U.S.C. § 3559(c). Crime of Violence Option 2 also brackets the possibility of including additional offenses. It would define some of these additional offenses, either by referring to how that offense is described in a statute or by providing a guidelines definition of such an offense.

    The Commission seeks comment generally on each option and whether either of the approaches provided for purposes of the "crime of violence" definition is appropriate and would cover most violent offenses under state law. Which of the options, if either, should the Commission adopt? Should the Commission consider a different approach to revise the "crime of violence" definition? Are there specific state offenses that would be included in the definition of "crime of violence" set forth in these options that should not be considered crimes of violence? Are there specific state offenses that would not be included in the definition set forth in these options, but should be? For example, should the Commission include offenses such as terroristic

threats and resisting arrest in the list of offenses that should qualify as a "crime of violence"?

The Commission also seeks comment on whether the list of offenses included for purposes of federal offenses and state offenses should generally capture the same offenses. Should the Commission differentiate between the types of federal offenses and state offenses that should qualify as crimes of violence by providing different list of offenses?

Finally, the Commission seeks comment on the proposed definitions for the enumerated offenses listed in Crime of Violence Option 2. Are these definitions appropriate? Should the Commission provide different definitions? If so, what definitions should the Commission provide?

4.    Crime of Violence Option 1 for amending the definition of "crime of violence" for purposes of state offenses would eliminate the use of the categorical approach by providing a definition that is based on how an offense is designated (*i.e.*, labeled) under state law. This option brackets a preliminary list of offense labels. The Commission recognizes that jurisdictions name each of these offenses in various ways that may be appropriate to include in the definition of crime of violence. For example, the Commission has identified that jurisdictions use different labels for the highest degree of murder, including such labels as *First Degree Murder*, *Murder in the First Degree*, *Deliberate Homicide*, *First Degree Intentional Homicide*, *Aggravated Murder*, and *Capital Murder*. Similarly, the Commission has identified the same issue with robbery; states and United States territories use different labels such as *Robbery in the First Degree*, *Robbery in the Second Degree*, *Robbery in the Third Degree*, *Aggravated Robbery*, *First Degree Aggravated Robbery*, *Armed Robbery*, *Carjacking*, *Armed Carjacking*, *Robbery Involving Occupied Motor Vehicle*, *Aggravated Vehicular Hijacking*, *Vehicular Hijacking*, *Robbery by Intimidation*, *Robbery with a Dangerous Weapon*, *Assault with Intent to Rob*, and *Robbery with Firearms or Other Dangerous Weapons*. The Commission anticipates identifying similar issues with the other offenses listed in Crime of Violence Option 1.

For purposes of Crime of Violence Option 1, the Commission intends that violent offenses, such as aggravated assault, arson, extortion, kidnapping, murder, rape, robbery, sexual assault, and voluntary manslaughter, by whatever name they are known under state law, are included in the crime of violence definition. The Commission seeks comment on whether the list of offenses provided as part of the "crime of violence" definition should include the different ways in which these offenses are labeled by different jurisdictions. If so, to what level of specificity should the Commission include any such offense labels? The Commission also seeks comment on how each of the states and United States territories name each of these offenses. Finally, the Commission seeks comment on whether other labels should be included in the definition to adequately capture these offenses in Crime of Violence Option 1. Are there states that do not include names, labels, or titles in their criminal code that would need to be addressed in another way? As an alternative, instead of listing offense labels, should the Commission provide a list of the specific state statutes that should qualify as "crime of violence"? Would an approach that

lists specific state statutes as crimes of violence be more easily administered? If so, which state statutes should be included?

5.  The proposed amendment provides an exclusion to limit the scope of the definition of "crime of violence" by adopting a sentence length criteria similar to the one relating to petty and minor offenses from subsection (c)(2) of §4A1.2 (Definitions and Instructions for Computing Criminal History), and sets limitations if the defendant can establish that: (i) the conviction for the offense resulted in a sentence for which the defendant served less than [60 days][30 days] in prison; (ii) the acts for which the defendant is criminally liable [did not inflict, did not intend to inflict, and did not threaten to inflict [serious] bodily injury to another person][did not cause, did not intend to cause, and did not create a serious risk of physical harm to another person] during the commission of the offense; or (iii) the defendant's conduct during the commission of the offense was limited to reckless or negligent conduct.

The Commission seeks comment on whether these limitations are appropriate. Do these limitations appropriately exclude prior convictions that should not qualify as crimes of violence under §4B1.2? Are there additional or different limitations that the Commission should include? For example, should the Commission exclude prior convictions for robbery and extortion offenses if the defendant can establish that no firearm or other dangerous weapon was used in the offense, no threat of use of a firearm or other dangerous weapon was involved in the offense, and the offense did not result in death or serious bodily injury to any person? Should the Commission exclude prior convictions for arson offenses if the defendant can establish that the offense posed, and the defendant reasonably believed the offense posed, no threat to human life?

One of the limitations provides that an offense of conviction shall not qualify as a "crime of violence" if the defendant can establish that the defendant's conduct during the commission of the offense was limited to reckless or negligent conduct. With this limitation, the Commission intends to require a *mens rea* more culpable than recklessness or negligence for the offense to qualify as a crime of violence. The Commission seeks comment on whether the language of this limitation accomplishes this goal or whether there is a better way to do so.

6.  The proposed amendment sets forth two options for limiting the scope of the "controlled substance offense" definition. Controlled Substance Offense Option 1 would revise the definition of "controlled substance offense" to exclude state drug offenses from the scope of its application by listing specific federal statutes relating to drug offenses. The proposed amendment lists the federal statutes that are controlled substance offenses under the current definition to maintain the status quo. The list includes the federal drug trafficking statutes that are specifically referenced in the career offender directive at 28 U.S.C. § 994(h). The federal drug trafficking statutes that appear in brackets are not cited in the directive. The Commission seeks comment generally on whether the approach set forth in this option is appropriate. Are there federal drug offenses that are covered by the proposed amendment but should not be? Are there federal drug offenses that are not covered by the proposed amendment but should be?

7. Controlled Substance Offense Option 2 for limiting the scope of the "controlled substance offense" definition would maintain the current definition but would limit its scope by setting a minimum sentence length requirement for a prior conviction to qualify as a "controlled substance offense." It provides three suboptions for such limitation. The Commission seeks comment on whether it should adopt Controlled Substance Offense Option 2 by keeping the current definition of "controlled substance offense" and limiting qualifying prior convictions to only convictions that received a certain number of criminal history points or a certain length of sentence imposed or served. If so, how should the Commission set that limit and on what basis? The Commission also seeks comment on whether including a minimum sentence length requirement for prior offenses to qualify as a "controlled substance offense" is consistent with the Commission's authority under 28 U.S.C. § 994(h). Should the Commission differentiate between "crimes of violence" and "controlled substance offenses" in setting a minimum sentence length requirement?

    The Commission also seeks comment on each of the suboptions. Which suboption, if any, should the Commission adopt?

8. Controlled Substance Offense Suboptions 2A and 2B for setting a minimum sentence length requirement for a prior conviction to qualify as a "controlled substance offense" bracket the possibility of including a provision that states that a conviction of a controlled substance offense shall not qualify as a prior felony conviction under §4B1.2 if the defendant can establish that the conviction resulted in a sentence for which the defendant served less than [five years][three years][one year] in prison. The Commission seeks comment on what types of sentences should be counted for purposes of this provision. For example, should revocation sentences count to determine whether the defendant served less than [five years][three years][one year] in prison?

9. The Commission seeks comment on whether the definitions of "crime of violence" and "controlled substance offense" should still address the offenses of attempting to commit a substantive offense and conspiracy to commit a substantive offense. Should the Commission provide additional requirements or guidance to address these types of offenses?

10. As indicated above, several guidelines use the terms "crime of violence" and "controlled substance offense" and define these terms by making specific reference to §4B1.2. *See* the Commentary to §2K1.3 (Unlawful Receipt, Possession, or Transportation of Explosive Materials; Prohibited Transactions Involving Explosive Materials), §2K2.1 (Unlawful Receipt, Possession, or Transportation of Firearms or Ammunition; Prohibited Transactions Involving Firearms or Ammunition), §2S1.1 (Laundering of Monetary Instruments; Engaging in Monetary Transactions in Property Derived from Unlawful Activity), §4A1.2 (Definitions and Instructions for Computing Criminal History), §4B1.4 (Armed Career Criminal), §7B1.1 (Classification of Violations (Policy Statement)), and §7C1.1 (Classification of Violations (Policy Statement)).

The proposed amendment effectively sets forth three alternatives for addressing the references to "crime of violence" and "controlled substance offense" in §2K2.1. First, absent additional changes to §2K2.1, any revisions to the definitions in §4B1.2 would be incorporated by reference to §2K2.1. In addition to the approach of maintaining the current operation of §2K2.1 by incorporating the definitions from §4B1.2, two options are presented. Firearms Option 1 would maintain the status quo by amending the Commentary to §2K2.1 to incorporate the relevant part or parts of the current definitions from §4B1.2. Firearms Option 2 would amend the Commentary to §2K2.1 to provide that "controlled substance offense" has the meaning given the term "serious drug offense" in 18 U.S.C. § 924(e) and "crime of violence" has the meaning given the term "violent felony" in 18 U.S.C. § 924(e). The Commission seeks comment on each of these options, or, in the alternative, whether §2K2.1 should continue to define the terms "crime of violence" and "controlled substance offense" by making specific references to §4B1.2 if the Commission were to promulgate the proposed amendment.

Similarly, the Commission seeks comment on the approach it should take to address the references to "crime of violence" and "controlled substance offense" in the other guidelines cited above. Should the Commission maintain the status quo by amending the Commentary to any or all of these guidelines to incorporate the relevant parts of §4B1.2? Should the Commission instead continue to define these terms by making specific references to §4B1.2 if the Commission were to promulgate the proposed amendment making changes to the "crime of violence" and "controlled substance offense" definitions contained in §4B1.2? Should the Commission consider moving these definitions from the commentary of these guidelines to the guidelines themselves?

### 3.    PROPOSED AMENDMENT:    CIRCUIT CONFLICTS CONCERNING §4B1.2(b)

**Synopsis of Proposed Amendment:** The proposed amendment addresses two circuit conflicts involving the definition of "controlled substance offense" in subsection (b) of §4B1.2 (Definitions of Terms Used in Section 4B1.1).

Section §4B1.2(b) defines a "controlled substance offense" as "an offense under federal or state law . . . that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." Several other guidelines incorporate this definition by reference, often providing for higher base offense levels if the defendant committed the instant offense after sustaining a conviction for a "controlled substance offense." *See* §§2K1.3 (Unlawful Receipt, Possession, or Transportation of Explosive Materials; Prohibited Transactions Involving Explosive Materials), 2K2.1 (Unlawful Receipt, Possession, or Transportation of Firearms or Ammunition; Prohibited Transactions Involving Firearms or Ammunition), 4B1.4 (Armed Career Criminal), 7B1.1 (Classification of Violations (Policy Statement)), and 7C1.1 (Classification of Violations (Policy Statement)).

The first circuit conflict concerns whether the definition of a "controlled substance offense" in §4B1.2(b) only includes substances controlled by the federal Controlled Substances Act ("CSA") (21 U.S.C. § 801 *et seq.*), or whether the definition also includes substances controlled by applicable state law. This circuit conflict prompted Justice Sotomayor, joined by Justice Barrett, to call for the Commission to "address this division to ensure fair and uniform application of the [g]uidelines." Guerrant v. United States, 142 S. Ct. 640, 640–41 (2022) (statement of Sotomayor, J., with whom Barrett, J. joins, respecting the denial of certiorari); Wiggins v. United States, 145 S. Ct. 2621, 2622 (2025) (statement of Sotomayor, J., with whom Barrett, J. joins, respecting denial of certiorari) (collecting cases).

The Second, Fifth, and Ninth Circuits have held that a "controlled substance offense" only includes offenses involving substances controlled by federal law (the CSA), not offenses that include substances that a state schedule lists as a controlled substance, but the CSA does not. *See* United States v. Minor, 121 F.4th 1085, 1089–1090 (5th Cir. 2024) (holding that state-law offense counts only if it is a categorical match for a federal offense); United States v. Bautista, 989 F.3d 698, 705 (9th Cir. 2021) (conviction under Arizona statute criminalizing hemp as well as marijuana is not a "controlled substance offense" because hemp is not listed in the CSA); United States v. Townsend, 897 F.3d 66, 74 (2d Cir. 2018) (conviction under New York statute prohibiting the sale of Human Chorionic Gonadotropin ("HCG") is not a "controlled substance offense" because HCG is not controlled under the CSA). In these circuits, a state drug offense will not qualify as a "controlled substance offense" if the state statute includes any substance not controlled under federal law, even if the offense involved a controlled substance that is covered by the CSA. Because the lists of substances controlled under federal and state law rarely match, and many state statutes do not require proof of the exact substance as an element of the offense, this approach has the practical effect of eliminating many state offenses involving controlled substances under federal law.

By contrast, the Third, Fourth, Sixth, Seventh, Eighth, Tenth, and Eleventh Circuits have held that a state conviction that includes a controlled substance that is not identified in the CSA can qualify as a "controlled substance offense" under the guidelines. *See* United States v. Dubois, 94 F.4th 1284, 1294–96 (11th Cir. 2024) ("A drug regulated by state law is a 'controlled substance' for state predicate offenses, even if federal law does not regulate that drug."), *cert. granted, judgment vacated sub nom.* Dubois v. United States, 145 S. Ct. 1041 (2025), reinstated by 139 F.4th 887 (11th Cir. 2025); United States v. Lewis, 58 F.4th 764, 771 (3d Cir. 2023) ("a 'controlled substance' under [§4B1.2(b)] is a drug regulated by either state or federal law"); United States v. Jones, 81 F.4th 591, 598-99 (6th Cir. 2023) (controlled substance offense includes "state-law controlled substance offense[s]"); United States v. Jones, 15 F.4th 1288, 1295 (10th Cir. 2021) (definition of "controlled substance offense" includes "state-law controlled substance offenses, involving substances not found on the CSA"); United States v. Henderson, 11 F.4th 713, 718 (8th Cir. 2021) ("There is no requirement that the particular substance underlying the state offense is also controlled under a distinct federal law."); United States v. Ward, 972 F.3d 364, 374 (4th Cir. 2020) ("[T]he Commission has specified that we look to *either* the federal or state law of conviction to define whether an offense will qualify [as a controlled substance offense]."); United States v. Ruth, 966 F.3d 642, 654 (7th Cir. 2020) ("The career-offender guideline defines the term controlled substance offense broadly, and the definition is most plainly read to include state-law offenses[.]" (citation and quotation omitted)).

The second circuit conflict concerns which temporal version of the applicable drug schedule (whether federal or state) should be used to decide if a prior offense qualifies as a predicate "controlled substance offense": (1) the schedule in place at the time of defendant's prior conviction; or (2) the schedule in place at the time of the instant offense or sentencing for the instant federal offense. The interpretations of the Third, Fourth, Sixth, Eighth, and Eleventh Circuits conflict with those of the First, Second, Fifth, and Ninth Circuits. *Compare* United States v. Nelson, 151 F.4th 577 (4th Cir. 2025); *Dubois*, 94 F.4th at 1296; *Lewis*, 58 F.4th at 771–73; United States v. Perez, 46 F.4th 691, 703 (8th Cir. 2022); United States v. Clark, 46 F.4th 404, 408 (6th Cir. 2022) (all using time of the prior convictions), *with* United States v. Minor, 121 F.4h 1085 (5th Cir. 2024); United States v. Bautista, 989 F.3d 698, 703 (9th Cir. 2021), *and* United States v. Abdulaziz, 998 F.3d 519, 523 (1st Cir. 2021) (all using time of sentencing); *see also* United States v. Gibson, 55 F.4th 153, 165 (2d Cir. 2022), *adhered to on reh'g*, 60 F.4th 720 (2d Cir. 2023) (*not* time of prior conviction).

The Sixth Circuit has concluded that courts should use the drug schedule in place at the time of defendant's prior conviction, reasoning that the guideline's language "indicates that the court should take a backward-looking approach and assess the nature of the predicate offenses at the time the convictions for those offenses occurred." *See* United States v. Clark, 46 F.4th 404, 408 (6th Cir. 2022) ("controlled substance" should be defined with reference to "the drug schedules in place at the time of the prior convictions at issue"). Likewise, the Third, Eighth, and Eleventh Circuits have held that whether a conviction qualifies as a controlled substance offense depends on the law at the time of the prior conviction. *Dubois*, 94 F.4th at 1298 ("We adopt a time-of-state-conviction rule: the term 'controlled substance,' . . . means a substance regulated by state law when the defendant was convicted of the state drug offense, even if it is no longer regulated when the defendant is sentenced for the federal firearm offense."); *Lewis*, 58 F.4th at 771–73 ("Simply put, controlled

substances include those regulated at the time of the predicate conviction."); United States v. Perez, 46 F.4th 691, 703 (8th Cir. 2022) ("And this court has also held that whether a prior state conviction is a controlled substance offense for Guidelines purposes is based on the law at the time of conviction, without reference to current state law." (citation omitted)). More recently, the Fourth Circuit held that courts must consult the federal drug schedules in effect at the time of the prior conviction when determining whether a prior offense qualifies as a "controlled substance offense" under §4B1.2(b). United States v. Nelson, 151 F.4th 577 (4th Cir. 2025).

By contrast, the First, Fifth, and Ninth Circuits use the schedule in place at the time of sentencing for the instant federal offense. Accordingly, these circuits compare the elements of the statute of conviction with the current version of the CSA and do not treat a prior conviction as a controlled substance offense if the statute of conviction encompasses conduct that is not currently criminalized by the CSA. *See Minor*, 121 F.4th 1085 (holding that the term "controlled substance" hinges on the definition of "controlled substance" in the CSA "in place at the time of sentencing for the instant offense."); United States v. Bautista, 989 F.3d 698, 703 (9th Cir. 2021) ("[A] court must ask whether [a] prior crime qualifies as a 'controlled substance offense' under the CSA and the corresponding [g]uideline *at the time of sentencing*."); United States v. Abdulaziz, 998 F.3d 519, 523 (1st Cir. 2021) ("[I]nsofar as the CSA's drug schedules were incorporated into the guideline itself at the time of [] sentencing, . . . we must look to the version of those drug schedules that were 'in effect' at that time to determine what constituted a 'controlled substance' at that time." (citations omitted)).

The proposed amendment would amend §4A1.2(b) to address both circuit conflicts.

The proposed amendment would first address the circuit conflict relating to whether a substance involved in an offense must be controlled under federal law by the CSA to qualify as a "controlled substance offense" under §4B1.2(b). Two options are provided:

> **Option 1** would set forth a definition of "controlled substance" that adopts the approach of the Second, Fifth, and Ninth Circuits. It would limit the definition of the term to substances that are specifically included in the CSA. This option would resolve the circuit conflict so as to preserve the status quo in circuits that categorically exclude violations of those state statutes that control substances not included in the CSA.

> **Option 2** would set forth a definition of "controlled substance" that adopts the approach of the Third, Fourth, Sixth, Seventh, Eighth, Tenth, and Eleventh Circuits. It would provide that the term "controlled substance" refers to substances either included in the CSA or otherwise controlled under applicable state law.

The proposed amendment would then address the circuit conflict relating to which version of the applicable drug schedule determines whether a prior conviction qualifies as a "controlled substance offense" under §4B1.2(b). Two options are provided.

> **Option 1** would adopt the First, Fifth, and Ninth Circuits' approach of using the schedule in place at the time of sentencing for the instant federal offense.

**Option 2** would adopt the Third, Fourth, Sixth, Eighth, and Eleventh Circuits' approach of using the schedule in place at the time of defendant's original conviction.

The proposed amendment would also amend the Commentary to §2L1.2 (Unlawfully Entering or Remaining in the United States), which contains a definition for the term "drug trafficking offense" that closely tracks the definition of "controlled substance offense" in §4B1.2(b). It sets forth the same options discussed above for §4B1.2(b).

Issues for comment are also provided.

**Proposed Amendment:**

## §4B1.2.    Definitions of Terms Used in Section 4B1.1

\*        \*        \*

(b)    CONTROLLED SUBSTANCE OFFENSE.—The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—

(1)    prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense; or

(2)    is an offense described in 46 U.S.C. § 70503(a) or § 70506(b).

### CIRCUIT CONFLICT 1
### (WHETHER A SUBSTANCE INVOLVED IN AN OFFENSE MUST BE CONTROLLED BY THE CONTROLLED SUBSTANCES ACT TO QUALIFY AS A "CONTROLLED SUBSTANCE OFFENSE" UNDER §4B1.2(b))

**[Option 1 (Second, Fifth, and Ninth Circuits—Controlled Substances under Federal Law):**

For purposes of this provision, the term "***controlled substance***" refers to a drug or other substance, or immediate precursor, listed in schedule I, II, III, IV, or V of the Controlled Substances Act (21 U.S.C. § 801 *et seq*.).**]**

**[Option 2 (Third, Fourth, Sixth, Seventh, Eighth, Tenth, and Eleventh Circuits—Controlled Substances under Federal or State Law):**

For purposes of this provision, the term "***controlled substance***" refers to a drug or other substance, or immediate precursor, either listed in schedule I, II, III, IV, or V of the Controlled Substances Act (21 U.S.C. § 801 *et seq*.) or otherwise controlled under applicable state law.**]**

### CIRCUIT CONFLICT 2
### (WHICH VERSION OF THE APPLICABLE DRUG SCHEDULE DETERMINES WHETHER A PRIOR CONVICTION QUALIFIES AS A "CONTROLLED SUBSTANCE OFFENSE" UNDER §4B1.2(b))

**[Option 1 (First, Fifth, and Ninth Circuits—Schedule at Time of Sentencing of Instant Offense):**

For purposes of this provision, the term "***controlled substance***" refers to a drug or other substance, or immediate precursor, that is controlled under the applicable law at the time of sentencing for the instant offense.**]**

**[Option 2 (Third, Fourth, Sixth, Eighth, and Eleventh Circuits—Schedule at Time of Original Conviction ):**

For purposes of this provision, the term "***controlled substance***" refers to a drug or other substance, or immediate precursor, that was controlled under the applicable law at the time the defendant was originally convicted for the offense.**]**

(c)  TWO PRIOR FELONY CONVICTIONS.—The term "two prior felony convictions" means (1) the defendant committed the instant offense of conviction subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense (*i.e.*, two felony convictions of a crime of violence, two felony convictions of a controlled substance offense, or one felony conviction of a crime of violence and one felony conviction of a controlled substance offense), and (2) the sentences for at least two of the aforementioned felony convictions are counted separately under the provisions of §4A1.1(a), (b), or (c). The date that a defendant sustained a conviction shall be the date that the guilt of the defendant has been established, whether by guilty plea, trial, or plea of *nolo contendere*.

(d)  INCHOATE OFFENSES INCLUDED.—The terms "crime of violence" and "controlled substance offense" include the offenses of aiding and abetting, attempting to commit, or conspiring to commit any such offense.

\*      \*      \*

## §2L1.2.   Unlawfully Entering or Remaining in the United States

\*      \*      \*

**Commentary**

\*      \*      \*

**Application Notes:**

\*      \*      \*

2.   **Definitions.**—For purposes of this guideline:

\*      \*      \*

"***Drug trafficking offense***" means an offense under federal, state, or local law that prohibits the manufacture, import, export, distribution, or dispensing of, or offer to sell a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

**CIRCUIT CONFLICT 1**
**(WHETHER A SUBSTANCE INVOLVED IN AN OFFENSE MUST BE CONTROLLED BY THE CONTROLLED SUBSTANCES ACT TO QUALIFY AS A "DRUG TRAFFICKING OFFENSE" UNDER §2L1.2)**

**[Option 1 (Second, Fifth, and Ninth Circuits—Controlled Substances under Federal Law):**
For purposes of this provision, the term "*controlled substance*" refers to a drug or other substance, or immediate precursor, listed in schedule I, II, III, IV, or V of the Controlled Substances Act (21 U.S.C. § 801 *et seq*.).**]**

**[Option 2 (Third, Fourth, Sixth, Seventh, Eighth, Tenth, and Eleventh Circuits—Controlled Substances under Federal or State Law):**
For purposes of this provision, the term "*controlled substance*" refers to a drug or other substance, or immediate precursor, either listed in schedule I, II, III, IV, or V of the Controlled Substances Act (21 U.S.C. § 801 *et seq*.) or otherwise controlled under applicable state law.**]**

**CIRCUIT CONFLICT 2**
**(WHICH VERSION OF THE APPLICABLE DRUG SCHEDULE DETERMINES WHETHER A PRIOR CONVICTION QUALIFIES AS A "DRUG TRAFFICKING OFFENSE" UNDER §2L1.2)**

**[Option 1 (First, Fifth, and Ninth Circuits—Schedule at Time of Sentencing of Instant Offense):**
For purposes of this provision, the term "*controlled substance*" refers to a drug or other substance, or immediate precursor, that is controlled under the applicable law at the time of sentencing for the instant offense.**]**

**[Option 2 (Third, Fourth, Sixth, Eighth, and Eleventh Circuits—Schedule at Time of Original Conviction):**
For purposes of this provision, the term "*controlled substance*" refers to a drug or other substance, or immediate precursor, that was controlled under the applicable law at the time the defendant was originally convicted for the offense.**]**

\*     \*     \*

**Issues for Comment**

1.      The proposed amendment would amend subsection (b) of §4B1.2 (Definitions of Terms Used in Section 4B1.1) to address the circuit conflicts described in the synopsis above by providing two options for each circuit conflict. The Commission seeks comment on whether it should address the circuit conflicts in a manner other than the options provided in the proposed amendment. If so, how?

2.      Several guidelines use the term "controlled substance offense" and define the terms by making specific reference to §4B1.2. *See, e.g.*, the Commentary to §2K1.3 (Unlawful Receipt, Possession, or Transportation of Explosive Materials; Prohibited Transactions Involving Explosive Materials), §2K2.1 (Unlawful Receipt, Possession, or Transportation of Firearms or Ammunition; Prohibited Transactions Involving Firearms or Ammunition), §4B1.4 (Armed Career Criminal), §7B1.1 (Classification of Violations (Policy Statement)), and §7C1.1 (Classification of Violations (Policy Statement)).

If the Commission were to promulgate any of the options set forth in the proposed amendment for each circuit conflict, should any or all of these guidelines continue to define the term "controlled substance offense" by making specific references to §4B1.2? Should the Commission maintain the status quo by amending the Commentary to these guidelines to incorporate the relevant parts of §4B1.2? Should the Commission consider moving these definitions from the commentary of these guidelines to the guidelines themselves?

## 4.    PROPOSED AMENDMENT:    HUMAN SMUGGLING

**Synopsis of Proposed Amendment:** This proposed amendment is a result of the Commission's "[e]xamination of §2L1.1 (Smuggling, Transporting, or Harboring an Unlawful Alien) to ensure the guidelines appropriately account for the consideration of factors such as the number of humans smuggled and whether the offense involved bodily injury or sexual assault." *See* U.S. Sent'g Comm'n, "Notice of Final Priorities," 90 FR 39264 (Aug. 14, 2025).

Offenses involving the smuggling, transporting, and harboring of unlawful aliens and aiding, abetting, and conspiring to commit such offenses, are referenced to §2L1.1. The guideline contains a specific offense characteristic that provides a tiered enhancement based on the number of unlawful aliens who were smuggled, transported, or harbored. USSG §2L1.1(b)(2). Offenses involving 6–24 aliens receive a 3-level increase, those involving 25–99 aliens receive a 6-level increase, and those involving 100 or more aliens receive a 9-level increase. *Id.* Commission data show that almost sixty percent (59%) of cases sentenced under §2L1.1 in fiscal year 2024 did not receive an enhancement under §2L1.1(b)(2) for the number of aliens involved in the offense. On average, those cases involved three aliens. When the enhancement was applied, the substantial majority of cases received the 3-level increase at subsection (b)(2)(A) (6–24 aliens). In those cases that received the 3-level enhancement, the offense involved an average of 12 aliens, while cases that received the 6-level enhancement at subsection (b)(2)(B) involved an average of 50 aliens. For those cases that received the highest increase of nine levels at subsection (b)(2)(C) because the offense involved 100 or more aliens, the average number of aliens was 832. However, the median number of aliens for that group was 175.

For an offense in which any person died or sustained a bodily injury, §2L1.1(b)(7) provides a tiered enhancement based on the severity of the injury sustained. USSG §2L1.1(b)(7). Under the tiered enhancement, "bodily injury" results in a 2-level increase, "serious bodily injury" results in a 4-level increase, "permanent or life-threatening injury" results in a 6-level increase, and "death" results in a 10-level increase. *Id.* The Commentary to §2L1.1 refers to the definition of "serious bodily injury" in Application Note 1 of §1B1.1 (Application Instructions). That definition provides that "'serious bodily injury' is deemed to have occurred if the offense involved conduct constituting criminal sexual abuse under 18 U.S.C. § 2241 [(Aggravated sexual abuse)] or § 2242 [(Sexual abuse)] or any similar offense under state law." USSG §1B1.1, comment. (n.1(L)).

In comments to the Commission, the Department of Justice expressed concerns regarding §2L1.1. The Department opined that the guideline does not reflect a congressional intent "to provide increased punishment for each alien smuggled." Letter from Scott Meisler, Deputy Chief, Crim. Div., U.S. Dep't of Just., to the Hon. Carlton W. Reeves, Chair, U.S. Sent'g Comm'n, 14 (July 18, 2025), https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-comment/202507/90FR24170_public_comment_R.pdf#page=97. The Department also expressed that §2L1.1 does not adequately address human smuggling cases in which a victim was sexually abused or otherwise sexually assaulted. *Id.*

The proposed amendment would revise §2L1.1 to respond to these concerns.

The proposed amendment would amend §2L1.1(b)(2) based on the Commission's sentencing data by creating more tiers based on the number of aliens involved and decreasing the number of aliens in each tier. Under the proposed amendment, offenses involving [6]–12 aliens would receive a 3-level enhancement, offenses involving 13–18 aliens would receive a [4]-level enhancement, offenses involving 19–24 aliens would receive a [5]-level enhancement, offenses involving 25–49 aliens would receive a [6]-level enhancement, offenses involving 50–99 aliens would receive a [7]-level enhancement, and offenses involving 100 or more aliens would receive a 9-level enhancement.

The proposed amendment would insert a new subsection (b)(6) applying a 2-level enhancement if the offense involved concealing persons in the trunk or engine compartment of a motor vehicle or carrying substantially more passengers than the rated capacity of a motor vehicle or vessel. If the resulting offense level is less than 18, then the new provision would provide that the offense level be increased to level 18. The existing subsection (b)(6) would be renumbered as subsection (b)(7) and would be amended to provide that it does not apply to conduct for which the defendant received an enhancement under subsection (b)(5) or new subsection (b)(6). Subsection (b)(7) (as renumbered) would also expressly provide that "serious bodily injury" includes criminal sexual abuse.

The proposed amendment would amend subsection (b)(8) (as renumbered) providing an enhancement for an offense involving death or bodily injury. It would bracket the possibility of amending subsection (b)(8) (as renumbered) so that a 2-level enhancement would apply to an offense in which a person was subjected to conduct constituting criminal sexual contact under 18 U.S.C. § 2244. It would also clarify that the 4-level enhancement for serious bodily injury applies to cases involving criminal sexual abuse.

The proposed amendment provides two options for adding a provision to subsection (b)(8) (as renumbered) providing for an enhancement for cases in which multiple people die or sustain an injury.

> **Option 1** would add a new subdivision to (b)(8) (as renumbered) providing a new tiered enhancement if additional people died or sustained an injury. It contains two bracketed possibilities for the enhancement. The first bracketed possibility would apply if the offense resulted in death, any degree of bodily injury[, or criminal sexual contact] to additional people. The second bracketed possibility would apply if the defendant intentionally or knowingly caused death, any degree of bodily injury[, or criminal sexual contact] to additional people. Under both possibilities, an offense would be subject to a [1]-level increase if one or two additional people died or sustained any degree of bodily injury; and an offense would be subject to a [2]-level increase if three or more people died or sustained any degree of bodily injury.

> **Option 2** would add a new subdivision to (b)(8) (as renumbered) providing a new tiered enhancement if additional people died or sustained permanent or life-threatening injury. It contains two bracketed possibilities for the enhancement. The first bracketed possibility would apply if the offense resulted in death or permanent or life-threatening bodily injury to additional people. The second bracketed possibility would apply if the defendant intentionally or knowingly caused death or permanent or life-threatening bodily injury to additional people. Under both

possibilities, an offense would be subject to a [3]-level increase if one or two additional people died or sustained permanent or life-threatening injury; and an offense would be subject to a [6]-level increase if three or more people died or sustained permanent or life-threatening injury.

Finally, the proposed amendment brackets two possibilities for adding a new cross reference at §2L1.1(c)(2) instructing courts to apply the appropriate guideline from Chapter Two, Part A, Subpart 3 depending on whether there was conduct described in 18 U.S.C. §§ 2241–2244. Under the first bracketed possibility, the cross reference would apply if the offense involved such conduct. Under the second bracketed possibility, the cross reference would apply if the defendant engaged in such conduct.

Issues for comment are also provided.

**Proposed Amendment:**

## §2L1.1.   Smuggling, Transporting, or Harboring an Unlawful Alien

(a)   Base Offense Level:

    (1)   **25**, if the defendant was convicted under 8 U.S.C. § 1327 of a violation involving an alien who was inadmissible under 8 U.S.C. § 1182(a)(3);

    (2)   **23**, if the defendant was convicted under 8 U.S.C. § 1327 of a violation involving an alien who previously was deported after a conviction for an aggravated felony; or

    (3)   **12**, otherwise.

(b)   Specific Offense Characteristics

    (1)   If (A) the offense was committed other than for profit, or the offense involved the smuggling, transporting, or harboring only of the defendant's spouse or child (or both the defendant's spouse and child), and (B) the base offense level is determined under subsection (a)(3), decrease by **3** levels.

    (2)   If the offense involved the smuggling, transporting, or harboring of six or more unlawful aliens, increase as follows:

| | NUMBER OF UNLAWFUL ALIENS SMUGGLED, TRANSPORTED, OR HARBORED | INCREASE IN LEVEL |
|---|---|---|
| (A) | [6]–~~24~~12 | add **3** |
| (B) | ~~25–99~~13–18 | add ~~6~~**[4]** |
| (C) | 19–24 | add **[5]** |
| (D) | 25–49 | add **[6]** |
| (E) | 50–99 | add **[7]** |
| (F) | 100 or more | add **9**. |

\*      \*      \*

    (5)   (Apply the Greatest):

        (A)   If a firearm was discharged, increase by **6** levels, but if the resulting offense level is less than level **22**, increase to level **22**.

        (B)   If a dangerous weapon (including a firearm) was brandished or otherwise used, increase by **4** levels, but if the resulting offense level is less than level **20**, increase to level **20**.

(C)  If a dangerous weapon (including a firearm) was possessed, increase by **2** levels, but if the resulting offense level is less than level **18**, increase to level **18**.

(6)  If the offense involved (A) concealing persons in the trunk or engine compartment of a motor vehicle, or (B) carrying substantially more passengers than the rated capacity of a motor vehicle or vessel, increase by **[2]** levels, but if the resulting offense level is less than level **18**, increase to level **18**.

(~~6~~7)  If the offense involved conduct (other than conduct for which the defendant received an enhancement under subsection (b)(5) or (b)(6)) that intentionally or recklessly ~~creating~~created a substantial risk of death or serious bodily injury (including criminal sexual abuse under 18 U.S.C. § 2241 or § 2242 or any similar offense under state law) to another person, increase by **2** levels, but if the resulting offense level is less than level **18**, increase to level **18**.

(~~7~~8) (A)  If any person died, ~~or~~ sustained bodily injury (including criminal sexual abuse under 18 U.S.C. § 2241 or § 2242 or any similar offense under state law)**[**, or was subjected to conduct constituting criminal sexual contact under 18 U.S.C. § 2244**]**, increase the offense level according to the seriousness of the injury:

| DEATH OR DEGREE OF INJURY | INCREASE IN LEVEL |
|---|---|
| (~~A~~i)  Bodily Injury **[or Criminal Sexual Contact]** | add **2** levels |
| (~~B~~ii) Serious Bodily Injury (Including Criminal Sexual Abuse) | add **4** levels |
| (~~C~~iii) Permanent or Life-Threatening Bodily Injury | add **6** levels |
| (~~D~~iv) Death | add **10** levels. |

**[Option 1 (increase for any additional injuries):**

(B)  If subsection (b)(8)(A) applies and **[the offense resulted in][the defendant intentionally or knowingly caused]** death, any degree of injury listed above**[**, or criminal sexual contact under 18 U.S.C. § 2244**]**—

(i)  to one or two additional people, increase by **[1]** level; or

(ii) to three or more additional people, increase by **[2]** levels.**]**

**[Option 2 (increase for additional deaths or permanent or life-threatening injuries):**

(B)    If subsection (b)(8)(A) applies and **[the offense resulted in][the defendant intentionally or knowingly caused]** death or permanent or life-threatening bodily injury—

(i)  to one or two additional people, increase by **[3]** levels; or

(ii) to three or more additional people, increase by **[6]** levels.**]**

**[The following changes would apply to Options 1 and 2:]**

(8̶9) (Apply the greater):

(A)    If an alien was involuntarily detained through coercion or threat, or in connection with a demand for payment, (i) after the alien was smuggled into the United States; or (ii) while the alien was transported or harbored in the United States, increase by **2** levels. If the resulting offense level is less than level **18**, increase to level **18**.

(B)    If (i) the defendant was convicted of alien harboring, (ii) the alien harboring was for the purpose of prostitution, and (iii) the defendant receives an adjustment under §3B1.1 (Aggravating Role), increase by **2** levels, but if the alien engaging in the prostitution had not attained the age of 18 years, increase by **6** levels.

(9̶10) If the defendant was convicted under 8 U.S.C. § 1324(a)(4), increase by **2** levels.

(c)    Cross Reference

(1)    If death resulted, apply the appropriate homicide guideline from Chapter Two, Part A, Subpart 1, if the resulting offense level is greater than that determined under this guideline.

(2)    If the **[offense involved][defendant engaged in]** conduct described in 18 U.S.C. §§ 2241–2244, apply the appropriate guideline from Chapter Two, Part A, Subpart 3, if the resulting offense level is greater than that determined under this guideline.

**Commentary**

**Statutory Provisions:** 8 U.S.C. §§ 1324(a), 1327. For additional statutory provision(s), *see* Appendix A (Statutory Index).

**Application Notes:**

1. **Definitions.**—For purposes of this guideline:

   "***The offense was committed other than for profit***" means that there was no payment or expectation of payment for the smuggling, transporting, or harboring of any of the unlawful aliens.

   "***Number of unlawful aliens smuggled, transported, or harbored***" does not include the defendant.

   "***Aggravated felony***" has the meaning given that term in section 101(a)(43) of the Immigration and Nationality Act (8 U.S.C. § 1101(a)(43)), without regard to the date of conviction for the aggravated felony.

   "***Child***" has the meaning set forth in section 101(b)(1) of the Immigration and Nationality Act (8 U.S.C. § 1101(b)(1)).

   "***Spouse***" has the meaning set forth in 101(a)(35) of the Immigration and Nationality Act (8 U.S.C. § 1101(a)(35)).

   "***Immigration and naturalization offense***" means any offense covered by Chapter Two, Part L.

   "***Minor***" means an individual who had not attained the age of 18 years.

   "***Parent***" means (A) a natural mother or father; (B) a stepmother or stepfather; or (C) an adoptive mother or father.

   "***Bodily injury***," "***serious bodily injury***," and "***permanent or life-threatening bodily injury***" have the meaning given those terms in the Commentary to §1B1.1 (Application Instructions).

2. **Prior Convictions Under Subsection (b)(3).**—Prior felony conviction(s) resulting in an adjustment under subsection (b)(3) are also counted for purposes of determining criminal history points pursuant to Chapter Four, Part A (Criminal History).

3. **Application of Subsection (b)(~~6~~7).**—

   (A) **Reckless Conduct.**—Reckless conduct to which the adjustment from subsection (b)(~~6~~7) applies includes a wide variety of conduct (*e.g.*, ~~transporting persons in the trunk or engine compartment of a motor vehicle; carrying substantially more passengers than the rated capacity of a motor vehicle or vessel;~~ harboring persons in a crowded, dangerous, or inhumane condition; or guiding persons through, or abandoning persons in, a dangerous or remote geographic area without adequate food, water, clothing, or protection from the elements).

   (B) **Interaction with Other Guideline Provisions.**—If subsection (b)(~~6~~7) applies solely on the basis of conduct related to fleeing from a law enforcement officer, do not apply an adjustment from §3C1.2 (Reckless Endangerment During Flight). ~~Additionally, do not apply the adjustment in subsection (b)(6) if the only reckless conduct that created a substantial risk of death or serious bodily injury is conduct for which the defendant received an enhancement under subsection (b)(5).~~

4. **[Application of Subsections (b)(7) and (b)(8) to Conduct Constituting Criminal Sexual Abuse.**—Consistent with Application Note 1(L) of §1B1.1 (Application Instructions), "serious bodily injury" is deemed to have occurred if the offense involvedIf subsection (b)(8) applies on the basis of conduct constituting criminal sexual abuse under 18 U.S.C. § 2241 or § 2242 or any similar offense under state law, then subsection (b)(7) should also apply.**]**

5. **Inapplicability of §3A1.3.**—If an enhancement under subsection (b)(89)(A) applies, do not apply §3A1.3 (Restraint of Victim).

6. **Interaction with §3B1.1.**—For the purposes of §3B1.1 (Aggravating Role), the aliens smuggled, transported, or harbored are not considered participants unless they actively assisted in the smuggling, transporting, or harboring of others. In large scale smuggling, transporting, or harboring cases, an additional adjustment from §3B1.1 typically will apply.

**Background:** This section includes the most serious immigration offenses covered under the Immigration Reform and Control Act of 1986.

\*       \*       \*

## Issues for Comment

1. The proposed amendment would amend the table at §2L1.1(b)(2) providing an enhancement based on the number of unlawful aliens involved in the offense. Is the proposed number of unlawful aliens in each category appropriate given the corresponding offense-level enhancement? Should the Commission revise the number of unlawful aliens for any of the categories? If so, what should the number of unlawful aliens be for each category? Should an enhancement apply to offenses involving fewer than six aliens? If so, what number of aliens should trigger application of the enhancement? Is the proposed level enhancement for each category appropriate? If not, what should each level enhancement be?

2. The proposed amendment brackets the possibility of amending §2L1.1(b)(8) (as renumbered) to apply a 2-level enhancement to an offense involving criminal sexual contact under 18 U.S.C. § 2244. The Commission seeks comment on whether offenses involving criminal sexual contact should receive an enhancement. If so, what level should the enhancement be?

3. The proposed amendment provides two options for adding an enhancement at §2L1.1(b)(8)(B) (as renumbered) that would apply if there were multiple deaths or injuries. Option 1, which would apply if there were multiple people who sustained an injury of any type covered under the existing table in subsection (b)(8)(A) (as renumbered), would apply a [1]-level enhancement if there were one or two additional injured persons, or a [2]-level enhancement if there were three or more injured persons. Option 2, which would apply if there were multiple people who died or sustained a permanent or life-threatening bodily injury, would apply a [3]-level enhancement if one or two people died or sustained such an injury, or a [6]-level enhancement if three or more people died or sustained such an injury. Both options

bracket the possibility of either making the enhancement offense-based or defendant-based. The Commission seeks comment on the following:

(A)     Does either of the options appropriately account for offenses resulting in multiple deaths or injuries? Do the enhancements appropriately account for the severity of any additional injuries?

(B)     Should the enhancement be either offense-based or defendant-based, or should the Commission consider another approach? If the enhancement is defendant-based, should the Commission include the *mens rea* requirement that the defendant "intentionally or knowingly" caused the injury?

(C)     Is there another approach the Commission should consider? For example, should the Commission create an enhancement that treats an offense resulting in multiple injuries of a lesser degree the same as an offense resulting in fewer, but more severe, injuries? If so, how should that enhancement work?

4.     The Commission seeks comment on whether it should add—either in addition to or in lieu of the changes in the proposed amendment—a specific offense characteristic to §2L1.1 to further address the risks associated with human smuggling offenses committed by members of transnational criminal organizations. For example, should the Commission add a specific offense characteristic providing an enhancement if the defendant "committed the offense in connection with the defendant's participation in an organization, knowing [or with reckless disregard of the fact] that the organization was a transnational criminal organization (as defined in 21 U.S.C. § 2341(5))"? The Commission seeks comment on the following:

(A)     Should the Commission add a specific offense characteristic to §2L1.1 addressing transnational criminal organizations, such as the language proposed above? If so, at what level should the Commission set the enhancement?

(B)     The proposed language above would apply to offenses involving a "transnational criminal organization," as defined in 21 U.S.C. § 2341(5). That statutory definition comprises three subsections, each describing a type of criminal organization. Is this an appropriate definition for purposes of the proposed enhancement? If so, should the Commission use the full statutory definition, or should the Commission use only part of the statutory definition? Should the Commission use a different definition? If so, what definition should the Commission use? Alternatively, should the Commission limit application of the enhancement to specifically enumerated criminal organizations, such as those listed in 21 U.S.C. § 2341(5)(B) or a list of organizations specifically identified by the Commission?

(C)     The proposed language above would apply to a defendant who participates in a transnational criminal organization. Should the Commission limit application of the enhancement to a defendant who receives an adjustment

under §3B1.1 (Aggravating Role), or who holds a leadership or organizing role (or some other role) within a transnational criminal organization?

(D)     The proposed language would include a requirement that the defendant participated in an organization "knowing [or with reckless disregard of the fact]" that the organization was a transnational criminal organization. Is this *mens rea* requirement appropriate, or should the Commission revise or remove the requirement?

(E)     If the Commission were to promulgate a new specific offense characteristic related to transnational criminal organizations, could it result in unwarranted sentencing disparities? If so, how should the Commission address those disparities?

5.     Are there any other aggravating or mitigating circumstances in cases sentenced under §2L1.1 that the Commission should address? If so, what are those circumstances, and how might the Commission account for them?



# Proposed Amendments to the Sentencing Guidelines

# December 12, 2025

**Closing Date for Public Comment: February 10, 2026**

This compilation contains unofficial text of proposed amendments to the sentencing guidelines, policy statements, and official commentary, and is provided only for the convenience of the user in the preparation of public comment. Official text of the proposed amendments can be found on the Commission's website at www.ussc.gov and will appear in the December 19, 2025, edition of the Federal Register.

The proposed amendments and issues for comment will be subject to a public comment period running through **February 10, 2026**. Public comment received after the close of the comment period may not be considered. All written comment should be sent to the Commission via any of the following two methods: (1) comments may be submitted electronically via the Commission's Public Comment Submission Portal at https://comment.ussc.gov; or (2) comments may be submitted by mail to the following address: United States Sentencing Commission, One Columbus Circle, N.E., Suite 2-500, Washington, D.C. 20002-8002, Attention: Public Affairs – Proposed Amendments. For further information, see the full contents of the official notice published in the Federal Register (available at www.ussc.gov).

## TABLE OF CONTENTS

**PROPOSED AMENDMENT**                                                      **PAGE NO.**

1. DRUG OFFENSES ........................................................................................  1

2. INFLATIONARY ADJUSTMENTS ............................................................ 43

3. ECONOMIC CRIMES ............................................................................ 57

4. POST-OFFENSE REHABILITATION ADJUSTMENT ..................................... 83

5. MULTIPLE COUNTS ............................................................................ 89

6. SIMPLIFICATION ...............................................................................129

7. SOPHISTICATED MEANS .....................................................................155

8. MISCELLANEOUS ..............................................................................169

9. TECHNICAL ......................................................................................181

### SUPPLEMENTARY INFORMATION

Publication of a proposed amendment requires the affirmative vote of at least three voting members of the Commission and is deemed to be a request for public comment on the proposed amendment. *See* Rules 2.2 and 4.4 of the Commission's Rules of Practice and Procedure. In contrast, the affirmative vote of at least four voting members is required to promulgate an amendment and submit it to Congress. *See* Rule 2.2; 28 U.S.C. § 994(p).

The proposed amendments in this document are presented in one of two formats. First, some of the amendments are proposed as specific revisions to a guideline or commentary. Bracketed text within a proposed amendment indicates a heightened interest on the Commission's part in comment and suggestions regarding alternative policy choices; for example, a proposed enhancement of [2][4][6] levels indicates that the Commission is considering, and invites comment on, alternative policy choices regarding the appropriate level of enhancement. Similarly, bracketed text within a specific offense characteristic or application note means that the Commission specifically invites comment on whether the proposed provision is appropriate. Second, the Commission has highlighted certain issues for comment and invites suggestions on how the Commission should respond to those issues.

In addition to the issues for comment set forth in the proposed amendments, the Commission requests public comment regarding whether, pursuant to 18 U.S.C. § 3582(c)(2) and 28 U.S.C. § 994(u), any proposed amendment published in this document should be included in subsection (d) of §1B1.10 (Reduction in Term of Imprisonment as a Result of Amended Guideline Range (Policy Statement)) as an amendment that may be applied retroactively to previously sentenced defendants. The Commission lists in §1B1.10(d) the specific guideline amendments that the court may apply retroactively under 18 U.S.C. § 3582(c)(2). The background commentary to §1B1.10 lists the purpose of the amendment, the magnitude of the change in the guideline range made by the amendment, and the difficulty of applying the amendment retroactively to determine an amended guideline range under §1B1.10(b) as among the factors the Commission considers in selecting the amendments included in §1B1.10(d). To the extent practicable, public comment should address each of these factors.

Additional information pertaining to the proposed amendments described in this document may be accessed through the Commission's website at www.ussc.gov.

## 2025–2026 PROPOSED AMENDMENTS TO THE SENTENCING GUIDELINES, POLICY STATEMENTS, AND OFFICIAL COMMENTARY

### 1.    PROPOSED AMENDMENT:    DRUG OFFENSES

**Synopsis of Proposed Amendment:** In August 2025, the Commission identified as one of its policy priorities for the amendment cycle ending May 1, 2026, "[f]urther examination of the penalty structure for certain drug trafficking offenses under § 2D1.1 (Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses))," including "consideration of possible amendments addressing the purity distinctions for methamphetamine provided in the Drug Quantity Table and related application notes" and "consideration of other miscellaneous issues pertaining to drug trafficking offenses coming to the Commission's attention, such as statutory changes relating to fentanyl, sentencing enhancements for offenses involving fentanyl, and other fentanyl-related issues." U.S. Sent'g Comm'n, "Notice of Final Priorities," 90 FR 39263 (Aug. 14, 2025).

This proposed amendment contains three parts (Parts A, B, and C). The Commission is considering whether to promulgate any or all of these parts, as they are not mutually exclusive.

**Part A** of the proposed amendment sets forth two options for amending §2D1.1 to address the purity distinction between methamphetamine in "actual" form and methamphetamine as part of a mixture. It would also amend §2D1.1 to address offenses involving "Ice." Issues for comment are also included.

**Part B** of the proposed amendment would amend §2D1.1 to address the enactment of the Halt All Lethal Trafficking of Fentanyl Act (HALT Fentanyl Act), which permanently scheduled "fentanyl-related substances." An issue for comment is also provided.

**Part C** of the proposed amendment would amend §2D1.1 to add new enhancements for offenses involving fentanyl and fentanyl analogues. Issues for comment are also provided.

## (A)  Methamphetamine

**Synopsis of Proposed Amendment:** Part A of the proposed amendment sets forth two options for amending §2D1.1 to address the purity distinction between methamphetamine in "actual" form and methamphetamine as part of a mixture. Part A of the proposed amendment also addresses offenses involving "Ice." Both options in Part A aim to update the *Guidelines Manual*'s treatment of methamphetamine to reflect the evolving nature of methamphetamine trafficking, while addressing the concerns that animated Congress's decision to set mandatory minimum penalties for certain methamphetamine trafficking offenses.

*Statutory History of Methamphetamine Trafficking Offenses*

The statutory provisions and penalties associated with the trafficking of methamphetamine are found at 21 U.S.C. §§ 841 and 960. While the statutory penalties for most drug types are based solely on drug quantity, the statutory penalties for methamphetamine are also based on the purity of the substance involved in the offense. Sections 841 and 960 contain quantity threshold triggers for five- and ten-year mandatory minimums for methamphetamine (actual) (*i.e.*, "pure" methamphetamine) and methamphetamine (mixture) (*i.e.*, "a mixture or substance containing a detectable amount of methamphetamine"). *See* 21 U.S.C. §§ 841(b)(1)(A)(viii), (B)(viii), 960(b)(1)(H), & 960(b)(2)(H). Two different 10-to-1 quantity ratios set the mandatory minimum penalties for methamphetamine trafficking offenses. First, the quantity of substance triggering the ten-year minimum is ten times the quantity triggering the five-year minimum. Second, the quantity of methamphetamine mixture triggering each mandatory minimum is set at ten times the quantity of methamphetamine (actual) triggering the same statutory minimum penalty.

These penalties stem from action taken by Congress in 1988 and 1998 to address methamphetamine trafficking offenses. The record for the Anti-Drug Abuse Act of 1988 suggests that Congress endeavored to compare methamphetamine with other drugs in deciding the appropriate mandatory minimum threshold quantities, ultimately determining that methamphetamine "is a serious and common drug of abuse, comparable in dangerousness to other controlled substances" listed in the Anti-Drug Abuse Act of 1986. *See* 134 Cong. Rec. S17,367 (daily ed. Nov. 10, 1988). Specifically, Congress cited the Department of Justice's determination that the "quantity of methamphetamine that justifies these penalties is the same as that currently set forth for PCP"—the only drug in the Anti-Drug Abuse Act of 1986 that had a purity distinction. *Id.* Over the next ten years, Congress considered changes to the statutory penalties for methamphetamine, frequently invoking comparisons between methamphetamine and crack cocaine in terms of the dangers and harms associated with the two drugs. With the Methamphetamine Trafficking Penalty Enhancement Act of 1998, Congress halved the quantities of methamphetamine set forth in the 1988 Act to the quantity threshold triggers that apply today. In doing so, it enacted mandatory minimum quantity thresholds for methamphetamine (actual) that matched those in place at the time for crack cocaine. Although the statutory penalties for crack cocaine have changed, the same statutory penalties for methamphetamine remain in place, and as explained below, the methamphetamine trafficking guidelines are linked to those penalties.

*Guideline History of Methamphetamine Trafficking Offenses*

Under §2D1.1, the base offense level for offenses involving methamphetamine varies based on the purity of the substance. Specifically, the Drug Quantity Table at §2D1.1(c) contains three different entries relating to methamphetamine: (1) "Methamphetamine," which refers to the entire weight of a mixture or substance containing a detectable amount of methamphetamine; (2) "Methamphetamine (actual)," which refers to the weight of methamphetamine itself contained in a mixture or substance; and (3) "Ice," which is defined as "a mixture or substance containing d-methamphetamine hydrochloride of at least 80% purity" (*see* USSG §2D1.1(c) (Note C)). The Drug Quantity Table sets base offense levels for methamphetamine mixture and methamphetamine (actual) in a manner that reflects the 10:1 quantity ratio of the applicable statutory provisions, such that it takes ten times more methamphetamine mixture than methamphetamine (actual) to trigger the same base offense level.

Although "Ice" is included in the guidelines, the term "Ice" does not appear in the statutory provisions setting penalties for methamphetamine offenses. "Ice" was added to the guidelines in response to the Crime Control Act of 1990, which directed the Commission to amend the guidelines "for offenses involving smokable crystal methamphetamine . . . so that convictions for [such offenses] will be assigned an offense level . . . two levels above that which would have been assigned to the same offense involving other forms of methamphetamine." *See* Pub. L. No. 101–67, §2701 (1990). The 1990 Act did not, however, define "smokable crystal methamphetamine," and the Commission and commenters struggled to determine its meaning. Ultimately, the Commission responded to the Act by adding "Ice" to the Drug Quantity Table—even though the 1990 Act did not use that term—and developed a definition of "Ice" based on the type and purity of methamphetamine. *See* USSG App. C, amend. 370 (effective Nov. 1, 1991). The Commission set the base offense levels for quantities of "Ice" equal to the base offense levels for the same quantities of methamphetamine (actual).

*Evolving Nature of Methamphetamine Trafficking*

As explained in a recent report published by the Commission, there have been changes to the trends in methamphetamine trafficking in the last two decades. When Congress established the different statutory penalties for methamphetamine (actual) and methamphetamine mixture in the Anti-Drug Abuse Act of 1988, the average purity of the methamphetamine being trafficked in the United States was seldom greater than 50 percent. At the time, individuals sentenced for trafficking highly pure methamphetamine were considered to have a higher function in a drug distribution chain, and therefore greater culpability in the offense. Since then, however, the purity of the methamphetamine trafficked in the United States has increased substantially, and it is now rare to find methamphetamine that tests lower than 90 percent pure. *See* U.S. SENT'G COMM'N, METHAMPHETAMINE TRAFFICKING OFFENSES IN THE FEDERAL CRIMINAL JUSTICE SYSTEM 3 (2024) at https://www.ussc.gov/research/research-reports/methamphetamine-trafficking-offenses-federal-criminal-justice-system.

Commission data further shows that the average purity of methamphetamine does not vary significantly based on the function of the individual drug trafficker. The Commission's report showed that high-level suppliers had drugs that were, on average, 95.2 percent pure, and drug organization employees had methamphetamine that was 93.3 percent pure. Likewise, an individual's function varied little by the primary type of methamphetamine involved in the offense, with the exception of the function of a drug courier. The rate of individuals sentenced for trafficking methamphetamine (actual) that acted as couriers (31.3%) was twice that compared to either methamphetamine mixture (13.5%) or "Ice" (13.8%).

While the nature of methamphetamine trafficking has evolved, so too has the methamphetamine trafficking caseload. Since fiscal year 2002, the number of offenses involving methamphetamine mixture has remained relatively steady, but the number of offenses involving methamphetamine (actual) and "Ice" has risen substantially. Offenses involving methamphetamine (actual) increased 299 percent from 910 offenses in fiscal year 2002 to 3,634 offenses in fiscal year 2022. As a result, in fiscal year 2022, methamphetamine (actual) accounted for more than half (52.2%) of all methamphetamine cases. Offenses involving "Ice" also have risen during the past 20 years. In fiscal year 2002, there were 88 offenses involving "Ice" in the federal caseload; that number rose by 881 percent to 863 offenses in fiscal year 2022. Offenses involving "Ice" now make up more than ten percent (12.4%) of all methamphetamine cases. Offenses involving methamphetamine mixture comprise roughly a third (35.4%) of all methamphetamine cases. *See id.* at 4, 9, 18, 32–33, 38–39, 52.

*Feedback from Stakeholders*

The Commission has received significant comment regarding §2D1.1's methamphetamine purity distinction, including in response to a proposed amendment the Commission published last year. *See* Public Comment on 2025 Proposed Amendments (March 2025) at https://www.ussc.gov/policymaking/public-comment/public-comment-2025-proposed-amendments. Some commenters suggested that the Commission should revisit or eliminate the disparity in §2D1.1's treatment of methamphetamine mixture, on the one hand, and methamphetamine (actual) and "Ice," on the other. Most of these commenters stated that purity is no longer an accurate measure of offense culpability because methamphetamine today is highly and uniformly pure and that "Ice" cases do not involve a higher level of purity than other forms of methamphetamine. Some of these commenters also pointed to disparities in testing practices across judicial districts, which, in turn, have yielded disparate sentences.

The commenters diverged, however, on the action the Commission should take to address the 10:1 quantity ratio for methamphetamine mixture and methamphetamine (actual). Some commenters supported setting base offense levels for all methamphetamine at the level of methamphetamine mixture or some lower level, such as at the level of cocaine. Other commenters supported setting base offense levels for all methamphetamine at the level of methamphetamine (actual). Still other commenters suggested that the Commission set the base offense levels at a level in between methamphetamine mixture and methamphetamine (actual), and recommended that the Commission undertake additional study of the issues. The Commission has since held a hearing to study methamphetamine, including its chemical structure, pharmacological effects, trafficking patterns, and

community impact, and the differences, if any, between methamphetamine of varying purity levels.

*Proposed Amendment*

Part A of the proposed amendment would amend §2D1.1 to address offenses involving "Ice" and the purity distinction between methamphetamine in "actual" form and methamphetamine as part of a mixture. Part A contains two options to address the purity distinction, both of which aim to respond to changes in methamphetamine trafficking and continue to reflect the dangers and harms identified by Congress when it set mandatory minimum penalties for these offenses.

*Revisions Relating to Methamphetamine Purity Distinction*

Part A of the proposed amendment sets forth two options to address the 10:1 quantity ratio for methamphetamine mixture and methamphetamine (actual).

**Option 1** would set the same quantity thresholds for all methamphetamine offenses. It would delete all references to "methamphetamine (actual)" from the Drug Quantity Table at §2D1.1(c) and the Drug Conversion Tables at Application Note 8(D). The weight of the mixture or substance containing methamphetamine that triggers the base offense levels would then be the entire weight of any mixture or substance containing a detectable amount of methamphetamine. Option 1 brackets four alternatives for the quantity thresholds for methamphetamine: (1) quantity thresholds matching the current quantity thresholds for methamphetamine mixture; (2) quantity thresholds matching those of fentanyl; (3) quantity thresholds matching those of cocaine base; and (4) quantity thresholds matching the current quantity thresholds for methamphetamine (actual). This approach would simplify §2D1.1 by reducing the number of methamphetamine entries in the Drug Quantity Table and Drug Conversion Tables, while reflecting how methamphetamine trafficking has changed.

**Option 2** would maintain different base offense levels for different methamphetamine offenses. It would set the baseline quantity thresholds for methamphetamine at a level between the current quantity thresholds for methamphetamine mixture and methamphetamine (actual). Option 2 brackets setting the baseline quantity thresholds for methamphetamine at the same level as cocaine base. The base offense level may be either reduced to the current base offense levels for methamphetamine mixture and its corresponding quantity thresholds if [1][2][3] or more of certain factors apply, or heightened to the current base offense levels for methamphetamine (actual) and its corresponding quantity thresholds if [1][2][3] or more of certain factors apply. Both lists of factors are set forth in the Notes to the Drug Quantity Table. These factors would reflect the concerns that animated Congress when it set the statutory minimum penalties for methamphetamine trafficking offenses.

Issues for comment for these revisions are also provided.

*Revisions Relating to "Ice"*

Part A of the proposed amendment would amend the Drug Quantity Table at §2D1.1(c) and the Drug Equivalency Tables at Application Note 8(D) of the Commentary to §2D1.1 to delete all references to "Ice." In addition, it would add a new specific offense characteristic at §2D1.1(b)(19) that provides a [2]-level reduction if the offense involved only methamphetamine in a non-smokable, non-crystalline form, which would continue to ensure compliance with Congress's directive that "convictions for offenses involving smokable crystal methamphetamine will be assigned an offense level under the guidelines which is two levels above" other forms of methamphetamine.

An issue for comment relating to these revisions is also provided.

**Proposed Amendment:**

### §2D1.1.  Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses); Attempt or Conspiracy

(a)    Base Offense Level (Apply the greatest):

*        *        *

(5)    the offense level specified in the Drug Quantity Table set forth in subsection (c), except that if (A) the defendant receives an adjustment under §3B1.2 (Mitigating Role); and (B) the base offense level under subsection (c) is (i) level **32**, decrease by **2** levels; (ii) level **34**, decrease by **3** levels; or (iii) above level **34**, decrease to level **32**. If the resulting offense level is greater than level **30** and the defendant receives the **4**-level reduction in §3B1.2(a), decrease to level **30**.

(b)    Specific Offense Characteristics

(1)    If a dangerous weapon (including a firearm) was possessed, increase by **2** levels.

(2)    If the defendant used violence, made a credible threat to use violence, or directed the use of violence, increase by **2** levels.

(3)    If the defendant unlawfully imported or exported a controlled substance under circumstances in which (A) an aircraft other than a regularly scheduled commercial air carrier was used to import or export the controlled substance, (B) a submersible vessel or semi-submersible vessel as described in 18 U.S.C. § 2285 was used, or (C) the defendant acted as a pilot, copilot, captain, navigator, flight officer, or any other operation officer aboard any craft or vessel

carrying a controlled substance, increase by **2** levels. If the resulting offense level is less than level **26**, increase to level **26**.

(4)     If the object of the offense was the distribution of a controlled substance in a prison, correctional facility, or detention facility, increase by **2** levels.

(5)     If (A) the offense involved the importation of amphetamine or methamphetamine or the manufacture of amphetamine or methamphetamine from listed chemicals that the defendant knew were imported unlawfully, and (B) the defendant is not subject to an adjustment under §3B1.2 (Mitigating Role), increase by **2** levels.

(6)     If the defendant is convicted under 21 U.S.C. § 865, increase by **2** levels.

(7)     If the defendant, or a person for whose conduct the defendant is accountable under §1B1.3 (Relevant Conduct), distributed a controlled substance through mass-marketing by means of an interactive computer service, increase by **2** levels.

(8)     If the offense involved the distribution of an anabolic steroid and a masking agent, increase by **2** levels.

(9)     If the defendant distributed an anabolic steroid to an athlete, increase by **2** levels.

(10)   If the defendant was convicted under 21 U.S.C. § 841(g)(1)(A), increase by **2** levels.

(11)   If the defendant bribed, or attempted to bribe, a law enforcement officer to facilitate the commission of the offense, increase by **2** levels.

(12)   If the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance, increase by **2** levels.

(13)   If the defendant (A) knowingly misrepresented or knowingly marketed as another substance a mixture or substance containing fentanyl (N-phenyl-N-[1-(2-phenylethyl )-4-piperidinyl] propanamide) or a fentanyl analogue, increase by **4** levels; or (B) represented or marketed as a legitimately manufactured drug another mixture or substance containing fentanyl (N-phenyl-N-[1-(2-phenylethyl )-4-piperidinyl] propanamide) or a fentanyl analogue, with reckless disregard that such mixture or substance was not the legitimately manufactured drug, increase by **2** levels. The term "***drug***," as used in

subsection (b)(13)(B), has the meaning given that term in 21 U.S.C. § 321(g)(1).

(14) (Apply the greatest):

(A) If the offense involved (i) an unlawful discharge, emission, or release into the environment of a hazardous or toxic substance; or (ii) the unlawful transportation, treatment, storage, or disposal of a hazardous waste, increase by **2** levels.

(B) If the defendant was convicted under 21 U.S.C. § 860a of distributing, or possessing with intent to distribute, methamphetamine on premises where a minor is present or resides, increase by **2** levels. If the resulting offense level is less than level **14**, increase to level **14**.

(C) If—

(i) the defendant was convicted under 21 U.S.C. § 860a of manufacturing, or possessing with intent to manufacture, methamphetamine on premises where a minor is present or resides; or

(ii) the offense involved the manufacture of amphetamine or methamphetamine and the offense created a substantial risk of harm to (I) human life other than a life described in subparagraph (D); or (II) the environment,

increase by **3** levels. If the resulting offense level is less than level **27**, increase to level **27**.

(D) If the offense (i) involved the manufacture of amphetamine or methamphetamine; and (ii) created a substantial risk of harm to the life of a minor or an incompetent, increase by **6** levels. If the resulting offense level is less than level **30**, increase to level **30**.

(15) If (A) the offense involved the cultivation of marihuana on state or federal land or while trespassing on tribal or private land; and (B) the defendant receives an adjustment under §3B1.1 (Aggravating Role), increase by **2** levels.

(16) If the defendant receives an adjustment under §3B1.1 (Aggravating Role) and the offense involved 1 or more of the following factors:

(A) (i) the defendant used fear, impulse, friendship, affection, or some combination thereof to involve another individual in the

illegal purchase, sale, transport, or storage of controlled substances, (ii) the individual received little or no compensation from the illegal purchase, sale, transport, or storage of controlled substances, and (iii) the individual had minimal knowledge of the scope and structure of the enterprise;

(B) the defendant, knowing that an individual was (i) less than 18 years of age, (ii) 65 or more years of age, (iii) pregnant, or (iv) unusually vulnerable due to physical or mental condition or otherwise particularly susceptible to the criminal conduct, distributed a controlled substance to that individual or involved that individual in the offense;

(C) the defendant was directly involved in the importation of a controlled substance;

(D) the defendant engaged in witness intimidation, tampered with or destroyed evidence, or otherwise obstructed justice in connection with the investigation or prosecution of the offense;

(E) the defendant committed the offense as part of a pattern of criminal conduct engaged in as a livelihood,

increase by **2** levels.

(17) If the defendant receives the **4**-level reduction in §3B1.2(a) and the offense involved all of the following factors:

(A) the defendant was motivated by an intimate or familial relationship or by threats or fear to commit the offense and was otherwise unlikely to commit such an offense;

(B) the defendant received no monetary compensation from the illegal purchase, sale, transport, or storage of controlled substances; and

(C) the defendant had minimal knowledge of the scope and structure of the enterprise,

decrease by **2** levels.

(18) If the defendant meets the criteria set forth in paragraphs (1)–(5) of subsection (a) of §5C1.2 (Limitation on Applicability of Statutory Minimum Sentences in Certain Cases), decrease by **2** levels.

(19) If the offense involved only methamphetamine in a non-smokable, non-crystalline form, decrease by **[2]** levels.

[Subsection (c) (Drug Quantity Table) is set forth after subsection (e) (Special Instruction).]

(d)    Cross References

    (1)    If a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime jurisdiction of the United States, apply §2A1.1 (First Degree Murder) or §2A1.2 (Second Degree Murder), as appropriate, if the resulting offense level is greater than that determined under this guideline.

    (2)    If the defendant was convicted under 21 U.S.C. § 841(b)(7) (of distributing a controlled substance with intent to commit a crime of violence), apply §2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to the crime of violence that the defendant committed, or attempted or intended to commit, if the resulting offense level is greater than that determined above.

(e)    Special Instructions

    (1)    If (A) subsection (d)(2) does not apply; and (B) the defendant committed, or attempted to commit, a sexual offense against another individual by distributing, with or without that individual's knowledge, a controlled substance to that individual, an adjustment under §3A1.1(b)(1) shall apply.

    (2)    Application of §3B1.2 (Mitigating Role) to §2D1.1 Cases

        (A)    Determine whether an adjustment under §3B1.2 (Mitigating Role) applies.

        (B)    In addition to the circumstances identified in §3B1.2, an adjustment under §3B1.2 is generally warranted if the defendant's primary function in the offense was performing a low-level trafficking function.

           (i)    An adjustment under §3B1.2(a) is generally warranted if the defendant's primary function in the offense was plainly among the lowest level of drug trafficking functions, such as serving as a courier, running errands, sending or receiving phone calls or messages, or acting as a lookout; or

Proposed Amendment:  Drug Offenses

(ii)    an adjustment under §3B1.2(b) is generally warranted if the defendant's primary function in the offense was performing another low-level trafficking function, such as distributing controlled substances in user-level quantities for little or no monetary compensation or with a primary motivation other than profit (*e.g.*, the defendant was otherwise unlikely to commit such an offense and was motivated by an intimate or familial relationship, or by threats or fear to commit the offense).

For purposes of subsection (e)(2)(B), the provisions of §3B1.2 apply in determining whether a mitigating role adjustment is warranted, except that the adjustment shall apply regardless of whether the offense involved other participants in addition to the defendant, and regardless of whether the defendant was substantially less culpable than the average participant in the criminal activity. The extent of the adjustment shall be based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case.

(C)    The mitigating role provisions at subsection (a)(5) and the 2-level reduction at subsection (b)(17) apply regardless of whether the defendant receives the required adjustment from §3B1.2 (Mitigating Role) by direct application of §3B1.2 or by use of the special instruction in subsection (e)(2)(B).

## (c) DRUG QUANTITY TABLE

| CONTROLLED SUBSTANCES AND QUANTITY* | BASE OFFENSE LEVEL |
|---|---|

(1)    ● 90 KG or more of Heroin;                                         **Level 38**
  ● 450 KG or more of Cocaine;
  ● 25.2 KG or more of Cocaine Base;
  ● 90 KG or more of PCP, or 9 KG or more of PCP (actual);

**[Option 1 (Using a single entry for methamphetamine):**
  ● [45][36][25.2][4.5] KG or more of Methamphetamine, or
    4.5 KG or more of Methamphetamine (actual), or
    4.5 KG or more of "Ice";]

**[Option 2 (Using different entries for methamphetamine):**
  ● 45 KG or more of Methamphetamine (when reduced base offense level applies under Note (L) below), or
    4.5 KG or more of Methamphetamine (actual when heightened base offense level applies under Note (M) below), or
    [25.2] KG or more of Methamphetamine (in any other case)
    4.5 KG or more of "Ice";]

December 12, 2025  |  11

- 45 KG or more of Amphetamine, or
    4.5 KG or more of Amphetamine (actual);
- 900 G or more of LSD;
- 36 KG or more of Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] Propanamide);
- 9 KG or more of a Fentanyl Analogue;
- 90,000 KG or more of Marihuana;
- 18,000 KG or more of Hashish;
- 1,800 KG or more of Hashish Oil;
- 90,000,000 units or more of Ketamine;
- 90,000,000 units or more of Schedule I or II Depressants;
- 5,625,000 units or more of Flunitrazepam;
- 90,000 KG or more of ***Converted Drug Weight***.

(2)
- At least 30 KG but less than 90 KG of Heroin;               **Level 36**
- At least 150 KG but less than 450 KG of Cocaine;
- At least 8.4 KG but less than 25.2 KG of Cocaine Base;
- At least 30 KG but less than 90 KG of PCP, or
    at least 3 KG but less than 9 KG of PCP (actual);

**[Option 1 (Using a single entry for methamphetamine):**
- At least **[**15 KG but less than 45 KG**][**12 KG but less than 36 KG**][**8.4 KG but less than 25.2 KG**][**1.5 KG but less than 4.5 KG**]** of Methamphetamine, ~~or~~
    ~~at least 1.5 KG but less than 4.5 KG of Methamphetamine (actual), or~~
    ~~at least 1.5 KG but less than 4.5 KG of "Ice";~~**]**

**[Option 2 (Using different entries for methamphetamine):**
- At least 15 KG but less than 45 KG of Methamphetamine (when reduced base offense level
    applies under Note (L) below), or
    at least 1.5 KG but less than 4.5 KG of Methamphetamine (~~actual~~when heightened base
    offense level applies under Note (M) below), or
    at least **[**8.4 KG but less than 25.2 KG**]** of Methamphetamine (in any other case)
    ~~at least 1.5 KG but less than 4.5 KG of "Ice";~~**]**

- At least 15 KG but less than 45 KG of Amphetamine, or
    at least 1.5 KG but less than 4.5 KG of Amphetamine (actual);
- At least 300 G but less than 900 G of LSD;
- At least 12 KG but less than 36 KG of Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl]
    Propanamide);
- At least 3 KG but less than 9 KG of a Fentanyl Analogue;
- At least 30,000 KG but less than 90,000 KG of Marihuana;
- At least 6,000 KG but less than 18,000 KG of Hashish;
- At least 600 KG but less than 1,800 KG of Hashish Oil;
- At least 30,000,000 units but less than 90,000,000 units of Ketamine;
- At least 30,000,000 units but less than 90,000,000 units of Schedule I or II Depressants;
- At least 1,875,000 units but less than 5,625,000 units of Flunitrazepam;
- At least 30,000 KG but less than 90,000 KG of ***Converted Drug Weight***.

(3)
- At least 10 KG but less than 30 KG of Heroin;               **Level 34**
- At least 50 KG but less than 150 KG of Cocaine;
- At least 2.8 KG but less than 8.4 KG of Cocaine Base;
- At least 10 KG but less than 30 KG of PCP, or

Proposed Amendment:  Drug Offenses

at least 1 KG but less than 3 KG of PCP (actual);

**[Option 1 (Using a single entry for methamphetamine):**
- At least **[**5 KG but less than 15 KG**][**4 KG but less than 12 KG**][**2.8 KG but less than 8.4 KG**][**500 G but less than 1.5 KG**]** of Methamphetamine, or
  at least 500 G but less than 1.5 KG of Methamphetamine (actual), or
  at least 500 G but less than 1.5 KG of "Ice";**]**

**[Option 2 (Using different entries for methamphetamine):**
- At least 5 KG but less than 15 KG of Methamphetamine (when reduced base offense level applies under Note (L) below), or
  at least 500 G but less than 1.5 KG of Methamphetamine (actualwhen heightened base offense level applies under Note (M) below), or
  at least **[**2.8 KG but less than 8.4 KG**]** of Methamphetamine (in any other case)
  at least 500 G but less than 1.5 KG of "Ice";**]**
- At least 5 KG but less than 15 KG of Amphetamine, or
  at least 500 G but less than 1.5 KG of Amphetamine (actual);
- At least 100 G but less than 300 G of LSD;
- At least 4 KG but less than 12 KG of Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] Propanamide);
- At least 1 KG but less than 3 KG of a Fentanyl Analogue;
- At least 10,000 KG but less than 30,000 KG of Marihuana;
- At least 2,000 KG but less than 6,000 KG of Hashish;
- At least 200 KG but less than 600 KG of Hashish Oil;
- At least 10,000,000 but less than 30,000,000 units of Ketamine;
- At least 10,000,000 but less than 30,000,000 units of Schedule I or II Depressants;
- At least 625,000 but less than 1,875,000 units of Flunitrazepam;
- At least 10,000 KG but less than 30,000 KG of *Converted Drug Weight*.

(4)  
- At least 3 KG but less than 10 KG of Heroin;                    **Level 32**
- At least 15 KG but less than 50 KG of Cocaine;
- At least 840 G but less than 2.8 KG of Cocaine Base;
- At least 3 KG but less than 10 KG of PCP, or
  at least 300 G but less than 1 KG of PCP (actual);

**[Option 1 (Using a single entry for methamphetamine):**
- At least **[**1.5 KG but less than 5 KG**][**1.2 KG but less than 4 KG**][**840 G but less than 2.8 KG**][**150 G but less than 500 G**]** of Methamphetamine, or
  at least 150 G but less than 500 G of Methamphetamine (actual), or
  at least 150 G but less than 500 G of "Ice";**]**

**[Option 2 (Using different entries for methamphetamine):**
- At least 1.5 KG but less than 5 KG of Methamphetamine (when reduced base offense level applies under Note (L) below), or
  at least 150 G but less than 500 G of Methamphetamine (actualwhen heightened base offense level applies under Note (M) below), or
  at least **[**840 G but less than 2.8 KG**]** of Methamphetamine (in any other case)
  at least 150 G but less than 500 G of "Ice";**]**

- At least 1.5 KG but less than 5 KG of Amphetamine, or
  at least 150 G but less than 500 G of Amphetamine (actual);
- At least 30 G but less than 100 G of LSD;

Proposed Amendment:  Drug Offenses

---

- At least 1.2 KG but less than 4 KG of Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] Propanamide);
- At least 300 G but less than 1 KG of a Fentanyl Analogue;
- At least 3,000 KG but less than 10,000 KG of Marihuana;
- At least 600 KG but less than 2,000 KG of Hashish;
- At least 60 KG but less than 200 KG of Hashish Oil;
- At least 3,000,000 but less than 10,000,000 units of Ketamine;
- At least 3,000,000 but less than 10,000,000 units of Schedule I or II Depressants;
- At least 187,500 but less than 625,000 units of Flunitrazepam;
- At least 3,000 KG but less than 10,000 KG of **Converted Drug Weight**.

(5)
- At least 1 KG but less than 3 KG of Heroin;                                        **Level 30**
- At least 5 KG but less than 15 KG of Cocaine;
- At least 280 G but less than 840 G of Cocaine Base;
- At least 1 KG but less than 3 KG of PCP, or
  at least 100 G but less than 300 G of PCP (actual);

**[Option 1 (Using a single entry for methamphetamine):**
- At least **[**500 G but less than 1.5 KG**][**400 G but less than 1.2 KG**][**280 G but less than 840 G**] [**50 G but less than 150 G**]** of Methamphetamine, ~~or~~
  ~~at least 50 G but less than 150 G of Methamphetamine (actual), or~~
  ~~at least 50 G but less than 150 G of "Ice";~~**]**

**[Option 2 (Using different entries for methamphetamine):**
- At least 500 G but less than 1.5 KG of Methamphetamine (when reduced base offense level applies under Note (L) below), or
  at least 50 G but less than 150 G of Methamphetamine (~~actual~~when heightened base offense level applies under Note (M) below), or
  at least **[**280 G but less than 840 G**]** of Methamphetamine (in any other case)
  ~~at least 50 G but less than 150 G of "Ice";~~**]**

- At least 500 G but less than 1.5 KG of Amphetamine, or
  at least 50 G but less than 150 G of Amphetamine (actual);
- At least 10 G but less than 30 G of LSD;
- At least 400 G but less than 1.2 KG of Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] Propanamide);
- At least 100 G but less than 300 G of a Fentanyl Analogue;
- At least 1,000 KG but less than 3,000 KG of Marihuana;
- At least 200 KG but less than 600 KG of Hashish;
- At least 20 KG but less than 60 KG of Hashish Oil;
- At least 1,000,000 but less than 3,000,000 units of Ketamine;
- At least 1,000,000 but less than 3,000,000 units of Schedule I or II Depressants;
- At least 62,500 but less than 187,500 units of Flunitrazepam;
- At least 1,000 KG but less than 3,000 KG of **Converted Drug Weight**.

(6)
- At least 700 G but less than 1 KG of Heroin;                                        **Level 28**
- At least 3.5 KG but less than 5 KG of Cocaine;
- At least 196 G but less than 280 G of Cocaine Base;
- At least 700 G but less than 1 KG of PCP, or
  at least 70 G but less than 100 G of PCP (actual);

Proposed Amendment:  Drug Offenses

---

**[Option 1 (Using a single entry for methamphetamine):**
- At least [350 G but less than 500 G][280 G but less than 400 G][196 G but less than 280 G][35 G but less than 50 G] of Methamphetamine, or
  at least 35 but less than 50 G of Methamphetamine (actual), or
  at least 35 G but less than 50 G of "Ice";]

**[Option 2 (Using different entries for methamphetamine):**
- At least 350 G but less than 500 G of Methamphetamine (when reduced base offense level applies under Note (L) below), or
  at least 35 G but less than 50 G of Methamphetamine (actualwhen heightened base offense level applies under Note (M) below), or
  at least [196 G but less than 280 G] of Methamphetamine (in any other case)
  at least 35 G but less than 50 G of "Ice";]

- At least 350 G but less than 500 G of Amphetamine, or
  at least 35 G but less than 50 G of Amphetamine (actual);
- At least 7 G but less than 10 G of LSD;
- At least 280 G but less than 400 G of Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] Propanamide);
- At least 70 G but less than 100 G of a Fentanyl Analogue;
- At least 700 KG but less than 1,000 KG of Marihuana;
- At least 140 KG but less than 200 KG of Hashish;
- At least 14 KG but less than 20 KG of Hashish Oil;
- At least 700,000 but less than 1,000,000 units of Ketamine;
- At least 700,000 but less than 1,000,000 units of Schedule I or II Depressants;
- At least 43,750 but less than 62,500 units of Flunitrazepam;
- At least 700 KG but less than 1,000 KG of ***Converted Drug Weight***.

(7) ● At least 400 G but less than 700 G of Heroin;                            **Level 26**
- At least 2 KG but less than 3.5 KG of Cocaine;
- At least 112 G but less than 196 G of Cocaine Base;
- At least 400 G but less than 700 G of PCP, or
  at least 40 G but less than 70 G of PCP (actual);

**[Option 1 (Using a single entry for methamphetamine):**
- At least [200 G but less than 350 G][160 G but less than 280 G][112 G but less than 196 G][20 G but less than 35 G] of Methamphetamine, or
  at least 20 G but less than 35 G of Methamphetamine (actual), or
  at least 20 G but less than 35 G of "Ice";]

**[Option 2 (Using different entries for methamphetamine):**
- At least 200 G but less than 350 G of Methamphetamine (when reduced base offense level applies under Note (L) below), or
  at least 20 G but less than 35 G of Methamphetamine (actualwhen heightened base offense level applies under Note (M) below), or
  at least [112 G but less than 196 G] of Methamphetamine (in any other case)
  at least 20 G but less than 35 G of "Ice";]

- At least 200 G but less than 350 G of Amphetamine, or
  at least 20 G but less than 35 G of Amphetamine (actual);
- At least 4 G but less than 7 G of LSD;
- At least 160 G but less than 280 G of Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl]

Proposed Amendment:  Drug Offenses

_____

    Propanamide);
- At least 40 G but less than 70 G of a Fentanyl Analogue;
- At least 400 KG but less than 700 KG of Marihuana;
- At least 80 KG but less than 140 KG of Hashish;
- At least 8 KG but less than 14 KG of Hashish Oil;
- At least 400,000 but less than 700,000 units of Ketamine;
- At least 400,000 but less than 700,000 units of Schedule I or II Depressants;
- At least 25,000 but less than 43,750 units of Flunitrazepam;
- At least 400 KG but less than 700 KG of **Converted Drug Weight**.

(8)   
- At least 100 G but less than 400 G of Heroin;      **Level 24**
- At least 500 G but less than 2 KG of Cocaine;
- At least 28 G but less than 112 G of Cocaine Base;
- At least 100 G but less than 400 G of PCP, or
  at least 10 G but less than 40 G of PCP (actual);

**[Option 1 (Using a single entry for methamphetamine):**
- At least **[**50 G but less than 200 G**][**40 G but less than 160 G**][**28 G but less than 112 G**]**
  **[**5 G but less than 20 G**]** of Methamphetamine, or
  ~~at least 5 G but less than 20 G of Methamphetamine (actual), or~~
  ~~at least 5 G but less than 20 G of "Ice";~~**]**

**[Option 2 (Using different entries for methamphetamine):**
- At least 50 G but less than 200 G of Methamphetamine (when reduced base offense level
  applies under Note (L) below), or
  at least 5 G but less than 20 G of Methamphetamine (~~actual~~when heightened base offense
  level applies under Note (M) below), or
  at least **[**28 G but less than 112 G**]** of Methamphetamine (in any other case)
  ~~at least 5 G but less than 20 G of "Ice";~~**]**

- At least 50 G but less than 200 G of Amphetamine, or
  at least 5 G but less than 20 G of Amphetamine (actual);
- At least 1 G but less than 4 G of LSD;
- At least 40 G but less than 160 G of Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl]
  Propanamide);
- At least 10 G but less than 40 G of a Fentanyl Analogue;
- At least 100 KG but less than 400 KG of Marihuana;
- At least 20 KG but less than 80 KG of Hashish;
- At least 2 KG but less than 8 KG of Hashish Oil;
- At least 100,000 but less than 400,000 units of Ketamine;
- At least 100,000 but less than 400,000 units of Schedule I or II Depressants;
- At least 6,250 but less than 25,000 units of Flunitrazepam;
- At least 100 KG but less than 400 KG of **Converted Drug Weight**.

(9)   
- At least 80 G but less than 100 G of Heroin;      **Level 22**
- At least 400 G but less than 500 G of Cocaine;
- At least 22.4 G but less than 28 G of Cocaine Base;
- At least 80 G but less than 100 G of PCP, or
  at least 8 G but less than 10 G of PCP (actual);

**[Option 1 (Using a single entry for methamphetamine):**
- At least **[**40 G but less than 50 G**][**32 G but less than 40 G**][**22.4 G but less than 28 G**][**4 G but less than 5 G**]** of Methamphetamine, or
  at least 4 G but less than 5 G of Methamphetamine (actual), or
  at least 4 G but less than 5 G of "Ice";**]**

**[Option 2 (Using different entries for methamphetamine):**
- At least 40 G but less than 50 G of Methamphetamine (when reduced base offense level applies under Note (L) below), or
  at least 4 G but less than 5 G of Methamphetamine (actual when heightened base offense level applies under Note (M) below), or
  at least **[**22.4 G but less than 28 G**]** of Methamphetamine (in any other case)
  at least 4 G but less than 5 G of "Ice";**]**

- At least 40 G but less than 50 G of Amphetamine, or
  at least 4 G but less than 5 G of Amphetamine (actual);
- At least 800 MG but less than 1 G of LSD;
- At least 32 G but less than 40 G of Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] Propanamide);
- At least 8 G but less than 10 G of a Fentanyl Analogue;
- At least 80 KG but less than 100 KG of Marihuana;
- At least 16 KG but less than 20 KG of Hashish;
- At least 1.6 KG but less than 2 KG of Hashish Oil;
- At least 80,000 but less than 100,000 units of Ketamine;
- At least 80,000 but less than 100,000 units of Schedule I or II Depressants;
- At least 5,000 but less than 6,250 units of Flunitrazepam;
- At least 80 KG but less than 100 KG of ***Converted Drug Weight***.

(10)    
- At least 60 G but less than 80 G of Heroin;      **Level 20**
- At least 300 G but less than 400 G of Cocaine;
- At least 16.8 G but less than 22.4 G of Cocaine Base;
- At least 60 G but less than 80 G of PCP, or
  at least 6 G but less than 8 G of PCP (actual);

**[Option 1 (Using a single entry for methamphetamine):**
- At least **[**30 G but less than 40 G**][**24 G but less than 32 G**][**16.8 G but less than 22.4 G**][**3 G but less than 4 G**]** of Methamphetamine, or
  at least 3 G but less than 4 G of Methamphetamine (actual), or
  at least 3 G but less than 4 G of "Ice";**]**

**[Option 2 (Using different entries for methamphetamine):**
- At least 30 G but less than 40 G of Methamphetamine (when reduced base offense level applies under Note (L) below), or
  at least 3 G but less than 4 G of Methamphetamine (actual when heightened base offense level applies under Note (M) below), or
  at least **[**16.8 G but less than 22.4 G**]** of Methamphetamine (in any other case)
  at least 3 G but less than 4 G of "Ice";**]**

- At least 30 G but less than 40 G of Amphetamine, or
  at least 3 G but less than 4 G of Amphetamine (actual);
- At least 600 MG but less than 800 MG of LSD;
- At least 24 G but less than 32 G of Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl]

Propanamide);
- At least 6 G but less than 8 G of a Fentanyl Analogue;
- At least 60 KG but less than 80 KG of Marihuana;
- At least 12 KG but less than 16 KG of Hashish;
- At least 1.2 KG but less than 1.6 KG of Hashish Oil;
- At least 60,000 but less than 80,000 units of Ketamine;
- At least 60,000 but less than 80,000 units of Schedule I or II Depressants;
- 60,000 units or more of Schedule III substances (except Ketamine);
- At least 3,750 but less than 5,000 units of Flunitrazepam;
- At least 60 KG but less than 80 KG of ***Converted Drug Weight***.

(11)
- At least 40 G but less than 60 G of Heroin;                                    **Level 18**
- At least 200 G but less than 300 G of Cocaine;
- At least 11.2 G but less than 16.8 G of Cocaine Base;
- At least 40 G but less than 60 G of PCP, or
  at least 4 G but less than 6 G of PCP (actual);

**[Option 1 (Using a single entry for methamphetamine):**
- At least **[**20 G but less than 30 G**][**16 G but less than 24 G**][**11.2 G but less than 16.8 G**]** **[**2 G but less than 3 G**]** of Methamphetamine, or
  at least 2 G but less than 3 G of Methamphetamine (actual), or
  at least 2 G but less than 3 G of "Ice";**]**

**[Option 2 (Using different entries for methamphetamine):**
- At least 20 G but less than 30 G of Methamphetamine (when reduced base offense level applies under Note (L) below), or
  at least 2 G but less than 3 G of Methamphetamine (actual when heightened base offense level applies under Note (M) below), or
  at least **[**11.2 G but less than 16.8 G**]** of Methamphetamine (in any other case) at least 2 G but less than 3 G of "Ice";**]**

- At least 20 G but less than 30 G of Amphetamine, or
  at least 2 G but less than 3 G of Amphetamine (actual);
- At least 400 MG but less than 600 MG of LSD;
- At least 16 G but less than 24 G of Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] Propanamide);
- At least 4 G but less than 6 G of a Fentanyl Analogue;
- At least 40 KG but less than 60 KG of Marihuana;
- At least 8 KG but less than 12 KG of Hashish;
- At least 800 G but less than 1.2 KG of Hashish Oil;
- At least 40,000 but less than 60,000 units of Ketamine;
- At least 40,000 but less than 60,000 units of Schedule I or II Depressants;
- At least 40,000 but less than 60,000 units of Schedule III substances (except Ketamine);
- At least 2,500 but less than 3,750 units of Flunitrazepam;
- At least 40 KG but less than 60 KG of ***Converted Drug Weight***.

(12)
- At least 20 G but less than 40 G of Heroin;                                    **Level 16**
- At least 100 G but less than 200 G of Cocaine;
- At least 5.6 G but less than 11.2 G of Cocaine Base;
- At least 20 G but less than 40 G of PCP, or
  at least 2 G but less than 4 G of PCP (actual);

**[Option 1 (Using a single entry for methamphetamine):**
- At least **[**10 G but less than 20 G**][**8 G but less than 16 G**][**5.6 G but less than 11.2 G**] [**1 G but less than 2 G**]** of Methamphetamine, or
  at least 1 G but less than 2 G of Methamphetamine (actual), or
  at least 1 G but less than 2 G of "Ice";**]**

**[Option 2 (Using different entries for methamphetamine):**
- At least 10 G but less than 20 G of Methamphetamine (when reduced base offense level applies under Note (L) below), or
  at least 1 G but less than 2 G of Methamphetamine (actual when heightened base offense level applies under Note (M) below), or
  at least **[**5.6 G but less than 11.2 G**]** of Methamphetamine (in any other case)
  at least 1 G but less than 2 G of "Ice";**]**

- At least 10 G but less than 20 G of Amphetamine, or
  at least 1 G but less than 2 G of Amphetamine (actual);
- At least 200 MG but less than 400 MG of LSD;
- At least 8 G but less than 16 G of Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] Propanamide);
- At least 2 G but less than 4 G of a Fentanyl Analogue;
- At least 20 KG but less than 40 KG of Marihuana;
- At least 5 KG but less than 8 KG of Hashish;
- At least 500 G but less than 800 G of Hashish Oil;
- At least 20,000 but less than 40,000 units of Ketamine;
- At least 20,000 but less than 40,000 units of Schedule I or II Depressants;
- At least 20,000 but less than 40,000 units of Schedule III substances (except Ketamine);
- At least 1,250 but less than 2,500 units of Flunitrazepam;
- At least 20 KG but less than 40 KG of ***Converted Drug Weight***.

(13)
- At least 10 G but less than 20 G of Heroin;                    **Level 14**
- At least 50 G but less than 100 G of Cocaine;
- At least 2.8 G but less than 5.6 G of Cocaine Base;
- At least 10 G but less than 20 G of PCP, or
  at least 1 G but less than 2 G of PCP (actual);

**[Option 1 (Using a single entry for methamphetamine):**
- At least **[**5 G but less than 10 G**][**4 G but less than 8 G**][**2.8 G but less than 5.6 G**] [**500 MG but less than 1 G**]** of Methamphetamine, or
  at least 500 MG but less than 1 G of Methamphetamine (actual), or
  at least 500 MG but less than 1 G of "Ice";**]**

**[Option 2 (Using different entries for methamphetamine):**
- At least 5 G but less than 10 G of Methamphetamine (when reduced base offense level applies under Note (L) below), or
  at least 500 MG but less than 1 G of Methamphetamine (actual when heightened base offense level applies under Note (M) below), or
  at least **[**2.8 G but less than 5.6 G**]** of Methamphetamine (in any other case)
  at least 500 MG but less than 1 G of "Ice";**]**

- At least 5 G but less than 10 G of Amphetamine, or
  at least 500 MG but less than 1 G of Amphetamine (actual);
- At least 100 MG but less than 200 MG of LSD;

Proposed Amendment:  Drug Offenses

_____

- At least 4 G but less than 8 G of Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] Propanamide);
- At least 1 G but less than 2 G of a Fentanyl Analogue;
- At least 10 KG but less than 20 KG of Marihuana;
- At least 2 KG but less than 5 KG of Hashish;
- At least 200 G but less than 500 G of Hashish Oil;
- At least 10,000 but less than 20,000 units of Ketamine;
- At least 10,000 but less than 20,000 units of Schedule I or II Depressants;
- At least 10,000 but less than 20,000 units of Schedule III substances (except Ketamine);
- At least 625 but less than 1,250 units of Flunitrazepam;
- At least 10 KG but less than 20 KG of *Converted Drug Weight*.

(14)
- Less than 10 G of Heroin;                                                **Level 12**
- Less than 50 G of Cocaine;
- Less than 2.8 G of Cocaine Base;
- Less than 10 G of PCP, or
   less than 1 G of PCP (actual);

**[Option 1 (Using a single entry for methamphetamine):**
- Less than **[**5 G**][**4 G**][**2.8 G**][**500 MG**]** of Methamphetamine, or
   less than 500 MG of Methamphetamine (actual), or
   less than 500 MG of "Ice";**]**

**[Option 2 (Using different entries for methamphetamine):**
- Less than 5 G of Methamphetamine (when reduced base offense level applies under Note (L) below), or
   less than 500 MG of Methamphetamine (when heightened base offense level applies under Note (M) below), or
   less than **[**2.8**]** G of Methamphetamine (in any other case)
   less than 500 MG of "Ice";**]**

- Less than 5 G of Amphetamine, or
   less than 500 MG of Amphetamine (actual);
- Less than 100 MG of LSD;
- Less than 4 G of Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] Propanamide);
- Less than 1 G of a Fentanyl Analogue;
- At least 5 KG but less than 10 KG of Marihuana;
- At least 1 KG but less than 2 KG of Hashish;
- At least 100 G but less than 200 G of Hashish Oil;
- At least 5,000 but less than 10,000 units of Ketamine;
- At least 5,000 but less than 10,000 units of Schedule I or II Depressants;
- At least 5,000 but less than 10,000 units of Schedule III substances (except Ketamine);
- At least 312 but less than 625 units of Flunitrazepam;
- 80,000 units or more of Schedule IV substances (except Flunitrazepam);
- At least 5 KG but less than 10 KG of *Converted Drug Weight*.

\*    \*    \*

**\*Notes to Drug Quantity Table:**

\*    \*    \*

Proposed Amendment:  Drug Offenses

**[Both options would make the following changes to Note B:**
(B)    The    terms    "***PCP    (actual)***"~~,~~    and    "***Amphetamine    (actual)***"~~,    and~~ "***~~Methamphetamine (actual)~~***" refer to the weight of the controlled substance, itself, contained in the mixture or substance. For example, a mixture weighing 10 grams containing PCP at 50% purity contains 5 grams of PCP (actual). In the case    of    a    mixture    or    substance    containing    PCP~~,~~    or    amphetamine~~,    or~~ ~~methamphetamine~~, use the offense level determined by the entire weight of the mixture or substance, or the offense level determined by the weight of the PCP (actual)~~,~~ or amphetamine (actual)~~, or methamphetamine (actual)~~, whichever is greater.

(C)    The terms "***Hydrocodone (actual)***" and "***Oxycodone (actual)***" refer to the weight of the controlled substance, itself, contained in the pill, capsule, or mixture.

~~(C)    "*Ice*," for the purposes of this guideline, means a mixture or substance containing d‑methamphetamine hydrochloride of at least 80% purity.~~**]**

\*    \*    \*

**[Option 2 (Using different entries for methamphetamine) (continued):**
(L)    Use the reduced base offense level assigned to the weight of methamphetamine if **[1][2][3]** or more of the following factors apply:

(i)    The defendant did not receive any enhancements under subsection (b)(1), (b)(2), (b)(5), (b)(12), or (b)(14), or any adjustments under §3B1.1 (Aggravating Role) or §3B1.4 (Using a Minor To Commit a Crime).

(ii)    The defendant receives a reduction under subsection (b)(18).

(iii)    The defendant receives an adjustment under §3B1.2 (Mitigating Role).

(iv)    The defendant was motivated to commit the offense by (I) an intimate or familial relationship, threats, fear, serious coercion, blackmail, or duress, and (II) was otherwise unlikely to commit such an offense.

(v)    The defendant was unusually vulnerable to being persuaded or induced to commit the offense due to a physical or mental condition (including drug dependence or abuse), or the defendant's youthfulness at the time of the offense.

(vi)    The defendant committed a single criminal occurrence or single criminal transaction that (I) was committed without significant planning, (II) was of limited duration, and (III) represents a marked deviation by the defendant from an otherwise law-abiding life.

(M)  Use the heightened base offense level assigned to the weight of methamphetamine if [1][2][3] or more of the following factors apply:

(i)    The defendant receives an enhancement under subsection (b)(1).

(ii)   The defendant receives an enhancement under subsection (b)(2).

(iii)  The defendant receives an enhancement under subsection (b)(5).

(iv)  The defendant receives an enhancement under subsection (b)(12).

(v)   The defendant receives an enhancement under subsection (b)(14).

(vi)  The defendant receives an adjustment under §3B1.1 (Aggravating Role).

(vii) The defendant receives an adjustment under §3B1.4 (Using a Minor To Commit a Crime).

(viii) [The defendant (I) knowingly distributed methamphetamine to an individual less than [18][21] years of age and (II) was [at least [4][6][8] years older][substantially older] than that individual at the time of the offense][The offense involved the distribution of methamphetamine to an individual less than [18][21] years of age and the defendant was [at least [4][6][8] years older][substantially older] than that individual at the time of the offense].

(ix)  The [defendant used or possessed][offense involved the use or possession of] a tableting machine or an encapsulating machine for the purpose of manufacturing methamphetamine.

(x)   The [defendant used][offense involved the use of] the dark web or darknets (*i.e.*, part of the Internet hidden from the general public that cannot be accessed by traditional search engines or web browsers and allows its users to hide their identity and location from other people and from law enforcement) to facilitate the commission or concealment of an offense involving methamphetamine.]

*    *    *

**Commentary**

*    *    *

**Application Notes:**

*    *    *

8.    **Use of Drug Conversion Tables.—**

*    *    *

Proposed Amendment:  Drug Offenses

(D)    **Drug Conversion Tables.—**

\*    \*    \*

| COCAINE AND OTHER SCHEDULE I AND II STIMULANTS (AND THEIR IMMEDIATE PRECURSORS)* | CONVERTED DRUG WEIGHT |
|---|---|
| 1 gm of 4-Methylaminorex ("Euphoria") = | 100 gm |
| 1 gm of Aminorex = | 100 gm |
| 1 gm of Amphetamine = | 2 kg |
| 1 gm of Amphetamine (actual) = | 20 kg |
| 1 gm of Cocaine = | 200 gm |
| 1 gm of Cocaine Base ("Crack") = | 3,571 gm |
| 1 gm of Fenethylline = | 40 gm |

**[Option 1 (Using a single entry for methamphetamine) (continued):**

| | |
|---|---|
| 1 gm of "Ice" = | ~~20 kg~~ |
| 1 gm of Khat = | .01 gm |
| 1 gm of Methamphetamine = | [20 kg] [3,571 gm] [2.5 kg] [2 kg] |
| 1 gm of Methamphetamine (actual) = | ~~20 kg~~] |

**[Option 2 (Using different entries for methamphetamine) (continued):**

| | |
|---|---|
| 1 gm of "Ice" = | ~~20 kg~~ |
| 1 gm of Khat = | .01 gm |
| 1 gm of Methamphetamine (when reduced base offense level applies under Note (L) of the Notes to the Drug Quantity Table) = | 2 kg |
| 1 gm of Methamphetamine (~~actual~~ when heightened base offense level applies under Note (M) of the Notes to the Drug Quantity Table) = | 20 kg |
| 1 gm of Methamphetamine (in any other case) = | [3,571 gm]] |
| 1 gm of Methylphenidate (Ritalin) = | 100 gm |
| 1 gm of N-Benzylpiperazine = | 100 gm |
| 1 gm of N-Ethylamphetamine = | 80 gm |
| 1 gm of N-N-Dimethylamphetamine = | 40 gm |
| 1 gm of Phenmetrazine = | 80 gm |
| 1 gm of Phenylacetone ($P_2P$) (when possessed for the purpose of manufacturing methamphetamine) = | 416 gm |
| 1 gm of Phenylacetone ($P_2P$) (in any other case) = | 75 gm |

*Provided*, that the minimum offense level from the Drug Quantity Table for any of these controlled substances individually, or in combination with another controlled substance, is level 12.

\*    \*    \*

**Issues for Comment:**

1.    Part A of the proposed amendment provides two options with different approaches. Option 1 provides a single entry for all methamphetamine offenses. Option 2, by contrast, sets forth different entries for methamphetamine offenses depending on the presence of certain factors. The Commission seeks general comment on which approach, if any, is appropriate to address the 10:1 quantity ratio for methamphetamine mixture, on the one hand, and methamphetamine (actual) and "Ice," on the other. Should the Commission use the same quantity thresholds for all methamphetamine offenses? Should the Commission instead retain different quantity thresholds for different methamphetamine offenses? For example, should the Commission set baseline quantity thresholds for methamphetamine at the current level for methamphetamine mixture or at a less severe level, and provide for

heightened base offense levels if certain factors apply? Should the Commission instead set baseline quantity thresholds for methamphetamine at the current level for methamphetamine (actual) or at a more severe level, and provide for reduced base offense levels if certain factors apply?

2.    Option 1 brackets four alternatives for the quantity thresholds for all methamphetamine offenses: (1) quantity thresholds matching those of methamphetamine mixture; (2) quantity thresholds matching those of fentanyl; (3) quantity thresholds matching those of cocaine base; and (4) quantity thresholds matching those of methamphetamine (actual). What quantity thresholds should the Commission adopt for methamphetamine, and why? Should the Commission adopt quantity thresholds for methamphetamine that are less severe than the current levels for methamphetamine mixture (*e.g.*, quantity thresholds matching those of cocaine)?

3.    Option 2 brackets setting the baseline quantity thresholds that trigger base offense levels for methamphetamine at the same level as cocaine base. These base offense levels could be reduced or heightened depending on the presence of certain factors. Should the Commission adopt a different baseline quantity threshold for methamphetamine? What is the basis for adopting any such baseline quantity threshold? Should the Commission adopt a different heightened or reduced base offense level? What is the basis for adopting any such heightened or reduced base offense level?

4.    Option 2 sets forth factors that would result in the application of reduced or heightened base offense levels. The Commission seeks comment on whether the factors provided in Option 2 are appropriate to trigger a reduced or heightened base offense level. Should any factors be deleted or changed? Should the Commission provide additional or different factors? How many factors should be present in the offense to trigger the application of the reduced or heightened base offense levels?

5.    The Commission seeks comment on whether using the factors set forth in Option 2 to trigger reduced or heightened base offense levels results in any inappropriate double-counting. If so, what action should the Commission take to account for the interaction between these factors and the applicable base offense level?

6.    Some of the factors set forth in Option 2 are not specific offense characteristics or adjustments in the *Guidelines Manual*. If the Commission includes factors that are not in the *Guidelines Manual*, will it result in any fact-finding or administrability issues?

7.    Both options would delete all references in §2D1.1 to "Ice" and add a new specific offense characteristic at §2D1.1(b)(19) that provides a [2]-level reduction if the offense involved only methamphetamine in a non-smokable, non-crystalline form. This new specific offense characteristic is intended to ensure compliance with the 1990 congressional directive (Pub. L. No. 101–67, § 2701 (1990)). The Commission invites comment on whether the Commission should take an alternative approach to ensure compliance with the 1990 congressional directive.

Case 3:24-cr-00188-RK    Document 75    Filed 03/18/26    Page 92 of 264 PageID: 407

Proposed Amendment:  Drug Offenses

## (B)    Fentanyl-Related Substances

**Synopsis of Proposed Amendment:** The Halt All Lethal Trafficking of Fentanyl Act (Pub. L. 119–26) (2025) ("HALT Fentanyl Act") permanently scheduled "fentanyl-related substances" as Schedule I substances under 21 U.S.C. § 812. The Act also expanded the offenses prohibited by 21 U.S.C. §§ 841 and 960 to include "fentanyl-related substances," setting the quantities that trigger mandatory minimum penalties at the same level as fentanyl analogues. The Act defined "fentanyl-related substances" as

> (2) For purposes of paragraph (1), except as provided in paragraph (3), the term "fentanyl-related substance" means any substance that is structurally related to fentanyl by 1 or more of the following modifications:
>> (A) By replacement of the phenyl portion of the phenethyl group by any monocycle, whether or not further substituted in or on the monocycle.
>> (B) By substitution in or on the phenethyl group with alkyl, alkenyl, alkoxyl, hydroxyl, halo, haloalkyl, amino, or nitro groups.
>> (C) By substitution in or on the piperidine ring with alkyl, alkenyl, alkoxyl, ester, ether, hydroxyl, halo, haloalkyl, amino, or nitro groups.
>> (D) By replacement of the aniline ring with any aromatic monocycle whether or not further substituted in or on the aromatic monocycle.
>> (E) By replacement of the N-propionyl group with another acyl group.
> (3) A substance that satisfies the definition of the term "fentanyl-related substance" in paragraph (2) shall nonetheless not be treated as a fentanyl-related substance subject to this schedule if the substance—
>> (A) is controlled by action of the Attorney General under section 201; or
>> (B) is otherwise expressly listed in a schedule other than this schedule.

Pub. L. 119–26, § 2 (2025). The HALT Fentanyl Act does not contain any directives to the Commission.

Part B of the proposed amendment would amend the Drug Quantity Table at subsection (c) §2D1.1 (Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses); Attempt or Conspiracy) and the Drug Equivalency Tables at Application Note 8(D) of the Commentary to §2D1.1 to add "fentanyl-related substance." It would set the quantity thresholds and base offense levels at the same level as fentanyl analogues. Part B of the proposed amendment would also amend the Notes to the Drug Quantity Table to add a definition of "fentanyl-related substance" that closely tracks the statutory definition.

In addition, Part B of the proposed amendment would add "fentanyl-related substance" to the enhancement at §2D1.1(b)(13) for representing or marketing fentanyl or a fentanyl analogue as another substance or as a legitimately manufactured drug.

An issue for comment is also provided.

December 12, 2025  |  25

**Proposed Amendment:**

### §2D1.1.  Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses); Attempt or Conspiracy

\*    \*    \*

(b)    Specific Offense Characteristics

\*    \*    \*

(13) If the defendant (A) knowingly misrepresented or knowingly marketed as another substance a mixture or substance containing fentanyl (N-phenyl-N-[1-(2-phenylethyl )-4-piperidinyl] propanamide) ~~or~~, a fentanyl analogue, or a fentanyl-related substance, increase by **4** levels; or (B) represented or marketed as a legitimately manufactured drug another mixture or substance containing fentanyl (N-phenyl-N-[1-(2-phenylethyl )-4-piperidinyl] propanamide) ~~or~~, a fentanyl analogue, or a fentanyl-related substance, with reckless disregard that such mixture or substance was not the legitimately manufactured drug, increase by **2** levels. The term "***drug***," as used in subsection (b)(13)(B), has the meaning given that term in 21 U.S.C. § 321(g)(1).

\*    \*    \*

### (c) DRUG QUANTITY TABLE

| CONTROLLED SUBSTANCES AND QUANTITY* | BASE OFFENSE LEVEL |
|---|---|
| (1)  ● 90 KG or more of Heroin;<br>● 450 KG or more of Cocaine;<br>● 25.2 KG or more of Cocaine Base;<br>● 90 KG or more of PCP, or 9 KG or more of PCP (actual);<br>● 45 KG or more of Methamphetamine, or<br>    4.5 KG or more of Methamphetamine (actual), or<br>    4.5 KG or more of "Ice";<br>● 45 KG or more of Amphetamine, or<br>    4.5 KG or more of Amphetamine (actual);<br>● 900 G or more of LSD;<br>● 36 KG or more of Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] Propanamide);<br>● 9 KG or more of a Fentanyl Analogue;<br>● 9 KG or more of a Fentanyl-Related Substance;<br>● 90,000 KG or more of Marihuana;<br>● 18,000 KG or more of Hashish;<br>● 1,800 KG or more of Hashish Oil;<br>● 90,000,000 units or more of Ketamine;<br>● 90,000,000 units or more of Schedule I or II Depressants; | **Level 38** |

Proposed Amendment:  Drug Offenses

---

- 5,625,000 units or more of Flunitrazepam;
- 90,000 KG or more of ***Converted Drug Weight***.


(2)    - At least 30 KG but less than 90 KG of Heroin;                                    **Level 36**
- At least 150 KG but less than 450 KG of Cocaine;
- At least 8.4 KG but less than 25.2 KG of Cocaine Base;
- At least 30 KG but less than 90 KG of PCP, or
      at least 3 KG but less than 9 KG of PCP (actual);
- At least 15 KG but less than 45 KG of Methamphetamine, or
at least 1.5 KG but less than 4.5 KG of Methamphetamine (actual), or
at least 1.5 KG but less than 4.5 KG of "Ice";
- At least 15 KG but less than 45 KG of Amphetamine, or
      at least 1.5 KG but less than 4.5 KG of Amphetamine (actual);
- At least 300 G but less than 900 G of LSD;
- At least 12 KG but less than 36 KG of Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] Propanamide);
- At least 3 KG but less than 9 KG of a Fentanyl Analogue;
- At least 3 KG but less than 9 KG of a Fentanyl-Related Substance;
- At least 30,000 KG but less than 90,000 KG of Marihuana;
- At least 6,000 KG but less than 18,000 KG of Hashish;
- At least 600 KG but less than 1,800 KG of Hashish Oil;
- At least 30,000,000 units but less than 90,000,000 units of Ketamine;
- At least 30,000,000 units but less than 90,000,000 units of Schedule I or II Depressants;
- At least 1,875,000 units but less than 5,625,000 units of Flunitrazepam;
- At least 30,000 KG but less than 90,000 KG of ***Converted Drug Weight***.


(3)    - At least 10 KG but less than 30 KG of Heroin;                                    **Level 34**
- At least 50 KG but less than 150 KG of Cocaine;
- At least 2.8 KG but less than 8.4 KG of Cocaine Base;
- At least 10 KG but less than 30 KG of PCP, or
      at least 1 KG but less than 3 KG of PCP (actual);
- At least 5 KG but less than 15 KG of Methamphetamine, or
      at least 500 G but less than 1.5 KG of Methamphetamine (actual), or
      at least 500 G but less than 1.5 KG of "Ice";
- At least 5 KG but less than 15 KG of Amphetamine, or
      at least 500 G but less than 1.5 KG of Amphetamine (actual);
- At least 100 G but less than 300 G of LSD;
- At least 4 KG but less than 12 KG of Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] Propanamide);
- At least 1 KG but less than 3 KG of a Fentanyl Analogue;
- At least 1 KG but less than 3 KG of a Fentanyl-Related Substance;
- At least 10,000 KG but less than 30,000 KG of Marihuana;
- At least 2,000 KG but less than 6,000 KG of Hashish;
- At least 200 KG but less than 600 KG of Hashish Oil;
- At least 10,000,000 but less than 30,000,000 units of Ketamine;
- At least 10,000,000 but less than 30,000,000 units of Schedule I or II Depressants;
- At least 625,000 but less than 1,875,000 units of Flunitrazepam;
- At least 10,000 KG but less than 30,000 KG of ***Converted Drug Weight***.


(4)    - At least 3 KG but less than 10 KG of Heroin;                                    **Level 32**
- At least 15 KG but less than 50 KG of Cocaine;
- At least 840 G but less than 2.8 KG of Cocaine Base;
- At least 3 KG but less than 10 KG of PCP, or

Proposed Amendment:  Drug Offenses

> at least 300 G but less than 1 KG of PCP (actual);
> - At least 1.5 KG but less than 5 KG of Methamphetamine, or
>   at least 150 G but less than 500 G of Methamphetamine (actual), or
>   at least 150 G but less than 500 G of "Ice";
> - At least 1.5 KG but less than 5 KG of Amphetamine, or
>   at least 150 G but less than 500 G of Amphetamine (actual);
> - At least 30 G but less than 100 G of LSD;
> - At least 1.2 KG but less than 4 KG of Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] Propanamide);
> - At least 300 G but less than 1 KG of a Fentanyl Analogue;
> - At least 300 G but less than 1 KG of a Fentanyl-Related Substance;
> - At least 3,000 KG but less than 10,000 KG of Marihuana;
> - At least 600 KG but less than 2,000 KG of Hashish;
> - At least 60 KG but less than 200 KG of Hashish Oil;
> - At least 3,000,000 but less than 10,000,000 units of Ketamine;
> - At least 3,000,000 but less than 10,000,000 units of Schedule I or II Depressants;
> - At least 187,500 but less than 625,000 units of Flunitrazepam;
> - At least 3,000 KG but less than 10,000 KG of ***Converted Drug Weight***.

(5)
- At least 1 KG but less than 3 KG of Heroin; **Level 30**
- At least 5 KG but less than 15 KG of Cocaine;
- At least 280 G but less than 840 G of Cocaine Base;
- At least 1 KG but less than 3 KG of PCP, or
  at least 100 G but less than 300 G of PCP (actual);
- At least 500 G but less than 1.5 KG of Methamphetamine, or
  at least 50 G but less than 150 G of Methamphetamine (actual), or
  at least 50 G but less than 150 G of "Ice";
- At least 500 G but less than 1.5 KG of Amphetamine, or
  at least 50 G but less than 150 G of Amphetamine (actual);
- At least 10 G but less than 30 G of LSD;
- At least 400 G but less than 1.2 KG of Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] Propanamide);
- At least 100 G but less than 300 G of a Fentanyl Analogue;
- At least 100 G but less than 300 G of a Fentanyl-Related Substance;
- At least 1,000 KG but less than 3,000 KG of Marihuana;
- At least 200 KG but less than 600 KG of Hashish;
- At least 20 KG but less than 60 KG of Hashish Oil;
- At least 1,000,000 but less than 3,000,000 units of Ketamine;
- At least 1,000,000 but less than 3,000,000 units of Schedule I or II Depressants;
- At least 62,500 but less than 187,500 units of Flunitrazepam;
- At least 1,000 KG but less than 3,000 KG of ***Converted Drug Weight***.

(6)
- At least 700 G but less than 1 KG of Heroin; **Level 28**
- At least 3.5 KG but less than 5 KG of Cocaine;
- At least 196 G but less than 280 G of Cocaine Base;
- At least 700 G but less than 1 KG of PCP, or
  at least 70 G but less than 100 G of PCP (actual);
- At least 350 G but less than 500 G of Methamphetamine, or
  at least 35 G but less than 50 G of Methamphetamine (actual), or
  at least 35 G but less than 50 G of "Ice";
- At least 350 G but less than 500 G of Amphetamine, or
  at least 35 G but less than 50 G of Amphetamine (actual);
- At least 7 G but less than 10 G of LSD;

Proposed Amendment: Drug Offenses

---

- At least 280 G but less than 400 G of Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] Propanamide);
- At least 70 G but less than 100 G of a Fentanyl Analogue;
- At least 70 G but less than 100 G of a Fentanyl-Related Substance;
- At least 700 KG but less than 1,000 KG of Marihuana;
- At least 140 KG but less than 200 KG of Hashish;
- At least 14 KG but less than 20 KG of Hashish Oil;
- At least 700,000 but less than 1,000,000 units of Ketamine;
- At least 700,000 but less than 1,000,000 units of Schedule I or II Depressants;
- At least 43,750 but less than 62,500 units of Flunitrazepam;
- At least 700 KG but less than 1,000 KG of *Converted Drug Weight*.

(7)
- At least 400 G but less than 700 G of Heroin;                                    **Level 26**
- At least 2 KG but less than 3.5 KG of Cocaine;
- At least 112 G but less than 196 G of Cocaine Base;
- At least 400 G but less than 700 G of PCP, or
     at least 40 G but less than 70 G of PCP (actual);
- At least 200 G but less than 350 G of Methamphetamine, or
     at least 20 G but less than 35 G of Methamphetamine (actual), or
     at least 20 G but less than 35 G of "Ice";
- At least 200 G but less than 350 G of Amphetamine, or
     at least 20 G but less than 35 G of Amphetamine (actual);
- At least 4 G but less than 7 G of LSD;
- At least 160 G but less than 280 G of Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] Propanamide);
- At least 40 G but less than 70 G of a Fentanyl Analogue;
- At least 40 G but less than 70 G of a Fentanyl-Related Substance;
- At least 400 KG but less than 700 KG of Marihuana;
- At least 80 KG but less than 140 KG of Hashish;
- At least 8 KG but less than 14 KG of Hashish Oil;
- At least 400,000 but less than 700,000 units of Ketamine;
- At least 400,000 but less than 700,000 units of Schedule I or II Depressants;
- At least 25,000 but less than 43,750 units of Flunitrazepam;
- At least 400 KG but less than 700 KG of *Converted Drug Weight*.

(8)
- At least 100 G but less than 400 G of Heroin;                                    **Level 24**
- At least 500 G but less than 2 KG of Cocaine;
- At least 28 G but less than 112 G of Cocaine Base;
- At least 100 G but less than 400 G of PCP, or
     at least 10 G but less than 40 G of PCP (actual);
- At least 50 G but less than 200 G of Methamphetamine, or
     at least 5 G but less than 20 G of Methamphetamine (actual), or
     at least 5 G but less than 20 G of "Ice";
- At least 50 G but less than 200 G of Amphetamine, or
     at least 5 G but less than 20 G of Amphetamine (actual);
- At least 1 G but less than 4 G of LSD;
- At least 40 G but less than 160 G of Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] Propanamide);
- At least 10 G but less than 40 G of a Fentanyl Analogue;
- At least 10 G but less than 40 G of a Fentanyl-Related Substance;
- At least 100 KG but less than 400 KG of Marihuana;
- At least 20 KG but less than 80 KG of Hashish;
- At least 2 KG but less than 8 KG of Hashish Oil;

- At least 100,000 but less than 400,000 units of Ketamine;
- At least 100,000 but less than 400,000 units of Schedule I or II Depressants;
- At least 6,250 but less than 25,000 units of Flunitrazepam;
- At least 100 KG but less than 400 KG of *Converted Drug Weight*.

(9)
- At least 80 G but less than 100 G of Heroin;                                **Level 22**
- At least 400 G but less than 500 G of Cocaine;
- At least 22.4 G but less than 28 G of Cocaine Base;
- At least 80 G but less than 100 G of PCP, or
    at least 8 G but less than 10 G of PCP (actual);
- At least 40 G but less than 50 G of Methamphetamine, or
    at least 4 G but less than 5 G of Methamphetamine (actual), or
    at least 4 G but less than 5 G of "Ice";
- At least 40 G but less than 50 G of Amphetamine, or
    at least 4 G but less than 5 G of Amphetamine (actual);
- At least 800 MG but less than 1 G of LSD;
- At least 32 G but less than 40 G of Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl]
    Propanamide);
- At least 8 G but less than 10 G of a Fentanyl Analogue;
- At least 8 G but less than 10 G of a Fentanyl-Related Substance;
- At least 80 KG but less than 100 KG of Marihuana;
- At least 16 KG but less than 20 KG of Hashish;
- At least 1.6 KG but less than 2 KG of Hashish Oil;
- At least 80,000 but less than 100,000 units of Ketamine;
- At least 80,000 but less than 100,000 units of Schedule I or II Depressants;
- At least 5,000 but less than 6,250 units of Flunitrazepam;
- At least 80 KG but less than 100 KG of *Converted Drug Weight*.

(10)
- At least 60 G but less than 80 G of Heroin;                                 **Level 20**
- At least 300 G but less than 400 G of Cocaine;
- At least 16.8 G but less than 22.4 G of Cocaine Base;
- At least 60 G but less than 80 G of PCP, or
    at least 6 G but less than 8 G of PCP (actual);
- At least 30 G but less than 40 G of Methamphetamine, or
    at least 3 G but less than 4 G of Methamphetamine (actual), or
    at least 3 G but less than 4 G of "Ice";
- At least 30 G but less than 40 G of Amphetamine, or
    at least 3 G but less than 4 G of Amphetamine (actual);
- At least 600 MG but less than 800 MG of LSD;
- At least 24 G but less than 32 G of Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl]
    Propanamide);
- At least 6 G but less than 8 G of a Fentanyl Analogue;
- At least 6 G but less than 8 G of a Fentanyl-Related Substance;
- At least 60 KG but less than 80 KG of Marihuana;
- At least 12 KG but less than 16 KG of Hashish;
- At least 1.2 KG but less than 1.6 KG of Hashish Oil;
- At least 60,000 but less than 80,000 units of Ketamine;
- At least 60,000 but less than 80,000 units of Schedule I or II Depressants;
- 60,000 units or more of Schedule III substances (except Ketamine);
- At least 3,750 but less than 5,000 units of Flunitrazepam;
- At least 60 KG but less than 80 KG of *Converted Drug Weight*.

Proposed Amendment:  Drug Offenses

(11)  ● At least 40 G but less than 60 G of Heroin;                                                    **Level 18**
      ● At least 200 G but less than 300 G of Cocaine;
      ● At least 11.2 G but less than 16.8 G of Cocaine Base;
      ● At least 40 G but less than 60 G of PCP, or
              at least 4 G but less than 6 G of PCP (actual);
      ● At least 20 G but less than 30 G of Methamphetamine, or
              at least 2 G but less than 3 G of Methamphetamine (actual), or
              at least 2 G but less than 3 G of "Ice";
      ● At least 20 G but less than 30 G of Amphetamine, or
              at least 2 G but less than 3 G of Amphetamine (actual);
      ● At least 400 MG but less than 600 MG of LSD;
      ● At least 16 G but less than 24 G of Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl]
              Propanamide);
      ● At least 4 G but less than 6 G of a Fentanyl Analogue;
      ● At least 4 G but less than 6 G of a Fentanyl-Related Substance;
      ● At least 40 KG but less than 60 KG of Marihuana;
      ● At least 8 KG but less than 12 KG of Hashish;
      ● At least 800 G but less than 1.2 KG of Hashish Oil;
      ● At least 40,000 but less than 60,000 units of Ketamine;
      ● At least 40,000 but less than 60,000 units of Schedule I or II Depressants;
      ● At least 40,000 but less than 60,000 units of Schedule III substances (except Ketamine);
      ● At least 2,500 but less than 3,750 units of Flunitrazepam;
      ● At least 40 KG but less than 60 KG of ***Converted Drug Weight***.

(12)  ● At least 20 G but less than 40 G of Heroin;                                                    **Level 16**
      ● At least 100 G but less than 200 G of Cocaine;
      ● At least 5.6 G but less than 11.2 G of Cocaine Base;
      ● At least 20 G but less than 40 G of PCP, or
              at least 2 G but less than 4 G of PCP (actual);
      ● At least 10 G but less than 20 G of Methamphetamine, or
              at least 1 G but less than 2 G of Methamphetamine (actual), or
              at least 1 G but less than 2 G of "Ice";
      ● At least 10 G but less than 20 G of Amphetamine, or
              at least 1 G but less than 2 G of Amphetamine (actual);
      ● At least 200 MG but less than 400 MG of LSD;
      ● At least 8 G but less than 16 G of Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl]
              Propanamide);
      ● At least 2 G but less than 4 G of a Fentanyl Analogue;
      ● At least 2 G but less than 4 G of a Fentanyl-Related Substance;
      ● At least 20 KG but less than 40 KG of Marihuana;
      ● At least 5 KG but less than 8 KG of Hashish;
      ● At least 500 G but less than 800 G of Hashish Oil;
      ● At least 20,000 but less than 40,000 units of Ketamine;
      ● At least 20,000 but less than 40,000 units of Schedule I or II Depressants;
      ● At least 20,000 but less than 40,000 units of Schedule III substances (except Ketamine);
      ● At least 1,250 but less than 2,500 units of Flunitrazepam;
      ● At least 20 KG but less than 40 KG of ***Converted Drug Weight***.

(13)  ● At least 10 G but less than 20 G of Heroin;                                                    **Level 14**
      ● At least 50 G but less than 100 G of Cocaine;
      ● At least 2.8 G but less than 5.6 G of Cocaine Base;
      ● At least 10 G but less than 20 G of PCP, or
              at least 1 G but less than 2 G of PCP (actual);

- At least 5 G but less than 10 G of Methamphetamine, or
  at least 500 MG but less than 1 G of Methamphetamine (actual), or
  at least 500 MG but less than 1 G of "Ice";
- At least 5 G but less than 10 G of Amphetamine, or
  at least 500 MG but less than 1 G of Amphetamine (actual);
- At least 100 MG but less than 200 MG of LSD;
- At least 4 G but less than 8 G of Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] Propanamide);
- At least 1 G but less than 2 G of a Fentanyl Analogue;
- At least 1 G but less than 2 G of a Fentanyl-Related Substance;
- At least 10 KG but less than 20 KG of Marihuana;
- At least 2 KG but less than 5 KG of Hashish;
- At least 200 G but less than 500 G of Hashish Oil;
- At least 10,000 but less than 20,000 units of Ketamine;
- At least 10,000 but less than 20,000 units of Schedule I or II Depressants;
- At least 10,000 but less than 20,000 units of Schedule III substances (except Ketamine);
- At least 625 but less than 1,250 units of Flunitrazepam;
- At least 10 KG but less than 20 KG of *Converted Drug Weight*.

(14) 
- Less than 10 G of Heroin;                                             **Level 12**
- Less than 50 G of Cocaine;
- Less than 2.8 G of Cocaine Base;
- Less than 10 G of PCP, or
  less than 1 G of PCP (actual);
- Less than 5 G of Methamphetamine, or
  less than 500 MG of Methamphetamine (actual), or
  less than 500 MG of "Ice";
- Less than 5 G of Amphetamine, or
  less than 500 MG of Amphetamine (actual);
- Less than 100 MG of LSD;
- Less than 4 G of Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] Propanamide);
- Less than 1 G of a Fentanyl Analogue;
- Less than 1 G of a Fentanyl-Related Substance;
- At least 5 KG but less than 10 KG of Marihuana;
- At least 1 KG but less than 2 KG of Hashish;
- At least 100 G but less than 200 G of Hashish Oil;
- At least 5,000 but less than 10,000 units of Ketamine;
- At least 5,000 but less than 10,000 units of Schedule I or II Depressants;
- At least 5,000 but less than 10,000 units of Schedule III substances (except Ketamine);
- At least 312 but less than 625 units of Flunitrazepam;
- 80,000 units or more of Schedule IV substances (except Flunitrazepam);
- At least 5 KG but less than 10 KG of *Converted Drug Weight*.

*    *    *

**\*Notes to Drug Quantity Table:**

*    *    *

(K)    *Fentanyl-Related Substance*, for purposes of this guideline, means any substance (including any salt, isomer, or salt of isomer thereof) that is structurally related to

fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide) by one or more of the following modifications:

(i)    By replacement of the phenyl portion of the phenethyl group by any monocycle, whether or not further substituted in or on the monocycle.

(ii)    By substitution in or on the phenethyl group with alkyl, alkenyl, alkoxyl, hydroxyl, halo, haloalkyl, amino, or nitro groups.

(iii)    By substitution in or on the piperidine ring with alkyl, alkenyl, alkoxyl, ester, ether, hydroxyl, halo, haloalkyl, amino, or nitro groups.

(iv)    By replacement of the aniline ring with any aromatic monocycle whether or not further substituted in or on the aromatic monocycle.

(v)    By replacement of the N-propionyl group with another acyl group.

A substance that satisfies the definition of "fentanyl-related substance" shall nonetheless not be treated as a fentanyl-related substance if the substance is controlled by action of the Attorney General under 21 U.S.C. § 811 or is otherwise expressly listed in a schedule other that Schedule I.

(K̶L) The term "***Converted Drug Weight***," for purposes of this guideline, refers to a nominal reference designation that is used as a conversion factor in the Drug Conversion Tables set forth in the Commentary below, to determine the offense level for controlled substances that are not specifically referenced in the Drug Quantity Table or when combining differing controlled substances.

**Commentary**

\*    \*    \*

**Application Notes:**

\*    \*    \*

8.    **Use of Drug Conversion Tables.—**

\*    \*    \*

(D)    **Drug Conversion Tables.—**

| Schedule I or II Opiates* | Converted Drug Weight |
|---|---|
| 1 gm of 1-(2-Phenylethyl)-4-phenyl-4-acetyloxypiperidine (PEPAP) = | 700 gm |
| 1 gm of 1-Methyl-4-phenyl-4-propionoxypiperidine (MPPP) = | 700 gm |
| 1 gm of 6-Monoacetylmorphine = | 1 kg |
| 1 gm of Alphaprodine = | 100 gm |
| 1 gm of Codeine = | 80 gm |
| 1 gm of Dextromoramide = | 670 gm |
| 1 gm of Dextropropoxyphene/Propoxyphene-Bulk = | 50 gm |
| 1 gm of Dipipanone = | 250 gm |

| | |
|---|---|
| 1 gm of Ethylmorphine = | 165 gm |
| 1 gm of Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] Propanamide) = | 2.5 kg |
| 1 gm of a Fentanyl Analogue = | 10 kg |
| 1 gm of a Fentanyl-Related Substance = | 10 kg |
| 1 gm of Heroin = | 1 kg |
| 1 gm of Hydrocodone (actual) = | 6,700 gm |
| 1 gm of Hydromorphone/Dihydromorphinone = | 2.5 kg |
| 1 gm of Levo-alpha-acetylmethadol (LAAM) = | 3 kg |
| 1 gm of Levorphanol = | 2.5 kg |
| 1 gm of Meperidine/Pethidine = | 50 gm |
| 1 gm of Methadone = | 500 gm |
| 1 gm of Mixed Alkaloids of Opium/Papaveretum = | 250 gm |
| 1 gm of Morphine = | 500 gm |
| 1 gm of Opium = | 50 gm |
| 1 gm of Oxycodone (actual) = | 6,700 gm |
| 1 gm of Oxymorphone = | 5 kg |
| 1 gm of Racemorphan = | 800 gm |

*Provided*, that the minimum offense level from the Drug Quantity Table for any of these controlled substances individually, or in combination with another controlled substance, is level 12.

\*    \*    \*

## Issue for Comment:

1.    The Halt all Lethal Trafficking of Fentanyl Act (Pub. L. 119–26) (2025) ("HALT Fentanyl Act") set the quantities of "fentanyl-related substances" that trigger mandatory minimum penalties at the same level as fentanyl analogues. In response to this, Part B of the amendment would set the quantity thresholds and base offense levels for fentanyl-related substances at the same level as fentanyl analogues. The Commission invites comment on whether this is the appropriate approach. Should the quantity thresholds and base offense levels for fentanyl-related substances instead be set at the same level as fentanyl, another substance in the Drug Quantity Table, or some other level entirely? If so, why? How are fentanyl-related substances similar to or different from other substances in the Drug Quantity Table, including fentanyl or fentanyl analogues? How do the effects of fentanyl-related substances compare with the effects of other substances in the Drug Quantity Table, including fentanyl or fentanyl analogues?

## (C)    Enhancements for Offenses Involving Fentanyl or Fentanyl Analogues

**Synopsis of Proposed Amendment:** Fentanyl and fentanyl analogue cases have increased substantially over the last several years. Since fiscal year 2020, fentanyl cases have increased 255.7 percent, such that they comprised 20.2 percent of all federal drug trafficking cases in fiscal year 2024. Today, fentanyl represents the second most common drug type in federal drug trafficking cases. Fentanyl analogue cases occupy a much smaller portion of the federal drug trafficking caseload (1.9%), but those cases have increased 85.2 percent since fiscal year 2020.

In response to rising numbers of fentanyl and fentanyl analogue cases, the Commission previously undertook a multi-year study of synthetic controlled substances. In 2018, following that study, the Commission amended §2D1.1 (Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit Those Offenses); Attempt or Conspiracy) to add an enhancement specific to fentanyl and fentanyl analogue cases. In particular, the Commission added a new specific offense characteristic at subsection (b)(13) providing a 4-level increase when the defendant knowingly misrepresented or knowingly marketed as another substance a mixture or substance containing fentanyl or a fentanyl analogue. *See* USSG, App. C. amend. 807 (effective Nov. 1, 2018). In adding this new specific offense characteristic, the Commission pointed to the harm attendant to cases where a user does not know the substance they are using contains fentanyl or a fentanyl analogue. *Id.* As the Commission explained, "[b]ecause of fentanyl's extreme potency, the risk of overdose death is great, particularly when the user is inexperienced or unaware of what substance he or she is using." *Id.* Thus, the Commission concluded that "it is appropriate for traffickers who knowingly misrepresent fentanyl or a fentanyl analogue as another substance to receive additional punishment." *Id.*

In 2023, the Commission amended §2D1.1(b)(13) based on the continued increase in fentanyl and fentanyl analogue distribution. *See* USSG, App. C. amend. 818 (effective Nov. 1, 2023). The amendment added a new subparagraph (B) with an alternative 2-level enhancement for offenses where the defendant represented or marketed as a legitimately manufactured drug another mixture or substance containing fentanyl or a fentanyl analogue, and acted with willful blindness or conscious avoidance of knowledge that such mixture or substance was not the legitimately manufactured drug. *Id.* As grounds for the amendment, the Commission cited data from the Drug Enforcement Administration ("DEA") showing a substantial increase in the seizure of fake prescription pills. *Id.* The DEA reported seizing over 50.6 million fake pills in calendar year 2022, with 70 percent containing fentanyl. *Id.* Of those seized pills containing fentanyl, six out of ten contained a potentially lethal dose of the substance. *Id.* The Commission also pointed to the increase in drug overdose deaths—most of which involved synthetic opioids, primarily fentanyl. *Id.*

In 2025, the Commission amended §2D1.1(b)(13)(B) to change the *mens rea* requirement. *See* USSG, App. C. amend. 833 (effective Nov. 1, 2025). The Commission received comment that §2D1.1(b)(13)(B) was being applied inconsistently, in part, because the *mens rea* requirement generated confusion. In particular, commenters urged the Commission to revise §2D1.1(b)(13)(B) because the mental state of "willful blindness or conscious avoidance of knowledge" was vague, and courts construed willful blindness as legally equivalent to knowledge, causing uncertainty over when the enhancement should be applied. The

Commission further heard concerns about the continuing dangers associated with representing or marketing fentanyl or a fentanyl analogue as a legitimately manufactured drug. Informed by those concerns, the Commission changed the *mens rea* requirement in §2D1.1(b)(13)(B) from "willful blindness or conscious avoidance of knowledge" to "reckless disregard."

The Commission has continued to receive comment on whether the guidelines appropriately account for factors specific to offenses involving fentanyl and fentanyl analogues. Earlier this year, the Commission sought public comment on several amendments proposed by the Department of Justice to address the harm in cases involving fentanyl, fentanyl analogues, and other opioids. *See* U.S. Sent'g Comm'n, "Request for public comment," 90 FR 8840 (Feb. 3, 2025); *see also* Letter from Scott Meisler, *Ex-Officio* Member, U.S. Sent'g Comm'n, to Hon. Carlton W. Reeves, Chair, U.S. Sent'g Comm'n (July 15, 2024) at 5, available at https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-comment/202407/89FR48029_public-comment_R.pdf. Specifically, the Commission sought comment on whether it should create enhancements under §2D1.1 for: (1) distribution of fentanyl, fentanyl analogues, and other opioids to individuals under the age of 21; (2) fentanyl, fentanyl analogue, and opioid offenses involving the use of the dark web or other anonymizing technologies; and (3) drug trafficking offenses involving fentanyl or another synthetic opioid adulterated with xylazine or medetomidine. Some commenters supported the proposed enhancements or asked the Commission to expand the enhancements to apply more broadly, while others opposed the proposed enhancements or asked the Commission to limit the enhancements to apply more narrowly.

In response to these concerns, Part C of the proposed amendment would amend §2D1.1 to add four new specific offense characteristics that increase offense levels in fentanyl and fentanyl analogue trafficking cases involving certain factors. The Commission is considering each of these specific offense characteristics individually and whether to promulgate any of these specific offense characteristics or a combination of them.

First, Part C of the proposed amendment would add a new specific offense characteristic at §2D1.1(b)(14) relating to the distribution of fentanyl or a fentanyl analogue to an individual less than [18][21] years of age or the use or attempted use of an individual less than [18][21] years of age to commit an offense involving such substance. For this enhancement to apply, the defendant must be, at the time of the offense, [at least [4][6][8] years older][substantially older] than the individual less than [18][21] years of age. Part C brackets alternatives for making the enhancement defendant-based or offense-based. The defendant-based alternative of this enhancement also brackets a *mens rea* requirement of knowledge relating to the age of the individual and to the substance involved in the offense.

Second, Part C of the proposed amendment would add a new specific offense characteristic at §2D1.1(b)(15) relating to the use of the dark web or darknets to facilitate the commission or concealment of an offense involving fentanyl or a fentanyl analogue. It also brackets alternatives for making the enhancement defendant-based or offense-based.

Third, Part C of the proposed amendment would add a new specific offense characteristic at §2D1.1(b)(16) relating to the distribution of a mixture or substance containing (A) fentanyl

or a fentanyl analogue and (B) xylazine. It brackets alternatives for making the enhancement defendant-based or offense-based.

Finally, Part C of the proposed amendment would add a new specific offense characteristic at §2D1.1(b)(17) relating to the use or possession of a tableting machine or an encapsulating machine for the purpose of manufacturing fentanyl or a fentanyl analogue. It brackets alternatives for making the enhancement defendant-based or offense-based.

Issues for comment are also provided.

**Proposed Amendment:**

---

**§2D1.1.   Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses); Attempt or Conspiracy**

---

*          *          *

(b)   Specific Offense Characteristics

*          *          *

(13) If the defendant (A) knowingly misrepresented or knowingly marketed as another substance a mixture or substance containing fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide) or a fentanyl analogue, increase by **4** levels; or (B) represented or marketed as a legitimately manufactured drug another mixture or substance containing fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide) or a fentanyl analogue, with reckless disregard that such mixture or substance was not the legitimately manufactured drug, increase by **2** levels. The term "***drug***," as used in subsection (b)(13)(B), has the meaning given that term in 21 U.S.C. § 321(g)(1).

**[The proposed amendment would insert any, a combination, or all of the following specific offense characteristics and renumber current subsections (b)(14) through (b)(18) accordingly. In addition, the proposed amendment would make conforming changes in accordance with the renumbering of these provisions.]**

(14) **[If the defendant[, knowing that an individual was less than [18][21] years of age and that the substance involved in the offense was fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide) or a fentanyl analogue]—**

(A) (i) distributed fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide) or a fentanyl analogue to that individual, and (ii) the defendant was **[at least [4][6][8] years**

older][substantially older] than that individual at the time of the offense; or

(B)    (i) used or attempted to use that individual to commit an offense involving fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide) or a fentanyl analogue, and (ii) the defendant was [at least [4][6][8] years older][substantially older] than that individual at the time of the offense,

increase by [2][4] levels. For purposes of subsection (b)(14)(B), "***used or attempted to use***" includes directing, commanding, encouraging, intimidating, counseling, training, procuring, recruiting, or soliciting.]

[If the offense involved—

(A)    (i) the distribution of fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide) or a fentanyl analogue to an individual less than [18][21] years of age, and (ii) the defendant was [at least [4][6][8] years older][substantially older] than that individual at the time of the offense; or

(B)    (i) using or attempting to use an individual less than [18][21] years of age to commit an offense involving fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide) or a fentanyl analogue, and (ii) the defendant was [at least [4][6][8] years older][substantially older] than that individual at the time of the offense,

increase by [2][4] levels. For purposes of subsection (b)(14)(B), "***using or attempting to use***" includes directing, commanding, encouraging, intimidating, counseling, training, procuring, recruiting, or soliciting.]

(15)    If [the defendant used][the offense involved the use of] the dark web or darknets (*i.e.*, part of the Internet hidden from the general public that cannot be accessed by traditional search engines or web browsers and allows its users to hide their identity and location from other people and from law enforcement) to facilitate the commission or concealment of an offense involving fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide) or a fentanyl analogue, increase by [2][4] levels.

(16)    [If the defendant knowingly distributed a mixture or substance containing    (A)    fentanyl    (N-phenyl-N-[1-(2-phenylethyl)-4-

piperidinyl] propanamide) or a fentanyl analogue, and (B) xylazine, increase by **[2][4]** levels.**]**

**[**If the offense involved distribution of a mixture or substance containing (A) fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide) or a fentanyl analogue, and (B) xylazine, increase by **[2][4]** levels.**]**

(17) If (A) subsection (b)(13) does not apply and (B) **[**the defendant used or possessed**][**the offense involved the use or possession of**]** a tableting machine or an encapsulating machine for the purpose of manufacturing fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide) or a fentanyl analogue, increase by **[2][4]**levels.

*    *    *

(~~16~~20) If the defendant receives an adjustment under §3B1.1 (Aggravating Role) and the offense involved 1 or more of the following factors:

(A) (i) the defendant used fear, impulse, friendship, affection, or some combination thereof to involve another individual in the illegal purchase, sale, transport, or storage of controlled substances, (ii) the individual received little or no compensation from the illegal purchase, sale, transport, or storage of controlled substances, and (iii) the individual had minimal knowledge of the scope and structure of the enterprise;

(B) the defendant, knowing that an individual was (i) less than 18 years of age, (ii) 65 or more years of age, (iii) pregnant, or (iv) unusually vulnerable due to physical or mental condition or otherwise particularly susceptible to the criminal conduct, distributed a controlled substance to that individual or involved that individual in the offense;

(C) the defendant was directly involved in the importation of a controlled substance;

(D) the defendant engaged in witness intimidation, tampered with or destroyed evidence, or otherwise obstructed justice in connection with the investigation or prosecution of the offense;

(E) the defendant committed the offense as part of a pattern of criminal conduct engaged in as a livelihood,

increase by **2** levels.

\*    \*    \*

**Commentary**

\*    \*    \*

**Application Notes:**

\*    \*    \*

18.    **Application of Subsection (b)(14).—**

(A)    **Interaction with Subsection (b)(20).—**Do not apply subsection (b)(14) if subsection (b)(20)(B) also applies.

(B)    **Interaction with Chapter Three Adjustment.—**If the conduct that forms the basis for an enhancement under subsection (b)(14) is the only conduct that forms the basis for an adjustment under §3B1.4 (Using a Minor to Commit a Crime), do not apply that adjustment under §3B1.4.

**[The proposed amendment would renumber current application notes 18 through 26 accordingly. In addition, it would make conforming changes in accordance with the redesignation of these notes.]**

\*    \*    \*

**Issues for Comment:**

1.    Part C of the proposed amendment would amend §2D1.1 (Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses); Attempt or Conspiracy) to add four new specific offense characteristics that increase offense levels in fentanyl and fentanyl analogue trafficking cases involving certain factors. The Commission invites general comment on whether the proposed enhancements are appropriate to address the factors involved in fentanyl and fentanyl analogue trafficking cases, including the harm and the culpability of the defendants in these cases. If not, should the Commission take another approach to address these factors?

2.    The proposed specific offense characteristics set forth in Part C of the proposed amendment would apply to offenses involving fentanyl or a fentanyl analogue. Part B of the proposed amendment would add references to "fentanyl-related substances" to the Drug Quantity Table and Drug Conversion Tables in §2D1.1. If the Commission were to promulgate Part B of the proposed amendment, should the Commission also add fentanyl-related substances to the proposed specific offense characteristics set forth in this Part?

3.    The proposed enhancement at §2D1.1(b)(14) for offenses involving distributing fentanyl or a fentanyl analogue to an individual less than [18][21] years of age, or

using an individual less than [18][21] years of age in the offense, contains a condition requiring that the defendant must be [at least [4][6][8] years older][substantially older] than the individual less than [18][21] years of age. The Commission seeks comment on whether it should include such a requirement. Is the requirement appropriate to address cases involving a defendant who is a peer or similar in age to an individual less than [18][21] years of age? If not, what changes should the Commission make to the proposed enhancement?

4.      The Commission published a proposed amendment setting forth a new Chapter Three adjustment at §3C1.5 addressing offenses involving sophisticated means. If the Commission were to promulgate such an adjustment, should it affect the Commission's consideration of the proposed enhancement at §2D1.1(b)(15) relating to the use of the dark web or darknets? If so, how?

5.      Part C of the proposed amendment would add a new specific offense characteristic at §2D1.1(b)(16) relating to the distribution of a mixture or substance containing (A) fentanyl or a fentanyl analogue and (B) xylazine. The Commission seeks comment on whether the proposed enhancement is appropriate. The Commission also seeks comment on whether there are other adulterants with similar effects (*e.g.*, medetomidine) to which the enhancement should apply.

6.      The proposed enhancement at §2D1.1(b)(17) provides that this enhancement shall not apply if the enhancement at §2D1.1(b)(13) applies. The Commission seeks comment on the interaction between these two enhancements. Does the proposed enhancement at §2D1.1(b)(17) capture conduct and harm that the current enhancement at §2D1.1(b)(13) does not?

## 2.   PROPOSED AMENDMENT:   INFLATIONARY ADJUSTMENTS

**Synopsis of Proposed Amendment:** This proposed amendment is a result of the Commission's work in examining §2B1.1 (Theft, Property Destruction, and Fraud) and related guidelines to consider whether the loss table should be revised to simplify application or to adjust for inflation. *See* U.S. Sent'g Comm'n, "Notice of Final Priorities," 90 FR 39263 (Aug. 14, 2025). As part of that work, the Commission is considering whether to adjust all monetary tables and values in the guidelines for inflation.

The monetary tables and values in the guidelines, including the monetary values in the fine tables for individual defendants and for organizational defendants, were last revised to account for inflation in 2015. *See* USSG App. C, amend. 791 (effective Nov. 1, 2015). The proposed amendment would amend the monetary tables in the guidelines to adjust for inflation, *i.e.,* the tables in §§2B1.1 (Theft, Property, Destruction, and Fraud), 2B2.1 (Burglary), 2B3.1 (Robbery), 2R1.1 (Bid-Rigging, Price-Fixing or Market-Allocation Agreements Among Competitors), 2T4.1 (Tax Table), 5E1.2 (Fines for Individual Defendants), and 8C2.4 (Base Fine). The proposed amendment would adjust the monetary tables and values in the guidelines using a specific multiplier derived from the Bureau of Labor Statistics' Consumer Price Index and then would round the amounts using a set of rules extrapolated from the provisions for adjusting monetary penalties for inflation set forth in section 5(a) of the Federal Civil Penalties Inflation Adjustment Act of 1990. This is the same methodology the Commission used in 2015. *See* USSG App. C, amend. 791 (effective Nov. 1, 2015).

In addition, the proposed amendment adjusts for inflation the monetary value in specific offense characteristics in other Chapter Two guidelines and includes conforming changes to guidelines that refer to the monetary tables.

Issues for comment are also provided.

**Proposed Amendment:**

**§2B1.1.   Larceny, Embezzlement, and Other Forms of Theft; Offenses Involving Stolen Property; Property Damage or Destruction; Fraud and Deceit; Forgery; Offenses Involving Altered or Counterfeit Instruments Other than Counterfeit Bearer Obligations of the United States**

\*      \*      \*

(b)   Specific Offense Characteristics

(1)   If the loss exceeded $6,500$9,000, increase the offense level as follows:

| [MULTIPLIER USED] | LOSS (APPLY THE GREATEST) | INCREASE IN LEVEL |
|---|---|---|
| [1.38] | (A)  $6,500$9,000 or less | no increase |
| [1.38] | (B)  More than $6,500$9,000 | add **2** |
| [1.33] | (C)  More than $15,000$20,000 | add **4** |
| [1.38] | (D)  More than $40,000$55,000 | add **6** |
| [1.58] | (E)  More than $95,000$150,000 | add **8** |
| [1.33] | (F)  More than $150,000$200,000 | add **10** |
| [1.40] | (G)  More than $250,000$350,000 | add **12** |
| [1.36] | (H)  More than $550,000$750,000 | add **14** |
| [1.33] | (I)   More than $1,500,000$2,000,000 | add **16** |
| [1.43] | (J)  More than $3,500,000$5,000,000 | add **18** |
| [1.58] | (K)  More than $9,500,000$15,000,000 | add **20** |
| [1.40] | (L)  More than $25,000,000$35,000,000 | add **22** |
| [1.38] | (M) More than $65,000,000$90,000,000 | add **24** |
| [1.33] | (N)  More than $150,000,000$200,000,000 | add **26** |
| [1.40] | (O)  More than $250,000,000$350,000,000 | add **28** |
| [1.36] | (P)  More than $550,000,000$750,000,000 | add **30**. |

\*      \*      \*

**§2B1.4.   Insider Trading**

\*      \*      \*

(b)   Specific Offense Characteristics

(1)   If the gain resulting from the offense exceeded $6,500$9,000, increase by the number of levels from the table in §2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount.

\*      \*      \*

Proposed Amendment:  Inflationary Adjustments

---

**§2B1.5.  Theft of, Damage to, or Destruction of, Cultural Heritage Resources or Paleontological Resources; Unlawful Sale, Purchase, Exchange, Transportation, or Receipt of Cultural Heritage Resources or Paleontological Resources**

---

\*    \*    \*

(b)    Specific Offense Characteristics

(1)    If the value of the cultural heritage resource or paleontological resource (A) exceeded $2,500$3,500 but did not exceed $6,500$9,000, increase by **1** level; or (B) exceeded $6,500$9,000, increase by the number of levels from the table in §2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount.

\*    \*    \*

---

**§2B2.1.    Burglary of a Residence or a Structure Other than a Residence**

---

\*    \*    \*

(b)    Specific Offense Characteristics

\*    \*    \*

(2)    If the loss exceeded $5,000$7,000, increase the offense level as follows:

| [MULTIPLIER USED] | LOSS (APPLY THE GREATEST) | INCREASE IN LEVEL |
|---|---|---|
| **[1.40]** | (A)  $5,000$7,000 or less | no increase |
| **[1.40]** | (B)  More than $5,000$7,000 | add **1** |
| **[1.25]** | (C)  More than $20,000$25,000 | add **2** |
| **[1.58]** | (D)  More than $95,000$150,000 | add **3** |
| **[1.40]** | (E)  More than $500,000$700,000 | add **4** |
| **[1.33]** | (F)  More than $1,500,000$2,000,000 | add **5** |
| **[1.33]** | (G)  More than $3,000,000$4.000,000 | add **6** |
| **[1.40]** | (H)  More than $5,000,000$7,000,000 | add **7** |
| **[1.58]** | (I)   More than $9,500,000$15,000,000 | add **8**. |

\*    \*    \*

Proposed Amendment:  Inflationary Adjustments

---

## §2B2.3.  Trespass

*     *     *

(b)   Specific Offense Characteristics

*     *     *

(3)   If (A) the offense involved invasion of a protected computer; and (B) the loss resulting from the invasion (i) exceeded $2,500$3,500 but did not exceed $6,500$9,000, increase by **1** level; or (ii) exceeded $6,500$9,000, increase by the number of levels from the table in §2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount.

*     *     *

---

## §2B3.1.  Robbery

*     *     *

(b)   Specific Offense Characteristics

*     *     *

(7)   If the loss exceeded $20,000$25,000, increase the offense level as follows:

| [MULTIPLIER USED] | LOSS (APPLY THE GREATEST) | INCREASE IN LEVEL |
|---|---|---|
| [1.25] | (A) $20,000$25,000 or less | no increase |
| [1.25] | (B) More than $20,000$25,000 | add **1** |
| [1.58] | (C) More than $95,000$150,000 | add **2** |
| [1.40] | (D) More than $500,000$700,000 | add **3** |
| [1.33] | (E) More than $1,500,000$2,000,000 | add **4** |
| [1.33] | (F) More than $3,000,000$4,000,000 | add **5** |
| [1.40] | (G) More than $5,000,000$7,000,000 | add **6** |
| [1.58] | (H) More than $9,500,000$15,000,000 | add **7**. |

*     *     *

Proposed Amendment:  Inflationary Adjustments

---

**§2B3.2.    Extortion by Force or Threat of Injury or Serious Damage**

\*    \*    \*

(b)    Specific Offense Characteristics

\*    \*    \*

(2)    If the greater of the amount demanded or the loss to the victim exceeded $20,000$25,000, increase by the corresponding number of levels from the table in §2B3.1(b)(7).

\*    \*    \*

---

**§2B3.3.    Blackmail and Similar Forms of Extortion**

\*    \*    \*

(b)    Specific Offense Characteristic

(1)    If the greater of the amount obtained or demanded (A) exceeded $2,500$3,500 but did not exceed $6,500$9,000, increase by **1** level; or (B) exceeded $6,500$9,000, increase by the number of levels from the table in §2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount.

\*    \*    \*

---

**§2B4.1.    Bribery in Procurement of Bank Loan and Other Commercial Bribery**

\*    \*    \*

(b)    Specific Offense Characteristics

(1)    If the greater of the value of the bribe or the improper benefit to be conferred (A) exceeded $2,500$3,500 but did not exceed $6,500$9,000, increase by **1** level; or (B) exceeded $6,500$9,000, increase by the number of levels from the table in §2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount.

\*    \*    \*

Proposed Amendment:  Inflationary Adjustments

---

### §2B5.1.   Offenses Involving Counterfeit Bearer Obligations of the United States

\*     \*     \*

(b)   Specific Offense Characteristics

(1)   If the face value of the counterfeit items (A) exceeded $2,500$3,500 but did not exceed $6,500$9,000, increase by **1** level; or (B) exceeded $6,500$9,000, increase by the number of levels from the table in §2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount.

\*     \*     \*

---

### §2B5.3.   Criminal Infringement of Copyright or Trademark

\*     \*     \*

(b)   Specific Offense Characteristics

(1)   If the infringement amount (A) exceeded $2,500$3,500 but did not exceed $6,500$9,000, increase by **1** level; or (B) exceeded $6,500$9,000, increase by the number of levels from the table in §2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount.

\*     \*     \*

---

### §2B6.1.   Altering or Removing Motor Vehicle Identification Numbers, or Trafficking in Motor Vehicles or Parts with Altered or Obliterated Identification Numbers

\*     \*     \*

(b)   Specific Offense Characteristics

(1)   If the retail value of the motor vehicles or parts (A) exceeded $2,500$3,500 but did not exceed $6,500$9,000, increase by **1** level; or (B) exceeded $6,500$9,000, increase by the number of levels from the table in §2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount.

\*     \*     \*

Proposed Amendment:  Inflationary Adjustments

---

**§2C1.1.  Offering, Giving, Soliciting, or Receiving a Bribe; Extortion Under Color of Official Right; Fraud Involving the Deprivation of the Intangible Right to Honest Services of Public Officials; Conspiracy to Defraud by Interference with Governmental Functions**

---

\*     \*     \*

(b)  Specific Offense Characteristics

\*     \*     \*

(2)  If the value of the payment, the benefit received or to be received in return for the payment, the value of anything obtained or to be obtained by a public official or others acting with a public official, or the loss to the government from the offense, whichever is greatest, exceeded ~~$6,500~~$9,000, increase by the number of levels from the table in §2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount.

\*     \*     \*

---

**§2C1.2.  Offering, Giving, Soliciting, or Receiving a Gratuity**

---

\*     \*     \*

(b)  Specific Offense Characteristics

\*     \*     \*

(2)  If the value of the gratuity exceeded ~~$6,500~~$9,000, increase by the number of levels from the table in §2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount.

\*     \*     \*

---

**§2C1.8.  Making, Receiving, or Failing to Report a Contribution, Donation, or Expenditure in Violation of the Federal Election Campaign Act; Fraudulently Misrepresenting Campaign Authority; Soliciting or Receiving a Donation in Connection with an Election While on Certain Federal Property**

---

\*     \*     \*

(b)  Specific Offense Characteristics

(1)    If the value of the illegal transactions exceeded $6,500$9,000, increase by the number of levels from the table in §2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount.

\*    \*    \*

---

**§2E5.1.    Offering, Accepting, or Soliciting a Bribe or Gratuity Affecting the Operation of an Employee Welfare or Pension Benefit Plan; Prohibited Payments or Lending of Money by Employer or Agent to Employees, Representatives, or Labor Organizations**

---

\*    \*    \*

(b)    Specific Offense Characteristics

\*    \*    \*

(2)    If the value of the prohibited payment or the value of the improper benefit to the payer, whichever is greater (A) exceeded $2,500$3,500 but did not exceed $6,500$9,000, increase by **1** level; or (B) exceeded $6,500$9,000, increase by the number of levels from the table in §2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount.

\*    \*    \*

---

**§2Q2.1.    Offenses Involving Fish, Wildlife, and Plants**

---

\*    \*    \*

(b)    Specific Offense Characteristics

\*    \*    \*

(3)    (If more than one applies, use the greater):

(A)    If the market value of the fish, wildlife, or plants (i) exceeded $2,500$3,500 but did not exceed $6,500$9,000, increase by **1** level; or (ii) exceeded $6,500$9,000, increase by the number of levels from the table in §2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount; or

(B)    If the offense involved (i) marine mammals that are listed as depleted under the Marine Mammal Protection Act (as set forth in 50 C.F.R. § 216.15); (ii) fish, wildlife, or plants that are listed as endangered or threatened by the Endangered Species Act (as

set forth in 50 C.F.R. Part 17); or (iii) fish, wildlife, or plants that are listed in Appendix I to the Convention on International Trade in Endangered Species of Wild Fauna or Flora (as set forth in 50 C.F.R. Part 23), increase by **4** levels.

\*    \*    \*

## §2R1.1.  Bid-Rigging, Price-Fixing or Market-Allocation Agreements Among Competitors

\*    \*    \*

(b)  Specific Offense Characteristics

\*    \*    \*

(2)  If the volume of commerce attributable to the defendant was more than $1,000,000$1,500,000, adjust the offense level as follows:

| [MULTIPLIER USED] | VOLUME OF COMMERCE (APPLY THE GREATEST) | ADJUSTMENT TO OFFENSE LEVEL |
|---|---|---|
| [1.50] | (A)  More than $1,000,000$1,500,000 | add **2** |
| [1.50] | (B)  More than $10,000,000$15,000,000 | add **4** |
| [1.40] | (C)  More than $50,000,000$70,000,000 | add **6** |
| [1.50] | (D)  More than $100,000,000$150,000,000 | add **8** |
| [1.33] | (E)  More than $300,000,000$400,000,000 | add **10** |
| [1.33] | (F)  More than $600,000,000$800,000,000 | add **12** |
| [1.38] | (G)  More than $1,200,000,000$1,650,000,000 | add **14** |
| [1.35] | (H)  More than $1,850,000,000$2,500,000,000 | add **16**. |

\*    \*    \*

## §2T3.1.  Evading Import Duties or Restrictions (Smuggling); Receiving or Trafficking in Smuggled Property

(a)  Base Offense Level:

(1)  The level from §2T4.1 (Tax Table) corresponding to the tax loss, if the tax loss exceeded $1,500$2,000; or

(2)  **5**, if the tax loss exceeded $200$300 but did not exceed $1,500$2,000; or

(3)  **4**, if the tax loss did not exceed $200$300.

Proposed Amendment:  Inflationary Adjustments

For purposes of this guideline, the "tax loss" is the amount of the duty.

*    *    *

### §2T4.1.    Tax Table

| [MULTIPLIER USED] | TAX LOSS (APPLY THE GREATEST) | OFFENSE LEVEL |
|---|---|---|
| [1.25] | (A)  $2,500$3,500 or less | 6 |
| [1.25] | (B)  More than $2,500$3,500 | 8 |
| [1.25] | (C)  More than $6,500$9,000 | 10 |
| [1.25] | (D)  More than $15,000$20,000 | 12 |
| [1.25] | (E)  More than $40,000$55,000 | 14 |
| [1.25] | (F)  More than $100,000$150,000 | 16 |
| [1.25] | (G)  More than $250,000$350,000 | 18 |
| [1.25] | (H)  More than $550,000$750,000 | 20 |
| [1.25] | (I)  More than $1,500,000$2,000,000 | 22 |
| [1.25] | (J)  More than $3,500,000$5,000,000 | 24 |
| [1.25] | (K)  More than $9,500,000$15,000,000 | 26 |
| [1.25] | (L)  More than $25,000,000$35,000,000 | 28 |
| [1.25] | (M)  More than $65,000,000$90,000,000 | 30 |
| [1.25] | (N)  More than $150,000,000$200,000,000 | 32 |
| [1.25] | (O)  More than $250,000,000$350,000,000 | 34 |
| [1.25] | (P)  More than $550,000,000$750,000,000 | 36. |

*    *    *

### §5E1.2.    Fines for Individual Defendants

*    *    *

(c)  (1)  The minimum of the fine guideline range is the amount shown in column A of the table below.

(2)  Except as specified in paragraph (4) below, the maximum of the fine guideline range is the amount shown in column B of the table below.

(3)                                        FINE TABLE

| [MULTIPLIER USED] | OFFENSE LEVEL | A MINIMUM | B MAXIMUM |
|---|---|---|---|
| [1.50, 1.58] | 3 and below | $200$300 | $9,500$15,000 |
| [1.40, 1.58] | 4–5 | $500$700 | $9,500$15,000 |
| [1.50, 1.58] | 6–7 | $1,000$1,500 | $9,500$15,000 |
| [1.25, 1.25] | 8–9 | $2,000$2,500 | $20,000$25,000 |
| [1.38, 1.38] | 10–11 | $4,000$5,500 | $40,000$55,000 |
| [1.36, 1.36] | 12–13 | $5,500$7,500 | $55,000$75,000 |

| [1.33, 1.33] | 14–15 | $7,500$10,000 | $75,000$100,000 |
| [1.50, 1.58] | 16–17 | $10,000$15,000 | $95,000$150,000 |
| [1.50, 1.50] | 18–19 | $10,000$15,000 | $100,000$150,000 |
| [1.33, 1.33] | 20–22 | $15,000$20,000 | $150,000$200,000 |
| [1.25, 1.25] | 23–25 | $20,000$25,000 | $200,000$250,000 |
| [1.40, 1.40] | 26–28 | $25,000$35,000 | $250,000$350,000 |
| [1.33, 1.33] | 29–31 | $30,000$40,000 | $300,000$400,000 |
| [1.43, 1.43] | 32–34 | $35,000$50,000 | $350,000$500,000 |
| [1.38, 1.38] | 35–37 | $40,000$55,000 | $400,000$550,000 |
| [1.40, 1.40] | 38 and above | $50,000$70,000 | $500,000$700,000. |

\*　　\*　　\*

(h)　Special Instructions

(1)　For offenses committed prior to November 1, 2015, use the applicable fine guideline range that was set forth in the version of §5E1.2(c) that was in effect on November 1, 2014, rather than the applicable fine guideline range set forth in subsection (c) above.

(2)　For offenses committed on or after November 1, 2015 but prior to November 1, 2026, use the applicable fine guideline range that was set forth in the version of §5E1.2(c) that was in effect on November 1, 2025, rather than the applicable fine guideline range set forth in subsection (c) above.

\*　　\*　　\*

## §8C2.4.  Base Fine

\*　　\*　　\*

(d)　OFFENSE LEVEL FINE TABLE

| [MULTIPLIER USED] | Offense Level | Amount |
| --- | --- | --- |
| [1.18] | 6 or less | $8,500$10,000 |
| [1.33] | 7 | $15,000$20,000 |
| [1.33] | 8 | $15,000$20,000 |
| [1.40] | 9 | $25,000$35,000 |
| [1.43] | 10 | $35,000$50,000 |
| [1.40] | 11 | $50,000$70,000 |
| [1.36] | 12 | $70,000$95,000 |
| [1.50] | 13 | $100,000$150,000 |
| [1.33] | 14 | $150,000$200,000 |
| [1.25] | 15 | $200,000$250,000 |
| [1.33] | 16 | $300,000$400,000 |

| [1.33] | 17 | $450,000$600,000 |
| [1.33] | 18 | $600,000$800,000 |
| [1.18] | 19 | $850,000$1,000,000 |
| [1.50] | 20 | $1,000,000$1,500,000 |
| [1.33] | 21 | $1,500,000$2,000,000 |
| [1.25] | 22 | $2,000,000$2,500,000 |
| [1.33] | 23 | $3,000,000$4,000,000 |
| [1.43] | 24 | $3,500,000$5,000,000 |
| [1.40] | 25 | $5,000,000$7,000,000 |
| [1.38] | 26 | $6,500,000$9,000,000 |
| [1.18] | 27 | $8,500,000$10,000,000 |
| [1.50] | 28 | $10,000,000$15,000,000 |
| [1.33] | 29 | $15,000,000$20,000,000 |
| [1.25] | 30 | $20,000,000$25,000,000 |
| [1.40] | 31 | $25,000,000$35,000,000 |
| [1.33] | 32 | $30,000,000$40,000,000 |
| [1.38] | 33 | $40,000,000$55,000,000 |
| [1.40] | 34 | $50,000,000$70,000,000 |
| [1.38] | 35 | $65,000,000$90,000,000 |
| [1.25] | 36 | $80,000,000$100,000,000 |
| [1.50] | 37 | $100,000,000$150,000,000 |
| [1.33] | 38 or more | $150,000,000$200,000,000. |

(e)    Special Instructions

(1)    For offenses committed prior to November 1, 2015, use the offense level fine table that was set forth in the version of §8C2.4(d) that was in effect on November 1, 2014, rather than the offense level fine table set forth in subsection (d) above.

(2)    For offenses committed on or after November 1, 2015 but prior to November 1, 2026, use the offense level fine table that was set forth in the version of §8C2.4(d) that was in effect on November 1, 2025, rather than the offense level fine table set forth in subsection (d) above.

*    *    *

**Issues for Comment**

1.    The Commission seeks comment on whether the monetary tables in the guidelines should be adjusted for inflation. The monetary tables set forth in the proposed amendment relate to a variety of different offenses and apply to a number of different criminal statutes. Given the difference between the types of offenses, should all monetary tables be adjusted for inflation? Do the types of offenses or

statutory provisions related to any of the monetary tables suggest that it should not be adjusted for inflation?

2.      The Commission seeks comment on whether the monetary tables in the guidelines should be adjusted on a regular basis, such as on an annual, five-year, or ten-year basis, or at particular inflationary measures, such as when $1.00 in the year the table was last adjusted has the same buying power as $1.25 or $1.33 or $1.50 in the current year? Should the Commission incorporate directly into the guidelines a mechanism for automatically adjusting for inflation? Would the incorporation of such a mechanism be consistent with the Commission's statutory authority?

### 3.    PROPOSED AMENDMENT:    ECONOMIC CRIMES

**Synopsis of Proposed Amendment:** In August 2025, the Commission identified as one of its policy priorities for the amendment cycle ending May 1, 2026, "[e]xamination of § 2B1.1 (Theft, Property Destruction, and Fraud) and related guidelines to ensure the guidelines appropriately reflect the culpability of the individual and the harm to the victim, including [] reassessing the role of actual loss, intended loss, and gain[, ] considering whether the loss table in § 2B1.1 should be revised to simplify application or to adjust for inflation," and "possible consideration of amendments that might be appropriate." U.S. Sent'g Comm'n, "Notice of Final Priorities," 90 FR 39263 (Aug. 14, 2025).

This proposed amendment contains two parts (Parts A and B). The Commission is considering whether to promulgate either or both of these parts, as they are not mutually exclusive.

**Part A** of the proposed amendment would restructure the loss table at §2B1.1(b)(1) to simplify application of the table. Issues for comment are also provided.

**Part B** of the proposed amendment would amend existing specific offense characteristics (SOCs) and add new SOCs to §2B1.1 to reflect the culpability of the individual and harm to the victim. Issues for comment are also provided.

**(A)    Restructuring the Loss Table**

**Synopsis of Proposed Amendment:** The loss table at §2B1.1(b)(1) provides a tiered enhancement based on the amount of loss resulting from the offense. Currently, there are 16 levels resulting in either no increase or an increase of up to 30 levels.

The Commission has received comment from some stakeholders advocating revising the loss table to simplify application and reduce the fact-finding burden on courts. Part A of the proposed amendment seeks to accomplish this by reducing the number of levels in the table. By reducing the number of levels in the table, the Commission seeks to ease the court's burden in cases involving a loss amount near the margins of two levels.

As a starting point, Part A of the proposed amendment restructures the loss table with wider ranges based on an analysis of the loss amount attributed to each sentenced individual in fiscal year 2024, creating five groups (or quintiles), with the loss amount for each group representing approximately 20 percent of the individuals sentenced under §2B1.1.

For individuals sentenced in fiscal year 2024, the data show that for approximately 20 percent of individuals sentenced under §2B1.1, the offense involved $15,000 or less of loss, resulting in either no enhancement or a 2-level enhancement; approximately 20 percent involved between $15,000 and $95,000, resulting in a 4- or 6-level enhancement; approximately 20 percent involved between $95,000 and $250,000, resulting in an 8- or 10-level enhancement; approximately 20 percent involved between $250,000 and $1,500,000, resulting in a 12- or 14-level enhancement; and approximately 20 percent involved more than $1,500,000 of loss, resulting in an enhancement ranging from 16 to 30-levels.

Part A of the proposed amendment would consolidate the loss table so that each of the first five levels would account for approximately 20 percent (a quintile) of cases sentenced under §2B1.1 as reflected by the data described above. It also brackets the possibility of amending the offense level enhancement associated with each category. Under the revised table, offenses involving $15,000 of loss or less would receive no increase, offenses involving more than $15,000 of loss would receive a [4]-level increase, offenses involving more than $95,000 of loss would receive an [8]-level increase, offenses involving more than $250,000 of loss would receive a [12]-level increase, and offenses involving more than $1,500,000 of loss would receive a [16]-level increase.

The revised table retains the loss categories in the top quintile for offenses involving more than $9,500,000, $65,000,000, and $250,000,000 while bracketing the possibility of amending the associated offense level enhancements. These categories are retained to provide an offense level increase for individuals with the highest loss amounts.

The proposed amendment includes conforming changes to guidelines that refer to the loss table at §2B1.1.

Issues for comment are also provided.

**Proposed Amendment:**

**§2B1.1.   Larceny, Embezzlement, and Other Forms of Theft; Offenses Involving Stolen Property; Property Damage or Destruction; Fraud and Deceit; Forgery; Offenses Involving Altered or Counterfeit Instruments Other than Counterfeit Bearer Obligations of the United States**

\*     \*     \*

(b)   Specific Offense Characteristics

(1)   If the loss exceeded $~~6,500~~15,000, increase the offense level as follows:

| LOSS (APPLY THE GREATEST) | INCREASE IN LEVEL |
|---|---|
| (A)     $~~6,500~~15,000 or less | no increase |
| ~~(B)    More than $6,500~~ | ~~add **2**~~ |
| (~~C~~B) More than $15,000 | add **[4]** |
| ~~(D)    More than $40,000~~ | ~~add **6**~~ |
| (~~E~~C) More than $95,000 | add **[8]** |
| ~~(F)    More than $150,000~~ | ~~add **10**~~ |
| (~~G~~D) More than $250,000 | add **[12]** |
| ~~(H)    More than $550,000~~ | ~~add **14**~~ |
| (~~I~~E) More than $1,500,000 | add **[16]** |
| ~~(J)    More than $3,500,000~~ | ~~add **18**~~ |
| (~~K~~F) More than $9,500,000 | add **[20]** |
| ~~(L)    More than $25,000,000~~ | ~~add **22**~~ |
| (~~M~~G)More than $65,000,000 | add **[24]** |
| ~~(N)    More than $150,000,000~~ | ~~add **26**~~ |
| (~~O~~H) More than $250,000,000 | add **[28]** |
| ~~(P)    More than $550,000,000~~ | ~~add **30**~~. |

\*     \*     \*

**§2B1.4.   Insider Trading**

\*     \*     \*

(b)   Specific Offense Characteristics

(1)   If the gain resulting from the offense exceeded $~~6,500~~$15,000, increase by the number of levels from the table in §2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount.

\*     \*     \*

---

**§2B1.5.   Theft of, Damage to, or Destruction of, Cultural Heritage Resources or Paleontological Resources; Unlawful Sale, Purchase, Exchange, Transportation, or Receipt of Cultural Heritage Resources or Paleontological Resources**

---

\*    \*    \*

(b)    Specific Offense Characteristics

   (1)   If the value of the cultural heritage resource or paleontological resource (A) exceeded $2,500 but did not exceed ~~$6,500~~$15,000, increase by **1** level; or (B) exceeded ~~$6,500~~$15,000, increase by the number of levels from the table in §2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount.

\*    \*    \*

---

**§2B2.3.   Trespass**

---

\*    \*    \*

(b)    Specific Offense Characteristics

\*    \*    \*

   (3)   If (A) the offense involved invasion of a protected computer; and (B) the loss resulting from the invasion (i) exceeded $2,500 but did not exceed ~~$6,500~~$15,000, increase by **1** level; or (ii) exceeded ~~$6,500~~$15,000, increase by the number of levels from the table in §2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount.

\*    \*    \*

---

**§2B3.3.   Blackmail and Similar Forms of Extortion**

---

\*    \*    \*

(b)    Specific Offense Characteristic

   (1)   If the greater of the amount obtained or demanded (A) exceeded $2,500 but did not exceed ~~$6,500~~$15,000, increase by **1** level; or (B) exceeded ~~$6,500~~$15,000, increase by the number of levels from the table in §2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount.

Proposed Amendment:  Economic Crimes

*    *    *

## §2B4.1.    Bribery in Procurement of Bank Loan and Other Commercial Bribery

*    *    *

(b)    Specific Offense Characteristics

(1)    If the greater of the value of the bribe or the improper benefit to be conferred (A) exceeded $2,500 but did not exceed $6,500$15,000, increase by **1** level; or (B) exceeded $6,500$15,000, increase by the number of levels from the table in §2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount.

*    *    *

## §2B5.1.    Offenses Involving Counterfeit Bearer Obligations of the United States

*    *    *

(b)    Specific Offense Characteristics

(1)    If the face value of the counterfeit items (A) exceeded $2,500 but did not exceed $6,500$15,000, increase by **1** level; or (B) exceeded $6,500$15,000, increase by the number of levels from the table in §2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount.

*    *    *

## §2B5.3.    Criminal Infringement of Copyright or Trademark

*    *    *

(b)    Specific Offense Characteristics

(1)    If the infringement amount (A) exceeded $2,500 but did not exceed $6,500$15,000, increase by **1** level; or (B) exceeded $6,500$15,000, increase by the number of levels from the table in §2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount.

*    *    *

---

**§2B6.1.    Altering or Removing Motor Vehicle Identification Numbers, or Trafficking in Motor Vehicles or Parts with Altered or Obliterated Identification Numbers**

---

\*    \*    \*

(b)    Specific Offense Characteristics

> (1)    If the retail value of the motor vehicles or parts (A) exceeded $2,500 but did not exceed ~~$6,500~~$15,000, increase by **1** level; or (B) exceeded ~~$6,500~~$15,000, increase by the number of levels from the table in §2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount.

\*    \*    \*

---

**§2C1.1.    Offering, Giving, Soliciting, or Receiving a Bribe; Extortion Under Color of Official Right; Fraud Involving the Deprivation of the Intangible Right to Honest Services of Public Officials; Conspiracy to Defraud by Interference with Governmental Functions**

---

\*    \*    \*

(b)    Specific Offense Characteristics

\*    \*    \*

> (2)    If the value of the payment, the benefit received or to be received in return for the payment, the value of anything obtained or to be obtained by a public official or others acting with a public official, or the loss to the government from the offense, whichever is greatest, exceeded ~~$6,500~~$15,000, increase by the number of levels from the table in §2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount.

\*    \*    \*

---

**§2C1.2.    Offering, Giving, Soliciting, or Receiving a Gratuity**

---

\*    \*    \*

(b)    Specific Offense Characteristics

\*    \*    \*

Proposed Amendment:  Economic Crimes

(2)    If the value of the gratuity exceeded ~~$6,500~~$15,000, increase by the number of levels from the table in §2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount.

\* \* \*

## §2C1.8.    Making, Receiving, or Failing to Report a Contribution, Donation, or Expenditure in Violation of the Federal Election Campaign Act; Fraudulently Misrepresenting Campaign Authority; Soliciting or Receiving a Donation in Connection with an Election While on Certain Federal Property

\* \* \*

(b)    Specific Offense Characteristics

(1)    If the value of the illegal transactions exceeded ~~$6,500~~$15,000, increase by the number of levels from the table in §2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount.

\* \* \*

## §2E5.1.    Offering, Accepting, or Soliciting a Bribe or Gratuity Affecting the Operation of an Employee Welfare or Pension Benefit Plan; Prohibited Payments or Lending of Money by Employer or Agent to Employees, Representatives, or Labor Organizations

\* \* \*

(b)    Specific Offense Characteristics

\* \* \*

(2)    If the value of the prohibited payment or the value of the improper benefit to the payer, whichever is greater (A) exceeded $2,500 but did not exceed ~~$6,500~~$15,000, increase by **1** level; or (B) exceeded ~~$6,500~~$15,000, increase by the number of levels from the table in §2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount.

\* \* \*

## §2Q2.1.    Offenses Involving Fish, Wildlife, and Plants

\* \* \*

(b)    Specific Offense Characteristics

\*    \*    \*

(3)    (If more than one applies, use the greater):

(A)    If the market value of the fish, wildlife, or plants (i) exceeded $2,500 but did not exceed $6,500$15,000, increase by **1** level; or (ii) exceeded $6,500$15,000, increase by the number of levels from the table in §2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount; or

(B)    If the offense involved (i) marine mammals that are listed as depleted under the Marine Mammal Protection Act (as set forth in 50 C.F.R. § 216.15); (ii) fish, wildlife, or plants that are listed as endangered or threatened by the Endangered Species Act (as set forth in 50 C.F.R. Part 17); or (iii) fish, wildlife, or plants that are listed in Appendix I to the Convention on International Trade in Endangered Species of Wild Fauna or Flora (as set forth in 50 C.F.R. Part 23), increase by **4** levels.

\*    \*    \*

## Issues for Comment

1.    The Commission seeks comment on whether the restructured loss table sufficiently accounts for the financial harm in economic crime offenses. Would the proposed revisions to the loss table advance the Commission's goals of simplifying application and reducing the court's fact-finding burden? What are the advantages and disadvantages of broader categories of loss? Are there other approaches the Commission should consider?

2.    Part A of the proposed amendment would amend the loss table by establishing a loss exceeding $15,000 as the threshold to trigger an enhancement. The Commission seeks comment on whether this amount is the appropriate threshold to trigger an enhancement under the table. If not, what amount should it be?

3.    Part A of the proposed amendment would maintain the offense level enhancement associated with each of the remaining loss categories. The Commission seeks comment on whether the offense level enhancements should be revised to account for the restructuring of the loss table. If so, how should they be revised? That is, what is the increase in offense level that should result from each loss category?

## (B)    Culpability Factors

**Synopsis of Proposed Amendment:** A wide variety of economic crimes are referenced to §2B1.1. To account for the range of conduct, §2B1.1 contains 20 specific offense characteristics (SOCs) and four cross-references to other guidelines.

Among the 20 SOCs is a provision providing a tiered enhancement based on the number of victims and the level of financial hardship to those victims resulting from the offense. USSG §2B1.1(b)(2). There is also an enhancement if the individual committed the offense using "sophisticated means." USSG §2B1.1(b)(10)(C).

The Commission has heard from some stakeholders that §2B1.1 does not appropriately reflect the culpability of sentenced individuals or the harm experienced by the victims. Specifically, some stakeholders have suggested that the guidelines should measure an individual's culpability by considering the non-economic harm to victims, in addition to the economic impact and number of victims. Additionally, some stakeholders have asked the Commission to consider amending the sophisticated means enhancement because, in their view, the enhancement is applied too broadly and for conduct that is not complex or intricate. These stakeholders suggest that the enhancement is often based on conduct that is inherent in economic crime offenses and therefore is captured by the base offense level. Some stakeholders have also noted that the enhancement is not applied uniformly because the guidelines do not provide a clear standard. Some stakeholders have also expressed concern that §2B1.1 does not adequately account for mitigating factors for individuals with limited involvement in the offense.

Part B of the proposed amendment seeks to address these concerns.

Part B of the proposed amendment would create a new specific offense characteristic at §2B1.1(b)(3) by adding an enhancement for offenses that resulted in substantial non-economic harm to one or more victims. The amendment brackets the possibility of a 2-, 3-, or 4-level enhancement. It would also provide a list of examples of "non-economic harm," including physical harm, psychological harm, emotional trauma, harm to reputation or credit rating, and invasion of privacy.

Part B of the proposed amendment would amend the sophisticated means enhancement at renumbered §2B1.1(b)(11). It would revise the definition of "sophisticated means" to mean "committing or concealing an offense with a greater level of complexity than typical for an offense of that nature" and provide further guidance for courts to use when determining whether conduct fits the definition. Additionally, the definition of "United States," as it applies to the provision, would be moved from the commentary to the text of the guideline.

Part B of the proposed amendment would also add two mitigating factors. The first would provide for a [2]-level decrease if the defendant committed the offense at the direction of his or her employer for fear of negative employment consequences; was motivated by an intimate or familial relationship or by threats or fear to commit the offense and was otherwise unlikely to commit such an offense; or was unusually vulnerable to being persuaded or induced to commit the offense due to a physical or mental condition. The second mitigating factor would provide for a tiered decrease based on whether, prior to the

defendant's knowledge of the criminal investigation or prosecution for the offense, the defendant voluntarily ceased the criminal activity, made efforts to return the money or property to the victim, or reported the offense to appropriate governmental authorities.

Additionally, the §2B1.1 specific offense characteristics vary widely in frequency of use. As part of its ongoing efforts to simplify the *Guidelines Manual*, the Commission is considering deleting three specific offense characteristics that courts have applied infrequently (fewer than 1% of cases) in the last five fiscal years: §2B1.1(b)(3), (4), and (13).

Issues for comment are also provided.

**Proposed Amendment:**

**§2B1.1.    Larceny, Embezzlement, and Other Forms of Theft; Offenses Involving Stolen Property; Property Damage or Destruction; Fraud and Deceit; Forgery; Offenses Involving Altered or Counterfeit Instruments Other than Counterfeit Bearer Obligations of the United States**

\*    \*    \*

(b)    Specific Offense Characteristics

\*    \*    \*

(2)    (Apply the greatest) If the offense—

(A)    (i) involved 10 or more victims; (ii) was committed through mass-marketing; or (iii) resulted in substantial financial hardship to one or more victims, increase by **2** levels;

(B)    resulted in substantial financial hardship to five or more victims, increase by **4** levels; or

(C)    resulted in substantial financial hardship to 25 or more victims, increase by **6** levels.

(3)    If the offense resulted in substantial non-economic harm to one or more victims, increase by **[2][3][4]** levels. For purposes of this provision, ***"non-economic harm"*** includes such harms as physical harm, psychological harm, emotional trauma, harm to reputation or credit rating, and invasion of privacy interest.

(4)    If the offense involved a theft from the person of another, increase by **2** levels.

(4~~5~~) If the offense involved receiving stolen property, and the defendant was a person in the business of receiving and selling stolen property, increase by **2** levels.

(5~~6~~) If the offense involved theft of, damage to, destruction of, or trafficking in, property from a national cemetery or veterans' memorial, increase by **2** levels.

(6~~7~~) If (A) the defendant was convicted of an offense under 18 U.S.C. § 1037; and (B) the offense involved obtaining electronic mail addresses through improper means, increase by **2** levels.

(7~~8~~) If (A) the defendant was convicted of a federal health care offense involving a government health care program; and (B) the loss under subsection (b)(1) to the government health care program was (i) more than $1,000,000, increase by **2** levels; (ii) more than $7,000,000, increase by **3** levels; or (iii) more than $20,000,000, increase by **4** levels.

(8~~9~~) (Apply the greater) If—

   (A)   the offense involved conduct described in 18 U.S.C. § 670, increase by **2** levels; or

   (B)   the offense involved conduct described in 18 U.S.C. § 670, and the defendant was employed by, or was an agent of, an organization in the supply chain for the pre-retail medical product, increase by **4** levels.

(~~9~~10) If the offense involved (A) a misrepresentation that the defendant was acting on behalf of a charitable, educational, religious, or political organization, or a government agency; (B) a misrepresentation or other fraudulent action during the course of a bankruptcy proceeding; (C) a violation of any prior, specific judicial or administrative order, injunction, decree, or process not addressed elsewhere in the guidelines; or (D) a misrepresentation to a consumer in connection with obtaining, providing, or furnishing financial assistance for an institution of higher education, increase by **2** levels. If the resulting offense level is less than level **10**, increase to level **10**.

(~~10~~11) If (A) the defendant relocated, or participated in relocating, a fraudulent scheme to another jurisdiction to evade law enforcement or regulatory officials; (B) a substantial part of a fraudulent scheme was committed from outside the United States; or (C) the offense otherwise involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting

sophisticated means, increase by **2** levels. If the resulting offense level is less than level **12**, increase to level **12**.

For purposes of this provision:

"***Sophisticated means***" means committing or concealing an offense with a greater level of complexity than typical for an offense of that nature. Such complexity may be achieved through various methods, including by using advanced or emerging technologies **[**in ways not routinely employed by everyday users**][**in a more specialized, elaborate, or unusual way than an ordinary user would**]**. Sophisticated means are often used to increase the scale of the offense or to make especially difficult the detection of the offense **[**or the detection of the defendant's participation in the offense**]**.

"***United States***" means each of the 50 states, the District of Columbia, the Commonwealth of Puerto Rico, the United States Virgin Islands, Guam, the Northern Mariana Islands, and American Samoa.

(~~11~~12) If the offense involved (A) the possession or use of any (i) device-making equipment, or (ii) authentication feature; (B) the production or trafficking of any (i) unauthorized access device or counterfeit access device, or (ii) authentication feature; or (C)(i) the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification, or (ii) the possession of 5 or more means of identification that unlawfully were produced from, or obtained by the use of, another means of identification, increase by **2** levels. If the resulting offense level is less than level **12**, increase to level **12**.

(~~12~~13) If the offense involved conduct described in 18 U.S.C. § 1040, increase by **2** levels. If the resulting offense level is less than level **12**, increase to level **12**.

(~~13~~14) If the defendant was convicted under 42 U.S.C. § 408(a), § 1011(a), or § 1383a(a) and the statutory maximum term of ten years' imprisonment applies, increase by **4** levels. If the resulting offense level is less than **12**, increase to level **12**.

(~~14~~15) (Apply the greater) If the offense involved misappropriation of a trade secret and the defendant knew or intended—

(A)  that the trade secret would be transported or transmitted out of the United States, increase by **2** levels; or

(B)  that the offense would benefit a foreign government, foreign instrumentality, or foreign agent, increase by **4** levels.

If subparagraph (B) applies and the resulting offense level is less than level **14**, increase to level **14**.

(~~15~~16)  If the offense involved an organized scheme to steal or to receive stolen (A) vehicles or vehicle parts; or (B) goods or chattels that are part of a cargo shipment, increase by **2** levels. If the resulting offense level is less than level **14**, increase to level **14**.

(~~16~~17)  If the offense involved (A) the conscious or reckless risk of death or serious bodily injury; or (B) possession of a dangerous weapon (including a firearm) in connection with the offense, increase by **2** levels. If the resulting offense level is less than level **14**, increase to level **14**.

(~~17~~18)  (Apply the greater) If—

(A)  the defendant derived more than $1,000,000 in gross receipts from one or more financial institutions as a result of the offense, increase by **2** levels; or

(B)  the offense (i) substantially jeopardized the safety and soundness of a financial institution; or (ii) substantially endangered the solvency or financial security of an organization that, at any time during the offense, (I) was a publicly traded company; or (II) had 1,000 or more employees, increase by **4** levels.

(C)  The cumulative adjustments from application of both subsections (b)(2) and (b)(~~17~~18)(B) shall not exceed **8** levels, except as provided in subparagraph (D).

(D)  If the resulting offense level determined under subparagraph (A) or (B) is less than level **24**, increase to level **24**.

(~~18~~19)  If (A) the defendant was convicted of an offense under 18 U.S.C. § 1030, and the offense involved an intent to obtain personal information, or (B) the offense involved the unauthorized public dissemination of personal information, increase by **2** levels.

Proposed Amendment:  Economic Crimes

(1920) (A)  (Apply the greatest) If the defendant was convicted of an offense under:

   (i)   18 U.S.C. § 1030, and the offense involved a computer system used to maintain or operate a critical infrastructure, or used by or for a government entity in furtherance of the administration of justice, national defense, or national security, increase by **2** levels.

   (ii)  18 U.S.C. § 1030(a)(5)(A), increase by **4** levels.

   (iii) 18 U.S.C. § 1030, and the offense caused a substantial disruption of a critical infrastructure, increase by **6** levels.

(B)  If subparagraph (A)(iii) applies, and the offense level is less than level **24**, increase to level **24**.

(2021) If the offense involved—

(A)  a violation of securities law and, at the time of the offense, the defendant was (i) an officer or a director of a publicly traded company; (ii) a registered broker or dealer, or a person associated with a broker or dealer; or (iii) an investment adviser, or a person associated with an investment adviser; or

(B)  a violation of commodities law and, at the time of the offense, the defendant was (i) an officer or a director of a futures commission merchant or an introducing broker; (ii) a commodities trading advisor; or (iii) a commodity pool operator,

increase by **4** levels.

(22) If the defendant (A) committed the offense at the direction of his or her employer for fear of negative employment consequences; (B) was motivated by an intimate or familial relationship or by threats or fear to commit the offense and was otherwise unlikely to commit such an offense; or (C) was unusually vulnerable to being persuaded or induced to commit the offense due to a physical or mental condition, decrease by **[2]** levels.

(23) (Apply the greatest) If, prior to the defendant's knowledge of the criminal investigation or prosecution for the offense, the defendant—

(A)  voluntarily ceased the criminal activity, **[**returned the money or property to the victim**] [**made a good faith effort to the maximum extent possible to return the money or property to the victim**]**,

and reported the offense to appropriate governmental authorities, decrease by **[2][4][6]** levels;

(B)    voluntarily ceased the criminal activity and **[**returned the money or property to the victim**] [**made a good faith effort to the maximum extent possible to return the money or property to the victim**]**, decrease by **[2][4]** levels; or

(C)    voluntarily ceased the criminal activity, decrease by **[2]** levels.

\*        \*        \*

**Commentary**

\*        \*        \*

**Application Notes:**

\*        \*        \*

5.    **Enhancement for Business of Receiving and Selling Stolen Property under Subsection (b)(45).**—For purposes of subsection (b)(45), the court shall consider the following non-exhaustive list of factors in determining whether the defendant was in the business of receiving and selling stolen property:

(A)    The regularity and sophistication of the defendant's activities.

(B)    The value and size of the inventory of stolen property maintained by the defendant.

(C)    The extent to which the defendant's activities encouraged or facilitated other crimes.

(D)    The defendant's past activities involving stolen property.

6.    **Application of Subsection (b)(67).**—For purposes of subsection (b)(67), "*improper means*" includes the unauthorized harvesting of electronic mail addresses of users of a website, proprietary service, or other online public forum.

7.    **Application of Subsection (b)(89)(B).**—If subsection (b)(89)(B) applies, do not apply an adjustment under §3B1.3 (Abuse of Position of Trust or Use of Special Skill).

8.    **Application of Subsection (b)(910).**—

(A)    **In General.**—The adjustments in subsection (b)(910) are alternative rather than cumulative.

(B)    **Misrepresentations Regarding Charitable and Other Institutions.**— Subsection (b)(910)(A) applies in any case in which the defendant represented that the defendant was acting to obtain a benefit on behalf of a charitable, educational, religious, or political organization, or a government agency (regardless of whether the defendant actually was associated with the organization or government agency) when, in fact, the defendant intended to divert all or part of that benefit (*e.g.*, for the defendant's personal gain). Subsection (b)(910)(A) applies, for example, to the following:

      (i)     A defendant who solicited contributions for a non-existent famine relief organization.

      (ii)    A defendant who solicited donations from church members by falsely claiming to be a fundraiser for a religiously affiliated school.

      (iii)   A defendant, chief of a local fire department, who conducted a public fundraiser representing that the purpose of the fundraiser was to procure sufficient funds for a new fire engine when, in fact, the defendant intended to divert some of the funds for the defendant's personal benefit.

(C)   **Fraud in Contravention of Prior Judicial Order.**—Subsection (b)(~~9~~10)(C) provides an enhancement if the defendant commits a fraud in contravention of a prior, official judicial or administrative warning, in the form of an order, injunction, decree, or process, to take or not to take a specified action. A defendant who does not comply with such a prior, official judicial or administrative warning demonstrates aggravated criminal intent and deserves additional punishment. If it is established that an entity the defendant controlled was a party to the prior proceeding that resulted in the official judicial or administrative action, and the defendant had knowledge of that prior decree or order, this enhancement applies even if the defendant was not a specifically named party in that prior case. For example, a defendant whose business previously was enjoined from selling a dangerous product, but who nonetheless engaged in fraudulent conduct to sell the product, is subject to this enhancement. This enhancement does not apply if the same conduct resulted in an enhancement pursuant to a provision found elsewhere in the guidelines (*e.g.*, a violation of a condition of release addressed in §3C1.3 (Commission of Offense While on Release) or a violation of probation addressed in §4A1.1 (Criminal History Category)).

(D)   **College Scholarship Fraud.**—For purposes of subsection (b)(~~9~~10)(D):

"*Financial assistance*" means any scholarship, grant, loan, tuition, discount, award, or other financial assistance for the purpose of financing an education.

"*Institution of higher education*" has the meaning given that term in section 101 of the Higher Education Act of 1954 (20 U.S.C. § 1001).

(E)   **Non-Applicability of Chapter Three Adjustments.**—

      (i)     **Subsection (b)(~~9~~10)(A).**—If the conduct that forms the basis for an enhancement under subsection (b)(~~9~~10)(A) is the only conduct that forms the basis for an adjustment under §3B1.3 (Abuse of Position of Trust or Use of Special Skill), do not apply that adjustment under §3B1.3.

      (ii)    **Subsection (b)(~~9~~10)(B) and (C).**—If the conduct that forms the basis for an enhancement under subsection (b)(~~9~~10)(B) or (C) is the only conduct that forms the basis for an adjustment under §3C1.1 (Obstructing or Impeding the Administration of Justice), do not apply that adjustment under §3C1.1.

9.   **Application of Subsection (b)(~~10~~11).**—

(A)   ~~**Definition of United States.**—For purposes of subsection (b)(10)(B), "*United States*" means each of the 50 states, the District of Columbia, the Commonwealth of Puerto Rico, the United States Virgin Islands, Guam, the Northern Mariana Islands, and American Samoa.~~

[(BA)**Sophisticated Means Enhancement under Subsection (b)(1011)(C).**— ~~For purposes of subsection (b)(10)(C), "*sophisticated means*" means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. For example,~~ For purposes of subsection (b)(11)(C), an example of conduct ordinarily indicating sophisticated means includes, in a telemarketing scheme, locating the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction ~~ordinarily indicates sophisticated means~~. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means.

(CB)  **Non-Applicability of Chapter Three Adjustment.**—]If the conduct that forms the basis for an enhancement under subsection (b)(~~10~~11) is the only conduct that forms the basis for an adjustment under §3C1.1, do not apply that adjustment under §3C1.1.

10.  **Application of Subsection (b)(~~11~~12).**—

(A)  **Definitions.**—For purposes of subsection (b)(~~11~~12):

"*Authentication feature*" has the meaning given that term in 18 U.S.C. § 1028(d)(1).

"*Counterfeit access device*" (i) has the meaning given that term in 18 U.S.C. § 1029(e)(2); and (ii) includes a telecommunications instrument that has been modified or altered to obtain unauthorized use of telecommunications service.

"*Device-making equipment*" (i) has the meaning given that term in 18 U.S.C. § 1029(e)(6); and (ii) includes (I) any hardware or software that has been configured as described in 18 U.S.C. § 1029(a)(9); and (II) a scanning receiver referred to in 18 U.S.C. § 1029(a)(8). "Scanning receiver" has the meaning given that term in 18 U.S.C. § 1029(e)(8).

"*Produce*" includes manufacture, design, alter, authenticate, duplicate, or assemble. "*Production*" includes manufacture, design, alteration, authentication, duplication, or assembly.

"*Telecommunications service*" has the meaning given that term in 18 U.S.C. § 1029(e)(9).

"*Unauthorized access device*" has the meaning given that term in 18 U.S.C. § 1029(e)(3).

(B)  **Authentication Features and Identification Documents.**—Offenses involving authentication features, identification documents, false identification documents, and means of identification, in violation of 18 U.S.C. § 1028, also are covered by this guideline. If the primary purpose of the offense, under 18 U.S.C. § 1028, was to violate, or assist another to violate, the law pertaining to naturalization, citizenship, or legal resident status, apply §2L2.1 (Trafficking in a Document Relating to Naturalization) or §2L2.2 (Fraudulently Acquiring Documents Relating to Naturalization), as appropriate, rather than this guideline.

(C)  **Application of Subsection (b)(~~11~~12)(C)(i).**—

(i)  **In General.**—Subsection (b)(~~11~~12)(C)(i) applies in a case in which a means of identification of an individual other than the defendant (or a person for whose conduct the defendant is accountable under §1B1.3 (Relevant Conduct)) is used without that

individual's authorization unlawfully to produce or obtain another means of identification.

   (ii)   **Examples.**—Examples of conduct to which subsection (b)(~~11~~12)(C)(i) applies are as follows:

      (I)   A defendant obtains an individual's name and social security number from a source (*e.g.*, from a piece of mail taken from the individual's mailbox) and obtains a bank loan in that individual's name. In this example, the account number of the bank loan is the other means of identification that has been obtained unlawfully.

      (II)   A defendant obtains an individual's name and address from a source (*e.g.*, from a driver's license in a stolen wallet) and applies for, obtains, and subsequently uses a credit card in that individual's name. In this example, the credit card is the other means of identification that has been obtained unlawfully.

   (iii)   **Non-Applicability of Subsection (b)(~~11~~12)(C)(i).**—Examples of conduct to which subsection (b)(~~11~~12)(C)(i) does not apply are as follows:

      (I)   A defendant uses a credit card from a stolen wallet only to make a purchase. In such a case, the defendant has not used the stolen credit card to obtain another means of identification.

      (II)   A defendant forges another individual's signature to cash a stolen check. Forging another individual's signature is not producing another means of identification.

   (D)   **Application of Subsection (b)(~~11~~12)(C)(ii).**—Subsection (b)(~~11~~12)(C)(ii) applies in any case in which the offense involved the possession of 5 or more means of identification that unlawfully were produced or obtained, regardless of the number of individuals in whose name (or other identifying information) the means of identification were so produced or so obtained.

11.   **Interaction of Subsection (b)(~~13~~14) and §3B1.3 (Abuse of Position of Trust or Use of Special Skill).**—If subsection (b)(~~13~~14) applies, do not apply §3B1.3.

12.   **Application of Subsection (b)(~~15~~16).**—Subsection (b)(~~15~~16) provides a minimum offense level in the case of an ongoing, sophisticated operation (*e.g.*, an auto theft ring or "chop shop") to steal or to receive stolen (A) vehicles or vehicle parts; or (B) goods or chattels that are part of a cargo shipment. For purposes of this subsection, "***vehicle***" means motor vehicle, vessel, or aircraft. A "***cargo shipment***" includes cargo transported on a railroad car, bus, steamboat, vessel, or airplane.

13.   **Gross Receipts Enhancement under Subsection (b)(~~17~~18)(A).**—

   (A)   **In General.**—For purposes of subsection (b)(~~17~~18)(A), the defendant shall be considered to have derived more than $1,000,000 in gross receipts if the gross receipts to the defendant individually, rather than to all participants, exceeded $1,000,000.

   (B)   **Definition.**—"***Gross receipts from the offense***" includes all property, real or personal, tangible or intangible, which is obtained directly or indirectly as a result of such offense. *See* 18 U.S.C. § 982(a)(4).

14. **Application of Subsection (b)(~~17~~18)(B).—**

(A) **Application of Subsection (b)(~~17~~18)(B)(i).—**The following is a non-exhaustive list of factors that the court shall consider in determining whether, as a result of the offense, the safety and soundness of a financial institution was substantially jeopardized:

  (i) The financial institution became insolvent.

  (ii) The financial institution substantially reduced benefits to pensioners or insureds.

  (iii) The financial institution was unable on demand to refund fully any deposit, payment, or investment.

  (iv) The financial institution was so depleted of its assets as to be forced to merge with another institution in order to continue active operations.

  (v) One or more of the criteria in clauses (i) through (iv) was likely to result from the offense but did not result from the offense because of federal government intervention, such as a "bailout".

(B) **Application of Subsection (b)(~~17~~18)(B)(ii).—**

  (i) **Definition.—**For purposes of this subsection, "*organization*" has the meaning given that term in Application Note 1 of §8A1.1 (Applicability of Chapter Eight).

  (ii) **In General.—**The following is a non-exhaustive list of factors that the court shall consider in determining whether, as a result of the offense, the solvency or financial security of an organization that was a publicly traded company or that had more than 1,000 employees was substantially endangered:

    (I) The organization became insolvent or suffered a substantial reduction in the value of its assets.

    (II) The organization filed for bankruptcy under Chapters 7, 11, or 13 of the Bankruptcy Code (title 11, United States Code).

    (III) The organization suffered a substantial reduction in the value of its equity securities or the value of its employee retirement accounts.

    (IV) The organization substantially reduced its workforce.

    (V) The organization substantially reduced its employee pension benefits.

    (VI) The liquidity of the equity securities of a publicly traded company was substantially endangered. For example, the company was delisted from its primary listing exchange, or trading of the company's securities was halted for more than one full trading day.

    (VII) One or more of the criteria in subclauses (I) through (VI) was likely to result from the offense but did not result from the offense because of federal government intervention, such as a "bailout".

15.  **Application of Subsection (b)(~~19~~20).**—

(A)  **Definitions.**—For purposes of subsection (b)(~~19~~20):

"*Critical infrastructure*" means systems and assets vital to national defense, national security, economic security, public health or safety, or any combination of those matters. A critical infrastructure may be publicly or privately owned. Examples of critical infrastructures include gas and oil production, storage, and delivery systems, water supply systems, telecommunications networks, electrical power delivery systems, financing and banking systems, emergency services (including medical, police, fire, and rescue services), transportation systems and services (including highways, mass transit, airlines, and airports), and government operations that provide essential services to the public.

"*Government entity*" has the meaning given that term in 18 U.S.C. § 1030(e)(9).

(B)  **Subsection (b)(~~19~~20)(A)(iii).**—If the same conduct that forms the basis for an enhancement under subsection (b)(~~19~~20)(A)(iii) is the only conduct that forms the basis for an enhancement under subsection (b)(~~17~~18)(B), do not apply the enhancement under subsection (b)(~~17~~18)(B).

16.  **Application of Subsection (b)(~~20~~21).**—

(A)  **Definitions.**—For purposes of subsection (b)(~~20~~21):

"*Commodities law*" means (i) the Commodity Exchange Act (7 U.S.C. § 1 *et seq.*) and 18 U.S.C. § 1348; and (ii) includes the rules, regulations, and orders issued by the Commodity Futures Trading Commission.

"*Commodity pool operator*" has the meaning given that term in section 1a(11) of the Commodity Exchange Act (7 U.S.C. § 1a(11)).

"*Commodity trading advisor*" has the meaning given that term in section 1a(12) of the Commodity Exchange Act (7 U.S.C. § 1a(12)).

"*Futures commission merchant*" has the meaning given that term in section 1a(28) of the Commodity Exchange Act (7 U.S.C. § 1a(28)).

"*Introducing broker*" has the meaning given that term in section 1a(31) of the Commodity Exchange Act (7 U.S.C. § 1a(31)).

"*Investment adviser*" has the meaning given that term in section 202(a)(11) of the Investment Advisers Act of 1940 (15 U.S.C. § 80b-2(a)(11)).

"*Person associated with a broker or dealer*" has the meaning given that term in section 3(a)(18) of the Securities Exchange Act of 1934 (15 U.S.C. § 78c(a)(18)).

"*Person associated with an investment adviser*" has the meaning given that term in section 202(a)(17) of the Investment Advisers Act of 1940 (15 U.S.C. § 80b-2(a)(17)).

"*Registered broker or dealer*" has the meaning given that term in section 3(a)(48) of the Securities Exchange Act of 1934 (15 U.S.C. § 78c(a)(48)).

"*Securities law*" (i) means 18 U.S.C. §§ 1348, 1350, and the provisions of law referred to in section 3(a)(47) of the Securities Exchange Act of 1934 (15 U.S.C. § 78c(a)(47)); and (ii) includes the rules, regulations, and orders issued by the Securities and Exchange Commission pursuant to the provisions of law referred to in such section.

(B) **In General.**—A conviction under a securities law or commodities law is not required in order for subsection (b)(~~20~~21) to apply. This subsection would apply in the case of a defendant convicted under a general fraud statute if the defendant's conduct violated a securities law or commodities law. For example, this subsection would apply if an officer of a publicly traded company violated regulations issued by the Securities and Exchange Commission by fraudulently influencing an independent audit of the company's financial statements for the purposes of rendering such financial statements materially misleading, even if the officer is convicted only of wire fraud.

(C) **Nonapplicability of §3B1.3 (Abuse of Position of Trust or Use of Special Skill).**—If subsection (b)(~~20~~21) applies, do not apply §3B1.3.

17. **Cross Reference in Subsection (c)(3).**—Subsection (c)(3) provides a cross reference to another guideline in Chapter Two (Offense Conduct) in cases in which the defendant is convicted of a general fraud statute, and the count of conviction establishes an offense involving fraudulent conduct that is more aptly covered by another guideline. Sometimes, offenses involving fraudulent statements are prosecuted under 18 U.S.C. § 1001, or a similarly general statute, although the offense involves fraudulent conduct that is also covered by a more specific statute. Examples include false entries regarding currency transactions, for which §2S1.3 (Structuring Transactions to Evade Reporting Requirements) likely would be more apt, and false statements to a customs officer, for which §2T3.1 (Evading Import Duties or Restrictions (Smuggling); Receiving or Trafficking in Smuggled Property) likely would be more apt. In certain other cases, the mail or wire fraud statutes, or other relatively broad statutes, are used primarily as jurisdictional bases for the prosecution of other offenses. For example, a state employee who improperly influenced the award of a contract and used the mails to commit the offense may be prosecuted under 18 U.S.C. § 1341 for fraud involving the deprivation of the intangible right of honest services. Such a case would be more aptly sentenced pursuant to §2C1.1 (Offering, Giving, Soliciting, or Receiving a Bribe; Extortion Under Color of Official Right; Fraud involving the Deprivation of the Intangible Right to Honest Services of Public Officials; Conspiracy to Defraud by Interference with Governmental Functions).

18. **Continuing Financial Crimes Enterprise.**—If the defendant is convicted under 18 U.S.C. § 225 (relating to a continuing financial crimes enterprise), the offense level is that applicable to the underlying series of offenses comprising the "continuing financial crimes enterprise".

19. **Partially Completed Offenses.**—In the case of a partially completed offense (*e.g.*, an offense involving a completed theft or fraud that is part of a larger, attempted theft or fraud), the offense level is to be determined in accordance with the provisions of §2X1.1 (Attempt, Solicitation, or Conspiracy) whether the conviction is for the substantive offense, the inchoate offense (attempt, solicitation, or conspiracy), or both. *See* Application Note 4 of the Commentary to §2X1.1.

20. **Multiple-Count Indictments.**—Some fraudulent schemes may result in multiple-count indictments, depending on the technical elements of the offense. The cumulative loss produced by a common scheme or course of conduct should be used in determining the offense level, regardless of the number of counts of conviction. *See* Chapter Three, Part D (Multiple Counts).

**Background:** This guideline covers offenses involving theft, stolen property, property damage or destruction, fraud, forgery, and counterfeiting (other than offenses involving altered or counterfeit bearer obligations of the United States).

Because federal fraud statutes often are broadly written, a single pattern of offense conduct usually can be prosecuted under several code sections, as a result of which the offense of conviction may be somewhat arbitrary. Furthermore, most fraud statutes cover a broad range of conduct with extreme variation in severity. The specific offense characteristics and cross references contained in this guideline are designed with these considerations in mind.

The Commission has determined that, ordinarily, the sentences of defendants convicted of federal offenses should reflect the nature and magnitude of the loss caused or intended by their crimes. Accordingly, along with other relevant factors under the guidelines, loss serves as a measure of the seriousness of the offense and the defendant's relative culpability and is a principal factor in determining the offense level under this guideline.

Theft from the person of another, such as pickpocketing or non-forcible purse-snatching, receives an enhanced sentence because of the increased risk of physical injury. This guideline does not include an enhancement for thefts from the person by means of force or fear; such crimes are robberies and are covered under §2B3.1 (Robbery).

A minimum offense level of level 14 is provided for offenses involving an organized scheme to steal vehicles or vehicle parts. Typically, the scope of such activity is substantial, but the value of the property may be particularly difficult to ascertain in individual cases because the stolen property is rapidly resold or otherwise disposed of in the course of the offense. Therefore, the specific offense characteristic of "organized scheme" is used as an alternative to "loss" in setting a minimum offense level.

Use of false pretenses involving charitable causes and government agencies enhances the sentences of defendants who take advantage of victims' trust in government or law enforcement agencies or the generosity and charitable motives of victims. Taking advantage of a victim's self-interest does not mitigate the seriousness of fraudulent conduct; rather, defendants who exploit victims' charitable impulses or trust in government create particular social harm. In a similar vein, a defendant who has been subject to civil or administrative proceedings for the same or similar fraudulent conduct demonstrates aggravated criminal intent and is deserving of additional punishment for not conforming with the requirements of judicial process or orders issued by federal, state, or local administrative agencies.

Offenses that involve the use of financial transactions or financial accounts outside the United States in an effort to conceal illicit profits and criminal conduct involve a particularly high level of sophistication and complexity. These offenses are difficult to detect and require costly investigations and prosecutions. Diplomatic processes often must be used to secure testimony and evidence beyond the jurisdiction of United States courts. Consequently, a minimum offense level of level 12 is provided for these offenses.

Subsection (b)(56) implements the instruction to the Commission in section 2 of Public Law 105–101 and the directive to the Commission in section 3 of Public Law 110–384.

Subsection (b)(78) implements the directive to the Commission in section 10606 of Public Law 111–148.

Subsection (b)(89) implements the directive to the Commission in section 7 of Public Law 112–186.

Subsection (b)(910)(D) implements, in a broader form, the directive in section 3 of the College Scholarship Fraud Prevention Act of 2000, Public Law 106–420.

Subsection (b)(1011) implements, in a broader form, the instruction to the Commission in section 6(c)(2) of Public Law 105–184.

Subsections (b)(1112)(A)(i) and (B)(i) implement the instruction to the Commission in section 4 of the Wireless Telephone Protection Act, Public Law 105–172.

Subsection (b)(1112)(C) implements the directive to the Commission in section 4 of the Identity Theft and Assumption Deterrence Act of 1998, Public Law 105–318. This subsection focuses principally on an aggravated form of identity theft known as "affirmative identity theft" or "breeding", in which a defendant uses another individual's name, social security number, or some other form of identification (the "means of identification") to "breed" (*i.e.*, produce or obtain) new or additional forms of identification. Because 18 U.S.C. § 1028(d) broadly defines "means of identification", the new or additional forms of identification can include items such as a driver's license, a credit card, or a bank loan. This subsection provides a minimum offense level of level 12, in part because of the seriousness of the offense. The minimum offense level accounts for the fact that the means of identification that were "bred" (*i.e.*, produced or obtained) often are within the defendant's exclusive control, making it difficult for the individual victim to detect that the victim's identity has been "stolen." Generally, the victim does not become aware of the offense until certain harms have already occurred (*e.g.*, a damaged credit rating or an inability to obtain a loan). The minimum offense level also accounts for the non-monetary harm associated with these types of offenses, much of which may be difficult or impossible to quantify (*e.g.*, harm to the individual's reputation or credit rating, inconvenience, and other difficulties resulting from the offense). The legislative history of the Identity Theft and Assumption Deterrence Act of 1998 indicates that Congress was especially concerned with providing increased punishment for this type of harm.

Subsection (b)(1213) implements the directive in section 5 of Public Law 110–179.

Subsection (b)(1415) implements the directive in section 3 of Public Law 112–269.

Subsection (b)(1617)(B) implements, in a broader form, the instruction to the Commission in section 110512 of Public Law 103–322.

Subsection (b)(1718)(A) implements, in a broader form, the instruction to the Commission in section 2507 of Public Law 101–647.

Subsection (b)(1718)(B)(i) implements, in a broader form, the instruction to the Commission in section 961(m) of Public Law 101–73.

Subsection (b)(1819) implements the directive in section 209 of Public Law 110–326.

Subsection (b)(1920) implements the directive in section 225(b) of Public Law 107–296. The minimum offense level of level 24 provided in subsection (b)(1920)(B) for an offense that resulted in a substantial disruption of a critical infrastructure reflects the serious impact such an offense could have on national security, national economic security, national public health or safety, or a combination of any of these matters.

*    *    *

## §2J1.1.    Contempt

Apply §2X5.1 (Other Offenses).

**Commentary**

\*     \*     \*

**Application Notes:**

\*     \*     \*

2.   **Willful Failure to Pay Court-Ordered Child Support.**—For offenses involving the willful failure to pay court-ordered child support (violations of 18 U.S.C. § 228), the most analogous guideline is §2B1.1 (Theft, Property Destruction, and Fraud). The amount of the loss is the amount of child support that the defendant willfully failed to pay. In such a case, do not apply §2B1.1(b)(910)(C) (pertaining to a violation of a prior, specific judicial order). *Note*: This guideline applies to second and subsequent offenses under 18 U.S.C. § 228(a)(1) and to any offense under 18 U.S.C. § 228(a)(2) and (3). A first offense under 18 U.S.C. § 228(a)(1) is not covered by this guideline because it is a Class B misdemeanor.

3.   **Violation of Judicial Order Enjoining Fraudulent Behavior.**—In a case involving a violation of a judicial order enjoining fraudulent behavior, the most analogous guideline is §2B1.1. In such a case, §2B1.1(b)(910)(C) (pertaining to a violation of a prior, specific judicial order) ordinarily would apply.

\*     \*     \*

# CHAPTER THREE

# ADJUSTMENTS

\*     \*     \*

## PART D — MULTIPLE COUNTS

\*     \*     \*

**Concluding Commentary to Part D of Chapter Three**

**Illustrations of the Operation of the Multiple-Count Rules**

The following examples, drawn from presentence reports in the Commission's files, illustrate the operation of the guidelines for multiple counts. The examples are discussed summarily; a more thorough, step-by-step approach is recommended until the user is thoroughly familiar with the guidelines.

\*     \*     \*

3.   Defendant C was convicted of four counts arising out of a scheme pursuant to which the defendant received kickbacks from subcontractors. The counts were as follows: (1) The defendant received $1,000 from subcontractor A relating to contract X (Mail Fraud). (2) The defendant received $1,000 from subcontractor A relating to contract X (Commercial Bribery). (3) The

defendant received $1,000 from subcontractor A relating to contract Y (Mail Fraud). (4) The defendant received $1,000 from subcontractor B relating to contract Z (Commercial Bribery). The mail fraud counts are covered by §2B1.1 (Theft, Property Destruction, and Fraud). The bribery counts are covered by §2B4.1 (Bribery in Procurement of Bank Loan and Other Commercial Bribery), which treats the offense as a sophisticated fraud. The total money involved is $4,000, which results in an offense level of 9 under either §2B1.1 (assuming the application of the "sophisticated means" enhancement in §2B1.1(b)(~~10~~11)) or §2B4.1. Since these two guidelines produce identical offense levels, the combined offense level is 9.

*     *     *

## Issues for Comment

1.    The Commission seeks comment on whether Part B of the proposed amendment's addition of new subsection (b)(3) adequately addresses substantial non-economic harm to victims. If not, what additional factors or other provisions should the Commission include to address those harms?

How should this new enhancement interact with other provisions in §2B1.1 (Theft, Property Destruction, and Fraud) that account for harm to victims? For example, how should this new enhancement interact with the victims table in subsection (b)(2), the enhancement for theft from the person of another in renumbered subsection (b)(4), the enhancement for means of identification in renumbered subsection (b)(12), and the enhancement for unauthorized public dissemination of personal information in renumbered subsection (b)(19)(B)? Should this new enhancement be cumulative with the victims table and the other enhancements, or should the Commission reduce the cumulative impact of these various provisions?

2.    Part B of the proposed amendment would amend the definition of "sophisticated means" to mean "committing or concealing an offense with a greater level of complexity than typical for an offense of that nature." It would also include a provision stating that the complexity required by the "sophisticated means" definition "may be achieved through various methods, including by using advanced or emerging technologies [in ways not routinely employed by everyday users][in a more specialized, elaborate, or unusual way than an ordinary user would]." The Commission seeks comment on whether the proposed amended definition of "sophisticated means" is the appropriate definition. Is it an improvement over the current definition? Should the Commission provide guidance regarding the level of complexity that is typical for an offense of that nature? If so, what type of guidance should the Commission provide? Further, should the Commission provide additional guidance on what should be considered "advanced or emerging technologies" or on how such technologies must be used for purposes of applying the proposed definition? If so, what guidance should the Commission provide?

Additionally, Part B of the proposed amendment brackets the possibility of maintaining the examples of "sophisticated means" provided in Application Note 9, providing that, in a telemarketing scheme, locating the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction ordinarily

indicates sophisticated means and that conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means. If the Commission amends the definition of "sophisticated means," should the Commission maintain these examples? If not, should the Commission add additional factors or other provisions to the definition of "sophisticated means"?

3.      Part B of the proposed amendment would add to §2B1.1 a new [2]-level reduction at subsection (b)(22) if the individual committed the offense under coercion or duress. The Commission seeks comment on whether this new adjustment should apply more narrowly or more broadly. The Commission also seeks comment on whether the criteria provided for this new reduction are appropriate. Should any criterion be deleted or changed? Should the Commission provide additional or different criteria?

4.      Part B of the proposed amendment would add to §2B1.1 a new tiered reduction at subsection (b)(23) if the defendant took certain actions prior to the defendant's knowledge of the criminal investigation or prosecution of the offense. The Commission seeks comment on whether this new adjustment should apply more narrowly or more broadly. The Commission also seeks comment on whether the criteria provided for this new reduction are appropriate. Should any criterion be deleted or changed? Should the Commission provide additional or different criteria? Should the proposed amendment instead replace the tiered approach with a multi-factor test? If so, what factors should be included for courts to consider when determining whether to provide an offense level reduction?

The Commission is also considering a separate proposed amendment that would provide a reduction at newly created §3E1.2 (Post-Offense Rehabilitation) based on a defendant's positive post-offense behavior or rehabilitative efforts. The Commission seeks comment on how the proposed reduction at §2B1.1(b)(23) under Part B of this proposed amendment should interact with the proposed reduction at §3E1.2 under the other amendment. Should the proposed reduction at §2B1.1(b)(23) be cumulative with a reduction at §3E1.2 for post-offense rehabilitation, or should the Commission limit the cumulative reduction of these provisions? Are there other provisions in the *Guidelines Manual* that would interact with the proposed reduction at §2B1.1(b)(23)? If so, how should the Commission account for the interaction(s)?

5.      Section 2B1.1 contains specific offense characteristics (SOCs) that are applied infrequently. The Commission seeks comment on whether it should simplify the guideline by amending or removing three infrequently applied SOCs: §2B1.1(b)(3) ("If the offense involved a theft from the person of another, increase by 2 levels"), (b)(4) ("If the offense involved receiving stolen property, and the defendant was a person in the business of receiving and selling stolen property, increase by 2 levels"), and (b)(13) ("if the defendant was convicted under 42 U.S.C. § 408(a), § 1011(a), or § 1383a(a) and the statutory maximum term of ten years' imprisonment applies, increase by 4 levels. If the resulting offense level is less than 12, increase to level 12"). If so, by what criteria should the Commission determine which SOCs to amend or remove?

**4.    PROPOSED AMENDMENT:    POST-OFFENSE REHABILITATION ADJUSTMENT**

**Synopsis of Proposed Amendment:** In August 2025, the Commission identified as one of its policy priorities for the amendment cycle ending May 1, 2026, "[e]xamination of whether the guidelines provide appropriate adjustments for good behavior . . . and possible consideration of amendments that might be appropriate." U.S. Sent'g Comm'n, "Notice of Final Priorities," 90 FR 39263 (Aug. 14, 2025).

The Commission has received comment suggesting that the guidelines do not sufficiently incentivize or reward positive post-offense conduct and rehabilitative efforts taken by defendants prior to sentencing. While §3E1.1 (Acceptance of Responsibility) accounts for some types of positive post-offense conduct when the court considers a reduction for acceptance of responsibility, and §5K1.1 (Substantial Assistance to Authorities) accounts for the defendant's cooperation with authorities, commenters have recommended that the Commission consider positive post-offense conduct going beyond that covered by both guidelines.

In response to these suggestions, the proposed amendment would add a new Chapter Three adjustment at §3E1.2 (Post-Offense Rehabilitation) providing a reduction if the defendant demonstrates positive post-offense behavior or rehabilitative efforts. The proposed amendment sets forth two options for the adjustment.

**Option 1** provides in subsection (a) for a reduction when the defendant demonstrates prior to sentencing positive post-offense behavior or rehabilitative efforts. Subsection (b) instructs the court that, in determining whether a defendant qualifies for the reduction, it shall consider the actions and efforts [voluntarily initiated][undertaken] by the defendant for the benefit of the defendant's own rehabilitation, victim(s) of the offense, community, or other people. It then provides a non-exhaustive list of factors for the court to consider in making this determination. Subsection (c) provides for an additional reduction if the defendant qualifies for a decrease under subsection (a) and the positive post-offense behavior or rehabilitative efforts were undertaken before the criminal investigation or prosecution for the offense.

**Option 2** provides in subsection (a) for a reduction if the defendant demonstrates a sustained commitment to positive behavioral change evidenced by post-offense behavior or rehabilitative efforts that go beyond the typical actions undertaken by defendants prior to sentencing. Subsection (b) instructs the court that, in determining whether a defendant qualifies for the reduction, it shall consider the actions and efforts [voluntarily initiated][undertaken] by the defendant, and the timing of such actions and efforts, for the benefit of the defendant's own rehabilitation, victim(s) of the offense, community, or other people. It then provides some broad examples of the types of efforts the court should consider for the adjustment, instead of a list of considerations like the one provided in Option 1.

Issues for comment are also provided.

**Proposed Amendment:**

# PART E — ACCEPTANCE OF RESPONSIBILITY AND POST-OFFENSE REHABILITATION

## §3E1.1.   Acceptance of Responsibility

*    *    *

## §3E1.2.   Post-Offense Rehabilitation

**[Option 1 (Tiered Adjustments with Specific Considerations):**

(a)   If the defendant demonstrates prior to sentencing positive post-offense behavior or rehabilitative efforts, decrease the offense level by **[1][2][3]** levels.

(b)   In determining whether a defendant qualifies for a reduction under subsection (a), the court shall consider the actions and efforts **[**voluntarily initiated**][**undertaken**]** by the defendant for the benefit of the defendant's own rehabilitation, victim(s) of the offense, community, or other people. Appropriate considerations include the following:

   (1)   The defendant took appropriate steps to reduce or remedy the harm caused by the offense.

   (2)   The defendant made **[**voluntary**]** payment of restitution or **[**voluntarily**]** entered into an installment payment schedule for making restitution to any victims of the offense(s).

   (3)   The defendant completed or is successfully participating in a **[**voluntary**]** court rehabilitation program.

   (4)   The defendant completed or is successfully participating in a treatment program to address the abuse of drugs, alcohol, or gambling.

   (5)   The defendant completed or is successfully participating in counseling (*e.g.*, mental health or anger management).

   (6)   The defendant completed or is successfully participating in a General Education Development (or similar) program, vocational training, or skills training.

   (7)   The defendant maintained or obtained gainful employment.

(8)  The defendant provided **[voluntary and]** consistent financial support to family members or dependents.

(9)  The defendant performed volunteer or other civic, charitable, or public service in the community.

(10)  The defendant assisted in preventing another person from engaging in unlawful conduct.

(11)  The defendant assisted in promoting another person's rehabilitation (*e.g.*, identifying or getting into treatment a person addicted to or regularly abusing controlled substances).

(c)  If the defendant qualifies for a decrease under subsection (a) and the positive post-offense behavior or rehabilitative efforts were undertaken before the criminal investigation or prosecution for the offense, decrease the offense level by **[1][2]** additional **[level][levels].]**

**[Option 2 (Adjustment Based on Standard with Examples):**

(a)  If the defendant demonstrates a sustained commitment to positive behavioral change evidenced by post-offense behavior or rehabilitative efforts that go beyond the typical actions undertaken by defendants prior to sentencing, decrease the offense level by **[1][2][3][4]** levels.

(b)  In determining whether a defendant qualifies for a reduction under subsection (a), the court should consider the actions and efforts **[voluntarily initiated][undertaken]** by the defendant, and the timing of such actions and efforts, for the benefit of the defendant's own rehabilitation, victim(s) of the offense, community, or other people. In making such determination, the court may consider any rehabilitative efforts undertaken by the defendant, including personal and behavioral changes of the defendant, steps taken to reduce or remedy the harm caused by the offense, substance abuse rehabilitation, employment history, academic and vocational achievements, role model behavior, and community and family involvement.**]**

\*   \*   \*

### Issues for Comment

1.  The Commission has received comment suggesting that the guidelines do not sufficiently incentivize or reward positive post-offense conduct and rehabilitative efforts taken by defendants prior to sentencing. The Commission seeks comment on whether the proposed Chapter Three adjustment appropriately addresses these concerns. In determining whether to apply the proposed reduction, should the court

consider a defendant's successful compliance with their pre-trial conditions of release, if applicable, or institutional rules, if detained? For example, should defendants only be considered for the proposed reduction if they complied with all conditions of supervision prior to sentencing or all institutional rules if detained prior to sentencing? Are the considerations identified in Option 1 and the examples provided in Option 2 appropriate for courts to consider in determining whether a reduction under §3E1.2 is warranted? Should the Commission provide additional or different considerations or examples? If so, what should the Commission provide? Should any consideration(s) or example(s) be excluded from consideration? If so, which ones?

2.    The Commission seeks comment on whether it should revise Option 2 of the proposed amendment to provide for a tiered reduction. For example, should Option 2 provide for a reduction based on a defendant's successful compliance with their pre-trial conditions of release, if applicable, or institutional rules, if detained? Should Option 2 then provide for an additional reduction based on post-offense behavior or rehabilitative efforts undertaken by the defendant that go beyond the typical actions undertaken by defendants prior to sentencing?

3.    The Commission seeks comment on how the proposed reduction for post-offense rehabilitation should take into account the timing of the rehabilitative efforts undertaken by the defendant. When should such efforts occur to be considered under the proposed adjustment? Should such efforts be undertaken before the defendant is investigated or indicted? Should the court be allowed to consider efforts undertaken when the defendant is subject to an investigation by the authorities or is indicted for the offense? What changes should be made to the proposed amendment to address the timing of the defendant's efforts?

4.    The proposed reduction accounts for rehabilitative efforts [voluntarily initiated] [undertaken] by the defendant. This bracketed "voluntariness" requirement could exclude rehabilitative efforts made pursuant to an order. Some defendants cannot afford to pay themselves for rehabilitation or treatment programs and may rely on court-funded programs to cover the costs of such programs. The Commission seeks comment on whether the proposed reduction should allow for the consideration of rehabilitative efforts made pursuant to an order. If so, what changes should be made to the proposed amendment to account for such efforts?

5.    The proposed amendment sets forth a reduction applicable to defendants who demonstrate positive post-offense behavior or rehabilitative efforts prior to sentencing. Other guidelines, most notably §3E1.1 (Acceptance of Responsibility), also account for "post-offense rehabilitative efforts." *See* §3E1.1, comment. (n.1(G)). Post-offense rehabilitative efforts may also include providing substantial assistance to the authorities in the investigation or prosecution of other individuals or offenses, which is accounted for under §5K1.1 (Substantial Assistance to Authorities (Policy Statement)).

The Commission seeks comment on how the proposed Chapter Three adjustment for post-offense rehabilitation should interact with other guidelines, especially §3E1.1 and §5K1.1. Are there other guidelines that address similar concerns to those

addressed by the proposed adjustment? What are those guidelines and how should the proposed adjustment interact with them? Should the Commission distinguish the types of rehabilitative efforts to be accounted for under the proposed adjustment from those that could be considered under other guidelines? For example, should the proposed adjustment account for efforts relating to the defendant's own rehabilitation or for the benefit of the community or other people, while §3E1.1 accounts for rehabilitative efforts relating to the offense committed by the defendant? Should the Commission place a limitation on the extent of the reduction under the proposed adjustment if the defendant also received an adjustment under §3E1.1 and/or §5K1.1? If so, what should the limit be? Are there any other guideline reductions that the Commission should consider for purposes of limiting the extent of the reduction under the proposed adjustment?

6.    The Commission is considering a separate proposed amendment that would add to §2B1.1 (Theft, Property Destruction, and Fraud) a new tiered reduction at subsection (b)(23) if the defendant took certain actions prior to the criminal investigation or prosecution for the offense. The Commission seeks comment on how the proposed Chapter Three adjustment for post-offense rehabilitation should interact with the proposed tiered reduction at §2B1.1(b)(23) set forth in the proposed amendment on economic crimes. Should the proposed Chapter Three adjustment for post-offense rehabilitation be cumulative with the proposed tiered reduction at §2B1.1(b)(23), or should the Commission limit the cumulative reduction of these provisions? Are there other provisions in the *Guidelines Manual* that would interact with the proposed Chapter Three adjustment for post-offense rehabilitation? If so, how should the Commission account for the interaction(s)?

## 5.    PROPOSED AMENDMENT:    MULTIPLE COUNTS

**Synopsis of Proposed Amendment:** In August 2025, the Commission identified as one of its policy priorities for the amendment cycle ending May 1, 2026, "[c]ontinued exploration of ways to simplify the *Guidelines Manual*," including "examining the operation of the grouping rules in Chapter Three, Part D (Multiple Counts)." U.S. Sent'g Comm'n, "Notice of Final Priorities," 90 FR 39263 (Aug. 14, 2025).

The guidelines generally require a single, combined offense level in each case. Chapter Three, Part D (Multiple Counts) of the *Guidelines Manual* "provides the rules for determining a single offense level that encompasses all the counts of which the defendant is convicted." USSG Ch. 3, Pt. D, intro comment (Nov. 1, 2025). The rules in Part D apply to multiple counts regardless of whether they are contained in the same indictment or are contained in different indictments and sentences on those counts are to be imposed at the same time. These rules also apply to some single count cases that include additional conduct that is treated under the *Guidelines Manual* as if it were a separate count of conviction. *See, e.g.*, USSG §§1B1.2(c) & (d); 2G1.1(d), 2G1.3(d), 2G2.1(d). As provided in §3D1.1 (Procedure for Determining Offense Level on Multiple Counts), the multiple count rules proceed in three steps: (1) grouping the counts into distinct groups of closely related counts by applying the rules specified in §3D1.2 (Groups of Closely Related Counts); (2) determining the offense level applicable to each group, as provided in §3D1.3 (Offense Level Applicable to Each Group of Closely Related Counts); and (3) determining the combined offense level applicable to all groups using the unit system, as provided in §3D1.4 (Determining the Combined Offense Level).

The first step requires grouping counts "involving substantially the same harm." Subsections (a) through (d) of §3D1.2 set forth the four situations when multiple counts involve substantially the same harm: (a) when the counts involve the same victim and arise from a single criminal act or transaction; (b) when the counts involve the same victim and two or more distinct criminal transactions connected by a common criminal objective or constituting part of a common scheme or plan; (c) when one of the counts "embodies conduct that is treated" as a specific offense characteristic or adjustment in the guideline applicable to another of the counts; and (d) when the counts involve offenses to which the same guideline or two different guidelines "of the same general type" apply and the offense level is determined largely based on cumulative measures (such as total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm) or the offense behavior is ongoing or continuous in nature. Section 3D1.2(d), which applies to the fourth situation described above, provides lists of both offenses that are covered by this rule and offenses that are excluded from application of this rule. The rules contained in §3D1.2 aim to ensure that the guideline range reflects the overall harm and conduct without accounting for the same or similar conduct twice. More than one rule may provide a basis for grouping, but only one rule must apply for counts to group.

The second step requires determining the offense level applicable to each group. This determination depends on which grouping rule applies. As provided in §3D1.3(a), each count grouped under §3D1.2(a)–(c) is calculated separately, and the offense level for the group will be the highest offense level of the counts in the group. Section 3D1.3(b) sets forth a different procedure for counts grouped under §3D1.2(d). If the counts involve offenses to

which the same guideline applies, instead of calculating the offense level for each count and choosing the count resulting in the highest offense level, the guideline is applied one time using the aggregate harm or quantity of the grouped counts to determine the offense level. The resulting offense level will be applicable to the group of counts. However, if the counts involve offenses of the same general type to which different guidelines apply, each count is calculated separately, and the offense level for the group will be the highest offense level of the counts in the group.

The third and final step set forth in §3D1.4 requires assigning units to determine the combined offense level. The group with the highest offense level is assigned one unit, and each remaining group is assigned either one, one-half, and no additional units. The number of additional units is based on the relationship between the group with the highest offense level and any remaining groups. One unit is assigned to any remaining group of comparable seriousness, that is, a group with the same offense level or with one to four fewer offense levels. One-half unit is assigned to any remaining group of somewhat comparable seriousness, that is, a group with five to eight fewer offense levels. No units are assigned to any remaining group of incomparable seriousness, that is, a group with nine or more fewer offense levels. The total number of units determines whether—and the extent to which—additional offense levels are assigned to the most serious group.

The Commission is considering simplification of these multiple count rules for three reasons. First, some commenters have requested simplification of these rules because they are "confusing" and may lead to "incorrect calculations." Second, the Commission's HelpLine responds to hundreds of calls each year from practitioners specifically seeking guidance on the application of the multiple count rules. Third, despite the expenditure of significant training resources, the Commission has continued to observe misapplication of the multiple count rules, resulting in unwarranted sentencing disparities.

The proposed amendment would amend the guidelines to simplify the procedure for determining the single offense level for cases involving multiple counts. It would replace the five guidelines in Chapter Three, Part D with a single guideline at §3D1.1 that provides all the steps necessary to determine the single offense level for multiple counts. The revised §3D1.1 would contain the following four subsections.

New subsection (a) provides that, if multiple counts use the same guideline and the guideline is listed therein, the offense level for this group of counts is determined using the combined offense behavior taken as a whole. The guidelines listed in new subsection (a) are the same guidelines that require aggregation under current §3D1.2(d). As such, new subsection (a) maintains the current approach for aggregate harm offenses as set forth in current §3D1.3(b).

New subsection (b) provides that, if multiple counts use the same guideline and the guideline is listed therein, the offense level for each count is calculated separately and an adjustment based on the number of counts applies to the count in this group resulting in the highest offense level. The guidelines listed in new subsection (b) are all guidelines that are not aggregated pursuant to current §3D1.2(d) and cover offenses against a person, offenses that frequently result in a multiple count increase under the current §3D1.4, and six guidelines that contain instructions providing for a multiple count adjustment under certain circumstances.

New subsection (c) explains how to determine the offense level for all counts, including the group of counts covered by new subsections (a) and (b). It instructs to use the offense level from the count or group of counts (as determined under subsections (a) and (b)) resulting in the highest offense level.

New subsection (d) retains the provisions of current §3D1.1(b) identifying certain types of convictions that are excluded from the guideline rules applicable to multiple counts.

The proposed amendment would also make conforming changes throughout the *Guidelines Manual* to reflect the new procedure of determining the offense level applicable to cases involving multiple counts, and the deletion of the current provisions of Chapter Three, Part D.

Issues for comment are also provided.

**Proposed Amendment:**

# PART D — MULTIPLE COUNTS

### ~~Introductory Commentary~~

~~This part provides rules for determining a single offense level that encompasses all the counts of which the defendant is convicted. These rules apply to multiple counts of conviction (A) contained in the same indictment or information; or (B) contained in different indictments or informations for which sentences are to be imposed at the same time or in a consolidated proceeding. The single, "combined" offense level that results from applying these rules is used, after adjustment pursuant to the guidelines in subsequent parts, to determine the sentence. These rules have been designed primarily with the more commonly prosecuted federal offenses in mind.~~

~~The rules in this part seek to provide incremental punishment for significant additional criminal conduct. The most serious offense is used as a starting point. The other counts determine how much to increase the offense level. The amount of the additional punishment declines as the number of additional offenses increases.~~

~~Some offenses that may be charged in multiple-count indictments are so closely intertwined with other offenses that conviction for them ordinarily would not warrant increasing the guideline range. For example, embezzling money from a bank and falsifying the related records, although legally distinct offenses, represent essentially the same type of wrongful conduct with the same ultimate harm, so that it would be more appropriate to treat them as a single offense for purposes of sentencing. Other offenses, such as an assault causing bodily injury to a teller during a bank robbery, are so closely related to the more serious offense that it would be appropriate to treat them as part of the more serious offense, leaving the sentence enhancement to result from application of a specific offense characteristic.~~

~~In order to limit the significance of the formal charging decision and to prevent multiple punishment for substantially identical offense conduct, this part provides rules for grouping offenses together. Convictions on multiple counts do not result in a sentence enhancement unless they~~

~~represent additional conduct that is not otherwise accounted for by the guidelines. In essence, counts that are grouped together are treated as constituting a single offense for purposes of the guidelines.~~

~~Some offense guidelines, such as those for theft, fraud and drug offenses, contain provisions that deal with repetitive or ongoing behavior. Other guidelines, such as those for assault and robbery, are oriented more toward single episodes of criminal behavior. Accordingly, different rules are required for dealing with multiple-count convictions involving these two different general classes of offenses. More complex cases involving different types of offenses may require application of one rule to some of the counts and another rule to other counts.~~

~~Some offenses, *e.g.*, racketeering and conspiracy, may be "composite" in that they involve a pattern of conduct or scheme involving multiple underlying offenses. The rules in this part are to be used to determine the offense level for such composite offenses from the offense level for the underlying offenses.~~

~~Essentially, the rules in this part can be summarized as follows: (1) If the offense guidelines in Chapter Two base the offense level primarily on the amount of money or quantity of substance involved (*e.g.*, theft, fraud, drug trafficking, firearms dealing), or otherwise contain provisions dealing with repetitive or ongoing misconduct (*e.g.*, many environmental offenses), add the numerical quantities and apply the pertinent offense guideline, including any specific offense characteristics for the conduct taken as a whole. (2) When offenses are closely interrelated, group them together for purposes of the multiple-count rules, and use only the offense level for the most serious offense in that group. (3) As to other offenses (*e.g.*, independent instances of assault or robbery), start with the offense level for the most serious count and use the number and severity of additional counts to determine the amount by which to increase that offense level.~~

## §3D1.1.   Procedure for Determining Offense Level on Multiple Counts

~~(a)   When a defendant has been convicted of more than one count, the court shall:~~

~~(1)   Group the counts resulting in conviction into distinct Groups of Closely Related Counts ("Groups") by applying the rules specified in §3D1.2.~~

~~(2)   Determine the offense level applicable to each Group by applying the rules specified in §3D1.3.~~

~~(3)   Determine the combined offense level applicable to all Groups taken together by applying the rules specified in §3D1.4.~~

~~(b)   Exclude from the application of §§3D1.2–3D1.5 the following:~~

~~(1)   Any count for which the statute (A) specifies a term of imprisonment to be imposed; and (B) requires that such term of imprisonment be imposed to run consecutively to any other term of imprisonment. Sentences for such counts are governed by the provisions of §5G1.2(a).~~

(2)  ~~Any count of conviction under 18 U.S.C. § 1028A. *See* Application Note 2(B) of the Commentary to §5G1.2 (Sentencing on Multiple Counts of Conviction) for guidance on how sentences for multiple counts of conviction under 18 U.S.C. § 1028A should be imposed.~~

(a)  If there are multiple counts to which the same guideline applies and the guideline is listed below, determine the offense level applicable to these counts using the combined offense behavior taken as a whole.

The guidelines covered by subsection (a) are as follows:

§2A3.5;
§§2B1.1, 2B1.4, 2B1.5, 2B4.1, 2B5.1, 2B5.3, 2B6.1;
§§2C1.1, 2C1.2, 2C1.8;
§§2D1.1, 2D1.2, 2D1.5, 2D1.11, 2D1.13;
§§2E4.1, 2E5.1;
§§2G2.2, 2G3.1;
§2K2.1;
§§2L1.1, 2L2.1;
§2N3.1;
§2Q2.1;
§2R1.1;
§§2S1.1, 2S1.3;
§§2T1.1, 2T1.4, 2T1.6, 2T1.7, 2T1.9, 2T2.1, 2T3.1.

(b)  (1)  If there are multiple counts to which the same guideline applies and the guideline is listed below, determine the offense level applicable to these counts by calculating the offense level for each count separately and applying the adjustment set forth in subsection (b)(2) to the count resulting in the highest offense level.

The guidelines covered by subsection (b) are as follows:

all offenses in Chapter Two, Part A (except §2A3.5);
§§2B2.1, 2B3.1, 2B3.2, 2B3.3;
§2D2.3;
§§2G1.1, 2G1.3, 2G2.1;
§2H1.1;
§2J1.2, 2J1.3;
§2K1.4;
§2M6.1;
§2N1.1;
§2Q1.4;
§2X6.1.

(2)  The adjustment set forth in the table below shall be based on the number of counts covered by the guidelines listed in paragraph (1).

| NUMBER OF COUNTS COVERED BY GUIDELINE LISTED IN PARAGRAPH (1) | INCREASE IN OFFENSE LEVEL |
|---|---|
| (A)   2 | add **[2]** levels |
| (B)   3 | add **[3]** levels |
| (C)   4 or 5 | add **[4]** levels |
| (D)   6 or more | add **[5]** levels. |

(c)   Determine the offense level for any remaining counts by calculating the offense level for each count separately. The offense level applicable to all counts of conviction is either the offense level from the count or the single offense level determined under subsections (a) and (b) for the counts resulting in the highest offense level.

(d)   SPECIAL INSTRUCTION FOR CERTAIN MULTIPLE COUNTS.—If there are multiple counts of conviction, exclude from the application of subsections (a) through (c) above the following counts:

(1)   Any count for which the statute (A) specifies a term of imprisonment to be imposed; and (B) requires that such term of imprisonment be imposed to run consecutively to any other term of imprisonment. Sentences for such counts are governed by subsection (a) of §5G1.2 (Sentencing on Multiple Counts of Conviction).

(2)   Any count of conviction under 18 U.S.C. § 1028A. *See* Application Note 2(B) of the Commentary to §5G1.2 (Sentencing on Multiple Counts of Conviction) for guidance on how sentences for multiple counts of conviction under 18 U.S.C. § 1028A should be imposed.

**Commentary**

**Application Notes:**

1.   **In General.**—This guideline provides rules for determining a single offense level that encompasses all the counts of which the defendant is convicted. For purposes of sentencing multiple counts of conviction, counts can be (A) contained in the same indictment or information; or (B) contained in different indictments or informations for which sentences are to be imposed at the same time or in a consolidated proceeding.

2.   **Application of Subsection (~~b~~d).**—Subsection (~~b~~d)(1) applies if a statute (A) specifies a term of imprisonment to be imposed; and (B) requires that such term of imprisonment be imposed to run consecutively to any other term of imprisonment. *See, e.g.*, 18 U.S.C. § 924(c) (requiring mandatory minimum terms of imprisonment, based on the conduct involved, to run consecutively). The multiple count rules set out under this ~~part~~guideline do not apply to a count of conviction covered by subsection (~~b~~d). However, a count covered by subsection (~~b~~d)(1) may affect the offense level determination for other counts. For example, a defendant is convicted of one count of bank robbery (18 U.S.C. § 2113), and one count of use of a firearm in the commission of a crime of violence (18 U.S.C. § 924(c)). The two counts are not grouped together pursuant to this guideline, and, to avoid unwarranted double counting, the offense level for the bank robbery count under §2B3.1 (Robbery) is computed without application of the enhancement for weapon

possession or use as otherwise required by subsection (b)(2) of that guideline. Pursuant to 18 U.S.C. § 924(c), the mandatory minimum five-year sentence on the weapon-use count runs consecutively to the guideline sentence imposed on the bank robbery count. *See* §5G1.2(a).

Unless specifically instructed, subsection (~~b~~d)(1) does not apply when imposing a sentence under a statute that requires the imposition of a consecutive term of imprisonment only if a term of imprisonment is imposed (*i.e.*, the statute does not otherwise require a term of imprisonment to be imposed). *See, e.g.*, 18 U.S.C. § 3146 (Penalty for failure to appear); 18 U.S.C. § 924(a)(4) (regarding penalty for 18 U.S.C. § 922(q) (possession or discharge of a firearm in a school zone)); 18 U.S.C. § 1791(c) (penalty for providing or possessing a controlled substance in prison). Accordingly, the multiple count rules set out under this part do apply to a count of conviction under this type of statute.

**Background:** This section outlines the procedure to be used for determining the combined offense level. After any adjustments from Chapter Three, Parts E (Acceptance of Responsibility) and F (Early Disposition Programs), and Chapter Four, Parts B (Career Offenders and Criminal Livelihood) and C (Adjustment for Certain Zero-Point Offenders) are made, this combined offense level is used to determine the guideline sentence range. Chapter Five (Determining the Sentencing Range and Options Under the Guidelines) discusses how to determine the sentence from the (combined) offense level; §5G1.2 deals specifically with determining the sentence of imprisonment when convictions on multiple counts are involved. References in Chapter Five (Determining the Sentencing Range and Options Under the Guidelines) to the "offense level" should be treated as referring to the combined offense level after all subsequent adjustments have been made.

## ~~§3D1.2.   Groups of Closely Related Counts~~

~~All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule:~~

~~(a)   When counts involve the same victim and the same act or transaction.~~

~~(b)   When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.~~

~~(c)   When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts.~~

~~(d)   When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.~~

~~Offenses covered by the following guidelines are to be grouped under this subsection:~~

§2A3.5;
§§2B1.1, 2B1.4, 2B1.5, 2B4.1, 2B5.1, 2B5.3, 2B6.1;
§§2C1.1, 2C1.2, 2C1.8;
§§2D1.1, 2D1.2, 2D1.5, 2D1.11, 2D1.13;
§§2E4.1, 2E5.1;
§§2G2.2, 2G3.1;
§2K2.1;
§§2L1.1, 2L2.1;
§2N3.1;
§2Q2.1;
§2R1.1;
§§2S1.1, 2S1.3;
§§2T1.1, 2T1.4, 2T1.6, 2T1.7, 2T1.9, 2T2.1, 2T3.1.

Specifically excluded from the operation of this subsection are:

all offenses in Chapter Two, Part A (except §2A3.5);
§§2B2.1, 2B2.3, 2B3.1, 2B3.2, 2B3.3;
§2C1.5;
§§2D2.1, 2D2.2, 2D2.3;
§§2E1.3, 2E1.4, 2E2.1;
§§2G1.1, 2G1.3, 2G2.1;
§§2H1.1, 2H2.1, 2H4.1;
§§2L2.2, 2L2.5;
§§2M2.1, 2M2.3, 2M3.1, 2M3.2, 2M3.3, 2M3.4, 2M3.5, 2M3.9;
§§2P1.1, 2P1.2, 2P1.3;
§2X6.1.

For multiple counts of offenses that are not listed, grouping under this subsection may or may not be appropriate; a case-by-case determination must be made based upon the facts of the case and the applicable guidelines (including specific offense characteristics and other adjustments) used to determine the offense level.

Exclusion of an offense from grouping under this subsection does not necessarily preclude grouping under another subsection.

**Commentary**

**Application Notes:**

1.    Subsections (a)-(d) set forth circumstances in which counts are to be grouped together into a single Group. Counts are to be grouped together into a single Group if any one or more of the subsections provide for such grouping. Counts for which the statute (A) specifies a term of imprisonment to be imposed; and (B) requires that such term of imprisonment be imposed to run consecutively to any other term of imprisonment are excepted from application of the multiple count rules. *See* §3D1.1(b)(1); *id.*, comment. (n.1).

2. The term "***victim***" is not intended to include indirect or secondary victims. Generally, there will be one person who is directly and most seriously affected by the offense and is therefore identifiable as the victim. For offenses in which there are no identifiable victims (*e.g.*, drug or immigration offenses, where society at large is the victim), the "victim" for purposes of subsections (a) and (b) is the societal interest that is harmed. In such cases, the counts are grouped together when the societal interests that are harmed are closely related. Where one count, for example, involves unlawfully entering the United States and the other involves possession of fraudulent evidence of citizenship, the counts are grouped together because the societal interests harmed (the interests protected by laws governing immigration) are closely related. In contrast, where one count involves the sale of controlled substances and the other involves an immigration law violation, the counts are not grouped together because different societal interests are harmed. Ambiguities should be resolved in accordance with the purpose of this section as stated in the lead paragraph, *i.e.*, to identify and group "counts involving substantially the same harm."

3. Under subsection (a), counts are to be grouped together when they represent essentially a single injury or are part of a single criminal episode or transaction involving the same victim.

   When one count charges an attempt to commit an offense and the other charges the commission of that offense, or when one count charges an offense based on a general prohibition and the other charges violation of a specific prohibition encompassed in the general prohibition, the counts will be grouped together under subsection (a).

   **Examples:** (1) The defendant is convicted of forging and uttering the same check. The counts are to be grouped together. (2) The defendant is convicted of kidnapping and assaulting the victim during the course of the kidnapping. The counts are to be grouped together. (3) The defendant is convicted of bid rigging (an antitrust offense) and of mail fraud for signing and mailing a false statement that the bid was competitive. The counts are to be grouped together. (4) The defendant is convicted of two counts of assault on a federal officer for shooting at the same officer twice while attempting to prevent apprehension as part of a single criminal episode. The counts are to be grouped together. (5) The defendant is convicted of three counts of unlawfully bringing aliens into the United States, all counts arising out of a single incident. The three counts are to be grouped together. *But*: (6) The defendant is convicted of two counts of assault on a federal officer for shooting at the officer on two separate days. The counts *are not* to be grouped together.

4. Subsection (b) provides that counts that are part of a single course of conduct with a single criminal objective and represent essentially one composite harm to the same victim are to be grouped together, even if they constitute legally distinct offenses occurring at different times. This provision does not authorize the grouping of offenses that cannot be considered to represent essentially one composite harm (*e.g.*, robbery of the same victim on different occasions involves multiple, separate instances of fear and risk of harm, not one composite harm).

   When one count charges a conspiracy or solicitation and the other charges a substantive offense that was the sole object of the conspiracy or solicitation, the counts will be grouped together under subsection (b).

   **Examples:** (1) The defendant is convicted of one count of conspiracy to commit extortion and one count of extortion for the offense he conspired to commit. The counts are to be grouped together. (2) The defendant is convicted of two counts of mail fraud and one count of wire fraud, each in furtherance of a single fraudulent scheme. The counts are to be grouped together, even if the mailings and telephone call occurred on different days. (3) The defendant is convicted of one count of auto theft and one count of altering the vehicle identification number of the car he stole. The counts are to be grouped together. (4) The defendant is convicted of two counts of distributing a

controlled substance, each count involving a separate sale of 10 grams of cocaine that is part of a common scheme or plan. In addition, a finding is made that there are two other sales, also part of the common scheme or plan, each involving 10 grams of cocaine. The total amount of all four sales (40 grams of cocaine) will be used to determine the offense level for each count under §1B1.3(a)(2). The two counts will then be grouped together under either this subsection or subsection (d) to avoid double counting. *But*: (5) The defendant is convicted of two counts of rape for raping the same person on different days. The counts *are not* to be grouped together.

5.   Subsection (c) provides that when conduct that represents a separate count, *e.g.*, bodily injury or obstruction of justice, is also a specific offense characteristic in or other adjustment to another count, the count represented by that conduct is to be grouped with the count to which it constitutes an aggravating factor. This provision prevents "double counting" of offense behavior. Of course, this rule applies only if the offenses are closely related. It is not, for example, the intent of this rule that (assuming they could be joined together) a bank robbery on one occasion and an assault resulting in bodily injury on another occasion be grouped together. The bodily injury (the harm from the assault) would not be a specific offense characteristic to the robbery and would represent a different harm. On the other hand, use of a firearm in a bank robbery and unlawful possession of that firearm are sufficiently related to warrant grouping of counts under this subsection. Frequently, this provision will overlap subsection (a), at least with respect to specific offense characteristics. However, a count such as obstruction of justice, which represents a Chapter Three adjustment and involves a different harm or societal interest than the underlying offense, is covered by subsection (c) even though it is not covered by subsection (a).

Sometimes there may be several counts, each of which could be treated as an aggravating factor to another more serious count, but the guideline for the more serious count provides an adjustment for only one occurrence of that factor. In such cases, only the count representing the most serious of those factors is to be grouped with the other count. For example, if in a robbery of a credit union on a military base the defendant is also convicted of assaulting two employees, one of whom is injured seriously, the assault with serious bodily injury would be grouped with the robbery count, while the remaining assault conviction would be treated separately.

A cross reference to another offense guideline does not constitute "a specific offense characteristic . . . or other adjustment" within the meaning of subsection (c). For example, the guideline for bribery of a public official contains a cross reference to the guideline for a conspiracy to commit the offense that the bribe was to facilitate. Nonetheless, if the defendant were convicted of one count of securities fraud and one count of bribing a public official to facilitate the fraud, the two counts would not be grouped together by virtue of the cross reference. If, however, the bribe was given for the purpose of hampering a criminal investigation into the offense, it would constitute obstruction and under §3C1.1 would result in a 2 level enhancement to the offense level for the fraud. Under the latter circumstances, the counts would be grouped together.

6.   Subsection (d) likely will be used with the greatest frequency. It provides that most property crimes (except robbery, burglary, extortion and the like), drug offenses, firearms offenses, and other crimes where the guidelines are based primarily on quantity or contemplate continuing behavior are to be grouped together. The list of instances in which this subsection should be applied is not exhaustive. Note, however, that certain guidelines are specifically excluded from the operation of subsection (d).

A conspiracy, attempt, or solicitation to commit an offense is covered under subsection (d) if the offense that is the object of the conspiracy, attempt, or solicitation is covered under subsection (d).

Counts involving offenses to which different offense guidelines apply are grouped together under subsection (d) if the offenses are of the same general type and otherwise meet the criteria for

grouping under this subsection. In such cases, the offense guideline that results in the highest offense level is used; *see* §3D1.3(b). The "same general type" of offense is to be construed broadly.

**Examples:** (1) The defendant is convicted of five counts of embezzling money from a bank. The five counts are to be grouped together. (2) The defendant is convicted of two counts of theft of social security checks and three counts of theft from the mail, each from a different victim. All five counts are to be grouped together. (3) The defendant is convicted of five counts of mail fraud and ten counts of wire fraud. Although the counts arise from various schemes, each involves a monetary objective. All fifteen counts are to be grouped together. (4) The defendant is convicted of three counts of unlicensed dealing in firearms. All three counts are to be grouped together. (5) The defendant is convicted of one count of selling heroin, one count of selling PCP, and one count of selling cocaine. The counts are to be grouped together. The Commentary to §2D1.1 provides rules for combining (adding) quantities of different drugs to determine a single combined offense level. (6) The defendant is convicted of three counts of tax evasion. The counts are to be grouped together. (7) The defendant is convicted of three counts of discharging toxic substances from a single facility. The counts are to be grouped together. (8) The defendant is convicted on two counts of check forgery and one count of uttering the first of the forged checks. All three counts are to be grouped together. Note, however, that the uttering count is first grouped with the first forgery count under subsection (a) of this guideline, so that the monetary amount of that check counts only once when the rule in §3D1.3(b) is applied. *But*: (9) The defendant is convicted of three counts of bank robbery. The counts *are not* to be grouped together, nor are the amounts of money involved to be added.

7.    A single case may result in application of several of the rules in this section. Thus, for example, example (8) in the discussion of subsection (d) involves an application of §3D1.2(a) followed by an application of §3D1.2(d). Note also that a Group may consist of a single count; conversely, all counts may form a single Group.

8.    A defendant may be convicted of conspiring to commit several substantive offenses and also of committing one or more of the substantive offenses. In such cases, treat the conspiracy count as if it were several counts, each charging conspiracy to commit one of the substantive offenses. *See* §1B1.2(d) and accompanying commentary. Then apply the ordinary grouping rules to determine the combined offense level based upon the substantive counts of which the defendant is convicted and the various acts cited by the conspiracy count that would constitute behavior of a substantive nature. **Example:** The defendant is convicted of two counts: conspiring to commit offenses A, B, and C, and committing offense A. Treat this as if the defendant was convicted of (1) committing offense A; (2) conspiracy to commit offense A; (3) conspiracy to commit offense B; and (4) conspiracy to commit offense C. Count (1) and count (2) are grouped together under §3D1.2(b). Group the remaining counts, including the various acts cited by the conspiracy count that would constitute behavior of a substantive nature, according to the rules in this section.

**Background:** Ordinarily, the first step in determining the combined offense level in a case involving multiple counts is to identify those counts that are sufficiently related to be placed in the same Group of Closely Related Counts ("Group"). This section specifies four situations in which counts are to be grouped together. Although it appears last for conceptual reasons, subsection (d) probably will be used most frequently.

A primary consideration in this section is whether the offenses involve different victims. For example, a defendant may stab three prison guards in a single escape attempt. Some would argue that all counts arising out of a single transaction or occurrence should be grouped together even when there are distinct victims. Although such a proposal was considered, it was rejected because, in many cases, it would not adequately capture the scope and impact of the criminal behavior. Cases involving injury to distinct victims are sufficiently comparable, whether or not the injuries are inflicted in distinct

Proposed Amendment:  Multiple Counts

transactions, so that each such count should be treated separately rather than grouped together. Counts involving different victims (or societal harms in the case of "victimless" crimes) are grouped together only as provided in subsection (c) or (d).

Even if counts involve a single victim, the decision as to whether to group them together may not always be clear cut. For example, how contemporaneous must two assaults on the same victim be in order to warrant grouping together as constituting a single transaction or occurrence? Existing case law may provide some guidance as to what constitutes distinct offenses, but such decisions often turn on the technical language of the statute and cannot be controlling. In interpreting this part and resolving ambiguities, the court should look to the underlying policy of this part as stated in the Introductory Commentary.

## §3D1.3.   Offense Level Applicable to Each Group of Closely Related Counts

Determine the offense level applicable to each of the Groups as follows:

(a)   In the case of counts grouped together pursuant to §3D1.2(a)-(c), the offense level applicable to a Group is the offense level, determined in accordance with Chapter Two and Parts A, B, and C of Chapter Three, for the most serious of the counts comprising the Group, *i.e.*, the highest offense level of the counts in the Group.

(b)   In the case of counts grouped together pursuant to §3D1.2(d), the offense level applicable to a Group is the offense level corresponding to the aggregated quantity, determined in accordance with Chapter Two and Parts A, B and C of Chapter Three. When the counts involve offenses of the same general type to which different guidelines apply, apply the offense guideline that produces the highest offense level.

### Commentary

**Application Notes:**

1.    The "*offense level*" for a count refers to the offense level from Chapter Two after all adjustments from Parts A, B, and C of Chapter Three.

2.    When counts are grouped pursuant to §3D1.2(a)-(c), the highest offense level of the counts in the group is used. Ordinarily, it is necessary to determine the offense level for each of the counts in a Group in order to ensure that the highest is correctly identified. Sometimes, it will be clear that one count in the Group cannot have a higher offense level than another, as with a count for an attempt or conspiracy to commit the completed offense. The formal determination of the offense level for such a count may be unnecessary.

3.    When counts are grouped pursuant to §3D1.2(d), the offense guideline applicable to the aggregate behavior is used. If the counts in the Group are covered by different guidelines, use the guideline that produces the highest offense level. Determine whether the specific offense characteristics or adjustments from Chapter Three, Parts A, B, and C apply based upon the combined offense behavior taken as a whole. Note that guidelines for similar property offenses have been coordinated to produce identical offense levels, at least when substantial property losses are

involved. However, when small sums are involved the differing specific offense characteristics that require increasing the offense level to a certain minimum may affect the outcome.

**Background:** This section provides rules for determining the offense level associated with each Group of Closely Related Counts. Summary examples of the application of these rules are provided at the end of the Commentary to this part.

## §3D1.4.   Determining the Combined Offense Level

The combined offense level is determined by taking the offense level applicable to the Group with the highest offense level and increasing that offense level by the amount indicated in the following table:

| NUMBER OF UNITS | INCREASE IN OFFENSE LEVEL |
| --- | --- |
| 1 | none |
| 1 1/2 | add **1** level |
| 2 | add **2** levels |
| 2 1/2 — 3 | add **3** levels |
| 3 1/2 — 5 | add **4** levels |
| More than 5 | add **5** levels. |

In determining the number of Units for purposes of this section:

(a)   Count as one Unit the Group with the highest offense level. Count one additional Unit for each Group that is equally serious or from **1** to **4** levels less serious.

(b)   Count as one-half Unit any Group that is **5** to **8** levels less serious than the Group with the highest offense level.

(c)   Disregard any Group that is **9** or more levels less serious than the Group with the highest offense level. Such Groups will not increase the applicable offense level but may provide a reason for sentencing at the higher end of the sentencing range for the applicable offense level.

### Commentary

**Application Notes:**

1.   Application of the rules in §§3D1.2 and 3D1.3 may produce a single Group of Closely Related Counts. In such cases, the combined offense level is the level corresponding to the Group determined in accordance with §3D1.3.

2.   The procedure for calculating the combined offense level when there is more than one Group of Closely Related Counts is as follows: First, identify the offense level applicable to the most serious Group; assign it one Unit. Next, determine the number of Units that the remaining Groups represent. Finally, increase the offense level for the most serious Group by the number of levels indicated in the table corresponding to the total number of Units.

**Background:** ~~When Groups are of roughly comparable seriousness, each Group will represent one Unit. When the most serious Group carries an offense level substantially higher than that applicable to the other Groups, however, counting the lesser Groups fully for purposes of the table could add excessive punishment, possibly even more than those offenses would carry if prosecuted separately. To avoid this anomalous result and produce declining marginal punishment, Groups 9 or more levels less serious than the most serious Group should not be counted for purposes of the table, and that Groups 5 to 8 levels less serious should be treated as equal to one-half of a Group. Thus, if the most serious Group is at offense level 15 and if two other Groups are at level 10, there would be a total of two Units for purposes of the table (one plus one-half plus one-half) and the combined offense level would be 17.~~

## ~~§3D1.5.   Determining the Total Punishment~~

~~Use the combined offense level to determine the appropriate sentence in accordance with the provisions of Chapter Five.~~

### ~~Commentary~~

~~This section refers the court to Chapter Five (Determining the Sentencing Range and Options Under the Guidelines) in order to determine the total punishment to be imposed based upon the combined offense level. The combined offense level is subject to adjustments from Chapter Three, Parts E (Acceptance of Responsibility) and F (Early Disposition Programs), and Chapter Four, Parts B (Career Offenders and Criminal Livelihood) and C (Adjustment for Certain Zero-Point Offenders).~~

~~*   *   *   *   *~~


### ~~Concluding Commentary to Part D of Chapter Three~~

### ~~Illustrations of the Operation of the Multiple-Count Rules~~

~~The following examples, drawn from presentence reports in the Commission's files, illustrate the operation of the guidelines for multiple counts. The examples are discussed summarily; a more thorough, step-by-step approach is recommended until the user is thoroughly familiar with the guidelines.~~

~~1.    Defendant A was convicted of four counts, each charging robbery of a different bank. Each would represent a distinct Group. §3D1.2. In each of the first three robberies, the offense level was 22 (20 plus a 2-level increase because a financial institution was robbed) (§2B3.1(b)). In the fourth robbery $21,000 was taken and a firearm was displayed; the offense level was therefore 28. As the first three counts are 6 levels lower than the fourth, each of the first three represents one-half unit for purposes of §3D1.4. Altogether there are 2 1/2 Units, and the offense level for the most serious (28) is therefore increased by 3 levels under the table. The combined offense level is 31.~~

~~2.    Defendant B was convicted of four counts: (1) distribution of 230 grams of cocaine; (2) distribution of 150 grams of cocaine; (3) distribution of 75 grams of heroin; (4) offering a DEA agent $20,000 to avoid prosecution. The combined offense level for drug offenses is determined by the total quantity of drugs, converted to converted drug weight (using the Drug Conversion Tables in the Commentary to §2D1.1 (Unlawful Manufacturing, Importing, Exporting, or Trafficking)). The first count translates into 46 kilograms of converted drug weight; the second~~

count translates into 30 kilograms of converted drug weight; and the third count translates into 75 kilograms of converted drug weight. The total is 151 kilograms of converted drug weight. Under §2D1.1, the combined offense level for the drug offenses is 24. In addition, because of the attempted bribe of the DEA agent, this offense level is increased by 2 levels to 26 under §3C1.1 (Obstructing or Impeding the Administration of Justice). Because the conduct constituting the bribery offense is accounted for by §3C1.1, it becomes part of the same Group as the drug offenses pursuant to §3D1.2(c). The combined offense level is 26 pursuant to §3D1.3(a), because the offense level for bribery (20) is less than the offense level for the drug offenses (26).

3.    Defendant C was convicted of four counts arising out of a scheme pursuant to which the defendant received kickbacks from subcontractors. The counts were as follows: (1) The defendant received $1,000 from subcontractor A relating to contract X (Mail Fraud). (2) The defendant received $1,000 from subcontractor A relating to contract X (Commercial Bribery). (3) The defendant received $1,000 from subcontractor A relating to contract Y (Mail Fraud). (4) The defendant received $1,000 from subcontractor B relating to contract Z (Commercial Bribery). The mail fraud counts are covered by §2B1.1 (Theft, Property Destruction, and Fraud). The bribery counts are covered by §2B4.1 (Bribery in Procurement of Bank Loan and Other Commercial Bribery), which treats the offense as a sophisticated fraud. The total money involved is $4,000, which results in an offense level of 9 under either §2B1.1 (assuming the application of the "sophisticated means" enhancement in §2B1.1(b)(10)) or §2B4.1. Since these two guidelines produce identical offense levels, the combined offense level is 9.

\*        \*        \*

## §1B1.1.    Application Instructions

(a)    STEP ONE: CALCULATION OF GUIDELINE RANGE AND DETERMINATION OF SENTENCING REQUIREMENTS AND OPTIONS UNDER THE GUIDELINES MANUAL.—The court shall determine the kinds of sentence and the guideline range as set forth in the guidelines (*see* 18 U.S.C. § 3553(a)(4)) by applying the provisions of this manual in the following order, except as specifically directed:

(1)    Determine, pursuant to §1B1.2 (Applicable Guidelines), the offense guideline section from Chapter Two (Offense Conduct) applicable to the offense of conviction. *See* §1B1.2.

(2)    Determine the base offense level and apply any appropriate specific offense characteristics, cross references, and special instructions contained in the particular guideline in Chapter Two in the order listed.

(3)    Apply the adjustments as appropriate related to victim, role, and obstruction of justice from Parts A, B, and C of Chapter Three.

(4)    If there are multiple counts of conviction, repeat steps (1) through (3) for each count. Apply Part D of Chapter Three§3D1.1 (Procedure for Determining Offense Level on Multiple Counts) to group the various

~~counts and adjust~~determine    the    combined    offense    level
~~accordingly~~applicable to all counts.

\*        \*        \*

## §1B1.2.    Applicable Guidelines

\*        \*        \*

(c)    A plea agreement (written or made orally on the record) containing a stipulation that specifically establishes the commission of additional offense(s) shall be treated as if the defendant had been convicted of additional count(s) charging those offense(s).

(d)    A conviction on a count charging a conspiracy to commit more than one offense shall be treated as if the defendant had been convicted on a separate count of conspiracy for each offense that the defendant conspired to commit.

**Commentary**

**Application Notes:**

\*        \*        \*

3.    Subsections (c) and (d) address circumstances in which the provisions of Chapter Three, Part D (Multiple Counts) are to be applied although there may be only one count of conviction. Subsection (c) provides that in the case of a stipulation to the commission of additional offense(s), the guidelines are to be applied as if the defendant had been convicted of an additional count for each of the offenses stipulated. For example, if the defendant is convicted of one count of robbery but, as part of a plea agreement, admits to having committed two additional robberies, the guidelines are to be applied as if the defendant had been convicted of three counts of robbery. Subsection (d) provides that a conviction on a conspiracy count charging conspiracy to commit more than one offense is treated as if the defendant had been convicted of a separate conspiracy count for each offense that he conspired to commit. For example, where a conviction on a single count of conspiracy establishes that the defendant conspired to commit three robberies, the guidelines are to be applied as if the defendant had been convicted on one count of conspiracy to commit the first robbery, one count of conspiracy to commit the second robbery, and one count of conspiracy to commit the third robbery.

4.    Particular care must be taken in applying subsection (d) because there are cases in which the verdict or plea does not establish which offense(s) was the object of the conspiracy. In such cases, subsection (d) should only be applied with respect to an object offense alleged in the conspiracy count if the court, were it sitting as a trier of fact, would convict the defendant of conspiring to commit that object offense. Note, however, if the combined offense level for the object offenses specified in the conspiracy count ~~would be grouped together under §3D1.2(d)~~is determined pursuant to 3D1.1(a) (*e.g.*, a conspiracy to steal three government checks) it is not necessary to engage in the foregoing analysis~~, because §1B1.3(a)(2) governs consideration of the defendant's conduct~~.

\*        \*        \*

---

### §1B1.3.   Relevant Conduct (Factors that Determine the Guideline Range)

(a)   CHAPTERS TWO (OFFENSE CONDUCT) AND THREE (ADJUSTMENTS).—Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:

  (1)   (A)   all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and

     (B)   in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all acts and omissions of others that were—

        (i)    within the scope of the jointly undertaken criminal activity,

        (ii)   in furtherance of that criminal activity, and

        (iii)  reasonably foreseeable in connection with that criminal activity;

     that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;

  (2)   solely with respect to offenses ~~of a character for which §3D1.2(d) would require grouping of multiple counts~~ described in subsection (d) below, all acts and omissions described in ~~subdivisions~~ paragraphs (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction;

  (3)   all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions; and

  (4)   any other information specified in the applicable guideline.

(b)   CHAPTERS FOUR (CRIMINAL HISTORY AND CRIMINAL LIVELIHOOD) AND FIVE (DETERMINING THE SENTENCING RANGE AND OPTIONS UNDER THE GUIDELINES).—Factors in Chapters Four and Five that establish the

guideline range shall be determined on the basis of the conduct and information specified in the respective guidelines.

(c)    ACQUITTED CONDUCT.—Relevant conduct does not include conduct for which the defendant was criminally charged and acquitted in federal court, unless such conduct also establishes, in whole or in part, the instant offense of conviction.

(d)    OFFENSES COVERED BY SUBSECTION (a)(2).—Subsection (a)(2) applies to offenses where the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or where the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

Subsection (a)(2) applies to offenses covered by the following guidelines:

§2A3.5;
§§2B1.1, 2B1.4, 2B1.5, 2B4.1, 2B5.1, 2B5.3, 2B6.1;
§§2C1.1, 2C1.2, 2C1.8;
§§2D1.1, 2D1.2, 2D1.5, 2D1.11, 2D1.13;
§§2E4.1, 2E5.1;
§§2G2.2, 2G3.1;
§2K2.1;
§§2L1.1, 2L2.1;
§2N3.1;
§2Q2.1;
§2R1.1;
§§2S1.1, 2S1.3;
§§2T1.1, 2T1.4, 2T1.6, 2T1.7, 2T1.9, 2T2.1, 2T3.1.

Subsection (a)(2) does not apply to the offenses covered by the following guidelines:

all offenses in Chapter Two, Part A (except §2A3.5);
§§2B2.1, 2B2.3, 2B3.1, 2B3.2, 2B3.3;
§2C1.5;
§§2D2.1, 2D2.2, 2D2.3;
§§2E1.3, 2E1.4, 2E2.1;
§§2G1.1, 2G1.3, 2G2.1;
§§2H1.1, 2H2.1, 2H4.1;
§§2L2.2, 2L2.5;
§§2M2.1, 2M2.3, 2M3.1, 2M3.2, 2M3.3, 2M3.4, 2M3.5, 2M3.9;
§§2P1.1, 2P1.2, 2P1.3;
§2X6.1.

> For offenses covered by guidelines that are not listed, subsection (a)(2) may or may not apply. In such instances, a case-by-case determination must be made based upon the facts of the case and the applicable guidelines (including specific offense characteristics and other adjustments) used to determine the offense level.

> Subsection (a)(2) applies to counts involving offenses covered by different offense guidelines if the offenses are of the same general type and otherwise meet the criteria described in this subsection. The "same general type" of offense is to be construed broadly.

**Commentary**

**Application Notes:**

\*        \*        \*

5.    **Application of Subsection (a)(2).—**

(A)    **Relationship to Grouping of Multiple Counts~~In General~~.—**~~"Offenses of a character for which §3D1.2(d) would require grouping of multiple counts," as used in subsection (a)(2), applies to offenses for which grouping of counts would be required under §3D1.2(d) had the defendant been convicted of multiple counts.~~ Application of ~~this provision~~subsection (a)(2) does not require the defendant, in fact, to have been convicted of multiple counts. For example, where the defendant engaged in three drug sales of 10, 15, and 20 grams of cocaine, as part of the same course of conduct or common scheme or plan, subsection (a)(2) provides that the total quantity of cocaine involved (45 grams) is to be used to determine the offense level even if the defendant is convicted of a single count charging only one of the sales. ~~If the defendant is convicted of multiple counts for the above noted sales, the grouping rules of Chapter Three, Part D (Multiple Counts) provide that the counts are grouped together. Although Chapter Three, Part D (Multiple Counts) applies to multiple counts of conviction, it does not limit the scope of subsection (a)(2). Subsection (a)(2) merely incorporates by reference the types of offenses set forth in §3D1.2(d); thus, as discussed above, multiple counts of conviction are not required for subsection (a)(2) to apply.~~

As noted ~~above~~in subsection (d), subsection (a)(2) applies to offenses ~~of a character for which §3D1.2(d) would require grouping of multiple counts, had the defendant been convicted of multiple counts~~where the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or where the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior. For example, the defendant sells 30 grams of cocaine (a violation of 21 U.S.C. § 841) on one occasion and, as part of the same course of conduct or common scheme or plan, attempts to sell an additional 15 grams of cocaine (a violation of 21 U.S.C. § 846) on another occasion. The defendant is convicted of one count charging the completed sale of 30 grams of cocaine. The two offenses (sale of cocaine and attempted sale of cocaine), although ~~covered by~~violating different statutory provisions, are ~~of a character for which §3D1.2(d) would require the grouping of counts, had the defendant been convicted of both counts~~covered by a guideline to which subsection (a)(2) is applicable pursuant to subsection (d). Therefore, subsection (a)(2) applies and the total amount of cocaine (45 grams) involved is used to determine the offense level.

\*        \*        \*

11.  **Application of Subsection (d).**—Subsection (d) provides that subsection (a)(2) covers most property crimes (except robbery, burglary, extortion and the like), drug offenses, firearms offenses, and other crimes where the guidelines are based primarily on quantity or contemplate continuing behavior. The list of instances in which subsection (a)(2) should be applied is not exhaustive. Note, however, that certain guidelines are specifically excluded from the operation of subsection (a)(2).

Subsection (a)(2) applies to a conspiracy, attempt, or solicitation to commit an offense if the offense that is the object of the conspiracy, attempt, or solicitation is covered under subsection (d).

\*      \*      \*

**Background:** This section prescribes rules for determining the applicable guideline sentencing range, whereas §1B1.4 (Information to be Used in Imposing Sentence) governs the range of information that the court may consider in adjudging sentence once the guideline sentencing range has been determined. Conduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range. The range of information that may be considered at sentencing is broader than the range of information upon which the applicable sentencing range is determined.

\*      \*      \*

Subsection (a)(2) provides for consideration of a broader range of conduct with respect to one class of offenses, primarily certain property, tax, fraud and drug offenses for which the guidelines depend substantially on quantity, than with respect to other offenses such as assault, robbery and burglary. The distinction is made on the basis of ~~§3D1.2(d)~~subsection (d)~~, which provides for grouping together (*i.e.*, treating as a single count) all counts charging offenses of a type covered by this subsection. However, the applicability of subsection (a)(2) does not depend upon whether multiple counts are alleged~~. Thus, in an embezzlement case, for example, embezzled funds that may not be specified in any count of conviction are nonetheless included in determining the offense level if they were part of the same course of conduct or part of the same scheme or plan as the count of conviction. Similarly, in a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction. On the other hand, in a robbery case in which the defendant robbed two banks, the amount of money taken in one robbery would *not* be taken into account in determining the guideline range for the other robbery, even if both robberies were part of a single course of conduct or the same scheme or plan. (This is true whether the defendant is convicted of one or both robberies.)

Subsections (a)(1) and (a)(2) adopt different rules because offenses of the character dealt with in subsection (a)(2) ~~(*i.e.*, to which §3D1.2(d) applies)~~ often involve a pattern of misconduct that cannot readily be broken into discrete, identifiable units that are meaningful for purposes of sentencing. For example, a pattern of embezzlement may consist of several acts of taking that cannot separately be identified, even though the overall conduct is clear. In addition, the distinctions that the law makes as to what constitutes separate counts or offenses often turn on technical elements that are not especially meaningful for purposes of sentencing. Thus, in a mail fraud case, the scheme is an element of the offense and each mailing may be the basis for a separate count; in an embezzlement case, each taking may provide a basis for a separate count. Another consideration is that in a pattern of small thefts, for example, it is important to take into account the full range of related conduct. Relying on the entire range of conduct, regardless of the number of counts that are alleged or on which a conviction is obtained, appears to be the most reasonable approach to writing workable guidelines for these offenses. ~~Conversely, when §3D1.2(d) does not apply, so that convictions on multiple counts are considered~~

~~separately in determining the guideline sentencing range, the guidelines prohibit aggregation of quantities from other counts in order to prevent "double counting" of the conduct and harm from each count of conviction. Continuing offenses present similar practical problems. The reference to §3D1.2(d), which provides for grouping of multiple counts arising out of a continuing offense when the offense guideline takes the continuing nature into account, also prevents double counting.~~

*        *        *

## §1B1.5.    Interpretation of References to Other Offense Guidelines

(a)    A cross reference (an instruction to apply another offense guideline) refers to the entire offense guideline (*i.e.*, the base offense level, specific offense characteristics, cross references, and special instructions).

(b)    (1)    An instruction to use the offense level from another offense guideline refers to the offense level from the entire offense guideline (*i.e.*, the base offense level, specific offense characteristics, cross references, and special instructions), except as provided in subdivision (2) below.

(2)    An instruction to use a particular subsection or table from another offense guideline refers only to the particular subsection or table referenced, and not to the entire offense guideline.

(c)    If the offense level is determined by a reference to another guideline under subsection (a) or (b)(1) above, the adjustments in ~~Chapter Three (Adjustments)~~ Chapter Three, Parts A through D, also are determined in respect to the referenced offense guideline, except as otherwise expressly provided.

(d)    A reference to another guideline under subsection (a) or (b)(1) above may direct that it be applied only if it results in the greater offense level. In such case, the greater offense level means the greater Chapter Two offense level, except as otherwise expressly provided.

**Commentary**

**Application Notes:**

*        *        *

3.    A reference may direct that, if the conduct involved another offense, the offense guideline for such other offense is to be applied. Consistent with the provisions of §1B1.3 (Relevant Conduct), such other offense includes conduct that may be a state or local offense and conduct that occurred under circumstances that would constitute a federal offense had the conduct taken place within the territorial or maritime jurisdiction of the United States. Where there is more than one such other offense, the most serious such offense (or group of ~~closely related offenses in the case of offenses that would be grouped together under §3D1.2(d)~~ to which §3D1.1(a) applies) is to be used. For example, if a defendant convicted of possession of a firearm by a felon, to which §2K2.1 (Unlawful Receipt, Possession, or Transportation of Firearms or Ammunition; Prohibited Transactions Involving Firearms or Ammunition) applies, is found to have possessed that

firearm during commission of a series of offenses, the cross reference at §2K2.1(c) is applied to the offense resulting in the greatest offense level.

\* \* \*

## §1B1.11.  Use of Guidelines Manual in Effect on Date of Sentencing (Policy Statement)

(a)    The court shall use the Guidelines Manual in effect on the date that the defendant is sentenced.

(b)    (1)    If the court determines that use of the Guidelines Manual in effect on the date that the defendant is sentenced would violate the *ex post facto* clause of the United States Constitution, the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed.

(2)    The Guidelines Manual in effect on a particular date shall be applied in its entirety. The court shall not apply, for example, one guideline section from one edition of the Guidelines Manual and another guideline section from a different edition of the Guidelines Manual. However, if a court applies an earlier edition of the Guidelines Manual, the court shall consider subsequent amendments, to the extent that such amendments are clarifying rather than substantive changes.

(3)    If the defendant is convicted of two offenses, the first committed before, and the second after, a revised edition of the Guidelines Manual became effective, the revised edition of the Guidelines Manual is to be applied to both offenses.

### Commentary

**Application Notes:**

\* \* \*

**Background:** Subsections (a) and (b)(1) provide that the court should apply the Guidelines Manual in effect on the date the defendant is sentenced unless the court determines that doing so would violate the *ex post facto* clause in Article I, § 9 of the United States Constitution. Under 18 U.S.C. § 3553, the court is to apply the guidelines and policy statements in effect at the time of sentencing. However, the Supreme Court has held that the *ex post facto* clause applies to sentencing guideline amendments that subject the defendant to increased punishment. *See Peugh v. United States*, 569 U.S. 530, 533 (2013) (holding that "there is an *ex post facto* violation when a defendant is sentenced under Guidelines promulgated after he committed his criminal acts and the new version provides a higher applicable Guidelines sentencing range than the version in place at the time of the offense").

Subsection (b)(2) provides that the Guidelines Manual in effect on a particular date shall be applied in its entirety.

Subsection (b)(3) provides that where the defendant is convicted of two offenses, the first committed before, and the second after, a revised edition of the Guidelines Manual became effective, the revised edition of the Guidelines Manual is to be applied to both offenses, even if the revised edition results in an increased penalty for the first offense. Because the defendant completed the second offense after the amendment to the guidelines took effect, the *ex post facto* clause does not prevent determining the sentence for that count based on the amended guidelines. For example, if a defendant pleads guilty to a single count of embezzlement that occurred after the most recent edition of the Guidelines Manual became effective, the guideline range applicable in sentencing will encompass any relevant conduct (*e.g.*, related embezzlement offenses that may have occurred prior to the effective date of the guideline amendments) for the offense of conviction. The same would be true for a defendant convicted of two counts of embezzlement, one committed before the amendments were enacted, and the second after. In this example, the *ex post facto* clause would not bar application of the amended guideline to the first conviction; a contrary conclusion would mean that such defendant was subject to a lower guideline range than if convicted only of the second offense. Decisions from several appellate courts addressing the analogous situation of the constitutionality of counting pre-guidelines criminal activity as relevant conduct for a guidelines sentence support this approach. *See United States v. Ykema*, 887 F.2d 697 (6th Cir. 1989) (upholding inclusion of pre-November 1, 1987, drug quantities as relevant conduct for the count of conviction, noting that habitual offender statutes routinely augment punishment for an offense of conviction based on acts committed before a law is passed); *United States v. Allen*, 886 F.2d 143 (8th Cir. 1989) (similar); *see also United States v. Cusack*, 901 F.2d 29 (4th Cir. 1990) (similar).

Moreover, the approach set forth in subsection (b)(3) should be followed regardless of whether the offenses of conviction are the type ~~in which the conduct is grouped under §3D1.2(d)~~to which §3D1.1(a) applies. The *ex post facto* clause does not distinguish between groupable and nongroupable offenses, and unless that clause would be violated, Congress's directive to apply the sentencing guidelines in effect at the time of sentencing must be followed. Under the guideline sentencing system, a single sentencing range is determined based on the defendant's overall conduct, even if there are multiple counts of conviction (*see* §§3D1.1~~-3D1.5~~, 5G1.2). Thus, if a defendant is sentenced in January 1992 for a bank robbery committed in October 1988 and one committed in November 1991, the November 1991 Guidelines Manual should be used to determine a combined guideline range for both counts. *See generally United States v. Stephenson*, 921 F.2d 438 (2d Cir. 1990) (holding that the Sentencing Commission and Congress intended that the applicable version of the guidelines be applied as a "cohesive and integrated whole" rather than in a piecemeal fashion).

Consequently, even in a complex case involving multiple counts that occurred under several different versions of the Guidelines Manual, it will not be necessary to compare more than two manuals to determine the applicable guideline range — the manual in effect at the time the last offense of conviction was completed and the manual in effect at the time of sentencing.

\*        \*        \*

## §2A1.4.   Involuntary Manslaughter

\*        \*        \*

(b)   Special Instruction

(1)   If the offense involved the involuntary manslaughter of more than one person, ~~Chapter Three, Part D (Multiple Counts)~~subsection (b) of §3D1.1 (Procedure for Determining Offense Level on Multiple Counts)

shall be applied as if the involuntary manslaughter of each person had been contained in a separate count of conviction.

\*      \*      \*

## §2A6.1.   Threatening or Harassing Communications; Hoaxes; False Liens

\*      \*      \*

**Commentary**

\*      \*      \*

**Application Notes:**

\*      \*      \*

3.      ~~Grouping~~**Multiple Counts.**—For purposes of Chapter Three, Part D (Multiple Counts), do not apply subsection (b) of §3D1.1 (Procedure for Determining Offense Level on Multiple Counts) to multiple counts involving making a threatening or harassing communication to the same victim ~~are grouped together under §3D1.2 (Groups of Closely Related Counts)~~. ~~Multiple counts involving different victims are not to be grouped under §3D1.2~~.

\*      \*      \*

## §2A6.2.   Stalking or Domestic Violence

\*      \*      \*

**Commentary**

\*      \*      \*

**Application Notes:**

\*      \*      \*

4.      For purposes of Chapter Three, Part D (Multiple Counts), do not apply subsection (b) of §3D1.1 (Procedure for Determining Offense Level on Multiple Counts) to multiple counts involving stalking, threatening, or harassing the same victim ~~are grouped together (and with counts of other offenses involving the same victim that are covered by this guideline) under §3D1.2 (Groups of Closely Related Counts)~~. For example, if the defendant is convicted of two counts of stalking the defendant's ex-spouse under 18 U.S.C. § 2261A and one count of interstate domestic violence involving an assault of the ex-spouse under 18 U.S.C. § 2261, §3D1.1(b) does not apply to the stalking counts ~~would be grouped together with the interstate domestic violence count. This grouping procedure avoids unwarranted "double counting" with the enhancement in subsection (b)(1)(E) (for multiple acts of stalking, threatening, harassing, or assaulting the same victim) and recognizes that the stalking and interstate domestic violence counts are sufficiently related to warrant grouping~~.

Determine the combined offense level for ~~Multiple~~multiple counts that are cross referenced to another offense guideline pursuant to subsection (c) ~~are to be grouped together if §3D1.2 (Groups of Closely Related Counts) would require grouping of those counts under that offense guideline~~by applying §3D1.1. ~~Similarly, multiple counts cross referenced pursuant to subsection (c) are not to be grouped together if §3D1.2 would preclude grouping of the counts under that offense guideline. For example, if the defendant is convicted of multiple counts of threatening an ex-spouse in violation of a court protection order under 18 U.S.C. § 2262 and the counts are cross referenced to §2A6.1 (Threatening or Harassing Communications), the counts would group together because Application Note 3 of §2A6.1 specifically requires grouping. In contrast, if the defendant is convicted of multiple counts of assaulting the ex spouse in violation of a court protection order under 18 U.S.C. § 2262 and the counts are cross referenced to §2A2.2 (Aggravated Assault), the counts probably would not group together inasmuch as §3D1.2(d) specifically precludes grouping of counts covered by §2A2.2 and no other provision of §3D1.2 would likely apply to require grouping.~~

~~Multiple counts involving different victims are not to be grouped under §3D1.2 (Groups of Closely Related Counts).~~

\*         \*         \*

## §2B1.1.    Larceny, Embezzlement, and Other Forms of Theft; Offenses Involving Stolen Property; Property Damage or Destruction; Fraud and Deceit; Forgery; Offenses Involving Altered or Counterfeit Instruments Other than Counterfeit Bearer Obligations of the United States

\*         \*         \*

### Commentary

\*         \*         \*

**Application Notes:**

\*         \*         \*

20.    **Multiple-Count Indictments.**—Some fraudulent schemes may result in multiple-count indictments, depending on the technical elements of the offense. The cumulative loss produced by a common scheme or course of conduct should be used in determining the offense level, regardless of the number of counts of conviction. *See* ~~*Chapter Three, Part D (Multiple Counts)*~~ subsection (a) of §3D1.1 (Procedure for Determining Offense Level on Multiple Counts).

\*         \*         \*

---

**§2B1.5.    Theft of, Damage to, or Destruction of, Cultural Heritage Resources or Paleontological Resources; Unlawful Sale, Purchase, Exchange, Transportation, or Receipt of Cultural Heritage Resources or Paleontological Resources**

---

\*        \*        \*

**Commentary**

\*        \*        \*

**Application Notes:**

\*        \*        \*

8.    **Multiple Counts.**—For purposes of Chapter Three, Part D (Multiple Counts), apply subsection (a) of §3D1.1 (Procedure for Determining Offense Level on Multiple Counts) to determine the combined offense level for multiple counts involving offenses covered by this guideline ~~are grouped together under subsection (d) of §3D1.2 (Groups of Closely Related Counts). Multiple counts involving offenses covered by this guideline and offenses covered by other guidelines are not to be grouped under §3D1.2(d).~~

\*        \*        \*

---

**§2D1.5.    Continuing Criminal Enterprise; Attempt or Conspiracy**

---

\*        \*        \*

**Commentary**

\*        \*        \*

**Application Notes:**

\*        \*        \*

~~3.    **Multiple Counts.**  Violations of 21 U.S.C. § 848 will be grouped with other drug offenses for the purpose of applying Chapter Three, Part D (Multiple Counts).~~

\*        \*        \*

---

**§2D1.11. Unlawfully Distributing, Importing, Exporting or Possessing a Listed Chemical; Attempt or Conspiracy**

---

\*        \*        \*

**Commentary**

\*        \*        \*

**Application Notes:**

\*        \*        \*

9.    **Offenses Involving Immediate Precursors or Other Controlled Substances Covered Under §2D1.1.**—In certain cases, the defendant will be convicted of an offense involving a listed chemical covered under this guideline, and a related offense involving an immediate precursor or other controlled substance covered under §2D1.1 (Unlawfully Manufacturing, Importing, Exporting, or Trafficking). For example, P2P (an immediate precursor) and methylamine (a listed chemical) are used together to produce methamphetamine. Determine the offense level under each guideline separately. The offense level for methylamine is determined by using §2D1.11. The offense level for P2P is determined by using §2D1.1 (P2P is listed in the Drug Conversion Table under Cocaine and Other Schedule I and II Stimulants (and their immediate precursors)). ~~Under the grouping rules of §3D1.2(b), the counts will be grouped together~~ Determine the combined offense level for these offenses by applying subsection (a) of §3D1.1 (Procedure for Determining Offense Level on Multiple Counts). Note that in determining the scale of the offense under §2D1.1, the quantity of both the controlled substance and listed chemical should be considered (*see* Application Note 5 in the Commentary to §2D1.1).

\*        \*        \*

## §2D2.3.  Operating or Directing the Operation of a Common Carrier Under the Influence of Alcohol or Drugs

\*        \*        \*

(b)    Special Instruction:

(1)    If the defendant is convicted of a single count involving the death or serious bodily injury of more than one person, apply ~~Chapter Three, Part D (Multiple Counts)~~ subsection (b) of §3D1.1 (Procedure for Determining Offense Level on Multiple Counts) as if the defendant had been convicted of a separate count for each such victim.

\*        \*        \*

## §2G1.1.  Promoting a Commercial Sex Act or Prohibited Sexual Conduct with an Individual Other than a Minor

\*        \*        \*

(d)    Special Instruction

(1)    If the offense involved more than one victim, ~~Chapter Three, Part D (Multiple Counts)~~ subsection (b) of §3D1.1 (Procedure for Determining Offense Level on Multiple Counts) shall be applied as if the promoting

of a commercial sex act or prohibited sexual conduct in respect to each victim had been contained in a separate count of conviction.

**Commentary**

\*       \*       \*

**Application Notes:**

\*       \*       \*

5.    **Special Instruction at Subsection (d)(1).**—For the purposes of Chapter Three, Part D (Multiple Counts), each person transported, persuaded, induced, enticed, or coerced to engage in, or travel to engage in, a commercial sex act or prohibited sexual conduct is to be treated as a separate victim. Consequently, multiple counts involving more than one victim are ~~not to be grouped together under §3D1.2 (Groups of Closely Related Counts)~~subject to the adjustment under subsection (b) of §3D1.1 (Procedure for Determining Offense Level on Multiple Counts). In addition, subsection (d)(1) directs that if the relevant conduct of an offense of conviction includes the promoting of a commercial sex act or prohibited sexual conduct in respect to more than one victim, whether specifically cited in the count of conviction, each such victim shall be treated as if contained in a separate count of conviction.

\*       \*       \*

**§2G1.3.    Promoting a Commercial Sex Act or Prohibited Sexual Conduct with a Minor; Transportation of Minors to Engage in a Commercial Sex Act or Prohibited Sexual Conduct; Travel to Engage in Commercial Sex Act or Prohibited Sexual Conduct with a Minor; Sex Trafficking of Children; Use of Interstate Facilities to Transport Information about a Minor**

\*       \*       \*

(d)   Special Instruction

(1)   If the offense involved more than one minor, ~~Chapter Three, Part D (Multiple Counts)~~subsection (b) of §3D1.1 (Procedure for Determining Offense Level on Multiple Counts) shall be applied as if the persuasion, enticement, coercion, travel, or transportation to engage in a commercial sex act or prohibited sexual conduct of each victim had been contained in a separate count of conviction.

**Commentary**

\*       \*       \*

**Application Notes:**

\*       \*       \*

6.    **Application of Subsection (d)(1).**—For the purposes of Chapter Three, Part D (Multiple Counts), each minor transported, persuaded, induced, enticed, or coerced to engage in, or travel to engage in, a commercial sex act or prohibited sexual conduct is to be treated as a separate minor. Consequently, multiple counts involving more than one minor are ~~not to be grouped together under §3D1.2 (Groups of Closely Related Counts)~~ subject to the adjustment under subsection (b) of §3D1.1 (Procedure for Determining Offense Level on Multiple Counts). In addition, subsection (d)(1) directs that if the relevant conduct of an offense of conviction includes travel or transportation to engage in a commercial sex act or prohibited sexual conduct in respect to more than one minor, whether specifically cited in the count of conviction, each such minor shall be treated as if contained in a separate count of conviction.

\*        \*        \*

## §2G2.1.  Sexually Exploiting a Minor by Production of Sexually Explicit Visual or Printed Material; Custodian Permitting Minor to Engage in Sexually Explicit Conduct; Advertisement for Minors to Engage in Production

\*        \*        \*

(d)    Special Instruction

(1)    If the offense involved the exploitation of more than one minor, ~~Chapter Three, Part D (Multiple Counts)~~ subsection (b) of §3D1.1 (Procedure for Determining Offense Level on Multiple Counts) shall be applied as if the exploitation of each minor had been contained in a separate count of conviction.

**Commentary**

\*        \*        \*

**Application Notes:**

\*        \*        \*

7.    **Application of Subsection (d)(1).**—For the purposes of Chapter Three, Part D (Multiple Counts), each minor exploited is to be treated as a separate minor. Consequently, multiple counts involving the exploitation of different minors are ~~not to be grouped together under §3D1.2 (Groups of Closely Related Counts)~~ subject to the adjustment under subsection (b) of §3D1.1 (Procedure for Determining Offense Level on Multiple Counts). Subsection (d)(1) directs that if the relevant conduct of an offense of conviction includes more than one minor being exploited, whether specifically cited in the count of conviction or not, each such minor shall be treated as if contained in a separate count of conviction.

\*        \*        \*

## §2H4.1.   Peonage, Involuntary Servitude, Slave Trade, and Child Soldiers

\*        \*        \*

**Commentary**

\*        \*        \*

**Application Notes:**

\*        \*        \*

2.    Under subsection (b)(4), "***any other felony offense***" means any conduct that constitutes a felony offense under federal, state, or local law (other than an offense that is itself covered by this subpart). When there is more than one such other offense, the most serious such offense (or group of ~~closely related offenses in the case of~~ offenses ~~that would be grouped together under §3D1.2(d)~~to which §3D1.1(a) applies) is to be used. *See* Application Note 3 of §1B1.5 (Interpretation of References to other Offense Guidelines).

\*        \*        \*

## §2J1.2.    Obstruction of Justice

\*        \*        \*

**Commentary**

\*        \*        \*

**Application Notes:**

\*        \*        \*

3.    ~~**Convictions for the Underlying Offense.**   In the event that the defendant is convicted of an offense sentenced under this section as well as for the underlying offense (*i.e.*, the offense that is the object of the obstruction), *see* the Commentary to Chapter Three, Part C (Obstruction and Related Adjustments), and to §3D1.2(c) (Groups of Closely Related Counts).~~

**[The proposed amendment would renumber the rest of the application notes accordingly]**

\*        \*        \*

## §2J1.3.    Perjury or Subornation of Perjury; Bribery of Witness

\*        \*        \*

(d)    Special Instruction

(1)    In the case of counts of perjury or subornation of perjury arising from testimony given, or to be given, in separate proceedings, ~~do not group the counts together under §3D1.2 (Groups of Closely Related~~

~~Counts)~~apply subsection (b) of §3D1.1 (Procedure for Determining Offense Level on Multiple Counts) to the counts.

**Commentary**

\*        \*        \*

**Application Notes:**

\*        \*        \*

~~3.    In the event that the defendant is convicted under this section as well as for the underlying offense (*i.e.*, the offense with respect to which he committed perjury, subornation of perjury, or witness bribery), *see* the Commentary to §3C1.1, and to §3D1.2(c) (Groups of Closely Related Counts).~~

**[The proposed amendment would renumber the rest of the application notes accordingly]**

\*        \*        \*

## §2J1.6.    Failure to Appear by Defendant

\*        \*        \*

**Commentary**

**Statutory Provision:** 18 U.S.C. § 3146(b)(1).

**Application Notes:**

\*        \*        \*

3.    In the case of a failure to appear for service of sentence, any term of imprisonment imposed on the failure to appear count is to be imposed consecutively to any term of imprisonment imposed for the underlying offense. *See* §5G1.3(a). The guideline range for the failure to appear count is to be determined independently and ~~the grouping rules of §§3D1.1–3D1.5~~§3D1.1 (Procedure for Determining Offense Level on Multiple Counts) ~~do~~does not apply.

However, in the case of a conviction on both the underlying offense and the failure to appear, other than a case of failure to appear for service of sentence, the failure to appear is treated under §3C1.1 (Obstructing or Impeding the Administration of Justice) as an obstruction of the underlying offense, and the combined offense level for the failure to appear count and the count or counts for the underlying offense ~~are grouped together under §3D1.2(c)~~is determined under §3D1.1. (Note that 18 U.S.C. § 3146(b)(2) does not require a sentence of imprisonment on a failure to appear count, although if a sentence of imprisonment on the failure to appear count is imposed, the statute requires that the sentence be imposed to run consecutively to any other sentence of imprisonment. Therefore, unlike a count in which the statute mandates both a minimum and a consecutive sentence of imprisonment, ~~the grouping rules of §§3D1.1–3D1.5 apply~~§3D1.1 applies. *See* §3D1.1(~~b~~d)(1), comment. (n.1)~~, and §3D1.2, comment. (n.1)~~.) The combined sentence will then be constructed to provide a "total punishment" that satisfies the

requirements both of §5G1.2 (Sentencing on Multiple Counts of Conviction) and 18 U.S.C. § 3146(b)(2). For example, if the combined applicable guideline range for both counts is 30–37 months and the court determines that a "total punishment" of 36 months is appropriate, a sentence of 30 months for the underlying offense plus a consecutive six months' sentence for the failure to appear count would satisfy these requirements. (Note that the combination of this instruction and increasing the offense level for the obstructive, failure to appear conduct has the effect of ensuring an incremental, consecutive punishment for the failure to appear count, as required by 18 U.S.C. § 3146(b)(2).)

\*       \*       \*

## §2J1.9.    Payment to Witness

\*       \*       \*

**Commentary**

\*       \*       \*

**Application** ~~Notes~~Note**:**

\*       \*       \*

2.    ~~In the event that the defendant is convicted under this section as well as for the underlying offense (*i.e.*, the offense with respect to which the payment was made), *see* the Commentary to §3C1.1, and to §3D1.2(c) (Groups of Closely Related Counts).~~

\*       \*       \*

## §2K2.4.    Use of Firearm, Armor-Piercing Ammunition, or Explosive During or in Relation to Certain Crimes

\*       \*       \*

**Commentary**

\*       \*       \*

**Application Notes:**

\*       \*       \*

4.    **Non-Applicability of Certain Enhancements.—**

~~(A)~~    **In General.** —If a sentence under this guideline is imposed in conjunction with a sentence for an underlying offense, do not apply any specific offense characteristic for possession, brandishing, use, or discharge of an explosive or firearm when determining the sentence for the underlying offense. A sentence under this guideline accounts for any explosive or weapon enhancement for the underlying offense of conviction, including any such enhancement that would apply based on conduct for which the defendant is accountable

under §1B1.3 (Relevant Conduct). Do not apply any weapon enhancement in the guideline for the underlying offense, for example, if (A) a co-defendant, as part of the jointly undertaken criminal activity, possessed a firearm different from the one for which the defendant was convicted under 18 U.S.C. § 924(c); or (B) in an ongoing drug trafficking offense, the defendant possessed a firearm other than the one for which the defendant was convicted under 18 U.S.C. § 924(c). However, if a defendant is convicted of two armed bank robberies, but is convicted under 18 U.S.C. § 924(c) in connection with only one of the robberies, a weapon enhancement would apply to the bank robbery which was not the basis for the 18 U.S.C. § 924(c) conviction.

A sentence under this guideline also accounts for conduct that would subject the defendant to an enhancement under §2D1.1(b)(2) (pertaining to use of violence, credible threat to use violence, or directing the use of violence). Do not apply that enhancement when determining the sentence for the underlying offense.

If the explosive or weapon that was possessed, brandished, used, or discharged in the course of the underlying offense also results in a conviction that would subject the defendant to an enhancement under §2K1.3(b)(3) (pertaining to possession of explosive material in connection with another felony offense) or §2K2.1(b)(7)(B) (pertaining to possession of any firearm or ammunition in connection with another felony offense), do not apply that enhancement. A sentence under this guideline accounts for the conduct covered by these enhancements because of the relatedness of that conduct to the conduct that forms the basis for the conviction under 18 U.S.C. § 844(h), § 924(c) or § 929(a). For example, if in addition to a conviction for an underlying offense of armed bank robbery, the defendant was convicted of being a felon in possession under 18 U.S.C. § 922(g), the enhancement under §2K2.1(b)(7)(B) would not apply.

(B)    **Impact on Grouping.** ̶ ̶I̶f̶ ̶t̶w̶o̶ ̶o̶r̶ ̶m̶o̶r̶e̶ ̶c̶o̶u̶n̶t̶s̶ ̶w̶o̶u̶l̶d̶ ̶o̶t̶h̶e̶r̶w̶i̶s̶e̶ ̶g̶r̶o̶u̶p̶ ̶u̶n̶d̶e̶r̶ ̶s̶u̶b̶s̶e̶c̶t̶i̶o̶n̶ ̶(̶c̶)̶ ̶o̶f̶ ̶§̶3̶D̶1̶.̶2̶ ̶(̶G̶r̶o̶u̶p̶s̶ ̶o̶f̶ ̶C̶l̶o̶s̶e̶l̶y̶ ̶R̶e̶l̶a̶t̶e̶d̶ ̶C̶o̶u̶n̶t̶s̶)̶,̶ ̶t̶h̶e̶ ̶c̶o̶u̶n̶t̶s̶ ̶a̶r̶e̶ ̶t̶o̶ ̶b̶e̶ ̶g̶r̶o̶u̶p̶e̶d̶ ̶t̶o̶g̶e̶t̶h̶e̶r̶ ̶u̶n̶d̶e̶r̶ ̶§̶3̶D̶1̶.̶2̶(̶c̶)̶ ̶d̶e̶s̶p̶i̶t̶e̶ ̶t̶h̶e̶ ̶n̶o̶n̶-̶a̶p̶p̶l̶i̶c̶a̶b̶i̶l̶i̶t̶y̶ ̶o̶f̶ ̶c̶e̶r̶t̶a̶i̶n̶ ̶e̶n̶h̶a̶n̶c̶e̶m̶e̶n̶t̶s̶ ̶u̶n̶d̶e̶r̶ ̶A̶p̶p̶l̶i̶c̶a̶t̶i̶o̶n̶ ̶N̶o̶t̶e̶ ̶4̶(̶A̶)̶.̶ ̶T̶h̶u̶s̶,̶ ̶f̶o̶r̶ ̶e̶x̶a̶m̶p̶l̶e̶,̶ ̶i̶n̶ ̶a̶ ̶c̶a̶s̶e̶ ̶i̶n̶ ̶w̶h̶i̶c̶h̶ ̶t̶h̶e̶ ̶d̶e̶f̶e̶n̶d̶a̶n̶t̶ ̶i̶s̶ ̶c̶o̶n̶v̶i̶c̶t̶e̶d̶ ̶o̶f̶ ̶a̶ ̶f̶e̶l̶o̶n̶-̶i̶n̶-̶p̶o̶s̶s̶e̶s̶s̶i̶o̶n̶ ̶c̶o̶u̶n̶t̶ ̶u̶n̶d̶e̶r̶ ̶1̶8̶ ̶U̶.̶S̶.̶C̶.̶ ̶§̶ ̶9̶2̶2̶(̶g̶)̶ ̶a̶n̶d̶ ̶a̶ ̶d̶r̶u̶g̶ ̶t̶r̶a̶f̶f̶i̶c̶k̶i̶n̶g̶ ̶c̶o̶u̶n̶t̶ ̶u̶n̶d̶e̶r̶l̶y̶i̶n̶g̶ ̶a̶ ̶c̶o̶n̶v̶i̶c̶t̶i̶o̶n̶ ̶u̶n̶d̶e̶r̶ ̶1̶8̶ ̶U̶.̶S̶.̶C̶.̶ ̶§̶ ̶9̶2̶4̶(̶c̶)̶,̶ ̶t̶h̶e̶ ̶c̶o̶u̶n̶t̶s̶ ̶s̶h̶a̶l̶l̶ ̶b̶e̶ ̶g̶r̶o̶u̶p̶e̶d̶ ̶p̶u̶r̶s̶u̶a̶n̶t̶ ̶t̶o̶ ̶§̶3̶D̶1̶.̶2̶(̶c̶)̶.̶ ̶T̶h̶e̶ ̶a̶p̶p̶l̶i̶c̶a̶b̶l̶e̶ ̶C̶h̶a̶p̶t̶e̶r̶ ̶T̶w̶o̶ ̶g̶u̶i̶d̶e̶l̶i̶n̶e̶s̶ ̶f̶o̶r̶ ̶t̶h̶e̶ ̶f̶e̶l̶o̶n̶-̶i̶n̶-̶p̶o̶s̶s̶e̶s̶s̶i̶o̶n̶ ̶c̶o̶u̶n̶t̶ ̶a̶n̶d̶ ̶t̶h̶e̶ ̶d̶r̶u̶g̶ ̶t̶r̶a̶f̶f̶i̶c̶k̶i̶n̶g̶ ̶c̶o̶u̶n̶t̶ ̶e̶a̶c̶h̶ ̶i̶n̶c̶l̶u̶d̶e̶ ̶"̶c̶o̶n̶d̶u̶c̶t̶ ̶t̶h̶a̶t̶ ̶i̶s̶ ̶t̶r̶e̶a̶t̶e̶d̶ ̶a̶s̶ ̶a̶ ̶s̶p̶e̶c̶i̶f̶i̶c̶ ̶o̶f̶f̶e̶n̶s̶e̶ ̶c̶h̶a̶r̶a̶c̶t̶e̶r̶i̶s̶t̶i̶c̶"̶ ̶i̶n̶ ̶t̶h̶e̶ ̶o̶t̶h̶e̶r̶ ̶c̶o̶u̶n̶t̶,̶ ̶b̶u̶t̶ ̶t̶h̶e̶ ̶o̶t̶h̶e̶r̶w̶i̶s̶e̶ ̶a̶p̶p̶l̶i̶c̶a̶b̶l̶e̶ ̶e̶n̶h̶a̶n̶c̶e̶m̶e̶n̶t̶s̶ ̶d̶i̶d̶ ̶n̶o̶t̶ ̶a̶p̶p̶l̶y̶ ̶d̶u̶e̶ ̶t̶o̶ ̶t̶h̶e̶ ̶r̶u̶l̶e̶s̶ ̶i̶n̶ ̶§̶2̶K̶2̶.̶4̶ ̶r̶e̶l̶a̶t̶e̶d̶ ̶t̶o̶ ̶1̶8̶ ̶U̶.̶S̶.̶C̶.̶ ̶§̶ ̶9̶2̶4̶(̶c̶)̶ ̶c̶o̶n̶v̶i̶c̶t̶i̶o̶n̶s̶.̶

5.    **Chapters Three and Four.**—Except for those cases covered by subsection (c), do not apply Chapter Three (Adjustment), Parts A through E, and Chapter Four (Criminal History and Criminal Livelihood) to any offense sentenced under this guideline. Such offenses are excluded from application of those chapters because the guideline sentence for each offense is determined only by the relevant statute. *See* §§3D1.1 (Procedure for Determining Offense Level on Multiple Counts) and 5G1.2. In determining the guideline sentence for those cases covered by subsection (c): (A) the adjustment in §3E1.1 (Acceptance of Responsibility) may apply, as provided in §4B1.1(c); and (B) no other adjustments in Chapter Three, Parts A through D, and no provisions of Chapter Four, other than §§4B1.1 and 4B1.2, shall apply.

*        *        *

## §2K2.6.    Possessing, Purchasing, or Owning Body Armor by Violent Felons

\*          \*          \*

**Commentary**

\*          \*          \*

**Application Notes:**

\*          \*          \*

3.    **Grouping of Multiple Counts.**— If subsection (b)(1) applies (because the defendant used the body armor in connection with another felony offense) and the instant offense of conviction includes a count of conviction for that other felony offense, the counts of conviction for the 18 U.S.C. § 931 offense and that other felony offense shall be grouped pursuant to subsection (c) of §3D1.2 (Groups of Closely Related Counts).

\*          \*          \*

## §2L2.2.    Fraudulently Acquiring Documents Relating to Naturalization, Citizenship, or Legal Resident Status for Own Use; False Personation or Fraudulent Marriage by Alien to Evade Immigration Law; Fraudulently Acquiring or Improperly Using a United States Passport

\*          \*          \*

**Commentary**

\*          \*          \*

**Application Notes:**

\*          \*          \*

5.    **Multiple Counts.**— For the purposes of Chapter Three, Part D (Multiple Counts), a count of conviction for unlawfully entering or remaining in the United States covered by §2L1.2 (Unlawfully Entering or Remaining in the United States) arising from the same course of conduct as the count of conviction covered by this guideline shall be considered a closely related count to the count of conviction covered by this guideline, and therefore is to be grouped with the count of conviction covered by this guideline.

\*          \*          \*

### §2M6.1.  Unlawful Activity Involving Nuclear Material, Weapons, or Facilities, Biological Agents, Toxins, or Delivery Systems, Chemical Weapons, or Other Weapons of Mass Destruction; Attempt or Conspiracy

\*    \*    \*

(d)    Special Instruction

(1)    If the defendant is convicted of a single count involving (A) conduct that resulted in the death or permanent, life-threatening, or serious bodily injury of more than one victim, or (B) conduct tantamount to the attempted murder of more than one victim, ~~Chapter Three, Part D (Multiple Counts)~~subsection (b) of §3D1.1 (Procedure for Determining Offense Level on Multiple Counts) shall be applied as if such conduct in respect to each victim had been contained in a separate count of conviction.

\*    \*    \*

### §2N1.1.  Tampering or Attempting to Tamper Involving Risk of Death or Bodily Injury

\*    \*    \*

(d)    Special Instruction

(1)    If the defendant is convicted of a single count involving (A) the death or permanent, life-threatening, or serious bodily injury of more than one victim, or (B) conduct tantamount to the attempted murder of more than one victim, ~~Chapter Three, Part D (Multiple Counts)~~subsection (b) of §3D1.1 (Procedure for Determining Offense Level on Multiple Counts) shall be applied as if the defendant had been convicted of a separate count for each such victim.

**Commentary**

\*    \*    \*

**Application Note:**

1.    The special instruction in subsection (d)(1) applies whether the offense level is determined under subsection (b)(1) or by use of a cross reference in subsection (c).

\*    \*    \*

### §2P1.2.  Providing or Possessing Contraband in Prison

\*    \*    \*

Proposed Amendment:  Multiple Counts

**Commentary**

\*        \*        \*

**Application Notes:**

\*        \*        \*

3.    In a case in which the defendant is convicted of the underlying offense and an offense involving providing or possessing a controlled substance in prison, ~~group the offenses together under §3D1.2(c)~~determine the combined offense level for the offenses under §3D1.1 (Procedure for Determining Offense Level on Multiple Counts). (Note that 18 U.S.C. § 1791(b) does not require a sentence of imprisonment, although if a sentence of imprisonment is imposed on a count involving providing or possessing a controlled substance in prison, section 1791(c) requires that the sentence be imposed to run consecutively to any other sentence of imprisonment for the controlled substance. Therefore, unlike a count in which the statute mandates both a minimum and a consecutive sentence of imprisonment, ~~the grouping rules of §§3D1.1–3D1.5~~§3D1.1 will apply. *See* §3D1.1(~~b~~d)(1), comment. (n.1)~~, and §3D1.2, comment. (n.1)~~.) The combined sentence will then be constructed to provide a "total punishment" that satisfies the requirements both of §5G1.2 (Sentencing on Multiple Counts of Conviction) and 18 U.S.C. § 1791(c). For example, if the combined applicable guideline range for both counts is 30–37 months and the court determines a "total punishment" of 36 months is appropriate, a sentence of 30 months for the underlying offense plus a consecutive six months' sentence for the providing or possessing a controlled substance in prison count would satisfy these requirements.

Pursuant to 18 U.S.C. § 1791(c), a sentence imposed upon an inmate for a violation of 18 U.S.C. § 1791 shall be consecutive to the sentence being served by the inmate at the time of the violation.

\*        \*        \*

## §2Q1.4.    Tampering or Attempted Tampering with a Public Water System; Threatening to Tamper with a Public Water System

\*        \*        \*

(d)    Special Instruction

(1)    If the defendant is convicted of a single count involving (A) the death or permanent, life-threatening, or serious bodily injury of more than one victim; or (B) conduct tantamount to the attempted murder of more than one victim, ~~Chapter Three, Part D (Multiple Counts)~~subsection (b) of §3D1.1 (Procedure for Determining Offense Level on Multiple Counts) shall be applied as if the defendant had been convicted of a separate count for each such victim.

**Commentary**

\*        \*        \*

124   |   December 12, 2025

Proposed Amendment:  Multiple Counts

**Application Notes:**

\*        \*        \*

2.    **Application of Special Instruction.**—Subsection (d) applies in any case in which the defendant is convicted of a single count involving (A) the death or permanent, life-threatening, or serious bodily injury of more than one victim; or (B) conduct tantamount to the attempted murder of more than one victim, regardless of whether the offense level is determined under this guideline or under another guideline in Chapter Two (Offense Conduct) by use of a cross reference under subsection (c).

\*        \*        \*

## §2S1.1.   Laundering of Monetary Instruments; Engaging in Monetary Transactions in Property Derived from Unlawful Activity

\*        \*        \*

**Commentary**

\*        \*        \*

**Application Notes:**

\*        \*        \*

6.    ~~**Grouping of Multiple Counts.**   In a case in which the defendant is convicted of a count of laundering funds and a count for the underlying offense from which the laundered funds were derived, the counts shall be grouped pursuant to subsection (c) of §3D1.2 (Groups of Closely-Related Counts).~~

\*        \*        \*

## §2X6.1.   Use of a Minor in a Crime of Violence

\*        \*        \*

**Commentary**

\*        \*        \*

**Application Notes:**

\*        \*        \*

3.    **Multiple Counts.—**

(A)    In a case in which the defendant is convicted ~~under both 18 U.S.C. § 25 and the underlying crime of violence, the counts shall be grouped pursuant to subsection (a) of §3D1.2 (Groups of Closely Related Counts).~~

(B)    ~~Multiple~~of multiple counts involving the use of a minor in a crime of violence ~~shall not be grouped under §3D1.2~~, apply subsection (b) of §3D1.1 (Procedure for Determining Offense Level on Multiple Counts) to the counts.

\*        \*        \*

---

## §3C1.1.    Obstructing or Impeding the Administration of Justice

\*        \*        \*

**Commentary**

**Application Notes:**

\*        \*        \*

8.    ~~**Grouping Under §3D1.2(c).**—If the defendant is convicted both of an obstruction offense (*e.g.*, 18 U.S.C. § 3146 (Penalty for failure to appear); 18 U.S.C. § 1621 (Perjury generally)) and an underlying offense (the offense with respect to which the obstructive conduct occurred), the count for the obstruction offense will be grouped with the count for the underlying offense under subsection (c) of §3D1.2 (Groups of Closely Related Counts). The offense level for that group of closely related counts will be the offense level for the underlying offense increased by the 2 level adjustment specified by this section, or the offense level for the obstruction offense, whichever is greater.~~

**[The proposed amendment would renumber Application Note 9 as Application Note 8]**

\*        \*        \*

---

## §5G1.2.    Sentencing on Multiple Counts of Conviction

\*        \*        \*

**Commentary**

**Application Notes:**

\*        \*        \*

2.    **Mandatory Minimum and Mandatory Consecutive Terms of Imprisonment (Not Covered by Subsection (e)).—**

(A)    **In General.**—Subsection (a) applies if a statute (i) specifies a term of imprisonment to be imposed; and (ii) requires that such term of imprisonment be imposed to run consecutively to any other term of imprisonment. *See, e.g.*, 18 U.S.C. § 924(c) (requiring mandatory minimum terms of imprisonment, based on the conduct involved, and also requiring the

sentence imposed to run consecutively to any other term of imprisonment) and 18 U.S.C. § 1028A (requiring a mandatory term of imprisonment of either two or five years, based on the conduct involved, and also requiring, except in the circumstances described in subparagraph (B), the sentence imposed to run consecutively to any other term of imprisonment). Except for certain career offender situations in which subsection (c) of §4B1.1 (Career Offender) applies, the term of years to be imposed consecutively is the minimum required by the statute of conviction and is independent of the guideline sentence on any other count. *See, e.g.*, the Commentary to §§2K2.4 (Use of Firearm, Armor-Piercing Ammunition, or Explosive During or in Relation to Certain Crimes) and 3D1.1 (Procedure for Determining Offense Level on Multiple Counts) regarding the determination of the offense levels for related counts when a conviction under 18 U.S.C. § 924(c) is involved. Subsection (a) also applies in certain other instances in which an independently determined and consecutive sentence is required. *See, e.g.*, Application Note 3 of the Commentary to §2J1.6 (Failure to Appear by Defendant), relating to failure to appear for service of sentence.

(B)   **Multiple Convictions Under 18 U.S.C. § 1028A.**—Section 1028A of title 18, United States Code, generally requires that the mandatory term of imprisonment for a violation of such section be imposed consecutively to any other term of imprisonment. However, 18 U.S.C. § 1028A(b)(4) permits the court, in its discretion, to impose the mandatory term of imprisonment on a defendant for a violation of such section "concurrently, in whole or in part, only with another term of imprisonment that is imposed by the court at the same time on that person for an additional violation of this section, provided that such discretion shall be exercised in accordance with any applicable guidelines and policy statements issued by the Sentencing Commission . . .".

In determining whether multiple counts of 18 U.S.C. § 1028A should run concurrently with, or consecutively to, each other, the court should consider the following non-exhaustive list of factors:

(i)   The nature and seriousness of the underlying offenses. For example, the court should consider the appropriateness of imposing consecutive, or partially consecutive, terms of imprisonment for multiple counts of 18 U.S.C. § 1028A in a case in which an underlying offense for one of the 18 U.S.C. § 1028A offenses is a crime of violence or an offense enumerated in 18 U.S.C. § 2332b(g)(5)(B).

(ii)   Whether subsection (b) of §3D1.1 (Procedure for Determining Offense Level on Multiple Counts) applies to the underlying offenses ~~are groupable under §3D1.2 (Groups of Closely Related Counts)~~. Generally, multiple counts of 18 U.S.C. § 1028A should run concurrently with one another in cases in which §3D1.1(b) did not apply to the underlying offenses ~~are groupable under §3D1.2~~.

(iii)   Whether the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2) are better achieved by imposing a concurrent or a consecutive sentence for multiple counts of 18 U.S.C. § 1028A.

(C)   **Imposition of Supervised Release.**—In the case of a consecutive term of imprisonment imposed under subsection (a), any term of supervised release imposed is to run concurrently with any other term of supervised release imposed. *See* 18 U.S.C. § 3624(e).

\*      \*      \*

**Issues for Comment:**

1.    The Commission seeks comment on whether it should simplify the operation of the multiple count rules. If so, does the proposed amendment achieve the goal of simplification? Alternatively, should the Commission simplify or clarify the application of these rules in a different manner? For example, should the Commission make more targeted revisions to Chapter Three, Part D to clarify the operation of the current rules? If so, what changes should the Commission make? Relatedly, if the Commission maintains the current structure of the multiple count rules, should it include its Grouping of Multiple Counts Decision Tree (available at https://www.ussc.gov/education/training-resources/multiple-counts-quick-reference-materials) as a reference in the *Guidelines Manual*?

2.    When the Commission has previously undertaken simplification efforts of the *Guidelines Manual*, it has envisioned and framed proposed amendments to be outcome neutral. This proposed amendment likewise aims to be outcome neutral, recognizing that nevertheless there may be some cases resulting in higher guideline ranges and some cases resulting in lower guideline ranges. Are there any categories of cases resulting in higher or lower guideline ranges that should not result in a different guideline range? If so, what should the Commission do to address these cases while still achieving its goal of simplification?

3.    New §3D1.1(b) provides that, if multiple counts use the same guideline and the guideline is listed therein, the offense level for each count is calculated separately and an adjustment based on the number counts applies to the count resulting in the highest offense level. The guidelines listed in new subsection (b) are not currently aggregated under §3D1.2(d) and generally cover offenses against a person and other offenses that in fiscal year 2024 resulted in a multiple count increase under §3D1.4 on more than two cases. The Commission seeks comment on whether there are additional guidelines that should be listed in new §3D1.1(b). Alternatively, are there any listed guidelines that should be excluded from new §3D1.1(b)?

New §3D1.1(b) also lists six additional guidelines: §2D2.3 (Operating or Directing the Operation of a Common Carrier Under the Influence of Alcohol or Drugs); §2J1.3 (Perjury or Subornation of Perjury; Bribery of Witness); §2M6.1 (Unlawful Activity Involving Nuclear Material, Weapons, or Facilities, Biological Agents, Toxins, or Delivery Systems, Chemical Weapons, or Other Weapons of Mass Destruction; Attempt or Conspiracy); §2N1.1 (Tampering or Attempting to Tamper Involving Risk of Death or Bodily Injury); §2Q1.4 (Tampering or Attempted Tampering with a Public Water System; Threatening to Tamper with a Public Water System); and §2X6.1 (Use of a Minor in a Crime of Violence). These guidelines contain instructions providing for a multiple count adjustment under certain circumstances. In fiscal year 2024, none of these instructions applied, and only one case involved one of these six guidelines (§2J1.3) and a multiple count adjustment. The Commission seeks comment on whether these guidelines should be excluded from the list in new §3D1.1(b) and the instructions found in each of these six guidelines also deleted.

## 6.    PROPOSED AMENDMENT:    SIMPLIFICATION

**Synopsis of Proposed Amendment:** In August 2025, the Commission identified as one of its policy priorities for the amendment cycle ending May 1, 2026, "[c]ontinued exploration of ways to simplify the *Guidelines Manual,* including . . . evaluating infrequently applied specific offense characteristics and adjustments provisions throughout the *Guidelines Manual;* and . . . possible consideration of amendments that might be appropriate." U.S. Sent'g Comm'n, "Notice of Final Priorities," 90 FR 39263, 39264 (Aug. 14, 2025).

The initiative of simplifying the *Guidelines Manual* has persisted almost since the guidelines' inception and has taken various forms over time. For example, in 1993, the Commission deleted "25 offense guidelines by consolidating them with other offense guidelines that cover similar offense conduct and have identical or very similar base offense levels and adjustments" for various reasons, including that "it shortens and simplifies the Guidelines Manual." *See* USSG App. C, amend. 481 (effective Nov. 1, 1993).

The *Guidelines Manual* includes 155 Chapter Two offense guidelines, 86 of which have at least one specific offense characteristic, for a total of 298 specific offense characteristics. Application rates for the 298 specific offense characteristics vary widely, both in terms of number of times used each year and frequency of use within the underlying guideline.

The Commission is considering deleting 26 specific offense characteristics that courts did not apply at all in the last five fiscal years. These 26 specific offense characteristics applied a small number of times—if at all—even using a 25-year lookback window. For some of these specific offense characteristics, low usage mirrored low usage of the underlying guideline. For others, the underlying guideline was applied a relatively large number of times, but the specific offense characteristic was infrequently applied.

The proposed amendment would delete certain specific offense characteristics in the following guidelines: §2A5.1 (Aircraft Piracy or Attempted Aircraft Piracy); §2B1.5 (Theft of, Damage to, or Destruction of, Cultural Heritage Resources or Paleontological Resources; Unlawful Sale, Purchase, Exchange, Transportation, or Receipt of Cultural Heritage Resources or Paleontological Resources); §2B2.3 (Trespass); §2B6.1 (Altering or Removing Motor Vehicle Identification Numbers, or Trafficking in Motor Vehicles or Parts with Altered or Obliterated Identification Numbers); §2D1.1 (Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses); Attempt or Conspiracy); §2D1.11 (Unlawfully Distributing, Importing, Exporting or Possessing a Listed Chemical; Attempt or Conspiracy); §2D1.12 (Unlawful Possession, Manufacture, Distribution, Transportation, Exportation, or Importation of Prohibited Flask, Equipment, Chemical, Product, or Material; Attempt or Conspiracy); §2D1.14 (Narco-Terrorism); §2G3.2 (Obscene Telephone Communications for a Commercial Purpose; Broadcasting Obscene Material); §2H3.1 (Interception of Communications; Eavesdropping; Disclosure of Certain Private or Protected Information); §2J1.3 (Perjury or Subornation of Perjury; Bribery of Witness); §2J1.6 (Failure to Appear by Defendant); §2J1.9 (Payment to Witness); §2K1.5 (Possessing Dangerous Weapons or Materials While Boarding or Aboard an Aircraft); §2K2.6 (Possessing, Purchasing, or Owning Body Armor by Violent Felons); §2M4.1 (Failure to Register and Evasion of Military Service); §2P1.1 (Escape, Instigating or Assisting Escape); §2Q1.2 (Mishandling of Hazardous or Toxic Substances or Pesticides;

Recordkeeping, Tampering, and Falsification; Unlawfully Transporting Hazardous Materials in Commerce); §2Q1.3 (Mishandling of Other Environmental Pollutants; Recordkeeping, Tampering, and Falsification); §2Q1.4 (Tampering or Attempted Tampering with a Public Water System; Threatening to Tamper with a Public Water System); and §2T1.9 (Conspiracy to Impede, Impair, Obstruct, or Defeat Tax).

An issue for comment is also provided.

**Proposed Amendment:**

---

**§2A5.1.   Aircraft Piracy or Attempted Aircraft Piracy**

---

(a)   Base Offense Level: **38**

(b)   ~~Specific Offense Characteristic~~

~~(1)   If death resulted, increase by **5** levels.~~

\*          \*          \*

---

**§2B1.5.   Theft of, Damage to, or Destruction of, Cultural Heritage Resources or Paleontological Resources; Unlawful Sale, Purchase, Exchange, Transportation, or Receipt of Cultural Heritage Resources or Paleontological Resources**

---

\*          \*          \*

(b)   Specific Offense Characteristics

\*          \*          \*

~~(6)   If a dangerous weapon was brandished or its use was threatened, increase by **2** levels. If the resulting offense level is less than level **14**, increase to level **14**.~~

\*          \*          \*

**Commentary**

\*          \*          \*

**Application Notes:**

\*          \*          \*

7. ~~**Dangerous Weapons Enhancement Under Subsection (b)(6).** For purposes of subsection (b)(6), "*brandished*" and "*dangerous weapon*" have the meaning given those terms in Application Note 1 of the Commentary to §1B1.1 (Application Instructions).~~

~~8~~7. **Multiple Counts.**—For purposes of Chapter Three, Part D (Multiple Counts), multiple counts involving offenses covered by this guideline are grouped together under subsection (d) of §3D1.2 (Groups of Closely Related Counts). Multiple counts involving offenses covered by this guideline and offenses covered by other guidelines are not to be grouped under §3D1.2(d).

\* \* \*

## §2B2.3.   Trespass

\* \* \*

(b)    Specific Offense Characteristics

\* \* \*

(3) ~~If (A) the offense involved invasion of a protected computer; and (B) the loss resulting from the invasion (i) exceeded $2,500 but did not exceed $6,500, increase by **1** level; or (ii) exceeded $6,500, increase by the number of levels from the table in §2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount.~~

\* \* \*

**Commentary**

\* \* \*

**Application** ~~Notes~~Note:

1.    **Definitions.**—For purposes of this guideline:

\* \* \*

~~"*Protected computer*" means a computer described in 18 U.S.C. § 1030(e)(2)(A) or (B).~~

\* \* \*

2. ~~**Application of Subsection (b)(3).** Valuation of loss is discussed in §2B1.1 (Theft, Property Destruction, and Fraud) and the Commentary to §2B1.1.~~

\* \* \*

### §2B6.1.  Altering or Removing Motor Vehicle Identification Numbers, or Trafficking in Motor Vehicles or Parts with Altered or Obliterated Identification Numbers

\*        \*        \*

(b)    Specific Offense Characteristics

\*        \*        \*

~~(3)   If the offense involved an organized scheme to steal vehicles or vehicle parts, or to receive stolen vehicles or vehicle parts, and the offense level as determined above is less than level **14**, increase to level **14**.~~

**Commentary**

**Statutory Provisions:** 18 U.S.C. §§ 511, 553(a)(2), 2321.

**Application ~~Notes~~Note:**

1. ~~Subsection (b)(3), referring to an "organized scheme to steal vehicles or vehicle parts, or to receive stolen vehicles or vehicle parts," provides an alternative minimum measure of loss in the case of an ongoing, sophisticated operation such as an auto theft ring or "chop shop." "*Vehicles*" refers to all forms of vehicles, including aircraft and watercraft. *See* Commentary to §2B1.1 (Theft, Property Destruction, and Fraud).~~

~~2~~1.    The term "*increase by the number of levels from the table in §2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount*," as used in subsection (b)(1), refers to the number of levels corresponding to the retail value of the motor vehicles or parts involved.

\*        \*        \*

### §2D1.1.  Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses); Attempt or Conspiracy

\*        \*        \*

(b)    Specific Offense Characteristics

\*        \*        \*

~~(10) If the defendant was convicted under 21 U.S.C. § 841(g)(1)(A), increase by **2** levels.~~

(~~11~~10) If the defendant bribed, or attempted to bribe, a law enforcement officer to facilitate the commission of the offense, increase by **2** levels.

(~~12~~11) If the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance, increase by **2** levels.

(~~13~~12) If the defendant (A) knowingly misrepresented or knowingly marketed as another substance a mixture or substance containing fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide) or a fentanyl analogue, increase by **4** levels; or (B) represented or marketed as a legitimately manufactured drug another mixture or substance containing fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide) or a fentanyl analogue, with reckless disregard that such mixture or substance was not the legitimately manufactured drug, increase by **2** levels. The term "***drug***," as used in subsection (b)(~~13~~12)(B), has the meaning given that term in 21 U.S.C. § 321(g)(1).

(~~14~~13) (Apply the greatest):

(A)  If the offense involved (i) an unlawful discharge, emission, or release into the environment of a hazardous or toxic substance; or (ii) the unlawful transportation, treatment, storage, or disposal of a hazardous waste, increase by **2** levels.

(B)  If the defendant was convicted under 21 U.S.C. § 860a of distributing, or possessing with intent to distribute, methamphetamine on premises where a minor is present or resides, increase by **2** levels. If the resulting offense level is less than level **14**, increase to level **14**.

(C)  If—

(i)  the defendant was convicted under 21 U.S.C. § 860a of manufacturing, or possessing with intent to manufacture, methamphetamine on premises where a minor is present or resides; or

(ii)  the offense involved the manufacture of amphetamine or methamphetamine and the offense created a substantial risk of harm to (I) human life other than a life described in subparagraph (D); or (II) the environment,

increase by **3** levels. If the resulting offense level is less than level **27**, increase to level **27**.

(D)  If the offense (i) involved the manufacture of amphetamine or methamphetamine; and (ii) created a substantial risk of harm to

the life of a minor or an incompetent, increase by **6** levels. If the resulting offense level is less than level **30**, increase to level **30**.

(~~15~~14) If (A) the offense involved the cultivation of marihuana on state or federal land or while trespassing on tribal or private land; and (B) the defendant receives an adjustment under §3B1.1 (Aggravating Role), increase by **2** levels.

(~~16~~15) If the defendant receives an adjustment under §3B1.1 (Aggravating Role) and the offense involved 1 or more of the following factors:

(A) (i) the defendant used fear, impulse, friendship, affection, or some combination thereof to involve another individual in the illegal purchase, sale, transport, or storage of controlled substances, (ii) the individual received little or no compensation from the illegal purchase, sale, transport, or storage of controlled substances, and (iii) the individual had minimal knowledge of the scope and structure of the enterprise;

(B) the defendant, knowing that an individual was (i) less than 18 years of age, (ii) 65 or more years of age, (iii) pregnant, or (iv) unusually vulnerable due to physical or mental condition or otherwise particularly susceptible to the criminal conduct, distributed a controlled substance to that individual or involved that individual in the offense;

(C) the defendant was directly involved in the importation of a controlled substance;

(D) the defendant engaged in witness intimidation, tampered with or destroyed evidence, or otherwise obstructed justice in connection with the investigation or prosecution of the offense;

(E) the defendant committed the offense as part of a pattern of criminal conduct engaged in as a livelihood,

increase by **2** levels.

(~~17~~16) If the defendant receives the **4**-level reduction in §3B1.2(a) and the offense involved all of the following factors:

(A) the defendant was motivated by an intimate or familial relationship or by threats or fear to commit the offense and was otherwise unlikely to commit such an offense;

(B)   the defendant received no monetary compensation from the illegal purchase, sale, transport, or storage of controlled substances; and

(C)   the defendant had minimal knowledge of the scope and structure of the enterprise,

decrease by **2** levels.

(~~18~~17)   If the defendant meets the criteria set forth in paragraphs (1)–(5) of subsection (a) of §5C1.2 (Limitation on Applicability of Statutory Minimum Sentences in Certain Cases), decrease by **2** levels.

\*        \*        \*

(e)   Special Instructions

\*        \*        \*

(2)   Application of §3B1.2 (Mitigating Role) to §2D1.1 Cases

(A)   Determine whether an adjustment under §3B1.2 (Mitigating Role) applies.

(B)   In addition to the circumstances identified in §3B1.2, an adjustment under §3B1.2 is generally warranted if the defendant's primary function in the offense was performing a low-level trafficking function.

(i)   An adjustment under §3B1.2(a) is generally warranted if the defendant's primary function in the offense was plainly among the lowest level of drug trafficking functions, such as serving as a courier, running errands, sending or receiving phone calls or messages, or acting as a lookout; or

(ii)   an adjustment under §3B1.2(b) is generally warranted if the defendant's primary function in the offense was performing another low-level trafficking function, such as distributing controlled substances in user-level quantities for little or no monetary compensation or with a primary motivation other than profit (*e.g.*, the defendant was otherwise unlikely to commit such an offense and was motivated by an intimate or familial relationship, or by threats or fear to commit the offense).

For purposes of subsection (e)(2)(B), the provisions of §3B1.2 apply in determining whether a mitigating role adjustment is warranted, except that the adjustment shall apply regardless of whether the offense involved other participants in addition to the defendant, and regardless of whether the defendant was substantially less culpable than the average participant in the criminal activity. The extent of the adjustment shall be based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case.

(C)    The mitigating role provisions at subsection (a)(5) and the 2-level reduction at subsection (b)(~~17~~16) apply regardless of whether the defendant receives the required adjustment from §3B1.2 (Mitigating Role) by direct application of §3B1.2 or by use of the special instruction in subsection (e)(2)(B).

\*        \*        \*

**Commentary**

\*        \*        \*

**Application Notes:**

\*        \*        \*

16.    **Application of Subsection (b)(~~11~~10).**—Subsection (b)(~~11~~10) does not apply if the purpose of the bribery was to obstruct or impede the investigation, prosecution, or sentencing of the defendant. Such conduct is covered by §3C1.1 (Obstructing or Impeding the Administration of Justice) and, if applicable, §2D1.1(b)(~~16~~15)(D).

17.    **Application of Subsection (b)(~~12~~11).**—Subsection (b)(~~12~~11) applies to a defendant who knowingly maintains a premises (*i.e.*, a building, room, or enclosure) for the purpose of manufacturing or distributing a controlled substance, including storage of a controlled substance for the purpose of distribution.

Among the factors the court should consider in determining whether the defendant "maintained" the premises are (A) whether the defendant held a possessory interest in (*e.g.*, owned or rented) the premises and (B) the extent to which the defendant controlled access to, or activities at, the premises.

Manufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises. In making this determination, the court should consider how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance and how frequently the premises was used by the defendant for lawful purposes.

18. **Application of Subsection (b)(~~14~~13).—**

(A) **Hazardous or Toxic Substances (Subsection (b)(~~14~~13)(A)).**—Subsection (b)(~~14~~13)(A) applies if the conduct for which the defendant is accountable under §1B1.3 (Relevant Conduct) involved any discharge, emission, release, transportation, treatment, storage, or disposal violation covered by the Resource Conservation and Recovery Act, 42 U.S.C. § 6928(d); the Federal Water Pollution Control Act, 33 U.S.C. § 1319(c); the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9603(b); or 49 U.S.C. § 5124 (relating to violations of laws and regulations enforced by the Department of Transportation with respect to the transportation of hazardous material). In determining the amount of restitution under §5E1.1 (Restitution) and in fashioning appropriate conditions of probation and supervision under §§5B1.3 (Conditions of Probation) and 5D1.3 (Conditions of Supervised Release), respectively, any costs of environmental cleanup and harm to individuals or property shall be considered by the court in cases involving the manufacture of amphetamine or methamphetamine and should be considered by the court in cases involving the manufacture of a controlled substance other than amphetamine or methamphetamine. *See* 21 U.S.C. § 853(q) (mandatory restitution for cleanup costs relating to the manufacture of amphetamine and methamphetamine).

(B) **Substantial Risk of Harm Associated with the Manufacture of Amphetamine and Methamphetamine (Subsection (b)(~~14~~13)(C)–(D)).—**

(i) **Factors to Consider.**—In determining, for purposes of subsection (b)(~~14~~13)(C)(ii) or (D), whether the offense created a substantial risk of harm to human life or the environment, the court shall include consideration of the following factors:

(I) The quantity of any chemicals or hazardous or toxic substances found at the laboratory, and the manner in which the chemicals or substances were stored.

(II) The manner in which hazardous or toxic substances were disposed, and the likelihood of release into the environment of hazardous or toxic substances.

(III) The duration of the offense, and the extent of the manufacturing operation.

(IV) The location of the laboratory (*e.g.*, whether the laboratory is located in a residential neighborhood or a remote area), and the number of human lives placed at substantial risk of harm.

(ii) **Definitions.**—For purposes of subsection (b)(~~14~~13)(D):

"***Incompetent***" means an individual who is incapable of taking care of the individual's self or property because of a mental or physical illness or disability, mental retardation, or senility.

"***Minor***" has the meaning given that term in Application Note 1 of the Commentary to §2A3.1 (Criminal Sexual Abuse).

19. **Application of Subsection (b)(~~15~~14).**—Subsection (b)(~~15~~14) applies to offenses that involve the cultivation of marihuana on state or federal land or while trespassing on tribal or private land. Such offenses interfere with the ability of others to safely access and use the area and also pose or risk a range of other harms, such as harms to the environment.

The enhancements in ~~subsection~~subsections (b)(~~14~~13)(A) and (b)(~~15~~14) may be applied cumulatively (added together), as is generally the case when two or more specific offense characteristics each apply. *See* §1B1.1 (Application Instructions), Application Note 4(A).

20.  **Application of Subsection (b)(~~16~~15).**—

(A)  **Distributing to a Specified Individual or Involving Such an Individual in the Offense (Subsection (b)(~~16~~15)(B)).**—If the defendant distributes a controlled substance to an individual or involves an individual in the offense, as specified in subsection (b)(~~16~~15)(B), the individual is not a "vulnerable victim" for purposes of §3A1.1(b).

(B)  **Directly Involved in the Importation of a Controlled Substance (Subsection (b)(~~16~~15)(C)).**—Subsection (b)(~~16~~15)(C) applies if the defendant is accountable for the importation of a controlled substance under subsection (a)(1)(A) of §1B1.3 (Relevant Conduct (Factors that Determine the Guideline Range)), *i.e.*, the defendant committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused the importation of a controlled substance.

If subsection (b)(3) or (b)(5) applies, do not apply subsection (b)(~~16~~15)(C).

(C)  **Pattern of Criminal Conduct Engaged in as a Livelihood (Subsection (b)(~~16~~15)(E)).**—For purposes of subsection (b)(~~16~~15)(E), "*pattern of criminal conduct*" and "*engaged in as a livelihood*" have the meaning given such terms in §4B1.3 (Criminal Livelihood).

21.  **Applicability of Subsection (b)(~~18~~17).**—The applicability of subsection (b)(~~18~~17) shall be determined without regard to whether the defendant was convicted of an offense that subjects the defendant to a mandatory minimum term of imprisonment. Section 5C1.2(b), which provides that the applicable guideline range shall not be less than 24 to 30 months of imprisonment, is not pertinent to the determination of whether subsection (b)(~~18~~17) applies.

\*          \*          \*

**Background:** Offenses under 21 U.S.C. §§ 841 and 960 receive identical punishment based upon the quantity of the controlled substance involved, the defendant's criminal history, and whether death or serious bodily injury resulted from the offense.

\*          \*          \*

Subsection (b)(~~11~~10) implements the directive to the Commission in section 6(1) of Public Law 111–220.

Subsection (b)(~~12~~11) implements the directive to the Commission in section 6(2) of Public Law 111–220.

Subsection (b)(~~14~~13)(A) implements the instruction to the Commission in section 303 of Public Law 104–237.

Subsections (b)(~~14~~13)(C)(ii) and (D) implement, in a broader form, the instruction to the Commission in section 102 of Public Law 106–310.

Subsection (b)(~~16~~15) implements the directive to the Commission in section 6(3) of Public Law 111–220.

Subsection (b)(~~17~~16) implements the directive to the Commission in section 7(2) of Public Law 111–220.

\*          \*          \*

## §2D1.11. Unlawfully Distributing, Importing, Exporting or Possessing a Listed Chemical; Attempt or Conspiracy

\*          \*          \*

(b)     Specific Offense Characteristics

\*          \*          \*

(2)     ~~If the defendant is convicted of violating 21 U.S.C. § 841(c)(2) or (f)(1), or § 960(d)(2), (d)(3), or (d)(4), decrease by **3** levels, unless the defendant knew or believed that the listed chemical was to be used to manufacture a controlled substance unlawfully.~~

(~~3~~2)  If the offense involved (A) an unlawful discharge, emission, or release into the environment of a hazardous or toxic substance; or (B) the unlawful transportation, treatment, storage, or disposal of a hazardous waste, increase by **2** levels.

(~~4~~3)  If the defendant, or a person for whose conduct the defendant is accountable under §1B1.3 (Relevant Conduct), distributed a listed chemical through mass-marketing by means of an interactive computer service, increase by **2** levels.

(5)     ~~If the defendant is convicted under 21 U.S.C. § 865, increase by **2** levels.~~

(~~6~~4)  If the defendant meets the criteria set forth in paragraphs (1)–(5) of subsection (a) of §5C1.2 (Limitation on Applicability of Statutory Minimum Sentences in Certain Cases), decrease by **2** levels.

\*          \*          \*

**Commentary**

\*          \*          \*

**Application Notes:**

\*        \*        \*

3.    **Application of Subsection (b)(2).**—Convictions under 21 U.S.C. §§ 841(e)(2) and (f)(1), and 960(d)(2), (d)(3), and (d)(4) do not require that the defendant have knowledge or an actual belief that the listed chemical was to be used to manufacture a controlled substance unlawfully. In a case in which the defendant possessed or distributed the listed chemical without such knowledge or belief, a 3 level reduction is provided to reflect that the defendant is less culpable than one who possessed or distributed listed chemicals knowing or believing that they would be used to manufacture a controlled substance unlawfully.

43.    **Application of Subsection (b)(32).**—Subsection (b)(32) applies if the conduct for which the defendant is accountable under §1B1.3 (Relevant Conduct) involved any discharge, emission, release, transportation, treatment, storage, or disposal violation covered by the Resource Conservation and Recovery Act, 42 U.S.C. § 6928(d), the Federal Water Pollution Control Act, 33 U.S.C. § 1319(c), the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9603(b), and 49 U.S.C. § 5124 (relating to violations of laws and regulations enforced by the Department of Transportation with respect to the transportation of hazardous material). Any costs of environmental cleanup and harm to persons or property should be considered by the court in determining the amount of restitution under §5E1.1 (Restitution) and in fashioning appropriate conditions of supervision under §§5B1.3 (Conditions of Probation) and 5D1.3 (Conditions of Supervised Release).

54.    **Application of Subsection (b)(43).**—For purposes of subsection (b)(43), "***mass-marketing by means of an interactive computer service***" means the solicitation, by means of an interactive computer service, of a large number of persons to induce those persons to purchase a controlled substance. For example, subsection (b)(43) would apply to a defendant who operated a web site to promote the sale of Gamma-butyrolactone (GBL) but would not apply to coconspirators who use an interactive computer service only to communicate with one another in furtherance of the offense. "***Interactive computer service***", for purposes of subsection (b)(43) and this note, has the meaning given that term in section 230(e)(2) of the Communications Act of 1934 (47 U.S.C. § 230(f)(2)).

65.    **Imposition of Consecutive Sentence for 21 U.S.C. § 865.**—Section 865 of title 21, United States Code, requires the imposition of a mandatory consecutive term of imprisonment of not more than 15 years. In order to comply with the relevant statute, the court should determine the appropriate "total punishment" and, on the judgment form, divide the sentence between the sentence attributable to the underlying drug offense and the sentence attributable to 21 U.S.C. § 865, specifying the number of months to be served consecutively for the conviction under 21 U.S.C. § 865. For example, if the applicable adjusted guideline range is 151–188 months and the court determines a "total punishment" of 151 months is appropriate, a sentence of 130 months for the underlying offense plus 21 months for the conduct covered by 21 U.S.C. § 865 would achieve the "total punishment" in a manner that satisfies the statutory requirement of a consecutive sentence.

76.    **Applicability of Subsection (b)(64).**—The applicability of subsection (b)(64) shall be determined without regard to the offense of conviction. If subsection (b)(64) applies, §5C1.2(b) does not apply. *See* §5C1.2(b)(2)(requiring an applicable guideline range of not less than 24 to 30 months of imprisonment if the "statutorily required minimum sentence is at least five years").

87.    **Application of Subsection (c)(1).**—"***Offense involved unlawfully manufacturing a controlled substance or attempting to manufacture a controlled substance unlawfully***,"

as used in subsection (c)(1), means that the defendant, or a person for whose conduct the defendant is accountable under §1B1.3 (Relevant Conduct), completed the actions sufficient to constitute the offense of unlawfully manufacturing a controlled substance or attempting to manufacture a controlled substance unlawfully.

~~9~~8.   **Offenses Involving Immediate Precursors or Other Controlled Substances Covered Under §2D1.1.**—In certain cases, the defendant will be convicted of an offense involving a listed chemical covered under this guideline, and a related offense involving an immediate precursor or other controlled substance covered under §2D1.1 (Unlawfully Manufacturing, Importing, Exporting, or Trafficking). For example, P2P (an immediate precursor) and methylamine (a listed chemical) are used together to produce methamphetamine. Determine the offense level under each guideline separately. The offense level for methylamine is determined by using §2D1.11. The offense level for P2P is determined by using §2D1.1 (P2P is listed in the Drug Conversion Table under Cocaine and Other Schedule I and II Stimulants (and their immediate precursors)). Under the grouping rules of §3D1.2(b), the counts will be grouped together. Note that in determining the scale of the offense under §2D1.1, the quantity of both the controlled substance and listed chemical should be considered (*see* Application Note 5 in the Commentary to §2D1.1).

\*        \*        \*

## §2D1.12. Unlawful Possession, Manufacture, Distribution, Transportation, Exportation, or Importation of Prohibited Flask, Equipment, Chemical, Product, or Material; Attempt or Conspiracy

\*        \*        \*

(b)   Specific Offense Characteristics

\*        \*        \*

~~(4)   If the offense involved stealing anhydrous ammonia or transporting stolen anhydrous ammonia, increase by **6** levels.~~

\*        \*        \*

## §2D1.14. Narco-Terrorism

(a)   Base Offense Level:

(1)   The offense level from §2D1.1 (Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses); Attempt or Conspiracy) applicable to the underlying offense, except that §2D1.1(a)(5)(A), (a)(5)(B), and (b)(~~18~~17) shall not apply.

(b)   ~~Specific Offense Characteristic~~

(1)   ~~If §3A1.4 (Terrorism) does not apply, increase by **6** levels.~~

\*     \*     \*

## §2G3.2.   Obscene Telephone Communications for a Commercial Purpose; Broadcasting Obscene Material

(a)   Base Offense Level: **12**

(b)   ~~Specific Offense Characteristics~~

~~(1)   If a person who received the telephonic communication was less than eighteen years of age, or if a broadcast was made between six o'clock in the morning and eleven o'clock at night, increase by **4** levels.~~

~~(2)   If **6** plus the offense level from the table in §2B1.1 (Theft, Property Destruction, and Fraud) corresponding to the volume of commerce attributable to the defendant is greater than the offense level determined above, increase to that offense level.~~

### Commentary

**Statutory Provisions:** 18 U.S.C. §§ 1464, 1468; 47 U.S.C. § 223(b)(1)(A).

~~**Background:** Subsection (b)(1) provides an enhancement where an obscene telephonic communication was received by a minor less than 18 years of age or where a broadcast was made during a time when such minors were likely to receive it. Subsection (b)(2) provides an enhancement for large scale "dial a porn" or obscene broadcasting operations that results in an offense level comparable to the offense level for such operations under §2G3.1 (Importing, Mailing, or Transporting Obscene Matter; Transferring Obscene Matter to a Minor). The extent to which the obscene material was distributed is approximated by the volume of commerce attributable to the defendant.~~

\*     \*     \*

## §2H3.1.   Interception of Communications; Eavesdropping; Disclosure of Certain Private or Protected Information

\*     \*     \*

(b)   Specific Offense ~~Characteristics~~ Characteristic

\*     \*     \*

Proposed Amendment: Simplification

(2)    (Apply the greater) If—

    (A)    the defendant is convicted under 18 U.S.C. § 119, increase by 8 levels; or

    (B)    the defendant is convicted under 18 U.S.C. § 119, and the offense involved the use of a computer or an interactive computer service to make restricted personal information about a covered person publicly available, increase by 10 levels.

\*    \*    \*

**Commentary**

\*    \*    \*

**Application Notes:**

1.    **Satellite Cable Transmissions.**—If the offense involved interception of satellite cable transmissions for purposes of commercial advantage or private financial gain (including avoiding payment of fees), apply §2B5.3 (Criminal Infringement of Copyright) rather than this guideline.

2.    **Imposition of Sentence for 18 U.S.C. § 1039(d) and (e).**—Subsections 1039(d) and (e) of title 18, United States Code, require a term of imprisonment of not more than 5 years to be imposed in addition to any sentence imposed for a conviction under 18 U.S.C. § 1039(a), (b), or (c). In order to comply with the statute, the court should determine the appropriate "total punishment" and divide the sentence on the judgment form between the sentence attributable to the conviction under 18 U.S.C. § 1039(d) or (e) and the sentence attributable to the conviction under 18 U.S.C. § 1039(a), (b), or (c), specifying the number of months to be served for the conviction under 18 U.S.C. § 1039(d) or (e). For example, if the applicable adjusted guideline range is 15–21 months and the court determines a "total punishment" of 21 months is appropriate, a sentence of 9 months for conduct under 18 U.S.C. § 1039(a) plus 12 months for 18 U.S.C. § 1039(d) conduct would achieve the "total punishment" in a manner that satisfies the statutory requirement.

3.    **Inapplicability of Chapter Three (Adjustments).**—If the enhancement under subsection (b)(2) applies, do not apply §3A1.2 (Official Victim).

4.    **Definitions.**—For purposes of this guideline:

"*Computer*" has the meaning given that term in 18 U.S.C. § 1030(e)(1).

"*Covered person*" has the meaning given that term in 18 U.S.C. § 119(b).

"*Interactive computer service*" has the meaning given that term in section 230(e)(2) of the Communications Act of 1934 (47 U.S.C. § 230(f)(2)).

"*Means of identification*" has the meaning given that term in 18 U.S.C. § 1028(d)(7), except that such means of identification shall be of an actual (*i.e.*, not fictitious) individual, other than the defendant or a person for whose conduct the defendant is accountable under §1B1.3 (Relevant Conduct).

"*Personal information*" means sensitive or private information involving an identifiable individual (including such information in the possession of a third party), including (A) medical records; (B) wills; (C) diaries; (D) private correspondence, including e-mail; (E) financial records; (F) photographs of a sensitive or private nature; or (G) similar information.

"*Restricted personal information*" has the meaning given that term in 18 U.S.C. § 119(b).

\*     \*     \*

## §2J1.3.   Perjury or Subornation of Perjury; Bribery of Witness

\*     \*     \*

(b)   Specific Offense ~~Characteristics~~Characteristic

(1)   If the offense involved causing or threatening to cause physical injury to a person, or property damage, in order to suborn perjury, increase by **8** levels.

(~~2~~1) If the perjury, subornation of perjury, or witness bribery resulted in substantial interference with the administration of justice, increase by **3** levels.

\*     \*     \*

## §2J1.6.   Failure to Appear by Defendant

\*     \*     \*

(b)   Specific Offense ~~Characteristics~~Characteristic

(1)   If the base offense level is determined under subsection (a)(1), and the defendant—

(A)   voluntarily surrendered within 96 hours of the time he was originally scheduled to report, decrease by **5** levels; or

(B)   was ordered to report to a community corrections center, community treatment center, "halfway house," or similar facility, and subdivision (A) above does not apply, decrease by **2** levels.

*Provided*, however, that this reduction shall not apply if the defendant, while away from the facility, committed any federal, state, or local offense punishable by a term of imprisonment of one year or more.

(~~2~~1) If the base offense level is determined under subsection (a)(2), and the underlying offense is—

    (A)  punishable by death or imprisonment for a term of fifteen years or more, increase by **9** levels; or

    (B)  punishable by a term of imprisonment of five years or more, but less than fifteen years, increase by **6** levels; or

    (C)  a felony punishable by a term of imprisonment of less than five years, increase by **3** levels.

\*      \*      \*

---

## §2J1.9.    Payment to Witness

\*      \*      \*

~~(b)    Specific Offense Characteristic~~

~~(1)    If the payment was made or offered for refusing to testify or for the witness absenting himself to avoid testifying, increase by **4** levels.~~

\*      \*      \*

---

## §2K1.5.    Possessing Dangerous Weapons or Materials While Boarding or Aboard an Aircraft

\*      \*      \*

(b)    Specific Offense Characteristics

    (1)    (Apply the greater) If ~~more than one applies, use the greatest:~~

        (~~1~~A)    ~~If~~ the offense was committed willfully and without regard for the safety of human life, or with reckless disregard for the safety of human life, increase by **15** levels~~.~~; or

        (~~2~~B)    ~~If~~ the defendant was prohibited by another federal law from possessing the weapon or material, increase by **2** levels.

    ~~(3)    If the defendant's possession of the weapon or material would have been lawful but for 49 U.S.C. § 46505 and he acted with mere negligence, decrease by **3** levels.~~

\*       \*       \*

**Commentary**

\*       \*       \*

**Background:** This guideline provides an enhancement where the defendant was a person prohibited by federal law from possession of the weapon or material. ~~A decrease is provided in a case of mere negligence where the defendant was otherwise authorized to possess the weapon or material.~~

\*       \*       \*

## §2K2.6.   Possessing, Purchasing, or Owning Body Armor by Violent Felons

(a)   Base Offense Level: **10**

~~(b)   Specific Offense Characteristic~~

~~(1)   If the defendant used the body armor in connection with another felony offense, increase by 4 levels.~~

**Commentary**

**Statutory Provision:** 18 U.S.C. § 931.

~~**Application Notes:**~~

~~1.    **Application of Subsection (b)(1).** —~~

~~(A)   **Meaning of "Defendant".** — Consistent with §1B1.3 (Relevant Conduct), the term "***defendant***", for purposes of subsection (b)(1), limits the accountability of the defendant to the defendant's own conduct and conduct that the defendant aided or abetted, counseled, commanded, induced, procured, or willfully caused.~~

~~(B)   **Meaning of "Felony Offense".** — For purposes of subsection (b)(1), "***felony offense***" means any offense (federal, state, or local) punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained.~~

~~(C)   **Meaning of "Used".** — For purposes of subsection (b)(1), "***used***" means the body armor was (i) actively employed in a manner to protect the person from gunfire; or (ii) used as a means of bartering. Subsection (b)(1) does not apply if the body armor was merely possessed. For example, subsection (b)(1) would not apply if the body armor was found in the trunk of a car but was not being actively used as protection.~~

~~2.    **Inapplicability of §3B1.5.** — If subsection (b)(1) applies, do not apply the adjustment in §3B1.5 (Use of Body Armor in Drug Trafficking Crimes and Crimes of Violence).~~

3.    **Grouping of Multiple Counts.**  ~~If subsection (b)(1) applies (because the defendant used the body armor in connection with another felony offense) and the instant offense of conviction includes a count of conviction for that other felony offense, the counts of conviction for the 18 U.S.C. § 931 offense and that other felony offense shall be grouped pursuant to subsection (c) of §3D1.2 (Groups of Closely Related Counts).~~

\*        \*        \*

## §2M4.1.   Failure to Register and Evasion of Military Service

(a)    Base Offense Level: **6**

(b)    ~~Specific Offense Characteristic~~

    (1)    ~~If the offense occurred at a time when persons were being inducted for compulsory military service, increase by **6** levels.~~

\*        \*        \*

## §2P1.1.   Escape, Instigating or Assisting Escape

\*        \*        \*

(b)    Specific Offense Characteristics

\*        \*        \*

    (4)    ~~If the defendant was a law enforcement or correctional officer or employee, or an employee of the Department of Justice, at the time of the offense, increase by **2** levels.~~

**Commentary**

\*        \*        \*

**Application Notes:**

\*        \*        \*

3.    ~~If the adjustment in subsection (b)(4) applies, no adjustment is to be made under §3B1.3 (Abuse of Position of Trust or Use of Special Skill).~~

~~4~~3.    Criminal history points under Chapter Four, Part A (Criminal History) are to be determined independently of the application of this guideline. For example, in the case of a defendant serving a one-year sentence of imprisonment at the time of the escape, criminal history points from §4A1.1(b) (for the sentence being served at the time of the escape) and §4A1.1(e) (custody status) would be applicable.

5~~4~~.    If the adjustment in subsection (b)(1) applies as a result of conduct that involves an official victim, do not apply §3A1.2 (Official Victim).

\*        \*        \*

## §2Q1.2.    Mishandling of Hazardous or Toxic Substances or Pesticides; Recordkeeping, Tampering, and Falsification; Unlawfully Transporting Hazardous Materials in Commerce

\*        \*        \*

(b)    Specific Offense Characteristics

\*        \*        \*

(5)    ~~If a recordkeeping offense reflected an effort to conceal a substantive environmental offense, use the offense level for the substantive offense.~~

(~~6~~5)    If the offense involved a simple recordkeeping or reporting violation only, decrease by **2** levels.

(~~7~~6)    If the defendant was convicted under 49 U.S.C. § 5124 or § 46312, increase by **2** levels.

### Commentary

\*        \*        \*

**Application Notes:**

1.    ~~"*Recordkeeping offense*" includes both recordkeeping and reporting offenses. The term is to be broadly construed as including failure to report discharges, releases, or emissions where required; the giving of false information; failure to file other required reports or provide necessary information; and failure to prepare, maintain, or provide records as prescribed.~~

2~~1~~.    "*Simple recordkeeping or reporting violation*" means a recordkeeping or reporting offense in a situation where the defendant neither knew nor had reason to believe that the recordkeeping offense would significantly increase the likelihood of any substantive environmental harm.

3~~2~~.    This section applies to offenses involving pesticides or substances designated toxic or hazardous at the time of the offense by statute or regulation. A listing of hazardous and toxic substances in the guidelines would be impractical. Several federal statutes (or regulations promulgated thereunder) list toxics, hazardous wastes and substances, and pesticides. These lists, such as those of toxic pollutants for which effluent standards are published under the Federal Water Pollution Control Act (*e.g.*, 33 U.S.C. § 1317) as well as the designation of hazardous substances under the Comprehensive Environmental Response, Compensation and Liability Act (*e.g.*, 42 U.S.C. § 9601(14)), are revised from time to time. "Toxic" and "hazardous" are defined

differently in various statutes, but the common dictionary meanings of the words are not significantly different.

4~~3~~. Subsection (b)(1) assumes a discharge or emission into the environment resulting in actual environmental contamination. A wide range of conduct, involving the handling of different quantities of materials with widely differing propensities, potentially is covered.

5~~4~~. Subsection (b)(2) applies to offenses where the public health is seriously endangered.

6~~5~~. Subsection (b)(3) provides an enhancement where a public disruption, evacuation or cleanup at substantial expense has been required.

7~~6~~. Subsection (b)(4) applies where the offense involved violation of a permit, or where there was a failure to obtain a permit when one was required.

**Background:** This section applies both to substantive violations of the statute governing the handling of pesticides and toxic and hazardous substances and to recordkeeping offenses. The first four specific offense characteristics provide enhancements when the offense involved a substantive violation. The fifth and sixth specific offense characteristics apply to recordkeeping offenses. Although other sections of the guidelines generally prescribe a base offense level of 6 for regulatory violations, §2Q1.2 prescribes a base offense level of 8 because of the inherently dangerous nature of hazardous and toxic substances and pesticides. A decrease of 2 levels is provided, however, for "simple recordkeeping or reporting violations" under §2Q1.2(b)(~~6~~5).

*      *      *

## §2Q1.3.  Mishandling of Other Environmental Pollutants; Recordkeeping, Tampering, and Falsification

*      *      *

(b)   Specific Offense Characteristics

*      *      *

(2)   ~~If the offense resulted in a substantial likelihood of death or serious bodily injury, increase by **11** levels.~~

(3~~2~~) If the offense resulted in disruption of public utilities or evacuation of a community, or if cleanup required a substantial expenditure, increase by **4** levels.

(4~~3~~) If the offense involved a discharge without a permit or in violation of a permit, increase by **4** levels.

(5)   ~~If a recordkeeping offense reflected an effort to conceal a substantive environmental offense, use the offense level for the substantive offense.~~

Proposed Amendment:  Simplification

**Commentary**

\*      \*      \*

**Application Notes:**

1.    "*Recordkeeping offense*" includes both recordkeeping and reporting offenses. The term is to be broadly construed as including failure to report discharges, releases, or emissions where required; the giving of false information; failure to file other required reports or provide necessary information; and failure to prepare, maintain, or provide records as prescribed.

21.    If the offense involved mishandling of nuclear material, apply §2M6.2 (Violation of Other Federal Atomic Energy Agency Statutes, Rules, and Regulations) rather than this guideline.

32.    Subsection (b)(1) assumes a discharge or emission into the environment resulting in actual environmental contamination. A wide range of conduct, involving the handling of different quantities of materials with widely differing propensities, potentially is covered.

4.    Subsection (b)(2) applies to offenses where the public health is seriously endangered.

53.    Subsection (b)(32) provides an enhancement where a public disruption, evacuation or cleanup at substantial expense has been required.

64.    Subsection (b)(43) applies where the offense involved violation of a permit, or where there was a failure to obtain a permit when one was required.

**Background:** This section parallels §2Q1.2 but applies to offenses involving substances which are not pesticides and are not designated as hazardous or toxic.

\*      \*      \*

## §2Q1.4.  Tampering or Attempted Tampering with a Public Water System; Threatening to Tamper with a Public Water System

\*      \*      \*

(b)   Specific Offense Characteristics

> (1)   If (A) any victim sustained permanent or life threatening bodily injury, increase by **4** levels; (B) any victim sustained serious bodily injury, increase by **2** levels; or (C) the degree of injury is between that specified in subdivisions (A) and (B), increase by **3** levels.

> (2)   If the offense resulted in (A) a substantial disruption of public, governmental, or business functions or services; or (B) a substantial expenditure of funds to clean up, decontaminate, or otherwise respond to the offense, increase by **4** levels.

(3)   ~~If the offense resulted in an ongoing, continuous, or repetitive release of a contaminant into a public water system or lasted for a substantial period of time, increase by **2** levels.~~

(~~e~~b)   Cross References

(1)   If the offense resulted in death, apply §2A1.1 (First Degree Murder) if the death was caused intentionally or knowingly, or §2A1.2 (Second Degree Murder) in any other case, if the resulting offense level is greater than that determined above.

(2)   If the offense was tantamount to attempted murder, apply §2A2.1 (Assault with Intent to Commit Murder; Attempted Murder) if the resulting offense level is greater than that determined above.

(3)   If the offense involved extortion, apply §2B3.2 (Extortion by Force or Threat of Injury or Serious Damage) if the resulting offense level is greater than that determined above.

(~~d~~c)   Special Instruction

(1)   If the defendant is convicted of a single count involving (A) the death or permanent, life-threatening, or serious bodily injury of more than one victim; or (B) conduct tantamount to the attempted murder of more than one victim, Chapter Three, Part D (Multiple Counts) shall be applied as if the defendant had been convicted of a separate count for each such victim.

**Commentary**

\*        \*        \*

**Application Notes:**

1.    **Definitions.**—For purposes of this guideline, "***permanent or life-threatening bodily injury***" and "***serious bodily injury***" have the meaning given those terms in Note 1 of the Commentary to §1B1.1 (Application Instructions).

2.    **Application  of  Special  Instruction.**—Subsection  (~~d~~c)  applies  in  any  case  in  which  the defendant is convicted of a single count involving (A) the death or permanent, life-threatening, or serious bodily injury of more than one victim; or (B) conduct tantamount to the attempted murder of more than one victim, regardless of whether the offense level is determined under this guideline  or  under  another  guideline  in  Chapter  Two  (Offense  Conduct)  by  use  of  a  cross reference under subsection (~~e~~b).

\*        \*        \*

## §2T1.9.    Conspiracy to Impede, Impair, Obstruct, or Defeat Tax

*        *        *

(b)    Specific Offense ~~Characteristics~~Characteristic

~~If more than one applies, use the greater:~~

~~(1)   If the offense involved the planned or threatened use of violence to impede, impair, obstruct, or defeat the ascertainment, computation, assessment, or collection of revenue, increase by **4** levels.~~

(~~2~~1) If the conduct was intended to encourage persons other than or in addition to co-conspirators to violate the internal revenue laws or impede, impair, obstruct, or defeat the ascertainment, computation, assessment, or collection of revenue, increase by **2** levels. Do not, however, apply this adjustment if an adjustment from §2T1.4(b)(1) is applied.

**Commentary**

*        *        *

**Application Notes:**

*        *        *

3.    ~~Specific offense characteristics from §2T1.9(b) are~~Subsection (b)(1) is to be applied to the base offense level determined under §2T1.9(a)(1) or (2).

4.    Subsection (b)(~~2~~1) provides an enhancement where the conduct was intended to encourage persons, other than the participants directly involved in the offense, to violate the tax laws (*e.g.*, an offense involving a "tax protest" group that encourages persons to violate the tax laws, or an offense involving the marketing of fraudulent tax shelters or schemes).

**Background:** This type of conspiracy generally involves substantial sums of money. It also typically is complex and may be far-reaching, making it quite difficult to evaluate the extent of the revenue loss caused. ~~Additional specific offense characteristics are~~A specific offense characteristic is included because of the potential for these tax conspiracies to subvert the revenue system and the danger to law enforcement agents and the public.

*        *        *

## §3B1.4.    Using a Minor To Commit a Crime

*        *        *

**Commentary**

**Application Notes:**

\*    \*    \*

2.    Do not apply this adjustment if the Chapter Two offense guideline incorporates this factor. For example, if the defendant receives an enhancement under §2D1.1(b)(~~16~~15)(B) for involving an individual less than 18 years of age in the offense, do not apply this adjustment.

\*    \*    \*

## §3B1.5.    Use of Body Armor in Drug Trafficking Crimes and Crimes of Violence

\*    \*    \*

**Commentary**

**Application Notes:**

\*    \*    \*

3.    ~~**Interaction with §2K2.6 and Other Counts of Conviction.**—If the defendant is convicted only of 18 U.S.C. § 931 and receives an enhancement under subsection (b)(1) of §2K2.6 (Possessing, Purchasing, or Owning Body Armor by Violent Felons), do not apply an adjustment under this guideline. However, if, in addition to the count of conviction under 18 U.S.C. § 931, the defendant (A) is convicted of an offense that is a drug trafficking crime or a crime of violence; and (B) used the body armor with respect to that offense, an adjustment under this guideline shall apply with respect to that offense.~~

\*    \*    \*

## §3C1.1.    Obstructing or Impeding the Administration of Justice

\*    \*    \*

**Commentary**

**Application Notes:**

\*    \*    \*

7.    **Inapplicability of Adjustment in Certain Circumstances.**—If the defendant is convicted of an offense covered by §2J1.1 (Contempt), §2J1.2 (Obstruction of Justice), §2J1.3 (Perjury or Subornation of Perjury; Bribery of Witness), §2J1.5 (Failure to Appear by Material Witness), §2J1.6 (Failure to Appear by Defendant), §2J1.9 (Payment to Witness), §2X3.1 (Accessory After the Fact), or §2X4.1 (Misprision of Felony), this adjustment is not to be applied to the offense level for that offense except if a significant further obstruction occurred during the investigation, prosecution, or sentencing of the obstruction offense itself (*e.g.*, if the defendant threatened a witness during the course of the prosecution for the obstruction offense).

Similarly, if the defendant receives an enhancement under §2D1.1(b)(~~16~~15)(D), do not apply this adjustment.

\*        \*        \*

## Issue for Comment

1.      The proposed amendment would delete 26 specific offense characteristics in Chapter Two that courts did not apply at all in the last five fiscal years. The Commission seeks comment on whether this approach is appropriate for these infrequently used specific offense characteristics. What would be lost, if anything, by deleting these specific offense characteristics? Should the Commission take a different approach to address these specific offense characteristics?

**7.    PROPOSED AMENDMENT:    SOPHISTICATED MEANS**

**Synopsis of Proposed Amendment:** In August 2025, the Commission identified as one of its policy priorities for the amendment cycle ending May 1, 2026, "[e]xamination of offenses involving sophisticated means and possible consideration of an additional Chapter Three adjustment that would account for the consideration of factors such as sophistication in the preparation for, commission of, or evasion of detection for an offense." U.S. Sent'g Comm'n, "Notice of Final Priorities," 90 FR 39263, 39264 (Aug. 14, 2025).

The *Guidelines Manual* includes five guidelines that contain specific offense characteristics that expressly address "sophisticated" conduct. Three tax guidelines provide the following "sophisticated means" enhancement: "If the offense involved sophisticated means, increase by 2 levels. If the resulting offense level is less than level 12, increase to level 12." USSG §§2T1.1(b)(2), 2T1.4(b)(2), 2T3.1(b)(1). Section 2B1.1 (Theft, Property Destruction, and Fraud) provides a similar 2-level "sophisticated means" enhancement with an offense-level floor of 12 if "the offense otherwise involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means." USSG §2B1.1(b)(10)(C). Finally, §2S1.1 (Laundering of Monetary Instruments; Engaging in Monetary Transactions in Property Derived from Unlawful Activity) provides a 2-level "sophisticated laundering" enhancement if the defendant was convicted under 18 U.S.C. § 1956 and "the offense involved sophisticated laundering." USSG §2S1.1(b)(3).

For purposes of these guidelines, "sophisticated means" is defined as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. [] Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts [] ordinarily indicates sophisticated means." USSG §§2B1.1, comment. (n.9(B)); 2T1.1, comment. (n.5); 2T1.4, comment. (n.3); 2T3.1, comment. (n.2). "Sophisticated laundering" is defined as "complex or intricate offense conduct pertaining to the execution or concealment of the 18 U.S.C. § 1956 offense." USSG §2S1.1, comment. (n.5(A)). The Commentary to §2S1.1 also provides that

> Sophisticated laundering typically involves the use of—
>
> (i)      fictitious entities;
>
> (ii)     shell corporations;
>
> (iii)    two or more levels (*i.e.*, layering) of transactions, transportation, transfers, or transmissions, involving criminally derived funds that were intended to appear legitimate; or
>
> (iv)    offshore financial accounts.

*Id*.

The Commission has received public comment expressing concern that the current "sophisticated means" specific offense characteristics are applied based on commonplace technologies. In addition, the Department of Justice asked the Commission to consider

consolidating those specific offense characteristics into a broader Chapter Three adjustment.

The proposed amendment sets forth two options to address these concerns.

**Option 1** would create a new Chapter Three adjustment at §3C1.5. The new adjustment would provide a 2-level enhancement, with a possible offense-level floor of 12, if "the offense involved sophisticated means [and the defendant intentionally engaged in or caused the conduct involving sophisticated means]." It would also include a definition of "sophisticated means" that references the use of advanced or emerging technologies. The proposed amendment would make conforming changes to §§2B1.1, 2S1.1, 2T1.1, 2T1.4, and 2T3.1 to delete the specific offense characteristics addressing sophisticated conduct.

**Option 2** would amend §§2B1.1, 2S1.1, 2T1.1, 2T1.4, and 2T3.1 to provide updated, uniform guidance relating to sophisticated conduct.

Issues for comment are also provided.

**Proposed Amendment:**

## OPTION 1
## (NEW CHAPTER THREE ADJUSTMENT FOR SOPHISTICATED MEANS)

# CHAPTER THREE

# ADJUSTMENTS

\*    \*    \*

## PART C — OBSTRUCTION AND RELATED ADJUSTMENTS

\*    \*    \*

### §3C1.5.  Sophisticated Means

(a)   If the offense involved sophisticated means **[**and the defendant intentionally engaged in or caused the conduct involving sophisticated means**]**, increase by **[2]** levels. **[**If the resulting offense level is less than level **[12]**, increase to level **[12]**.**]**

(b)   For purposes of this guideline, "***sophisticated means***" means committing or concealing an offense with a greater level of complexity than typical for an offense of that nature. Such complexity may be achieved through various methods, including by using advanced or emerging technologies **[**in ways not routinely employed by everyday users**][**in a more specialized, elaborate, or unusual way than an ordinary user would**]**. Sophisticated means are often used to increase the scale of the offense or to make especially difficult the detection of the offense **[**or the detection of the defendant's participation in the offense**]**.

**Commentary**

**Application Notes:**

1.   **Interaction with Other Chapter Three Adjustments.**—If the conduct that forms the basis for an adjustment under §3B1.3 (Abuse of Position of Trust or Use of Special Skill) is the only conduct that forms the basis for an adjustment under this guideline, do not apply an adjustment under this guideline.

Similarly, if the conduct that forms the basis for an adjustment under §3C1.1 (Obstructing or Impeding the Administration of Justice) is the only conduct that forms the basis for an adjustment under this guideline, do not apply this guideline.

\*    \*    \*

### §2B1.1. Larceny, Embezzlement, and Other Forms of Theft; Offenses Involving Stolen Property; Property Damage or Destruction; Fraud and Deceit; Forgery; Offenses Involving Altered or Counterfeit Instruments Other than Counterfeit Bearer Obligations of the United States

\*    \*    \*

(b)    Specific Offense Characteristics

\*    \*    \*

(10) If (A) the defendant relocated, or participated in relocating, a fraudulent scheme to another jurisdiction to evade law enforcement or regulatory officials; or (B) a substantial part of a fraudulent scheme was committed from outside the United States; ~~or (C) the offense otherwise involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means~~, increase by **2** levels. If the resulting offense level is less than level **12**, increase to level **12**.

\*    \*    \*

**Commentary**

\*    \*    \*

**Application Notes:**

\*    \*    \*

9.    **Application of Subsection (b)(10).—**

(A)    **Definition of United States.**—For purposes of subsection (b)(10)(B), "***United States***" means each of the 50 states, the District of Columbia, the Commonwealth of Puerto Rico, the United States Virgin Islands, Guam, the Northern Mariana Islands, and American Samoa.

(B)    ~~**Sophisticated Means Enhancement under Subsection (b)(10)(C).**—For purposes of subsection (b)(10)(C), "*sophisticated means*" means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. For example, in a telemarketing scheme, locating the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction ordinarily indicates sophisticated means. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means.~~

(~~C~~B)    **Non-Applicability of Chapter Three ~~Adjustment~~Adjustments.**—If the conduct that forms the basis for an enhancement under subsection (b)(10) is the only conduct that forms the basis for an adjustment under §3C1.1 (Obstructing or Impeding the Administration of Justice), do not apply that adjustment under §3C1.1.

Similarly, if the conduct that forms the basis for an enhancement under subsection (b)(10) is the only conduct that forms the basis for an adjustment under §3C1.5 (Sophisticated Means), do not apply that adjustment under §3C1.5.

\* \* \*

## §2S1.1.   Laundering of Monetary Instruments; Engaging in Monetary Transactions in Property Derived from Unlawful Activity

\* \* \*

(b)   Specific Offense Characteristics

\* \* \*

~~(3)   If (A) subsection (b)(2)(B) applies; and (B) the offense involved sophisticated laundering, increase by **2** levels.~~

\* \* \*

**Commentary**

\* \* \*

**Application Notes:**

\* \* \*

5.   (A)   ~~**Sophisticated    Laundering    under    Subsection    (b)(3).**   For    purposes    of subsection (b)(3), "*sophisticated laundering*" means complex or intricate offense conduct pertaining to the execution or concealment of the 18 U.S.C. § 1956 offense.~~

~~Sophisticated laundering typically involves the use of—~~

~~(i)   fictitious entities;~~

~~(ii)   shell corporations;~~

~~(iii)   two or more levels (*i.e.*, layering) of transactions, transportation, transfers, or transmissions, involving criminally derived funds that were intended to appear legitimate; or~~

~~(iv)   offshore financial accounts.~~

(B)   ~~**Non-Applicability of Enhancement.**   If subsection (b)(3) applies, and the conduct that forms the basis for an enhancement under the guideline applicable to the underlying offense is the only conduct that forms the basis for application of subsection (b)(3) of this guideline, do not apply subsection (b)(3) of this guideline.~~

~~6~~5.    **Grouping of Multiple Counts.**—In a case in which the defendant is convicted of a count of laundering funds and a count for the underlying offense from which the laundered funds were derived, the counts shall be grouped pursuant to subsection (c) of §3D1.2 (Groups of Closely-Related Counts).

\*     \*     \*

## §2T1.1.    Tax Evasion; Willful Failure to File Return, Supply Information, or Pay Tax; Fraudulent or False Returns, Statements, or Other Documents

\*     \*     \*

(b)    Specific Offense ~~Characteristics~~Characteristic

\*     \*     \*

~~(2)    If the offense involved sophisticated means, increase by **2** levels. If the resulting offense level is less than level **12**, increase to level **12**.~~

\*     \*     \*

**Commentary**

\*     \*     \*

**Application Notes:**

\*     \*     \*

~~5.    **Application of Subsection (b)(2) (Sophisticated Means).**—For purposes of subsection (b)(2), "*sophisticated means*" means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts ordinarily indicates sophisticated means.~~

**[The rest of the application notes would be renumbered accordingly.]**

\*     \*     \*

## §2T1.4.    Aiding, Assisting, Procuring, Counseling, or Advising Tax Fraud

\*     \*     \*

(b)    Specific Offense ~~Characteristics~~Characteristic

\*     \*     \*

~~(2)    If the offense involved sophisticated means, increase by **2** levels. If the resulting offense level is less than level **12**, increase to level **12**.~~

\*     \*     \*

**Commentary**

\*     \*     \*

**Application Notes:**

\*     \*     \*

3.     **Sophisticated Means.**   For purposes of subsection (b)(2), "*sophisticated means*" means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts ordinarily indicates sophisticated means.

\*     \*     \*

---

## §2T3.1.    Evading Import Duties or Restrictions (Smuggling); Receiving or Trafficking in Smuggled Property

\*     \*     \*

(b)    Specific Offense Characteristic

(1)    If the offense involved sophisticated means, increase by **2** levels. If the resulting offense level is less than level **12**, increase to level **12**.

\*     \*     \*

**Commentary**

\*     \*     \*

**Application Notes~~Note~~:**

\*     \*     \*

2.     **Sophisticated Means.**   For purposes of subsection (b)(1), "*sophisticated means*" means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts ordinarily indicates sophisticated means.

\*     \*     \*

## OPTION 2
## (UPDATED GUIDANCE ON SOPHISTICATED CONDUCT IN CHAPTER TWO GUIDELINES)

---

**§2B1.1.** **Larceny, Embezzlement, and Other Forms of Theft; Offenses Involving Stolen Property; Property Damage or Destruction; Fraud and Deceit; Forgery; Offenses Involving Altered or Counterfeit Instruments Other than Counterfeit Bearer Obligations of the United States**

---

\*    \*    \*

(b)    Specific Offense Characteristics

\*    \*    \*

(10)  If (A) the defendant relocated, or participated in relocating, a fraudulent scheme to another jurisdiction to evade law enforcement or regulatory officials; (B) a substantial part of a fraudulent scheme was committed from outside the United States; or (C) the offense otherwise involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means, increase by **2** levels. If the resulting offense level is less than level **12**, increase to level **12**. For purposes of subsection (b)(10)(C), "*sophisticated means*" means committing or concealing an offense with a greater level of complexity than typical for an offense of that nature. Such complexity may be achieved through various methods, including by using advanced or emerging technologies [in ways not routinely employed by everyday users][in a more specialized, elaborate, or unusual way than an ordinary user would]. Sophisticated means are often used to increase the scale of the offense or to make especially difficult the detection of the offense [or the detection of the defendant's participation in the offense].

\*    \*    \*

**Commentary**

\*    \*    \*

**Application Notes:**

\*    \*    \*

9.    **Application of Subsection (b)(10).—**

(A)    **Definition of United States.—**For purposes of subsection (b)(10)(B), "*United States*" means each of the 50 states, the District of Columbia, the Commonwealth of Puerto Rico,

the United States Virgin Islands, Guam, the Northern Mariana Islands, and American Samoa.

[(B)    **Sophisticated Means Enhancement under Subsection (b)(10)(C).**—For purposes of subsection (b)(10)(C), ~~"*sophisticated means*" means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. For example,~~ an example of conduct ordinarily indicating sophisticated means includes, in a telemarketing scheme, locating the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction ~~ordinarily indicates sophisticated means~~. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means.**]**

(C)    **Non-Applicability of Chapter Three Adjustment.**—If the conduct that forms the basis for an enhancement under subsection (b)(10) is the only conduct that forms the basis for an adjustment under §3C1.1 (Obstructing or Impeding the Administration of Justice), do not apply that adjustment under §3C1.1.

\*    \*    \*

## §2S1.1.    Laundering of Monetary Instruments; Engaging in Monetary Transactions in Property Derived from Unlawful Activity

\*    \*    \*

(b)    Specific Offense Characteristics

\*    \*    \*

(3)    If (A) subsection (b)(2)(B) applies; and (B) the offense involved sophisticated laundering, increase by **2** levels. For purposes of subsection (b)(3), "*sophisticated laundering*" means committing or concealing an offense under 18 U.S.C. § 1956 with a greater level of complexity than typical for an offense of that nature. Such complexity may be achieved through various methods, including by using advanced or emerging technologies **[**in ways not routinely employed by everyday users**][**in a more specialized, elaborate, or unusual way than an ordinary user would**]**. Sophisticated laundering is often used to increase the scale of the offense or to make especially difficult the detection of the offense **[**or the detection of the defendant's participation in the offense**]**.

\*    \*    \*

**Commentary**

\*    \*    \*

**Application Notes:**

\* \* \*

5.    **[(A) Sophisticated Laundering under Subsection (b)(3).**—For purposes of subsection (b)(3), "***sophisticated laundering***" ~~means complex or intricate offense conduct pertaining to the execution or concealment of the 18 U.S.C. § 1956 offense.~~

~~Sophisticated~~sophisticated laundering typically involves the use of—

(i)    fictitious entities;

(ii)    shell corporations;

(iii)    two or more levels (*i.e.*, layering) of transactions, transportation, transfers, or transmissions, involving criminally derived funds that were intended to appear legitimate; or

(iv)    offshore financial accounts.

(B)]  **Non-Applicability of ~~Enhancement~~Subsection (b)(3).**—If subsection (b)(3) applies, and the conduct that forms the basis for an enhancement under the guideline applicable to the underlying offense is the only conduct that forms the basis for application of subsection (b)(3) of this guideline, do not apply subsection (b)(3) of this guideline.

\* \* \*

## §2T1.1.    Tax Evasion; Willful Failure to File Return, Supply Information, or Pay Tax; Fraudulent or False Returns, Statements, or Other Documents

\* \* \*

(b)    Specific Offense Characteristics

\* \* \*

(2)    If the offense involved sophisticated means, increase by **2** levels. If the resulting offense level is less than level **12**, increase to level **12**. For purposes of subsection (b)(2), "***sophisticated means***" means committing or concealing an offense with a greater level of complexity than typical for an offense of that nature. Such complexity may be achieved through various methods, including by using advanced or emerging technologies **[**in ways not routinely employed by everyday users**][**in a more specialized, elaborate, or unusual way than an ordinary user would**]**. Sophisticated means are often used to increase the scale of the offense or to make especially difficult the detection of the offense **[**or the detection of the defendant's participation in the offense**]**.

\* \* \*

**Commentary**

\*    \*    \*

**Application Notes:**

\*    \*    \*

**[**5.    **Application of Subsection (b)(2) (Sophisticated Means).**—For purposes of subsection (b)(2), "*sophisticated means*" means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. Conduct~~conduct~~ such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts ordinarily indicates sophisticated means.**]**

**[The rest of the application notes would be renumbered accordingly.]**

\*    \*    \*

## §2T1.4.    Aiding, Assisting, Procuring, Counseling, or Advising Tax Fraud

\*    \*    \*

(b)    Specific Offense Characteristics

\*    \*    \*

(2)    If the offense involved sophisticated means, increase by **2** levels. If the resulting offense level is less than level **12**, increase to level **12**. For purposes of subsection (b)(2), "*sophisticated means*" means committing or concealing an offense with a greater level of complexity than typical for an offense of that nature. Such complexity may be achieved through various methods, including by using advanced or emerging technologies **[**in ways not routinely employed by everyday users**][**in a more specialized, elaborate, or unusual way than an ordinary user would**]**. Sophisticated means are often used to increase the scale of the offense or to make especially difficult the detection of the offense **[**or the detection of the defendant's participation in the offense**]**.

\*    \*    \*

**Commentary**

\*    \*    \*

**Application Notes:**

\*    \*    \*

**[**3.    **Sophisticated Means.**—For purposes of subsection (b)(2), "*sophisticated means*" means especially complex or especially intricate offense conduct pertaining to the execution or

~~concealment of an offense. Conduct~~conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts ordinarily indicates sophisticated means.**]**

\* \* \*

### §2T3.1. Evading Import Duties or Restrictions (Smuggling); Receiving or Trafficking in Smuggled Property

\* \* \*

(b)  Specific Offense Characteristic

(1)  If the offense involved sophisticated means, increase by **2** levels. If the resulting offense level is less than level **12**, increase to level **12**. For purposes of subsection (b)(1), "*sophisticated means*" means committing or concealing an offense with a greater level of complexity than typical for an offense of that nature. Such complexity may be achieved through various methods, including by using advanced or emerging technologies **[**in ways not routinely employed by everyday users**][**in a more specialized, elaborate, or unusual way than an ordinary user would**]**. Sophisticated means are often used to increase the scale of the offense or to make especially difficult the detection of the offense **[**or the detection of the defendant's participation in the offense**]**.

\* \* \*

#### Commentary

\* \* \*

**Application Notes:**

\* \* \*

**[**2.  **Sophisticated Means.**—For purposes of subsection (b)(1), "~~*sophisticated means*~~" ~~means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. Conduct~~conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts ordinarily indicates sophisticated means.**]**

\* \* \*

**Issues for Comment:**

1.  Option 1 of the proposed amendment would add a new Chapter Three adjustment for sophisticated means that would apply across all offense types covered by Chapter Two of the guidelines. The Commission seeks comment on whether the base offense levels in Chapter Two currently cover "typical" offense conduct or whether any base offense levels account for "sophisticated" offense conduct. If the Commission were to promulgate Option 1 of the proposed amendment, are there any Chapter Two offense conduct guidelines or types of offenses that should be excluded from application of the adjustment? If so, which guidelines or types of offenses?

2.  Option 1 of the proposed amendment would delete the five specific offense characteristics that currently address "sophisticated" conduct in certain Chapter Two guidelines. Other specific offense characteristics address different aspects of offense conduct that also could be considered markers of sophistication, such as:

    *   the amount of planning involved (*see* USSG §§2A2.2(b)(1); 2B2.1(b)(1); 2J1.2(b)(3)(C));

    *   the use of technology, namely the use of a computer or an interactive computer service (*see* USSG §§2A3.1(b)(6)(B); 2A3.2(b)(3); 2A3.3(b)(2); 2A3.4(b)(5); 2D1.1(b)(7); 2D1.11(b)(4); 2D1.12(b)(3); 2G1.3(b)(3); 2G2.1(b)(6)(B); 2G2.2(b)(6); 2G2.6(b)(4); 2G3.1(b)(3); 2H3.1(b)(2)(B)); and

    *   ongoing, recurring criminal conduct with a large scope (*see* USSG §§2B1.1(b)(15); 2B6.1(b)(3)).

    Are there any other specific offense characteristics or Chapter Three adjustments that address sophisticated ways in which an offense may be committed or concealed? If the Commission were to promulgate Option 1 of the proposed amendment, how should the new adjustment interact with these specific offense characteristics and adjustments? Should these specific offense characteristics be deleted from Chapter Two and the conduct covered by these provisions be integrated into the proposed Chapter Three adjustment? Alternatively, should the proposed adjustment not apply if any of these specific offense characteristics also applies?

3.  Both Option 1 and Option 2 of the proposed amendment would define "sophisticated" conduct as "committing or concealing an offense with a greater level of complexity than typical for an offense of that nature." The definition would also include a provision stating that the complexity required by the "sophisticated" conduct definition "may be achieved through various methods, including by using advanced or emerging technologies [in ways not routinely employed by everyday users][in a more specialized, elaborate, or unusual way than an ordinary user would]." The Commission seeks comment on whether the proposed amended definition of "sophisticated" conduct is the appropriate definition. Is it an improvement over the current definitions? Should the Commission provide guidance regarding the level of complexity that is typical for an offense of that nature? If so, what type of guidance should the Commission provide? Further, should the Commission provide additional guidance on what should be

considered "advanced or emerging technologies" or on how such technologies must be used for purposes of applying the proposed definition? If so, what guidance should the Commission provide?

Additionally, Option 2 of the proposed amendment would bracket the possibility of maintaining the examples of "sophisticated" conduct provided in the Commentary to §2B1.1, §2S1.1, §2T1.1, §2T1.4, and §2T3.1. If the Commission amends the definition of "sophisticated" conduct, should the Commission maintain these examples? If not, should the Commission add additional factors or other provisions to the definition of "sophisticated" conduct?

## 8.    PROPOSED AMENDMENT:    MISCELLANEOUS

**Synopsis of Proposed Amendment:** This proposed amendment responds to recently enacted legislation and a miscellaneous issue. *See* U.S. Sent'g Comm'n, "Notice of Final Priorities," 90 FR 39263 (Aug. 14, 2025) (identifying as a priority "[i]mplementation of any legislation warranting Commission action" and "[c]onsideration of other miscellaneous issues coming to the Commission's attention").

The proposed amendment contains five parts (Parts A through E). The Commission is considering whether to promulgate any or all these parts, as they are not mutually exclusive.

**Part A** responds to the Tools to Address Known Exploitation by Immobilizing Technological Deepfakes on Websites and Networks Act ("TAKE IT DOWN Act"), Pub. L. 119–12 (2025), by amending Appendix A (Statutory Index) and the Commentary to §2A6.1 (Threatening or Harassing Communications; Hoaxes; False Liens). An issue for comment is provided.

**Part B** responds to the Fentanyl Eradication and Narcotics Deterrence Off Fentanyl Act ("FEND Off Fentanyl Act"), Pub. L. 118–50 (2024), by amending Appendix A and §2S1.3 (Structuring Transactions to Evade Reporting Requirements; Failure to Report Cash or Monetary Transactions; Failure to File Currency and Monetary Instrument Report; Knowingly Filing False Reports; Bulk Cash Smuggling; Establishing or Maintaining Prohibited Accounts). An issue for comment is provided.

**Part C** responds to the Protecting Americans' Data from Foreign Adversaries Act, Pub. L. 118–50 (2024), by amending Appendix A and §2H3.1 (Interception of Communications; Eavesdropping; Disclosure of Certain Private or Protected Information). An issue for comment is provided.

**Part D** responds to the Foreign Extortion Prevention Technical Corrections Act, Pub. L. 118–78 (2024), by amending Appendix A and §2C1.1 (Offering, Giving, Soliciting, or Receiving a Bribe; Extortion Under Color of Official Right; Fraud Involving the Deprivation of the Intangible Right to Honest Services of Public Officials; Conspiracy to Defraud by Interference with Governmental Functions). An issue for comment is provided.

**Part E** would amend the Appendix A reference for 18 U.S.C. § 1348, dealing with securities and commodities fraud, by referencing the statute to §2B1.4 (Insider Trading), while also maintaining the current reference to §2B1.1 (Theft, Property Destruction, and Fraud).

**(A)    TAKE IT DOWN Act**

**Synopsis of Proposed Amendment:** Part A of the proposed amendment responds to the Tools to Address Known Exploitation by Immobilizing Technological Deepfakes on Websites and Networks Act ("TAKE IT DOWN Act"), Pub. L. 119–12 (2025).

The act added new offenses to section 223 (Obscene or harassing telephone calls) of title 47, United States Code. The new offenses relate to the disclosure of nonconsensual visual depictions and digital forgeries involving both adults and minors, at subsections 223(h)(2) and (h)(3). Those subsections now proscribe:

- Using an interactive computer service to knowingly publish an intimate visual depiction of (1) an identifiable adult if certain conditions are met, or (2) an identifiable minor under 18 years old with intent to abuse humiliate, harass, or degrade the minor or with intent to arouse or gratify the sexual desire of any person.

- Using an interactive computer service to knowingly publish a digital forgery of (1) an adult if certain conditions are met, or (2) a minor under 18 years old with intent to abuse humiliate, harass, or degrade the minor or with intent to arouse or gratify the sexual desire of any person.

Sections 223(h)(2)(A) and (h)(3)(A), involving depictions and digital forgeries of an adult, have a statutory maximum of two years. Sections 223(h)(2)(B) and (h)(3)(B), involving depictions or digital forgeries of a minor, have a statutory maximum of three years.

The act also included two new offenses at subsection 223(h)(6) related to threats to use an interactive computer service to publish either intimate visual depictions or digital forgeries involving adults and minors. The statutory maximum is as follows: two years for a threat involving an intimate visual depiction of an adult (47 U.S.C. § 223(h)(6)(A)); three years for a threat involving an intimate visual depiction of a minor (47 U.S.C. § 223(h)(6)(A)); 18 months for a threat involving a digital forgery of an adult (47 U.S.C. § 223(h)(6)(B)(i)); and 30 months for a threat involving a digital forgery of a minor (47 U.S.C. § 223(h)(6)(B)(ii)).

Currently, offenses involving harassment, abuse, and threatening conduct under 47 U.S.C. § 223 are referenced in Appendix A (Statutory Index) to §2A6.1 (Threatening or Harassing Communications; Hoaxes; False Liens). Given the similar nature of the conduct, Part A of the proposed amendment would amend Appendix A to reference the new offenses under 47 U.S.C. § 223 to §2A6.1. It would also amend the Commentary to §2A6.1 to reflect the new references.

An issue for comment is also provided.

**Proposed Amendment:**

# APPENDIX A

# STATUTORY INDEX

\*      \*      \*

| | |
|---|---|
| 47 U.S.C. § 223(a)(1)(E) | 2A6.1 |
| 47 U.S.C. § 223(b)(1)(A) | 2G3.2 |
| 47 U.S.C. § 223(h)(2)(A) | 2A6.1 |
| 47 U.S.C. § 223(h)(2)(B) | 2A6.1 |
| 47 U.S.C. § 223(h)(3)(A) | 2A6.1 |
| 47 U.S.C. § 223(h)(3)(B) | 2A6.1 |
| 47 U.S.C. § 223(h)(6)(A) | 2A6.1 |
| 47 U.S.C. § 223(h)(6)(B)(i) | 2A6.1 |
| 47 U.S.C. § 223(h)(6)(B)(ii) | 2A6.1 |
| 47 U.S.C. § 409(m) | 2J1.1, 2J1.5 |

\*      \*      \*

## §2A6.1.   Threatening or Harassing Communications; Hoaxes; False Liens

\*      \*      \*

### Commentary

**Statutory Provisions:** 18 U.S.C. §§ 32(c), 35(b), 871, 876(c), 877, 878(a), 879, 1038, 1521, 1992(a)(9), (a)(10), 2291(a)(8), 2291(e), 2292, 2332b(a)(2); 47 U.S.C. § 223(a)(1)(C)–(E), (h)(2)(A), (h)(2)(B), (h)(3)(A), (h)(3)(B), (h)(6)(A), (h)(6)(B)(i)–(ii); 49 U.S.C. § 46507. For additional statutory provision(s), *see* Appendix A (Statutory Index).

\*      \*      \*

### Issue for Comment

1.      The Commission seeks comment on whether the proposed references are appropriate and whether any additional changes to the guidelines are required to account for the new criminal offenses created by the Tools to Address Known Exploitation by Immobilizing Technological Deepfakes on Websites and Networks Act ("TAKE IT

DOWN Act"), Pub. L. 119–12 (2025). Would it be more appropriate to reference some or all of the new offenses to a different guideline, such as §2B3.3 (Blackmail and Similar Forms of Extortion) or §2G3.1 (Importing, Mailing, or Transporting Obscene Matter; Transferring Obscene Matter to a Minor; Misleading Domain Names)?

**(B)     Fentanyl Eradication and Narcotics Deterrence Off Fentanyl Act**

**Synopsis of Proposed Amendment:** Part B responds to the Fentanyl Eradication and Narcotics Deterrence Off Fentanyl Act ("FEND Off Fentanyl Act"), Pub. L. 118–50 (2024). The Act creates two new offenses, 21 U.S.C. §§ 2313a and 2354, to apply economic and other financial sanctions to the international trafficking of fentanyl, its precursors, and other related opioids.

Title I of the Fend Off Fentanyl Act includes sections 2353 and 2354 to a new chapter 28A (Fentanyl Eradication and Narcotics Deterrence off Fentanyl) to title 21 (Food and Drugs) of the United States Code. Section 2353 (Imposition of sanctions with respect to fentanyl trafficking by transnational criminal organizations) requires the President to impose sanctions on foreigners knowingly involved in: (1) significant trafficking of fentanyl, its precursors, or other related opioids, including by transnational criminal organizations; or (2) significant activities of a transnational criminal organization that relate to trafficking such substances. The provided sanctions are those authorized by the International Emergency Economic Powers Act ("IEEPA").

Section 2354 (Penalties; waivers; exceptions) provides that any person who violates or causes a violation of the section, and attempts or conspires to violate, any regulation, license, or order issued to carry out the section is subject to the civil and criminal penalties set forth in 50 U.S.C. § 1705 of the IEEPA "to the same extent as a person who commits an unlawful act described in subsection (a) of that section." Section 1705 prohibits willfully violating, attempting or conspiring to violate, or causing a violation of any license, order, regulation, or prohibition issued under the IEEPA. The statutory maximum for a criminal violation of the IEEPA at section 1705(c) is 20 years.

Title II of the FEND Off Fentanyl Act added a new provision to chapter 28 (Sanctions with Respect to Foreign Trafficking of Illicit Synthetic Opioids) of title 21 of the United States Code. Section 2313a (Designation of transactions of sanctioned persons as of primary money laundering concern) provides the Secretary of the Treasury authority to issue orders or regulations for certain domestic financial institutions and agencies. Specifically, if the Secretary determines financial institutions operating outside the United States, or certain classes of transactions or types of accounts within a jurisdiction outside the United States, is "of primary money laundering concern" in connection with trafficking of illicit opioids, he is authorized, by order, regulation, or otherwise, to: (1) require domestic financial institutions and agencies to take special measures as provided in the William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021, and found at 31 U.S.C. § 5318A; or (2) prohibit or impose conditions upon, certain transmittal of funds by the financial institution or agency. A finding that a jurisdiction, financial institution, account, or transaction is "of primary money laundering concern" is as determined under section 5318A, including whether: (1) organized criminal groups, international terrorists, or entities involved in the proliferation of weapons of mass destruction or missiles have transacted business in a certain jurisdiction; (2) a jurisdiction offers bank secrecy or special regulatory advantages to nonresidents; and (3) a jurisdiction is an offshore banking or secrecy haven.

The statutory maximum for violating any order, regulation, special measure, or other requirement imposed under section 2313a(d) is five years for a simple violation, as provided in

31 U.S.C. § 5322 (Criminal Penalties). The statutory maximum is ten years, if the offense was committed "while violating another law of the United States or as part of a pattern of any illegal activity involving more than $100,000 in a 12-month period."

Part B of the proposed amendment would amend Appendix A (Statutory Index) to reference 21 U.S.C. §§ 2313a and 2354 to §2S1.3 (Structuring Transactions to Evade Reporting Requirements; Failure to Report Cash or Monetary Transactions; Failure to File Currency and Monetary Instrument Report; Knowingly Filing False Reports; Bulk Cash Smuggling; Establishing or Maintaining Prohibited Accounts) because the offenses concern monetary sanctions related to the illicit transnational trafficking of fentanyl, its precursors, and other related opioids.

Part B of the proposed amendment would also amend the commentary to §2S1.3 to reflect the reference.

An issue for comment is also provided.

**Proposed Amendment:**

# APPENDIX A

# STATUTORY INDEX

\*        \*        \*

| | |
|---|---|
| 21 U.S.C. § 961 | 2D3.2 |
| 21 U.S.C. § 963 | 2D1.1, 2D1.2, 2D1.5, 2D1.6, 2D1.7, 2D1.8, 2D1.9, 2D1.10, 2D1.11, 2D1.12, 2D1.13, 2D2.1, 2D2.2, 2D3.1, 2D3.2 |
| 21 U.S.C. § 2313a | §2S1.3 |
| 21 U.S.C. § 2354 | §2S1.3 |
| 22 U.S.C. § 1980(g) | 2B1.1 |

\*        \*        \*

**§2S1.3.    Structuring Transactions to Evade Reporting Requirements; Failure to Report Cash or Monetary Transactions; Failure to File Currency and Monetary Instrument Report; Knowingly Filing False Reports; Bulk Cash Smuggling; Establishing or Maintaining Prohibited Accounts**

\*        \*        \*

Proposed Amendment:  Miscellaneous

**Commentary**

**Statutory Provisions:** 18 U.S.C. § 1960 (but only with respect to unlicensed money transmitting businesses as defined in 18 U.S.C. § 1960(b)(1)(A) and (B)); 21 U.S.C. §§ 2313a, 2354; 26 U.S.C. §§ 7203 (if a violation based upon 26 U.S.C. § 6050I), 7206 (if a violation based upon 26 U.S.C. § 6050I); 31 U.S.C. §§ 5313, 5314, 5316, 5318, 5318A(b), 5322, 5324, 5326, 5331, 5332, 5335, 5336. For additional statutory provision(s), *see* Appendix A (Statutory Index).

\*    \*    \*

**Issue for Comment**

1.    The Commission seeks comment on whether the proposed references are appropriate and whether any additional changes to the guidelines are required to account for the new criminal offenses created by the Fentanyl Eradication and Narcotics Deterrence Off Fentanyl Act ("FEND Off Fentanyl Act"), Pub. L. 118–50 (2024).

**(C)**  **Protecting Americans' Data from Foreign Adversaries Act**

**Synopsis of Proposed Amendment:** Part C of the proposed amendment responds to the Protecting Americans' Data from Foreign Adversaries Act, Pub. L. 118–50 (2024), by amending Appendix A and §2H3.1 (Interception of Communications; Eavesdropping; Disclosure of Certain Private or Protected Information). The act codified a new offense at 15 U.S.C. § 9901 prohibiting the transfer of personally identifiable sensitive data of United States individuals to foreign adversaries.

Section 9901 (Prohibition on transfer of personally identifiable sensitive data of United States individuals to foreign adversaries) prohibits data brokers from selling, licensing, trading, disclosing, or providing access to personally identifiable sensitive data of an individual of the United States to any foreign adversary country or any entity controlled by a foreign adversary.

Section 9901(b)(2)(B) provides that the penalties for a violation are the same as provided in the Federal Trade Commission Act (15 U.S.C. §§ 41–58). Section 50 (Offenses and penalties) of title 15 provides, in turn, a statutory maximum of one year, for anyone who refuses to attend, testify or answer any lawful inquiry or produce documentary evidence "in obedience to an order of a district court . . . directing compliance with the subpoena or lawful requirement" of the Federal Trade Commission, and for officers or employees of the Commission who make any information obtained by the Commission public without authority. Section 50 also provides a statutory maximum of three years, for willfully making any false entry or statement of fact in certain reports, accounts or records of any person, partnership, or corporation subject to the Act, or removing from the jurisdiction or mutilating, altering, or otherwise falsifying any documentary evidence.

Part C of the proposed amendment would amend Appendix A (Statutory Index) to reference 15 U.S.C. § 9901 to §2H3.1 (Interception of Communications; Eavesdropping; Disclosure of Certain Private or Protected Information) because the prohibited conduct appears most similar to the offenses currently referenced to that guideline.

Part C of the proposed amendment would also amend the commentary to §2H3.1 to reflect the reference.

An issue for comment is also provided.

**Proposed Amendment:**

# APPENDIX A

# STATUTORY INDEX

\*      \*      \*

15 U.S.C. § 7704(d)       2G2.5

15 U.S.C. § 9901          2H3.1

Proposed Amendment:  Miscellaneous

16 U.S.C. § 114            2B1.1

\*        \*        \*

## §2H3.1.  Interception of Communications; Eavesdropping; Disclosure of Certain Private or Protected Information

\*        \*        \*

### Commentary

**Statutory Provisions:** 8 U.S.C. § 1375a(d)(5)(B)(i), (ii); 15 U.S.C. § 9901; 18 U.S.C. §§ 119, 1039, 1905, 2511; 26 U.S.C. §§ 7213(a)(1)–(3), (a)(5), (d), 7213A, 7216; 42 U.S.C. §§ 16962, 16984; 44 U.S.C. § 3572; 47 U.S.C. § 605. For additional statutory provision(s), *see* Appendix A (Statutory Index).

\*        \*        \*

### Issue for Comment

1.      The Commission seeks comment on whether the proposed references are appropriate and whether any additional changes to the guidelines are required to account for the new criminal offenses created by the Protecting Americans' Data from Foreign Adversaries Act, Pub. L. 118–50 (2024).

## (D)    Foreign Extortion Prevention Technical Corrections Act

**Synopsis of Proposed Amendment:** Part D of the proposed amendment responds to the Foreign Extortion Prevention Technical Corrections Act, Pub. L. 118–78 (2024).

The Foreign Extortion Prevention Technical Corrections Act repealed and replaced the Foreign Extortion Prevention Act, which in 2023 established criminal liability for foreign officials who solicit or accept bribes from United States entities or while within United States territory. By criminalizing the "demand side" of bribery by foreign officials, the Act was a new counterpart to the Foreign Corrupt Practices Act, which criminalizes the "supply side" by prohibiting the paying of bribes to foreign officials to influence an act or decision of such official in his official capacity, at 15 U.S.C. §§ 78dd-2 and 78dd-3.

The Foreign Extortion Prevention Act had added subsection 201(f) (Bribery of public officials and witnesses) to title 18 of the United States Code. Section 201(f) prohibited foreign officials (or those selected to be foreign officials) from corruptly demanding, receiving, or accepting anything of value from any "person" while located in the United States, or from a "domestic concern" (as those terms are defined in sections 78dd-2 and 78dd-3 of the Foreign Corrupt Practices Act), or from an issuer, in return for being influenced or induced, or conferring any improper advantage in connection with obtaining or retaining business for or with any person. The Foreign Extortion Prevention Technical Corrections Act replaced subsection 201(f) with a substantively similar prohibition against bribery by foreign officials, at a new section 1352 (Demands by foreign officials for bribes) of title 18 of the United States Code. Both the repealed subsection 201(f) and section 1352 have a statutory maximum of 15 years.

Part D of the proposed amendment would amend Appendix A (Statutory Index) to reference 18 U.S.C. § 1352 to §2C1.1 (Offering, Giving, Soliciting, or Receiving a Bribe; Extortion Under Color of Official Right; Fraud Involving the Deprivation of the Intangible Right to Honest Services of Public Officials; Conspiracy to Defraud by Interference with Governmental Functions), because the complementary bribery offenses under the Foreign Corrupt Practices Act at 15 U.S.C. §§ 78dd-2 and 78dd-3 are referenced to §2C1.1

Part D of the proposed amendment would also amend the commentary to §2C1.1 to reflect the reference.

An issue for comment is also provided.

**Proposed Amendment:**

# APPENDIX A

# STATUTORY INDEX

\*         \*         \*

| | |
|---|---|
| 18 U.S.C. § 1351 | 2B1.1 |
| 18 U.S.C. § 1352 | 2C1.1 |
| 18 U.S.C. § 1361 | 2B1.1, 2B1.5 |

\*         \*         \*

---

**§2C1.1.    Offering, Giving, Soliciting, or Receiving a Bribe; Extortion Under Color of Official Right; Fraud Involving the Deprivation of the Intangible Right to Honest Services of Public Officials; Conspiracy to Defraud by Interference with Governmental Functions**

---

\*         \*         \*

**Commentary**

**Statutory Provisions:** 15 U.S.C. §§ 78dd-1, 78dd-2, 78dd-3; 18 U.S.C. §§ 201(b)(1), (2), 226, 227, 371 (if conspiracy to defraud by interference with governmental functions), 872, 1341 (if the scheme or artifice to defraud was to deprive another of the intangible right of honest services of a public official), 1342 (if the scheme or artifice to defraud was to deprive another of the intangible right of honest services of a public official), 1343 (if the scheme or artifice to defraud was to deprive another of the intangible right of honest services of a public official), 1352, 1951. For additional statutory provision(s), *see* Appendix A (Statutory Index).

\*         \*         \*

**Issue for Comment**

1.    The Commission seeks comment on whether the proposed references are appropriate and whether any additional changes to the guidelines are required to account for the new criminal offenses created by the Foreign Extortion Prevention Technical Corrections Act, Pub. L. 118–78 (2024).

**(E)      Securities and Commodities Fraud**

**Synopsis of Proposed Amendment:** Part E of the proposed amendment would amend the reference for 18 U.S.C. § 1348, dealing with securities and commodities fraud, in Appendix A (Statutory Index). Section 1348 prohibits the execution of a scheme or artifice (1) to defraud any person in connection with any commodity for future delivery, any option on a commodity for future delivery, or any security of certain issues, or (2) to fraudulently obtain any money or property in connection with the purchase or sale of any commodity for future delivery, any option on a commodity for future delivery, or any security of certain issues.

Currently, offenses under 18 U.S.C. § 1348 are referenced in Appendix A to §2B1.1 (Theft, Property Destruction, and Fraud). Section 2B1.1(b)(1) provides an enhancement under the loss table based on the amount of loss involved in the offense. However, it has been brought to the Commission's attention that, for some 18 U.S.C. § 1348 offenses, loss does not adequately account for the defendant's true culpability in the offense. Instead, such offenses are more similar in nature to those insider trading offenses that are referenced to §2B1.4 (Insider Trading), which provides an enhancement based on the amount of gain resulting from the offense.

To respond to this concern, Part E of the proposed amendment would amend Appendix A to reference 18 U.S.C. § 1348 to §2B1.4 (Insider Trading), while also maintaining the current reference to §2B1.1.

Part E of the proposed amendment would also amend the commentary to §2B1.4 to reflect the reference.

**Proposed Amendment:**

# APPENDIX A

# STATUTORY INDEX

*        *        *

| | |
|---|---|
| 18 U.S.C. § 1347 | 2B1.1 |
| 18 U.S.C. § 1348 | 2B1.1, 2B1.4 |
| 18 U.S.C. § 1349 | 2X1.1 |

*        *        *

## §2B1.4.    Insider Trading

*        *        *

**Commentary**

**Statutory Provisions:** 15 U.S.C. § 78j, 18 U.S.C. § 1348, and 17 C.F.R. § 240.10b-5. For additional statutory provision(s), *see* Appendix A (Statutory Index).

*        *        *

## 9.    PROPOSED AMENDMENT:    TECHNICAL

**Synopsis of Proposed Amendment:** This proposed amendment would make technical and other non-substantive changes to the *Guidelines Manual.*

First, the proposed amendment makes clerical changes to several guidelines to replace references to the "Bureau of Prisons" with more accurate references to the "Federal Bureau of Prisons." It makes changes to the following guidelines: §1B1.13 (Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)); §5E1.2 (Fines for Individual Defendants); §5F1.7 (Shock Incarceration Program (Policy Statement)); §5F1.8 (Intermittent Confinement); and §5G1.3 (Imposition of a Sentence on a Defendant Subject to an Undischarged Term of Imprisonment or Anticipated State Term of Imprisonment).

Second, the proposed amendment makes technical changes to update the references to the Communications Act of 1934 in the context of the definition of the term "interactive computer service," which is used by several guidelines. It makes changes to the following guidelines: §2A3.1 (Criminal Sexual Abuse; Attempt to Commit Criminal Sexual Abuse); §2A3.2 (Criminal Sexual Abuse of a Minor Under the Age of Sixteen Years (Statutory Rape) or Attempt to Commit Such Acts); §2A3.3 (Criminal Sexual Abuse of a Ward or Attempt to Commit Such Acts; Criminal Sexual Abuse of an Individual in Federal Custody); §2A3.4 (Abusive Sexual Contact or Attempt to Commit Abusive Sexual Contact); §2D1.1 (Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses); Attempt or Conspiracy); §2D1.11 (Unlawfully Distributing, Importing, Exporting or Possessing a Listed Chemical; Attempt or Conspiracy); §2D1.12 (Unlawful Possession, Manufacture, Distribution, Transportation, Exportation, or Importation of Prohibited Flask, Equipment, Chemical, Product, or Material; Attempt or Conspiracy); §2G1.3 (Promoting a Commercial Sex Act or Prohibited Sexual Conduct with a Minor; Transportation of Minors to Engage in a Commercial Sex Act or Prohibited Sexual Conduct; Travel to Engage in Commercial Sex Act or Prohibited Sexual Conduct with a Minor; Sex Trafficking of Children; Use of Interstate Facilities to Transport Information about a Minor); §2G2.1 (Sexually Exploiting a Minor by Production of Sexually Explicit Visual or Printed Material; Custodian Permitting Minor to Engage in Sexually Explicit Conduct; Advertisement for Minors to Engage in Production); §2G2.2 (Trafficking in Material Involving the Sexual Exploitation of a Minor; Receiving, Transporting, Shipping, Soliciting, or Advertising Material Involving the Sexual Exploitation of a Minor; Possessing Material Involving the Sexual Exploitation of a Minor with Intent to Traffic; Possessing Material Involving the Sexual Exploitation of a Minor); §2G2.6 (Child Exploitation Enterprises); §2G3.1 (Importing, Mailing, or Transporting Obscene Matter; Transferring Obscene Matter to a Minor; Misleading Domain Names); and §2H3.1 (Interception of Communications; Eavesdropping; Disclosure of Certain Private or Protected Information). The proposed amendment also makes other non-substantive changes to some of these guidelines to provide stylistic consistency in how subdivisions are designated and to correct some typographical errors.

Third, the proposed amendment makes technical changes to §7B1.4 (Term of Imprisonment—Probation (Policy Statement)) and §7C1.5 (Term of Imprisonment—Supervised Release (Policy Statement)), to clarify statutory references regarding a court's

authority to provide an exception to mandatory revocation of probation or supervised release in the case of a defendant who fails a drug test.

Fourth, the proposed amendment makes a technical change to §7C1.1 (Classification of Violations (Policy Statement)) to correct an inaccurate reference to "four" grades of supervised release violations.

Fifth, the proposed amendment makes technical changes to §8A1.2 (Application Instructions — Organizations) and §8C2.8 (Determining the Fine Within the Range (Policy Statement)), to replace references to the "guideline range" with more accurate references to the "guideline fine range."

Finally, the proposed amendment would make clerical changes to Appendix A (Statutory Index) to reflect the editorial reclassification of certain sections in the United States Code.

**Proposed Amendment:**

---

### §1B1.13.  Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)

---

(a)  IN GENERAL.—Upon motion of the Director of the Federal Bureau of Prisons or the defendant pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

    (1)  (A)  extraordinary and compelling reasons warrant the reduction; or

        (B)  the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

    (2)  the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

    (3)  the reduction is consistent with this policy statement.

(b)  EXTRAORDINARY AND COMPELLING REASONS.—Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:

\*      \*      \*

182  |  December 12, 2025

(4)    VICTIM OF ABUSE.—The defendant, while in custody serving the term of imprisonment sought to be reduced, was a victim of:

(A)    sexual abuse involving a "sexual act," as defined in 18 U.S.C. § 2246(2) (including the conduct described in 18 U.S.C. § 2246(2)(D) regardless of the age of the victim); or

(B)    physical abuse resulting in "serious bodily injury," as defined in the Commentary to §1B1.1 (Application Instructions);

that was committed by, or at the direction of, a correctional officer, an employee or contractor of the Federal Bureau of Prisons, or any other individual who had custody or control over the defendant.

\* \* \*

## §2A3.1.   Criminal Sexual Abuse; Attempt to Commit Criminal Sexual Abuse

\* \* \*

(b)    Specific Offense Characteristics

\* \* \*

(4)    (A) If the victim sustained permanent or life-threatening bodily injury, increase by **4** levels; (B) if the victim sustained serious bodily injury, increase by **2** levels; or (C) if the degree of injury is between that specified in subdivisions subparagraphs (A) and (B), increase by **3** levels.

\* \* \*

**Commentary**

\* \* \*

**Application Notes:**

1.    **Definitions.**—For purposes of this guideline:

\* \* \*

"***Interactive computer service***" has the meaning given that term in section 230(e)(2)(f)(2) of the Communications Act of 1934 (47 U.S.C. § 230(f)(2)).

\* \* \*

Proposed Amendment:  Technical

---

## §2A3.2.    Criminal Sexual Abuse of a Minor Under the Age of Sixteen Years (Statutory Rape) or Attempt to Commit Such Acts

\*    \*    \*

**Commentary**

\*    \*    \*

**Application Notes:**

1.    **Definitions.**—For purposes of this guideline:

\*    \*    \*

"*Interactive computer service*" has the meaning given that term in section 230(e)(2)(f)(2) of the Communications Act of 1934 (47 U.S.C. § 230(f)(2)).

\*    \*    \*

---

## §2A3.3.    Criminal Sexual Abuse of a Ward or Attempt to Commit Such Acts; Criminal Sexual Abuse of an Individual in Federal Custody

\*    \*    \*

**Commentary**

\*    \*    \*

**Application Notes:**

1.    **Definitions.**—For purposes of this guideline:

\*    \*    \*

"*Interactive computer service*" has the meaning given that term in section 230(e)(2)(f)(2) of the Communications Act of 1934 (47 U.S.C. § 230(f)(2)).

\*    \*    \*

---

## §2A3.4.    Abusive Sexual Contact or Attempt to Commit Abusive Sexual Contact

\*    \*    \*

**Commentary**

\*    \*    \*

**Application Notes:**

1.    **Definitions.**—For purposes of this guideline:

*        *        *

"*Interactive computer service*" has the meaning given that term in section 230~~(e)(2)~~(f)(2) of the Communications Act of 1934 (47 U.S.C. § 230(f)(2)).

*        *        *

---

## §2D1.1.   Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses); Attempt or Conspiracy

*        *        *

<strong>Commentary</strong>

*        *        *

**Application Notes:**

*        *        *

13.   **Application of Subsection (b)(7).**—For purposes of subsection (b)(7), "*mass-marketing by means of an interactive computer service*" means the solicitation, by means of an interactive computer service, of a large number of persons to induce those persons to purchase a controlled substance. For example, subsection (b)(7) would apply to a defendant who operated a web site to promote the sale of Gamma-hydroxybutyric Acid (GHB) but would not apply to coconspirators who use an interactive computer service only to communicate with one another in furtherance of the offense. "*Interactive computer service*", for purposes of subsection (b)(7) and this note, has the meaning given that term in section 230~~(e)(2)~~(f)(2) of the Communications Act of 1934 (47 U.S.C. § 230(f)(2)).

*        *        *

---

## §2D1.11. Unlawfully Distributing, Importing, Exporting or Possessing a Listed Chemical; Attempt or Conspiracy

*        *        *

(c)   Cross Reference

    (1)   If the offense involved unlawfully manufacturing a controlled substance, or attempting to manufacture a controlled substance unlawfully, apply §2D1.1 (Unlawful Manufacturing, Importing, Exporting, Trafficking) if the resulting offense level is greater than that determined above.

*        *        *

Proposed Amendment: Technical

___

**Commentary**

\*    \*    \*

**Application Notes:**

1.  **Cases Involving Multiple Chemicals.—**

    (A) **Determining the Base Offense Level for Two or More Chemicals.—**Except as provided in ~~subdivision~~subparagraph (B), if the offense involves two or more chemicals, use the quantity of the single chemical that results in the greatest offense level, regardless of whether the chemicals are set forth in different tables or in different categories (*i.e.*, list I or list II) under this guideline.

        **Example:** The defendant was in possession of five kilograms of ephedrine and 300 grams of hydriodic acid. Ephedrine and hydriodic acid typically are used together in the same manufacturing process to manufacture methamphetamine. The base offense level for each chemical is calculated separately and the chemical with the higher base offense level is used. Five kilograms of ephedrine result in a base offense level of level 36; 300 grams of hydriodic acid result in a base offense level of level 24. In this case, the base offense level would be level 36.

    (B) **Determining the Base Offense Level for Offenses involving Ephedrine, Pseudoephedrine, or Phenylpropanolamine.—**If the offense involves two or more chemicals each of which is set forth in the Ephedrine, Pseudoephedrine, and Phenylpropanolamine Quantity Table, (i) aggregate the quantities of all such chemicals, and (ii) determine the base offense level corresponding to the aggregate quantity.

        **Example:** The defendant was in possession of 80 grams of ephedrine and 50 grams of phenylpropanolamine, an aggregate quantity of 130 grams of such chemicals. The base offense level corresponding to that aggregate quantity is level 30.

\*    \*    \*

5.  **Application of Subsection (b)(4).—**For purposes of subsection (b)(4), "***mass-marketing by means of an interactive computer service***" means the solicitation, by means of an interactive computer service, of a large number of persons to induce those persons to purchase a controlled substance. For example, subsection (b)(4) would apply to a defendant who operated a web site to promote the sale of Gamma-butyrolactone (GBL) but would not apply to coconspirators who use an interactive computer service only to communicate with one another in furtherance of the offense. "***Interactive computer service***", for purposes of subsection (b)(4) and this note, has the meaning given that term in section 230~~(e)(2)~~(f)(2) of the Communications Act of 1934 (47 U.S.C. § 230(f)(2)).

\*    \*    \*

8.  **Application of Subsection (c)(1).—**"***Offense involved unlawfully manufacturing a controlled substance ~~or~~, or attempting to manufacture a controlled substance unlawfully***," as used in subsection (c)(1), means that the defendant, or a person for whose conduct the defendant is accountable under §1B1.3 (Relevant Conduct), completed the actions

sufficient to constitute the offense of unlawfully manufacturing a controlled substance or attempting to manufacture a controlled substance unlawfully.

\*    \*    \*

## §2D1.12. Unlawful Possession, Manufacture, Distribution, Transportation, Exportation, or Importation of Prohibited Flask, Equipment, Chemical, Product, or Material; Attempt or Conspiracy

\*    \*    \*

(c)    Cross Reference

(1)    If the offense involved unlawfully manufacturing a controlled substance, or attempting to manufacture a controlled substance unlawfully, apply §2D1.1 (Unlawful Manufacturing, Importing, Exporting, or Trafficking) if the resulting offense level is greater than that determined above.

\*    \*    \*

**Commentary**

\*    \*    \*

**Application Notes:**

1.    "***Offense involved unlawfully manufacturing a controlled substance or, or attempting to manufacture a controlled substance unlawfully***," as used in subsection (c)(1), means that the defendant, or a person for whose conduct the defendant is accountable under §1B1.3 (Relevant Conduct), completed the actions sufficient to constitute the offense of unlawfully manufacturing a controlled substance or attempting to manufacture a controlled substance unlawfully.

\*    \*    \*

3.    **Application of Subsection (b)(3).**—For purposes of subsection (b)(3), "***mass-marketing by means of an interactive computer service***" means the solicitation, by means of an interactive computer service, of a large number of persons to induce those persons to purchase a controlled substance. For example, subsection (b)(3) would apply to a defendant who operated a web site to promote the sale of prohibited flasks but would not apply to coconspirators who use an interactive computer service only to communicate with one another in furtherance of the offense. "***Interactive computer service***", for purposes of subsection (b)(3) and this note, has the meaning given that term in section 230(e)(2)(f)(2) of the Communications Act of 1934 (47 U.S.C. § 230(f)(2)).

\*    \*    \*

Proposed Amendment:  Technical

---

**§2G1.3.    Promoting a Commercial Sex Act or Prohibited Sexual Conduct with a Minor; Transportation of Minors to Engage in a Commercial Sex Act or Prohibited Sexual Conduct; Travel to Engage in Commercial Sex Act or Prohibited Sexual Conduct with a Minor; Sex Trafficking of Children; Use of Interstate Facilities to Transport Information about a Minor**

---

\*    \*    \*

**Commentary**

\*    \*    \*

**Application Notes:**

1.    **Definitions.**—For purposes of this guideline:

\*    \*    \*

"*Interactive computer service*" has the meaning given that term in section 230~~(e)(2)~~(f)(2) of the Communications Act of 1934 (47 U.S.C. § 230(f)(2)).

\*    \*    \*

---

**§2G2.1.    Sexually Exploiting a Minor by Production of Sexually Explicit Visual or Printed Material; Custodian Permitting Minor to Engage in Sexually Explicit Conduct; Advertisement for Minors to Engage in Production**

---

\*    \*    \*

**Commentary**

\*    \*    \*

**Application Notes:**

1.    **Definitions.**—For purposes of this guideline:

\*    \*    \*

"*Interactive computer service*" has the meaning given that term in section 230~~(e)(2)~~(f)(2) of the Communications Act of 1934 (47 U.S.C. § 230(f)(2)).

\*    \*    \*

Proposed Amendment:  Technical

---

**§2G2.2.    Trafficking in Material Involving the Sexual Exploitation of a Minor; Receiving, Transporting, Shipping, Soliciting, or Advertising Material Involving the Sexual Exploitation of a Minor; Possessing Material Involving the Sexual Exploitation of a Minor with Intent to Traffic; Possessing Material Involving the Sexual Exploitation of a Minor**

---

\*    \*    \*

(b)    Specific Offense Characteristics

\*    \*    \*

(3)    (Apply the greatest):

\*    \*    \*

(D)    If the offense involved distribution to a minor that was intended to persuade, induce, entice, or coerce the minor to engage in any illegal activity, other than illegal activity covered under ~~subdivision~~subparagraph (E), increase by **6** levels.

\*    \*    \*

(F)    If the defendant knowingly engaged in distribution, other than distribution described in ~~subdivisions~~subparagraphs (A) through (E), increase by **2** levels.

\*    \*    \*

**Commentary**

\*    \*    \*

**Application Notes:**

1.    **Definitions.**—For purposes of this guideline:

\*    \*    \*

"*Interactive computer service*" has the meaning given that term in section 230~~(e)(2)~~(f)(2) of the Communications Act of 1934 (47 U.S.C. § 230(f)(2)).

\*    \*    \*

"*Sexual abuse or exploitation*" means any of the following: (A) conduct described in 18 U.S.C. § 2241, § 2242, § 2243, § 2251(a)–(c), § 2251(d)(1)(B), § 2251A, § 2260(b), § 2421, § 2422, or § 2423; (B) an offense under state law, that would have been an offense under any such section if the offense had occurred within the special maritime or territorial jurisdiction of the United States; or (C) an attempt or conspiracy to commit any of the offenses under

~~subdivisions~~subparagraphs (A) or (B). "Sexual abuse or exploitation" does not include possession, accessing with intent to view, receipt, or trafficking in material relating to the sexual abuse or exploitation of a minor.

\* \* \*

**Background:** Section 401(i)(1)(C) of Public Law 108–21 directly amended subsection (b) to add ~~subdivision~~paragraph (7), effective April 30, 2003.

\* \* \*

## §2G2.6.  Child Exploitation Enterprises

\* \* \*

**Commentary**

\* \* \*

**Application Notes:**

1.   **Definitions.**—For purposes of this guideline:

\* \* \*

"*Interactive computer service*" has the meaning given that term in section 230~~(e)(2)~~(f)(2) of the Communications Act of 1934 (47 U.S.C. § 230(f)(2)).

\* \* \*

## §2G3.1.  Importing, Mailing, or Transporting Obscene Matter; Transferring Obscene Matter to a Minor; Misleading Domain Names

\* \* \*

(b)   Specific Offense Characteristics

(1)   (Apply the Greatest):

\* \* \*

(D)   If the offense involved distribution to a minor that was intended to persuade, induce, entice, or coerce the minor to engage in any illegal activity, other than illegal activity covered under ~~subdivision~~subparagraph (E), increase by **6** levels.

\* \* \*

(F)   If the defendant knowingly engaged in distribution, other than distribution described in ~~subdivisions~~subparagraphs (A) through (E), increase by **2** levels.

\*        \*        \*

**Commentary**

\*        \*        \*

**Application Notes:**

1.      **Definitions.**—For purposes of this guideline:

\*        \*        \*

"*Interactive computer service*" has the meaning given that term in section 230~~(e)(2)~~(f)(2) of the Communications Act of 1934 (47 U.S.C. § 230(f)(2)).

\*        \*        \*

## §2H3.1.  Interception of Communications; Eavesdropping; Disclosure of Certain Private or Protected Information

\*        \*        \*

**Commentary**

\*        \*        \*

**Application Notes:**

\*        \*        \*

4.      **Definitions.**—For purposes of this guideline:

\*        \*        \*

"*Interactive computer service*" has the meaning given that term in section 230~~(e)(2)~~(f)(2) of the Communications Act of 1934 (47 U.S.C. § 230(f)(2)).

\*        \*        \*

Proposed Amendment:  Technical

## §5E1.2.    Fines for Individual Defendants

\*    \*    \*

### Commentary

**Application Notes:**

\*    \*    \*

6.    In considering subsection (d)(7), the court may be guided by reports published by the Federal Bureau of Prisons and the Administrative Office of the United States Courts concerning average costs.

\*    \*    \*

## §5F1.7.    Shock Incarceration Program (Policy Statement)

\*    \*    \*

### Commentary

**Background:** Section 4046 of title 18, United States Code, provides—

"(a)    the Bureau of Prisons may place in a shock incarceration program any person who is sentenced to a term of more than 12, but not more than 30 months, if such person consents to that placement.

(b)    For such initial portion of the term of imprisonment as the Bureau of Prisons may determine, not to exceed 6 months, an inmate in the shock incarceration program shall be required to—

(1)    adhere to a highly regimented schedule that provides the strict discipline, physical training, hard labor, drill, and ceremony characteristic of military basic training; and

(2)    participate in appropriate job training and educational programs (including literacy programs) and drug, alcohol, and other counseling programs.

(c)    An inmate who in the judgment of the Director of the Bureau of Prisons has successfully completed the required period of shock incarceration shall remain in the custody of the Bureau for such period (not to exceed the remainder of the prison term otherwise required by law to be served by that inmate), and under such conditions, as the Bureau deems appropriate." 18 U.S.C. § 4046.

In 1990, the Federal Bureau of Prisons issued an operations memorandum (174-90 (5390), November 20, 1990) that outlined eligibility criteria and procedures for the implementation of a shock incarceration program (which the Federal Bureau of Prisons titled the "intensive confinement program"). In 2008, however, the Federal Bureau of Prisons terminated the program and removed the rules governing its operation. *See* 73 FR 39863 (July 11, 2008).

\*    \*    \*

Proposed Amendment:  Technical

---

## §5F1.8.    Intermittent Confinement

\*    \*    \*

**Commentary**

**Application Note:**

1.    "*Intermittent confinement*" means remaining in the custody of the Federal Bureau of Prisons during nights, weekends, or other intervals of time, totaling no more than the lesser of one year or the term of imprisonment authorized for the offense, during the first year of the term of probation or supervised release. *See* 18 U.S.C. § 3563(b)(10).

\*    \*    \*

---

## §5G1.3.    Imposition of a Sentence on a Defendant Subject to an Undischarged Term of Imprisonment or Anticipated State Term of Imprisonment

\*    \*    \*

(b)    If subsection (a) does not apply, and a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of §1B1.3 (Relevant Conduct), the sentence for the instant offense shall be imposed as follows:

(1)    the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Federal Bureau of Prisons; and

(2)    the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.

\*    \*    \*

**Commentary**

**Application Notes:**

\*    \*    \*

2.    **Application of Subsection (b).—**

\*    \*    \*

(C)    **Imposition of Sentence.—**If subsection (b) applies, and the court adjusts the sentence for a period of time already served, the court should note on the Judgment in a Criminal Case

Proposed Amendment:  Technical

Order (i) the applicable subsection (*e.g.*, §5G1.3(b)); (ii) the amount of time by which the sentence is being adjusted; (iii) the undischarged term of imprisonment for which the adjustment is being given and the relevant case information (including docket number); and (iv) that the sentence imposed is a sentence reduction pursuant to §5G1.3(b) for a period of imprisonment that will not be credited by the Federal Bureau of Prisons.

\*     \*     \*

## §7B1.4.   Term of Imprisonment—Probation (Policy Statement)

\*     \*     \*

**Commentary**

**Application Notes:**

\*     \*     \*

3.    In the case of a defendant who fails a drug test, the court shall consider whether the availability of appropriate substance abuse programs, or a defendant's current or past participation in such programs, warrants an exception from the requirement of mandatory revocation and imprisonment under 18 U.S.C. § 3565(b). 18 U.S.C. § 3563(ae).

\*     \*     \*

## §7C1.1.   Classification of Violations (Policy Statement)

(a)    There are fourthree grades of supervised release violations:

(1)    GRADE A VIOLATIONS — conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment exceeding one year that (i) is a crime of violence, (ii) is a controlled substance offense, or (iii) involves possession of a firearm or destructive device of a type described in 26 U.S.C. § 5845(a); or (B) any other federal, state, or local offense punishable by a term of imprisonment exceeding twenty years;

(2)    GRADE B VIOLATIONS — conduct constituting any other federal, state, or local offense punishable by a term of imprisonment exceeding one year;

(3)    GRADE C VIOLATIONS — conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment of one year or less; or (B) a violation of any other condition of supervised release.

\*     \*     \*

Proposed Amendment:  Technical

## §7C1.5.   Term of Imprisonment—Supervised Release (Policy Statement)

\*     \*     \*

**Commentary**

**Application Notes:**

\*     \*     \*

3.    ~~The~~In the case of a defendant who fails a drug test, the availability of appropriate substance abuse programs, or a defendant's current or past participation in such programs, may warrant an exception from the requirement of mandatory revocation and imprisonment under 18 U.S.C. § 3583(g). 18 U.S.C. § 3583(d).

\*     \*     \*

## §8A1.2.   Application Instructions — Organizations

\*     \*     \*

(b)   Determine from Part C (Fines) the sentencing requirements and options relating to fines:

\*     \*     \*

(2)   Otherwise, apply §8C2.1 (Applicability of Fine Guidelines) to identify the counts for which the provisions of §§8C2.2 through 8C2.9 apply. For such counts:

\*     \*     \*

(F)   Apply §8C2.7 (Guideline Fine Range — Organizations) to determine the minimum and maximum of the guideline fine range.

(G)   Refer to §8C2.8 (Determining the Fine Within the Range) to determine the amount of the fine within the applicable guideline fine range.

\*     \*     \*

(4)   Determine whether a sentence below the otherwise applicable guideline fine range is appropriate upon motion of the government pursuant to §8C4.1 (Substantial Assistance to Authorities — Organizations (Policy Statement)).

\*     \*     \*

Proposed Amendment: Technical

---

### §8C2.8. Determining the Fine Within the Range (Policy Statement)

     (a)    In determining the amount of the fine within the applicable guideline fine range, the court should consider:

\*     \*     \*

**Commentary**

**Application Notes:**

\*     \*     \*

2.    Subsection (a)(3) provides that the court, in setting the fine within the guideline fine range, should consider any collateral consequences of conviction, including civil obligations arising from the organization's conduct. As a general rule, collateral consequences that merely make victims whole provide no basis for reducing the fine within the guideline fine range. If criminal and civil sanctions are unlikely to make victims whole, this may provide a basis for a higher fine within the guideline fine range. If punitive collateral sanctions have been or will be imposed on the organization, this may provide a basis for a lower fine within the guideline fine range.

\*     \*     \*

# APPENDIX A

# STATUTORY INDEX

\*     \*     \*

| | |
|---|---|
| 7 U.S.C. § 6b(~~A~~a) | 2B1.1 |
| 7 U.S.C. § 6b(~~B~~b) | 2B1.1 |
| 7 U.S.C. § 6b(~~C~~c) | 2B1.1 |

\*     \*     \*

| | |
|---|---|
| 46 U.S.C. § 70036(b) | 2A2.4 |
| 46 U.S.C. § 70503 | 2D1.1 |
| 46 U.S.C. § 70506(a) | 2D1.1 |
| 46 U.S.C. § 70506(b) | 2D1.1 |
| 46 U.S.C. App. § 1707a(f)(2) | 2B1.1 |

Proposed Amendment:  Technical

46 U.S.C. App. §
1903(a)                      2D1.1

46 U.S.C. App. §
1903(g)                      2D1.1

46 U.S.C. App. §
1903(j)                      2D1.1

*    *    *